**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

BOBBY T.  SHEPPARD         )
                                         )      CASE NO. C-1-00-493
         Petitioner,       )
                                         )      JUDGE RICE
         v                   )
                                         )      Magistrate Judge Merz
MARGARET BAGLEY, WARDEN,   )
                                         )
         Respondent.      )


<u>**RESPONDENT'S POST-EVIDENTIARY HEARING BRIEF**</u>


Respectfully Submitted,

**JIM PETRO (0022096)
Ohio Attorney General**


   by/ Charles L. Wille
_____
**CHARLES L. WILLE (0056444)
Assistant Attorney General**
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)

**COUNSEL FOR RESPONDENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

STATEMENT OF THE CASE...........................................................................................1

STATEMENT OF THE FACTS .........................................................................................2

SUMMARY OF ARGUMENT ...........................................................................................5

ARGUMENT .....................................................................................................................9

I.     Sheppard has not and cannot show that the trial court and the Supreme Court of Ohio were objectively unreasonable in finding that Juror Fox was an impartial and unbiased juror. ...................................................................................................9

     A.     Sheppard has not presented clear and convincing evidence to rebut the factual findings of the state courts. ...............................................................11

     B.     Sheppard has not and cannot show that the state courts' factual findings were unreasonable, in light of the evidence presented to the state courts...........................13

          1.     The Court may not consider the testimony of the witnesses at the evidentiary hearing, insofar Sheppard failed to present it before the trial court in support of the motion for a new trial.........................................14

          2.     The testimony presented by Sheppard at the evidentiary hearing does not call into question the reasonableness of the state courts' factual findings..........................................................................................14

II.     Sheppard has not and cannot show that he Supreme Court of Ohio was objectively unreasonable in rejecting his claim that his appellate counsel were constitutionally ineffective. ...............................................................................................16

CONCLUSION.................................................................................................................17

CERTIFICATE OF SERVICE ........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

Early v. Packer,
    537 U.S. 3, 123 S.Ct. 362 (2002) ................................................................................8

Jones v. Barnes,
    463 U.S. 745 (1983)...................................................................................................17

Lockyer  v. Andrade,
    123 S.Ct. at 1175 .........................................................................................................8

Marshall v. Lonberger,
    459 U.S. 422 (1983) ....................................................................................................9

McQueen v. Scroggy,
    99 F.3d 1302, 1310  (6th Cir. 1996)  <u>cert. denied</u>, 520 U.S. 1257 (1997)...................10

Patton v. Yount,
    467 U.S. 1025 (1984) ...........................................................................................12, 13

Price v. Vincent, __ U.S. __,
    123 S.Ct. 1848 (2003) .................................................................................................9

Remmer  v. United States
    (1954), 347 U.S. 227,  74 S.Ct. 450, 451, 98 L. Ed. 654........................................10

Smith  v. Phillips,
    455 U.S.  215 (1982), 102 S. Ct. at 945, 71 L. Ed.2d at 85 .................................10, 11

State v. Hipkins (1982)
    69 Ohio St.2d 80, 83, 23 Ohio Op.3d 123, 125, 430 N.E.2d 943, 946 .......................11

State v. Keith (1997)
    79 Ohio St.3d 514, 526, 684 N.E.2d 47, 60................................................................11

Smith v. Phillips,
    455 U.S. 209, 217-218 (1982) ...................................................................................11

State v. Phillips (1995)
    74 Ohio St.3d 72, 88-89, 656 N.E.2d 643, 661..........................................................11

State v. Sheppard
    91 Ohio St.3d 329 (2001) ..........................................................................................17

## CASES

State v. Sheppard,
  84 Ohio St.3d 230 (1998) ...........................................................................................................4

United States v. Sylvester
  (C.A.5, 1998), 143 F.3d 923 ...................................................................................................11

United States v. Zelinka
  (C.A.6, 1988), 862 F.2d 92 .....................................................................................................11

Williams v. Taylor,
  529 U.S. 362 (2000)..............................................................................................................7, 8

Woodford v. Visciotti,
  537 U.S. 19, 123 S.Ct. 357 (2002) ...........................................................................................8

## STATUTES

28 U.S.C. §2254................................................................................................................9, 15

28 U.S.C. §2254 (d) ..................................................................................................................7

O.R.C. §2945.79 ......................................................................................................................11

O. R.C. §2929.04 .......................................................................................................................4

## RULES

Crim.R. 33...............................................................................................................................11

## **STATEMENT OF THE CASE**

The Petitioner, Bobby T. Sheppard (hereinafter "Sheppard"), is under a sentence of death adjudged by an Ohio trial court.  On June 20, 2000, Sheppard filed a petition for a writ of habeas corpus in which he alleged, among other things, that misconduct by a juror at trial deprived him of a fundamentally fair sentencing proceeding.  Sheppard also alleged that his appellate counsel on direct appeal were constitutionally ineffective in that they ""failed to raise meritorious issues which would have resulted in the reversal of his capital conviction or his death sentence." See Petition (R. 4), the Seventh and Tenth Grounds.  On September 18, 2000, the Respondent, Warden Margaret A. Bagley (hereinafter "the Warden,"), filed an answer to the petition denying Sheppard's allegations of constitutional error.  See Return of Writ (R. 12).   On April 4, 2003, Sheppard filed an amended habeas corpus petition; on April 28, 2003, the Warden filed a supplementary answer.  See First Amended Petition (R. 77); Supplemental Return (R. 79).

In the interim, on February 19, 2002, the United States Magistrate Judge granted in part and denied in part Sheppard's motion for an evidentiary hearing on the Seventh and Tenth Grounds.  See Decision and Order (R. 42).  On April 23, 2002, the Magistrate Judge denied Sheppard's motion to present at the evidentiary hearing the expert testimony of Doctor Jeffrey Smalldon.  See Decision and Order (R. 53).   The evidentiary hearing was convened before the Magistrate Judge on June 24-25 2002.  On March 12, 2003, the District Judge overruled in part the Magistrate Judge's order precluding the testimony of Doctor Smalldon.  See Decision and Entry (R. 75).  On June 5, 2003, the evidentiary hearing was re-convened for the purpose of presenting Doctor Smalldon's testimony.  The Magistrate Judge thereafter issued a scheduling order for the filing of Sheppard's reply (Traverse) to the Warden's answer and his post-evidentiary brief (combined in one document), and

1

for the filing of the Warden's post-evidentiary hearing brief 30 days thereafter.  See Scheduling

Order (R. 81).

On September 25, 2003, Sheppard filed his Merit Brief and Traverse.

## STATEMENT OF THE FACTS

The Ohio Supreme Court described as follows the facts and circumstances surrounding

Sheppard's arrest, trial, conviction and sentencing:

On August 27, 1994, Bobby T. Sheppard, defendant-appellant, was indicted for the August 19, 1994 aggravated robbery and murder of fifty-six-year-old Dennis Willhide.

Willhide owned the C & D Drive-thru beverage store, located in Cincinnati. On August 19, 1994, Willhide and an employee, Darren Cromwell, were working at the store. Approximately one-half hour before closing time, appellant and his fourteen-year-old accomplice, Antwan (Cory) Little, ran into the front entrance. Appellant wore dark clothing and a dark mask and had a gun. Little wore a white t-shirt pulled over his head. Little went to the cash register and tried to open it. Appellant grabbed Willhide and forced him down to the floor by the cash register. Little removed the money from the register then ran out the door. Appellant remained a few seconds longer and fired a single gunshot to the back of Willhide's head. He, too, then ran out the exit door.

In the meantime, Cromwell had escaped out the back door. He ran down the street and tried to flag down some cars. He managed to stop a taxicab. He entered the cab and asked the driver to call the police. The driver called his dispatcher and drove Cromwell back to the drive-through. While in the cab, Cromwell heard one gunshot and then saw appellant and Little run from the store.

Cromwell went back into the drive-through. He walked behind the register and saw Willhide lying face down on the floor. He ordered people out of the store (several cars had entered while Cromwell was gone). Cromwell called the police.

Police officer Daniel M. Nickum and his tracking dog, Luke, were summoned to the scene. Luke was taken to the area where Cromwell had last observed appellant and Little. He picked up their scent and followed it to appellant's nearby house. Nickum contacted more police cars, and appellant and Little were immediately arrested. The residence was secured, and a search warrant was obtained.

Inside appellant's home, the police found $114 (three $20 bills, two $5 bills, one $2 bill, and forty-one $1 bills) partly stuffed into a plastic bag and partly lying loose on a kitchen closet floor. In a bedroom near the kitchen, the police uncovered a dark blue hooded sweatshirt and a black mask under a bed.

The next day, with the assistance of Deangelo Graham, a fifteen-year-old friend of appellant and Little, the police uncovered $390 in currency and a chrome-plated .22 caliber semiautomatic pistol containing six bullets from a neighbor's bush next to appellant's house.

The gun was test-fired and found to be operable. An expert testified that a cartridge casing found on the drive-through floor had been fired from this weapon. In addition, it was determined that the bullet retrieved from Willhide's brain was consistent with the bullets test-fired from the gun.

Appellant made several statements. Shortly after he was arrested and read his Miranda rights, but before he was told the reason for the arrest, he announced that he "didn't do a robbery." The second statement was made at the police station. In this version, appellant explained that Little and he had gone to the drive-through to purchase a forty-ounce bottle of beer. Willhide would not sell it to him because he was too young. Willhide then pulled out "something." Appellant thought it might be a gun, so he shot Willhide once in the head as Willhide turned away.

Appellant changed his story when challenged by police. He gave an accurate account of what had occurred as evidenced on the surveillance tape.   In his confession, he said that he "did not mean to shoot" Willhide and that he wasn't "in [his] right mind." But appellant admitted that he shot Willhide because he did not want Willhide to identify him. Appellant gave police $89, hidden in his shoe, which he said was proceeds from the robbery. Thus, together with the $114 from appellant's kitchen and the $390 from the neighbor's bush, the police recovered a total of $593.

The fifteen-year-old acquaintance, Deangelo Graham, related three conversations that he had with appellant. The first conversation took place approximately two to three months before August 19. The second occurred just a few days before the robbery and murder. The last conversation happened just minutes before the tragedy. Appellant related his intent to rob the drive-through and a BP station. Appellant wondered what it would feel like to shoot someone. In the second conversation, appellant stated that he might have to kill the man if he did not cooperate. In the last conversation, appellant was convincing a reluctant Little to go through with the plan. After the last conversation, Graham saw appellant and Little walk into the store and saw appellant grab Willhide and force him to the ground. Graham then walked away. Graham also described the gun appellant had purchased just a few days before on the streets. The description matched the gun offered into evidence.

The jury found appellant guilty as charged of aggravated robbery and

3

aggravated murder with gun specifications. He was also convicted of death penalty specifications for murder to escape detection or apprehension for another offense, R.C. 2929.04(A)(3), and murder in the course of a robbery, R.C. 2929.04(A)(7). The jury recommended death. The trial court sentenced appellant to imprisonment for the aggravated robbery and the gun specifications, and to death for the aggravated murder. The court of appeals affirmed.

State v. Sheppard, 84 Ohio St.3d 230, 231-232 (1998).

## SUMMARY OF ARGUMENT

Sheppard alleges that misconduct by Juror Stephen Fox deprived him of a fundamentally fair trial. The Ohio courts' determinations that Fox was unbiased and impartial, despite his improper conversation with Ms. Helen Jones, are findings of fact presumed correct in federal *habeas corpus*. The testimony presented by Sheppard at the evidentiary hearing does not constitute the clear and convincing evidence necessary to overturn the state courts' findings. Moreover, Sheppard could have presented the testimony to the trial court, but did not. Accordingly, Sheppard presented no evidence at the evidentiary hearing that calls into question the objective reasonableness of the state courts' denial of relief.

The Ohio Supreme Court determined that Sheppard did not present a genuine issue as to the constitutional effectiveness of his appellate counsel. Nothing presented by Sheppard at the evidentiary hearing calls into question the objective reasonableness of the Ohio Supreme Court's determination. The evidentiary hearing testimony of Sheppard's appellate counsel is completely consistent with a finding that counsel exercised professional judgment in their choice of claims to present on Sheppard's behalf. Sheppard failed to show that the disciplinary action taken against Attorney Stidham was in any way related to his representation of Sheppard, or that Stidham's alleged exhaustion and depression adversely affected his actions in Sheppard's case. The testimony of Sheppard's "expert" witness is not persuasive, as her opinions are based entirely on her personal assessment of the "merits" of Sheppard's claims of error, as opposed to an objective standard of professional conduct.

Accordingly, Sheppard presented no substantial evidence at the evidentiary hearing, and Sheppard's petition for *habeas corpus* should be denied.

## <u>APPLICABLE STANDARD OF REVIEW AND PRESUMPTION OF</u> <u>CORRECTNESS REGARDING STATE-COURT FACTUAL FINDINGS</u>

Title 28 U.S.C. Section 2254(d), as amended, provides in pertinent part:

An application for a *writ of habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

In <u>Williams v. Taylor,</u>  529 U.S. 362 (2000), the United States Supreme Court addressed for

the first time the Section 2254(d) standard.  Through a concurring opinion by Justice O'Connor, the

Court summarized the standard as follows:

In sum, Section 2254(d) (1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under Section 2254 (d) (1), the writ may issue only if one of the following two conditions is satisfied -- the state court adjudication resulted in a decision that (1) "was contrary to .... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts on the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. at 412-13.

Justice O'Connor also stated three important interpretive guidelines.  First, under Section 2254(d)(1)'s "unreasonable application" clause, "a federal *habeas* court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, the application must also be unreasonable."  529 U.S. at 411.  Second, the phrase "clearly established Federal law, as determined by the Supreme Court," refers to the Supreme Court's holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision.  Id.  And third, the standard requires an assessment of objective reasonableness; hence, it does not require that "all reasonable jurists" would agree that a state court decision is unreasonable.  529 U.S. at 410.

In a number of recent cases, the Supreme Court of the United States has applied Section 2254(d)'s standard of review in reversing the granting of relief by the courts of appeal.  See Lockyer v. Andrade, __ U.S. __, 123 S.Ct. 1166 (2003)  Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 363 (2002); Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357 (2002).  In doing so, the Supreme Court has observed that "objectively unreasonable" is not the same thing as "clear error," nor may the federal court grant relief because it has a "firm conviction" that the state court's decision is erroneous.  Lockyer  v. Andrade, 123 S.Ct. at 1175.  To grant relief under Section 2254(d)(1), a federal court may not simply find that the State court "failed to apply" the clearly established law, and then proceed to determine that the State court had erred to the petitioner's substantial prejudice.  Early v. Packer, 123 S.Ct. at 363.  Rather, *before* determining whether there is constitutional error, and the effect, if any, that the error had on the verdict, the federal court must *first* find that the State court's decision was "contrary to" or involved an unreasonable application of clearly established Supreme Court law.  Id.

7

These decisions emphatically reinforce <u>Williams'</u> core holding that "unreasonable" and "erroneous" are not the same thing, even if, in the judgment of the federal court, the state court clearly erred.   Thus, in most recently reversing a grant of the writ by the Sixth Circuit based on a claimed violation of the Double Jeopardy Clause, a claim considered and rejected by the Supreme Court of Michigan, the Supreme Court of the United States observed:

> Even if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.

<u>Price v. Vincent</u>, __ U.S. __, 123 S.Ct. 1848, 1854-1855 (2003).   In short, the primary question in federal habeas corpus is the reasonableness of the state court's denial of relief.   Apart from this consideration, the federal court's assessment of the merit of a particular constitutional claim is irrelevant.

Title 28 U.S.C. Section 2254(e)(1), as amended, provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. **The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence**.

<u>Id.</u>  (emphasis added).  <u>See also</u>, <u>Marshall v. Lonberger</u>, 459 U.S. 422 (1983).

Title 28 U.S.C. Section 2254(e)(1) reflects the intent of Congress to strengthen the presumption of correctness which prior law required to be afforded to state court factual determinations.   Federal courts must defer to state court factual findings, affording a presumption of correctness that a habeas petitioner may rebut only with clear and convincing evidence.  <u>See</u>, 28 U.S.C. Section 2254(e)(1).   "The presumption…applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  <u>McQueen v. Scroggy</u>, 99 F.3d 1302, 1310  (6th Cir. 1996)  <u>cert. denied</u>, 520 U.S. 1257 (1997).

<u>**ARGUMENT**</u>

I.      **Sheppard has not and cannot show that the trial court and the Supreme Court of Ohio were objectively unreasonable in finding that Juror Fox was an impartial and unbiased juror.**

Sheppard's Seventh Ground alleges that misconduct by Juror Stephen Fox deprived him of a fundamentally fair trial. Sheppard fairly presented his allegation on direct appeal to the Ohio Supreme Court; it is therefore preserved for federal *habeas corpus* review. In denying relief, the Supreme Court of Ohio held as follows:

> In Proposition of Law No. 1, appellant argues that he is entitled to reversal of the death sentence and imposition of a life sentence because of the misconduct of one juror during the penalty phase. In Proposition of Law No. 2, appellant contends that the trial court improperly considered a psychologist's affidavit in considering this issue. We reject both arguments.

> After the jury had recommended the death penalty and had been discharged, the state learned that one juror had independently contacted a psychologist for a definition of paranoid schizophrenia. The contact was made before jury deliberations in the penalty phase. The court conducted a brief hearing and examined the juror. The juror testified that the psychologist gave him a "very, boiled down, short" definition that "those kind of people [paranoid schizophrenics] just are not really in touch with reality." The juror testified that this definition did not differ from what he had heard at trial, and it did not affect the deliberations in any way. The juror did not share this information with other jurors. Following appellant's motion for a new trial based upon juror misconduct, the state submitted an affidavit from the psychologist in question, stating that the brief definition she had given to the juror was totally consistent with defense testimony.

> The juror's decision to ask his psychologist friend for an outside opinion constitutes juror misconduct. "Due process means a jury capable and willing to decide the case solely on the evidence before it[.]" <u>Smith v. Phillips</u> (1982), 455 U.S. 209, 217, 102 S. Ct. 940, 946, 71 L. Ed.2d 78, 86. "In a criminal case, any private communication, contact, or tampering * * * with a juror during a trial about the matter pending before the jury is * * * deemed presumptively prejudicial[.]" <u>Remmer v. United States</u> (1954), 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L. Ed. 654, 656. But "the presumption is not conclusive." <u>Id</u>. In fact, <u>Smith v. Phillips</u> modified the concept of presumed prejudice and required the party complaining about juror misconduct to prove prejudice. 455 U.S. at 215-217, 102 S. Ct. at 945, 71 L. Ed.2d at 85-86. <u>See</u> <u>United States v. Zelinka</u> (C.A.6, 1988), 862 F.2d 92, 95; <u>United States v. Sylvester</u> (C.A.5, 1998), 143 F.3d 923, 933-934.

Additionally, Ohio courts have a long-standing rule "not [to] reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." State v. Hipkins (1982), 69 Ohio St.2d 80, 83, 23 Ohio Op.3d 123, 125, 430 N.E.2d 943, 946. Accord State v. Keith (1997), 79 Ohio St.3d 514, 526, 684 N.E.2d 47, 60. The defense must establish that an outside communication "biased the juror." Id., citing State v. Phillips (1995), 74 Ohio St.3d 72, 88-89, 656 N.E.2d 643, 661. Under Crim.R. 33(A)(2), juror misconduct must materially affect an accused's[***9] substantial rights to justify  a new trial. See, also, R.C. 2945.79(B).

Here the trial court determined that appellant suffered no harm or prejudice as a result of the juror's brief conversation with the psychologist. A court may determine that a juror's impartiality has remained unaffected based upon that juror's testimony. Smith v. Phillips, 455 U.S. at 215, 102 S. Ct. at 945, 71 L. Ed.2d at 85. In fact, the juror's brief conversation clearly did not prejudice appellant because the psychologist's comments reinforced expert defense testimony. Thus, if the juror was influenced at all, he could have been influenced only in appellant's favor, and the other jurors, unaware of the conversation, could not have been affected at all. Accordingly, appellant has not established that any prejudice resulted from this juror misconduct. Crim.R. 33(A)(2); Keith, 79 Ohio St.3d at 526, 684 N.E.2d at 60; Hipkins, 69 Ohio St.2d at 83, 23 Ohio Op.3d at 125, 430 N.E.2d at 946.

State v. Sheppard, 84 Ohio St.3d at 232-234.

As noted by the Warden in her Return of Writ, the determinations regarding Fox's competency to serve must be considered factual findings subject to deference in federal habeas corpus. Smith v. Phillips, 455 U.S. 209, 217-218 (1982). Therefore, Sheppard must now produce clear and convincing evidence to rebut these findings. 28 U.S.C. Section 2254(e)(1). Moreover, Sheppard must also show that the state courts' factual findings were *unreasonable*, in light of the evidence presented in the relevant state court proceeding, the hearing conducted by the trial judge. 28 U.S.C. §2254 (d).  In other words, Sheppard must do more than convince this Court that the trial court and the Ohio Supreme Court were wrong, in view of the evidence presented at the evidentiary hearing.  Rather, Sheppard must show that the trial court and the Ohio Supreme Court were objectively unreasonable in finding that Juror Fox was unbiased and impartial.

The Warden respectfully submits, for the reasons discussed below, that Sheppard has not and cannot satisfy the requisites for *habeas corpus* relief.

10

A.    **Sheppard has not presented clear and convincing evidence to rebut the factual findings of the state courts.**

According to the findings of the Supreme Court of Ohio, Juror Fox testified during the hearing conducted by the trial court that his conversation with Mrs. Jones was brief; that he believed what Mrs. Jones told him was consistent with what he heard at trial; that he did not discuss with any of the other jurors his conversation with Mrs. Jones; and that his conversation with her did not affect his deliberations.  State v. Sheppard, 84 Ohio St.3d at 232-234.  In denying Sheppard relief, the trial court and the Supreme Court of Ohio essentially found that Juror Fox's testimony before the trial court was credible.  See Patton v. Yount, 467 U.S. 1025, 1038 (1984) (findings regarding possible bias of juror based upon determinations of demeanor and credibility that are particularly within the trial judge's province).

The Warden respectfully submits that Sheppard did not present at the evidentiary hearing clear and convincing evidence in rebuttal to the factual findings of the Ohio courts.  Consistent with Fox's statements to the trial judge, Mrs. Jones testified at the evidentiary hearing that her conversation with Fox lasted not more than two minutes.  Hearing Transcript, page 198.  Fox also testified at the evidentiary hearing that his conversation with Mrs. Jones was at most two minutes long.  Hearing Transcript, page 138.  Fox also affirmed under oath before this Court that he did not discuss the conversation with the other jurors, and that, when questioned by the trial judge, he answered truthfully and to the best of his ability at that time.  Hearing Transcript, page 139.  Sheppard presented no evidence contradicting Fox's testimony concerning the nature and duration of his conversation with Mrs. Jones or contradicting Fox's testimony that he did not reveal or discuss with the other jurors any information he obtained from Mrs. Jones.

11

In seeking to overturn the state courts' factual findings, Sheppard relies primarily on Fox's statements, obtained in response to questions by Sheppard's counsel at the evidentiary hearing, to the effect that his conversation with Mrs. Jones "contributed" to his verdict because it "made it easier" to vote for death.  Hearing Transcript, pages 137-138.  Indeed, Sheppard argues that this Court should consider "dispositive" Fox's responses.[1]  However, in holding that a presumption of correctness must be afforded to findings regarding a juror's capacity to serve, the Supreme Court of the United States recognized that it is the trial court's assessment of the juror's demeanor and credibility – and not the literal import of the juror's statements -- that is "dispositive."  Thus:

> It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely.  Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand.  Jurors thus cannot be expected invariably to express themselves carefully or even consistently.  Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially. The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.

Patton v. Yount, 467 U.S. at 1039.

Sheppard's position, simply stated, is that this Court may and should step into the place of the trial court and render a new and opposing assessment of Fox's credibility, based on Fox's responses to

---

[1] Prior to Fox's testimony at the evidentiary hearing, the Warden objected to any testimony by Fox concerning what effect, if any, his conversation with Mrs. Jones may have had on his deliberative process.  See Gall v. Parker, 231 F.3d 265, 33 (6th Cir. 2000) (even when a juror testifies as to external information, testimony should be parsed of all references regarding the effect of that information on the juror's mental processes or the jury's deliberation).  The Magistrate Judge allowed the testimony subject to the objection.  The Warden respectfully withdraws her objection, in view of the particular facts and circumstances of this case, e.g., the state courts' apparent reliance on Fox's statement to the trial court that his conversation with Mrs. Jones did not affect his deliberations.

leading questions posed by Sheppard's counsel in federal habeas corpus years after the events in question. The Warden respectfully submits that Sheppard's argument is gravely mistaken. Fox did not repudiate at the evidentiary hearing his statements to the trial judge. And his evidentiary hearing testimony concerning the effect of his conversation upon his deliberative process is indicative of a residual degree of confusion. See Hearing Transcript, page 137 ("Q. And, again, to use your words, you agree that it contributed to your verdict of death; is that correct? A. If that's, yeah, if that's what I said."). In any event, given the absence of objective grounds for discrediting Fox -- apart from the impermissible assessment of Fox's credibility and demeanor that Sheppard proposes – Sheppard fails far short of producing the clear and convincing evidence necessary to overcome the binding factual findings of the Ohio courts.

**B.    Sheppard has not and cannot show that the state courts' factual findings were unreasonable, in light of the evidence presented to the state courts.**

To obtain i relief, Sheppard must show also that the findings of fact made by the state courts in rejecting his claim were objectively unreasonable, in light of the evidence presented to the state courts. In overturning the Magistrate Judge's exclusion of Doctor Smalldon's testimony, the District Court rejected Sheppard's argument that the trial judge's inquiry concerning Juror Fox's call to Ms. Jones was inadequate as a matter of law. See Decision and Entry (R. 75), page 12. It is beyond reasonable dispute that the state courts afforded Sheppard the opportunity to develop the factual basis for his claim that Fox's conversation with Mrs. Fox deprived him of a fundamentally fair sentencing hearing. The Warden submits that Sheppard has not and cannot meet the requisite for habeas corpus relief because (1) the Court is precluded to consider testimony at the evidentiary hearing which Sheppard with due diligence could have presented but failed to present to the state courts; and (2) in any event, the testimony presented by Sheppard does not call into question the reasonableness of the state courts' factual findings.

**1.    The Court may not consider the testimony of the witnesses at the evidentiary hearing, insofar Sheppard failed to present it before the trial court in support of the motion for a new trial.**

Title 28 U.S.C. Section 2254(e)(2) precludes an evidentiary hearing in district court "if the applicant has failed to develop the factual basis of a claim in State court proceedings," unless the applicant shows, inter alia:

> (A) the claim relies on --
>   ...
>       (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The Magistrate Judge deferred ruling, pending review of the testimony actually adduced at the evidentiary hearing, whether or to what extent the "due diligence" standard of Section 2254(e)(2) applied in this case.   The testimony of Ms. Flanagan and Ms Jones at the evidentiary hearing discloses that they could have testified before the trial court in support of the motion for new trial. Hearing Transcript, pages 149, 200.   Doctor Smalldon testified upon the continuation of the evidentiary hearing that although he was a witness for Sheppard during the mitigation hearing, he was not asked to testify in furtherance of the motion for new trial.   Hearing Transcript, page 44. Sheppard now offers no basis for a finding that he was precluded from calling these witnesses in state court.   Accordingly, insofar as their testimony was not presented to the trial court, it is precluded by Section 2254(e)(2).

**2.    The testimony presented by Sheppard at the evidentiary hearing does not call into question the reasonableness of the state courts' factual findings.**

Regardless of Sheppard's apparent lack of diligence in state court, the testimony of Ms. Jones, Ms. Flanagan and Doctor Smalldon at the evidentiary hearing does not call into question the objective reasonableness of the relevant factual findings of the state courts. As noted above, Ms. Jones' hearing testimony corroborated Fox's statement to the trial judge that Fox's conversation with Jones was very brief. Ms. Jones also testified at the evidentiary hearing, consistent with her statements in the affidavit offered by the state in opposition to Sheppard's motion for a new trial, that in her opinion the information she provided to Fox in their two-minute conversation would not have conflicted with the trial testimony of Doctor Smalldon. Hearing Transcript, page 194-195. Finally, Ms. Flanagan's testimony corroborated Fox's statements to the trial court that he did not discuss with the other jurors his phone conversation with Ms. Jones. Hearing Transcript, page 148.

In his post-evidentiary hearing brief, as he did at the evidentiary hearing, Sheppard argues strenuously that the information obtained by Fox from Ms. Jones was greatly misleading and inaccurate, when measured against the full exposition of paranoid schizophrenia set forth in the applicable diagnostic manual. However, the accuracy of Ms. Jones' "general definition" is of secondary relevance. The primary issue is whether the trial court was objectively reasonable in determining that Fox remained an unbiased and impartial juror. As argued above, that determination essentially amounted to an assessment that Fox could be believed when he denied that his conversation with Ms. Jones did not affect his deliberations. And it is difficult to fault the trial judge for at least in part relying on the affidavit of Ms. Jones, in view of Sheppard's failure to offer any evidence to rebut the affidavit.

For all the foregoing reasons, Sheppard has not and cannot satisfy the requisites for habeas corpus relief.

II.     **Sheppard has not and cannot show that he Supreme Court of Ohio was objectively unreasonable in rejecting his claim that his appellate counsel were constitutionally ineffective.**

Sheppard sought to reopen his direct appeal, alleging that his appellate counsel were ineffective in failing to raise additional claims of error specified in his application to reopen. The Supreme Court of Ohio determined that Sheppard failed to raise a genuine issue of constitutional ineffectiveness. State v. Sheppard, 91 Ohio St.3d 329 (2001). As argued by the Warden in her Return of Writ, it is well-established that an appellate defense counsel does not have a constitutional duty to raise non-frivolous issues at the request of the defendant if, as a matter of professional judgment, counsel decides not to raise such issues. Jones v. Barnes, 463 U.S. 745 (1983). Accordingly, the question presented at this juncture is whether Sheppard produced at the evidentiary hearing evidence of professional dereliction on the part of counsel that would render objectively unreasonable the Ohio Supreme Court's denial of relief. The Warden respectfully submits that Sheppard produced no such evidence.

Sheppard was represented on direct appeal by Attorneys Fred Hoefle and Chuck Stidham. Both testified at the evidentiary hearing. Neither Attorney Hoefle nor Attorney Stidham could recall specifically their thought processes in determining the claims that were presented on Sheppard's behalf. Hearing Transcript, pages 26, 91. However, the Warden extensively questioned Attorney Hoefle concerning several claims of error allegedly overlooked or omitted on direct appeal. The Warden respectfully submits that far from substantiating Sheppard's allegations, Attorney Hoefle's testimony shows that he was and is an experienced appellate counsel whose choice of claims was based on the exercise of his reasonable professional judgment. Hearing Transcript, pages 33-74.

At the evidentiary hearing, Sheppard questioned Attorney Hoefle and Attorney Stidham concerning disciplinary action taken against Attorney Stidham by the Supreme Court of Ohio.

16

Sheppard produced no testimony or evidence that the disciplinary action was in any way related to Stidham's representation of Sheppard.   Attorney Stidham claimed that his professional misconduct was due to exhaustion and depression.   However, Sheppard produced no evidence of any professional dereliction in Sheppard's case on the part of Attorney Stidham, much less than that Stidham's alleged exhaustion and depression had a detrimental effect on Sheppard's case.   Indeed, Attorney Stidham was unable to identify any way in which his exhaustion and depression adversely affected his representation of Sheppard.  Hearing Transcript, page 107.

Finally, Sheppard presented at the evidentiary hearing the testimony of Attorney Adele Shank. Sheppard offered Attorney Shank as an expert on the representation of capital defendants.    It is readily apparent that Attorney Shank's opinions are based not on an objective standard of professional competence, but rather, on her personal assessment of the relative merits of Sheppard's  various claims in support of relief.   For example, Attorney Shank opined that counsel was ineffective in failing to challenge the penalty phase instructions because in her opinion the instructions violated State v. Brooks, 75 Ohio St. 3d 148; 1996 Ohio 134; 661 N.E. 2d 1030; 1996 Ohio Lexis 161.   See Hearing Transcript, pages 254-258.   As pointed out by the Warden at the evidentiary hearing, the instruction condemned by Brooks was not given in Sheppard's case.  On this basis alone it may be deemed objectively reasonable to conclude that counsel's decision not to raise a claim under Brooks was professionally acceptable.   In any event, the Warden respectfully submits that Attorney Shank's testimony does not call into question the objective reasonableness of the Ohio Supreme Court's denial of relief to Sheppard.

## **CONCLUSION**

17

For all the foregoing reasons, Sheppard presented no substantial evidence at the evidentiary hearing.  Accordingly, Sheppard's petition for *habeas corpus* should be denied.

Respectfully Submitted,

**JIM PETRO (0022096)**
**Ohio Attorney General**


by/ Charles L. Wille
CHARLES L. WILLE (0056444)
Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)

**COUNSEL FOR RESPONDENT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and accurate copies of the foregoing *Respondent's Post-Evidentiary Hearing Brief* were sent electronically and via first-class U.S. Mail, postage prepaid, this 27th day of October, 2003, to: Geoffrey J. Moul, Esq., 326 S. High Street, Suite 400, Columbus, Ohio, 43215, **and** Timothy R. Payne, Asst. State Public Defender, Office of the State Public Defender, 8 East long Street, 11th Floor, Columbus, Ohio, 43215; Counsel for Petitioner.

by/ Charles L. Wille

**CHARLES L. WILLE**
Assistant Attorney General