RECEIVED
JUN 21 1996
BY THE ⎯⎯
COURT OF APPEALS

FILED
COURT OF APPEALS
JUN 21 1996
JAMES CISSELL
CLERK OF COURTS
HAMILTON COUNTY

```
                    COURT OF COMMON PLEAS
                    HAMILTON COUNTY, OHIO

                              *   *   *

STATE OF OHIO,                    App. No. C-95-0402

     PLAINTIFF,                            C-95-0744

V.                                Case No. B-94-5527

BOBBY TERRELL SHEPPARD,

     DEFENDANT.

                      *   *   *

              TRANSCRIPT OF PROCEEDINGS

                      *   *   *

APPEARANCES:

          ON BEHALF OF THE PROSECUTION:

          MARK E. PIEPMEIER, ESQ.

          ON BEHALF OF THE DEFENDANT:

          H. FRED HOEFLE, ESQ.

                      *   *   *

          BE IT REMEMBERED that upon the hearing of
this cause on the dates hereinafter indicated, before the
Honorable Thomas H. Crush, one of the said judges of the
Hamilton County Common Pleas Court, the following
proceedings were had.

                      *   *   *
```

| | |
|---|---|
| 1 | PROCEEDINGS, October 6, 1995 |
| 2 | THE COURT: State of Ohio versus Bobby |
| 3 | Sheppard. This is a motion for what? |
| 4 | MR. HOEFLE: Judge, two motions, actually. I |
| 5 | was appointed by Your Honor, Mr. Stidham also to |
| 6 | represent the defendant in the appeal. |
| 7 | THE COURT: It's your motion. Use the |
| 8 | podium. |
| 9 | MR. HOEFLE: Thank you. |
| 10 | THE COURT: You better move it over this way. |
| 11 | Getting some weird static out of it. I believe |
| 12 | that it is partly the location. Try that. Okay. |
| 13 | MR. HOEFLE: Thank you, Judge. Two motions |
| 14 | before this Court. Mr. Ranz, who was Mr. Sheppard's |
| 15 | trial counsel, filed a motion for new trial. |
| 16 | then I filed a motion to re-sentence the defendant |
| 17 | to life imprisonment. |
| 18 | Part of the reason for that is that under |
| 19 | State v. Penix, since what happened here that we |
| 20 | claim to be error is in the penalty phase, under |
| 21 | Penix, there is no such thing as a new penalty |
| 22 | trial, but that life in prison is the proper remedy |
| 23 | as opposed to a new trial. So that is the reason |
| 24 | for the second motion. |
| 25 | Also, that was necessitated and since the |

1   case has been remanded here by the Court of
2   Appeals, I wanted to raise two other points while
3   this Court had jurisdiction to consider them, not
4   only to preclude any allegation later on that it
5   was waived by not raising it, but also to make the
6   record on it so that the Court of Appeals can
7   consider it all in one appeal.
8   　　　　The second prong being that the error was
9   committed in not merging two of the specifications,
10  and the third point being that the entire death
11  penalty statute is now unconstitutional in light of
12  the interpretation by the Supreme Court of
13  State v. Gumm, which I don't care to argue unless
14  you have a question. It's all set forth in the
15  memorandum.
16  　　　　THE COURT: No.
17  　　　　MR. HOEFLE: You're not about to reverse the
18  Supreme Court of Ohio.
19  　　　　THE COURT: I seldom do that. I did it once.
20  I have never tried it again.
21  　　　　MR. HOEFLE: I would invite you to do it
22  again. I don't expect it. Part of the problem I
23  found that I have in raising the objection in that
24  case is that now I'm bound to do it in every death
25  penalty case until the issue is resolved.

1    I also orally move to strike from Juror Fox's
2    testimony at the May 30th hearing which pre-dated
3    the motion for a new trial, I believe that was in
4    chambers, any and all questions and answers with
5    respect to how his contact with Miss Jones affected
6    the deliberations or the verdict of himself or any
7    other --

8        THE COURT:  You want to strike that?
9        MR. HOEFLE:  Yes, Rule 606 B.
10       THE COURT:  And you represent whom now?
11       MR. HOEFLE:  Sheppard.
12       THE COURT:  Well, Sheppard's attorney asked
13   some of the questions.
14       MR. HOEFLE:  Questions that I have a problem
15   with were initially asked by the Court, and then his
16   attorney followed up on this.  This is not to say
17   that I ask the entire matter be stricken, but how
18   it affected the verdict in deliberation.
19       Reason is State v. Lane, which is a decision
20   that I provided the Court from our Court of
21   Appeals.  Something similar happened in that case
22   where the bailiff during deliberations injected
23   himself improperly into the matter and the motion
24   for a new trial was filed.
25       Defense counsel in the course of that sought

```
 1   to inquire of the juror who had testified about
 2   what the bailiff had actually done, as to how the
 3   bailiff's actions and words and gestures
 4   contributed to her verdict and the affect that it
 5   had on the deliberation. Prosecutors objected.
 6   Trial court sustained that saying that it was not
 7   proper, relying upon 606 B that held the trial
 8   court was correct. That's not proper evidence
 9   here.
10        Conclusion of all this though is that under
11   State v. King, which has been cited, it is
12   presumptively prejudicial when juror misconduct of
13   this sort occurs and it is the burden of the State
14   or the prevailing party to show that it was not
15   prejudicial, yet we get into Lane which is a later
16   case, same Court saying that you can't go into how
17   it affected the jury deliberations or the verdict.
18        Now, that's seemingly ambiguous because how
19   else could the State hope to prove that there was
20   no prejudice and you have got the two opposite
21   cases.
22        Really, the bottom line is you go back to the
23   construction of the statute, Rule 606 B in
24   particular. And 2901.04 A provides that these
25   rules, statutes, et cetera, must be construed most
```

strictly against the State and favorably for the accused. Using that rule of construction, I don't think the State has any way out of the horns of this dilemma.

If the error that is presumed, yet the State is unable to rebut it, the only really practical way that it can, because Evidence Rule 606 B will not let them ask the juror how did this affect your deliberations, pardon me, how did this affect your verdict.

Another factor is that a penalty jury doesn't only make findings of fact as to whether or not the mitigating factors or any mitigating factor exists. Once it decides that one exists, it must weigh the mitigating factors against the aggravating circumstances.

I don't know how in the world, when at least the inquiry that was done here could accurately explore the effect that this had on the weighing process.

I know that in the sentencing opinion it was concluded that the juror must have concluded that the mitigating factor was not proof, but we respectfully submit that the verdict doesn't necessarily lead to that conclusion because they

```
 1    could have found it to exist, but that the
 2    aggravating circumstances outweigh the mitigating
 3    factors.  The weight that's put on that fact by the
 4    jurors could not help, by this juror, perhaps
 5    others, could not help but be affected by the
 6    impropriety that the juror committed.
 7         The juror said that at page --
 8         THE COURT:  Do you want to -- are you going
 9    to quote something that you want me to strike?
10         MR. HOEFLE:  Well, this part --
11         THE COURT:  That's all right.  Appellate
12    courts do this.
13         MR. HOEFLE:  Well, in a way, I might be a
14    little inconsistent here because Mr. Ranz asked "Can
15    you truthfully say that your conversation with her
16    or your need to call her did or did not enter into
17    your deliberation?"  That part, as far as in the
18    deliberation, certainly should be stricken.
19         The juror said that "She didn't tell me
20    anything that I didn't know.  I guess that it was
21    something like that I just needed to hear somebody
22    basically confirm what I thought already."  So he
23    indicated that he needed this, needed this in order
24    to deliberate which this is not strikeable, and
25    then later, when he was asked whether he discussed
```

```
 1    the testimony with other jurors, really Mr. Ranz
 2    used the word "testimony," but I believe that we
 3    understood that he means what Doctor Jones told
 4    him. He may have. He was vague on that.
 5         So there is really no way at this point of
 6    measuring the affect that it had anyway even if you
 7    do not strike it, and the King case that we cite
 8    also, that was cited originally, it is important in
 9    that case that the conviction was upheld, but in
10    that case, the impropriety of the juror was caught
11    during deliberations. That was where the foreman
12    of the jury called Mr. Namanworth, asked him about
13    the difference between murder and manslaughter.
14    Once he found out over the weekend, the jury was
15    deliberating, he called the Court immediately and
16    the trial court had the opportunity to set
17    everything straight which was done.
18         In this case, however, the verdict had
19    already been returned by the time that this was
20    discovered. It was after the jury made the death
21    verdict, so to that extent, the affirmance in King
22    cannot be used to uphold the general denial of the
23    motions here.
24         I don't think that I have anything to add.
25    If I may have a moment, I would ask Mr. Ranz a
```

question.

THE COURT: Are they all your motions?

MR. RANZ: One is his, one is mine. Mr. Hoefle is going to argue both of them, Judge, for the sake of brevity.

THE COURT: All right. Did you argue all motions? Just making sure for the record that was all of them.

MR. HOEFLE: Basically the motion to re-sentence. Motion for a new trial is based upon the same thing. Mr. Ranz wanted me to emphasize that when Juror Fox came in, the Court's request or order, and that it was I think prior to the filing even of the motion for a new trial; was it not? So that motion was not pending at the time.

Basic thrust of the motion for a new trial and the motion that I filed to re-sentence with respect to that issue is the same, basically that there was juror misconduct and that it is presumptively prejudicial error and that 606 B does not permit the prosecution in trying to rebut that presumption into how the juror actually felt about it, what affect that it had on him, what affect that it had on the deliberation of himself and other jurors, what affect that it had on the

verdict. Thank you.

THE COURT: Mr. Prosecutor?

MR. PIEPMEIER: Thank you, Your Honor. Your Honor, with regard to the motion for new trial, we will stand by what we said in our response which is it is up to the defense, their burden to show that this misconduct material affected the defendant's rights.

This week, Judge, I filed a response to the affidavit filed by the defense after we had raised the Aliunde rule, the defense filed an affidavit of the psychologist indicating that she, indeed, had contact with this juror, Steven Fox.

I have filed with the Court, and I would like to file today a transcript of the testimony of Doctor Smalldon which I gave to this psychologist, asked her to review it. In response to some questions, I have filed an affidavit wherein she states that she has totally reviewed the testimony of Doctor Smalldon. Nothing that she told the juror in this case was inconsistent with anything that Doctor Smalldon said. In fact, the little bit that she told Steven Fox was totally consistent with what the defendant's expert said.

In effect, Judge, this juror, if anything,

```
 1    was seeking for some type of confirmation of what
 2    this defense expert was saying was true.  If anyone
 3    has been prejudiced by this misconduct, it was the
 4    State because we have this expert coming in here
 5    for the defense that apparently this juror, for
 6    some reason, wanted to verify what he was saying.
 7    He turned to someone he knew, trusted, this Helen
 8    Jones.
 9         She basically told him the same thing this
10    expert was saying.  So, in effect, if anyone was
11    prejudiced by this contact and by this misconduct,
12    it was the State of Ohio.
13         I have seen no showing by the defense that
14    they were the ones prejudiced by this conduct and,
15    again, I believe that it is their burden to show
16    that not only did this affect the outcome, it
17    materially affected the outcome.
18         I don't see how you can call this person,
19    this Juror Fox, ask him about this contact and not
20    go the next step, did it affect you.  He clearly
21    states absolutely not, that it did nothing to
22    change my opinion.  So, in effect, I believe that
23    there was not a showing for a need for a new trial.
24    I ask that you overrule that motion.
25         As far as the motion to re-sentence, I
```

1   believe that the defense is basically asking this
2   Court to now sit as a Court of Appeals and reverse
3   itself because of an alleged faulty instruction
4   that the Court gave to the jury for alleged
5   improper sentencing that the Court did.  I do not
6   believe for one minute that the Court did anything
7   improper in this case.
8       I do not believe that even if you felt that
9   you did, and I don't think that you do, you would
10  at this point reverse a decision that you made some
11  months ago in this particular case.
12      I believe that the defense tried to
13  misconstrue the Gumm decision.  In that decision,
14  which was unanimous, affirmed, the same position
15  that the Court took in this particular case.
16      It is defense counsel, Mr. Hoefle, is trying
17  to overrule the Supreme Court in this case and we
18  would ask this Court not to go along with that.
19      THE COURT:  All right.  Go ahead.
20      MR. PIEPMEIER:  I referred in the affidavit
21  that I filed to State's Number 1, I did give a
22  complete copy of this transcript to Helen Jones, I
23  would like to now file it with the Court of
24  Appeals, this transcript.
25      THE COURT:  All right.  Okay.

```
 1              MR. HOEFLE:  We have no objection.  We'll
 2   accept that representation of Mr. Piepmeier as to
 3   how he did this and that it was accurate.
 4              THE COURT:  Okay.  Now, just a short
 5   discussion.  The Aliunde rule basically, I believe,
 6   that there has to be some outside evidence to
 7   impeach their verdict.  Is that what it is,
 8   basically?
 9              MR. PIEPMEIER:  Yes.
10              THE COURT:  Well, since we now have outside
11   evidence to determine what the jury did, what was
12   wrong, at least in retrospect now with the Court
13   asking a juror the basis of the decision, you can't
14   do that unless there is some outside evidence of
15   the fact.
16              Now here, the outside evidence came a little
17   after the conversation, but nonetheless, it seems
18   to me that you can't have it both ways, either side
19   can't have it both ways.  And if you don't allow
20   the juror to testify, then the only evidence that
21   you have regarding how it may have affected the
22   jury is that testimony of this psychiatrist friend
23   who said that she didn't tell him anything that he
24   was not already told.  That was stuff that was
25   favorable to the defendant.
```

```
 1        If we say that the Aliunde rule doesn't apply
 2   because we have the evidence from the psychiatrist,
 3   we have both her statement which shows that there
 4   was no harm done by what she said. In fact, if
 5   anything, it was a little favorable to the
 6   defendant. Secondly, the juror's own statement, in
 7   addition of which the evidence in the case was
 8   absolutely overwhelming and the crime is absolutely
 9   horrendous. And I will overrule both motions.
10        MR. PIEPMEIER: Thank you, Judge.
11        THE COURT: Okay. Thank you.
12                    *   *   *
```

```
                    CERTIFICATE
```

1   I, Ross A. Giglio, the undersigned, an
official court reporter for the Court of Common Pleas,
Hamilton County, Ohio, do hereby certify that at the time
and place stated herein, I recorded in stenotype and
thereafter transcribed into typewriting the within
Transcript of Proceedings, and that the foregoing is a
true, accurate and complete transcription of my said
stenotype notes.

IN WITNESS WHEREOF, I have hereunto set my
hand at Cincinnati, Ohio this 22nd day of March, 1996.

_____
ROSS A. GIGLIO
OFFICIAL COURT REPORTER
COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO