# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

BOBBY T. SHEPPARD,

        Petitioner,              :            Case No. 1:00-cv-493

                                 :            Chief Judge Walter Herbert Rice

        -vs-                                 Magistrate Judge Michael R. Merz

MARGARET BAGLEY, Warden,

                                 :

        Respondent.

---

## REPORT AND RECOMMENDATIONS

---

Petitioner Bobby Sheppard was tried and convicted of aggravated murder with capital specifications and sentenced to death in Hamilton County, Ohio. He petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Sheppard advances the following fifteen grounds for relief in his Amended Petition (Doc. No. 77)[1]:

### Penalty Phase Issues

1.      The trial court violated Bobby Sheppard's Sixth, Eighth and Fourteenth Amendment rights to due process and an impartial jury for the penalty determination in a capital case by wrongly excusing for cause a prospective juror because of her views on remorse as a mitigating factor.

2.      The penalty determination in Bobby Sheppard's case was compromised by the weighing of a duplicative, and thus

---

[1]Here, and in the account of the issues raised in the state court proceedings that follows, the Court has, for ease of reading, converted issues presented in all capital letters to lower case with appropriate capitalization. All other corrections or changes to the text of the issues are indicated within each claim or ground for relief, assignment of error, or proposition of law.

1

invalid, capital specification in violation of his rights under the Eighth and Fourteenth Amendments.

3.    Bobby Sheppard's death sentence is constitutionally infirm because the trial judge excluded relevant mitigating evidence, in violation of the Eighth and Fourteenth Amendments.

4.    The trial court's penalty phase jury instructions produced a constitutionally infirm death sentence in Bobby Sheppard's case.

5.    Prosecutorial misconduct at the penalty phase denied Bobby Sheppard a fair trial on the issue of his sentence, in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

6.    The trial judge, the actual sentencer under Ohio law, violated Bobby Sheppard's rights under the Eighth and Fourteenth Amendments by weighing an invalid aggravating circumstances [sic] and by arbitrarily refusing to give weight or effect to the mitigating evidence of his mental illness.

7.    Bobby Sheppard's rights under the Sixth, Eighth and Fourteenth Amendments were violated by juror misconduct that occurred during the penalty phase.

**Guilt Phase Issues**

8.    The instruction on reasonable doubt given to Bobby Sheppard's jury allowed the state to convict him and obtain a death sentence based on a standard of proof below that required by the Due Process Clause.

9.    Bobby Sheppard was denied his right to the effective assistance of counsel at his capital trial in violation of the Sixth and Fourteenth Amendments.

10.   Bobby Sheppard was denied his right to the effective assistance of counsel on his direct appeals in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

**Systemic Issues Related to the Unconstitutional Application of the Death Penalty**

11.   Bobby Sheppard's convictions and sentences are [c]onstitutionally infirm because of systematic racial and

2

gender discrimination in selection of grand jury forepersons for Hamilton County capital case grand juries, in violation of his rights to equal protection, due process and a fair cross-section guaranteed by the Sixth and Fourteenth Amendments.

12.     The Ohio Supreme Court's review and affirmance of Bobby Sheppard's capital sentence was [c]onstitutionally infirm in violation of his rights under the Eighth and Fourteenth Amendments.

13.     The Ohio Supreme Court's arbitrary refusal to review life sentences imposed in similar cases as part of the statutorily mandated proportionality review denied Bobby Sheppard due process of law as guaranteed by the Fourteenth Amendment.

14.     Bobby Sheppard's death sentence is [c]onstitutionally infirm because Ohio'[s] capital punishment system operates in an arbitrary, capricious and discriminatory manner in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

15.     Bobby Sheppard's convictions and death sentence are invalid as a result of the cumulative effect of the [c]onstitutional errors in the composition of his grand jury, voir dire, jury instructions, exclusion of relevant mitigating evidence, prosecutorial misconduct, unreliable and arbitrary sentencing and invalid appellate reweighing in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

(Doc. No. 77.)

Some familiarity with the facts in Sheppard's case will facilitate an understanding of and provide context for the Court's description of the proceedings in the state courts and the analysis that follows.  Thus, the Court will set forth some of the relevant facts in as brief a fashion as practicable and will elaborate upon them as necessary in its discussion of the merits of Sheppard's asserted grounds for relief.

On August 19, 1994, at about 10:30 p.m., Dennis Willhide and Darren Cromwell, owner and employee respectively of the C & D Drive-Thru. were working at the store stocking products. Sheppard and his fourteen-year-old accomplice, Antwan (aka "Cory") Little entered the store with their faces covered.  Cromwell ran out the back of the drive-thru when he saw the two youths enter.

3

As Sheppard held Willhide at gunpoint, Little attempted to open the cash register, but to no avail. Sheppard directed Willhide to open the register, which he did, then Little took the cash from the drawer, pocketed it, and walked out of the drive-thru. Sheppard stayed behind just long enough to shoot Willhide in the back of the head, then he, too, ran out of the drive-thru.

Meanwhile, Cromwell had flagged down a taxi and explained that the drive-thru was being robbed. The taxi driver called his dispatcher and repeated the story, then took Cromwell back to the area of the drive-thru. As they approached in the taxi, Cromwell heard a single gunshot then saw the same two people who had caused him to flee running out of the drive-thru. He left the taxi and ran into the drive-thru searching for Willhide, finally finding him lying on the floor behind the register. Cromwell saw no signs of life and noticed what appeared to him to be a small bullet hole in the back of Willhide's head. Cromwell shooed the gathered customers and curiosity seekers out of the drive-thru, close the garage-style doors, called the police, then remained on the phone until police officers arrived.

Among those who responded to the call were Cincinnati officer Daniel Nickum and his canine partner Luke. Cromwell indicated where he had last seen the robbers running away from the drive-thru, and Luke picked up a human scent there that led to Sheppard's home a short distance away. Sheppard and Little were arrested. A search of Sheppard's residence yielded $114 in cash, part of it in a bag, and part lying loose in a closet; a dark blue hooded sweatshirt; and a black mask that was hidden under a bed.

Deangelo Graham, a fifteen-year-old friend of Sheppard's, testified at Sheppard's trial. He stated that Sheppard had first mentioned robbing the drive-thru and his intent to use a gun two or three months prior to the robbery and murder. Graham testified that two days before the crime, Sheppard had wondered out loud what it would be like to kill a person. On the day of the murder, Graham heard Sheppard talking about how easy it would be to rob the drive-thru and urging Little

to go rob it alone.  When Little refused, Sheppard and Little both left Little's house to commit the offenses.  Graham stated that Sheppard was wearing a dark blue hooded sweatshirt and Little had a white t-shirt over his face.  A little later, Graham watched as Sheppard and Little divided up the stolen money in Sheppard's bedroom.

The day after the robbery/murder, and after interviewing Graham, police recovered $390 in currency and a chrome-plated .22 caliber semi-automatic pistol containing six bullets from the shrubbery around Sheppard's next-door neighbor's house.  Later, a fragmented bullet was recovered from Willhide's brain.  At trial, Hamilton County Coroner's Laboratory firearms examiner Mike Lehnhoff testified that that bullet recovered from Willhide was fired from the .22 caliber weapon found on Sheppard's neighbor's property.

At the police station, Sheppard gave conflicting accounts of what had transpired at the drive-thru, but eventually stated that he had not meant to shoot Willhide, that he was not in his "right mind," and that he shot Willhide to avoid being identified.  Sheppard turned over to the police $89 he had hidden in his shoe, admitting it was proceeds from the robbery.

## STATE COURT PROCEEDINGS

Sheppard was tried and convicted of aggravated murder with death specifications in May of 1995.  After presentation of mitigation evidence, the jury determined that a sentence of death was appropriate, and the trial court subsequently imposed that sentence.  (Trial Court's Sentencing Opinion, Appendix to Return of Writ (hereinafter "Appendix"), Volume I at 357.)

Shortly after the trial concluded, Sheppard filed a motion for a new trial based on one juror's resort to consulting a friend of his to get a "boiled down" definition of paranoid schizophrenia, a disease with which Sheppard was diagnosed by his mitigation-phase psychological expert. (Appendix, Volume II at 1.)  In a hand-written entry, and without elaboration, the trial court denied

Sheppard's motion for a new trial.  (Appendix, Volume II at 58.)

In a consolidated appeal, Sheppard timely challenged his conviction and death sentence and the denial of his motion for a new trial to the Hamilton County Court of Appeals, raising the following twenty-six assignments of error:

1.  The trial court erred to the prejudice of Appellant by denying his post-trial motion to resentence him to life imprisonment and his motion for new trial, based upon juror misconduct at the penalty phase of the proceedings, in violation of Appellant's Sixth Amendment right to trial by impartial jury, of his Eighth Amendment right to be free from cruel and unusual punishments, and his Fourteenth Amendment right to due process of law, and their counterparts under the Ohio Constitution, Art. I. §§9, 10 and 16.

2.  The trial court erred to the prejudice of Appellant by denying his motion to strike portions of Juror Fox's testimony at the hearing with respect to his misconduct, leading the trial court to misapply the standard for determining whether prejudice has occurred.

3.  The trial court erred to the prejudice of Appellant by denying the admission of relevant, probative mitigating evidence offered by Appellant at the penalty phase of the proceedings, with the result that the jury's death verdict, and the trial court's ultimate sentencing decision, were made without consideration of all relevant mitigating evidence, with the result that the death sentence is not sufficiently reliable so as to satisfy the requirements of the Eighth Amendment and of due process, in violation of the Eighth and Fourteenth Amendments to the [United States] Constitution, and Art. I. Secs. 9 and 16, O[hio] Constitution.

4.  The trial court erred to the prejudice of Appellant's right to due process of law under the Fourteenth Amendment, and to be free from cruel and unusual punishment secured by the Eighth Amendment, and their corollaries in the Ohio Constitution, by imposing the sentence of death following a penalty trial in which the prosecution engaged in prejudicial, egregious misconduct in argument and otherwise during the penalty phase of the proceedings.

5.  The trial court erred to the prejudice of Appellant by failing to merge the capital specifications for purposes of sentencing,

6

both by merging them prior to the deliberations and instructing the jury that the specifications were merged, and by failng [sic] to merge the specifications during the trial court's own sentencing consideration, in violation of Appellant's rights under the Eighth Amendment, and to the fundamental fairness secured by the Due Process Clause of the Fourteenth Amendment, as well as their counterparts under the Ohio Constitution, Art. I §[§] 9 and 16.

6.    The trial court erred to the prejudice of Appellant by imposing the sentence of death in which an improper, duplicative aggravating circumstance was weighed, as well as the improper nonstatutory aggravating circumstance of the nature and circumstances of the offense, and valid, proven mitigation was improperly excluded and thus not weighed, with the result that the weighing process was impermissibly skewed, and the death sentence imposed was constitutionally unreliable, in violation of Appellant's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States, and Art. I, §[§] 9 and 16 of the Ohio Constitution.

7.    The trial court erred to the prejudice of Appellant in imposing the sentence of death in that the state failed to prove beyond a reasonable doubt that the aggravating circumstances of which Appellant was convicted outweighed the mitigating factors beyond a reasonable doubt, in violation of Appellant's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States, and Art. I Secs. 9 and 16 of the Ohio Constitution.

8.    The trial court erred to the prejudice of Appellant by overruling his objections to prejudicial prosecutorial argument at the guilt/innocence phase of the trial, thereby violating his right to a fundamentally fair trial under the due process clause of the Fourteenth Amendment, his privilege against self-incrimination secured by the Fifth Amendment, and, since the jury at that phase found Appellant guilty of capital specifications, his Eighth Amendment rights were violated, as well as his similar rights under the Ohio Constitution, Art. I §§ 9, 10 and 16.

9.    The trial court erred to the prejudice of Appellant's Fifth Amendment privilege against self-incrimination, and his right to due process under the Fourteenth Amendment, in overruling his motion to suppress his statement from evidence.

10. The trial court erred to the prejudice of Appellant's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and Art. I Sec. 14 of the Ohio Constitution in denying his motion to suppress evidence.

11. The trial court erred to the prejudice of Appellant by denying his motion to instruct the jury as to the lesser included offense of involuntary manslaughter, in violation of Appellant's right to due process of law, secured to him by the Fourteenth Amendment to the Constitution of the United States and Art. I Sec. 16 of the Ohio Constitution.

12. The judgment of conviction of aggravated murder is contrary to law and to the [D]ue [P]rocess [C]lause of the Fourteenth Amendment to the Constitution of the United States in that there was insufficient evidence adduced to establish each and every element of the offense beyond a reasonable doubt.

13. The judgment of conviction on the aggravated murder count is contrary to the manifest weight of the evidence.

14. The trial court erred in imposing the sentence of death, in violation of Appellant's Fourteenth Amendment right to due process of law, and his Eighth Amendment right to be free from cruel and unusual punishment, and their corollaries under the Ohio Constitution, Art. I. §§ 16 and 9, in imposing the death sentence following a verdict concurred in by a less-than-unanimous eleven of the jurors who were polled following the verdict for death.

15. The death sentence imposed herein was disproportionately severe when compared with sentences imposed for similar offenses, and hence violates the provisions of the Revised Code dealing with proportional imposition of the death sentence.

16. The death sentence visited upon Appellant violates the Eighth and Fourteenth Amendments in that it is disproportionately severe when compared to sentences in similar cases.

17. The trial court erred to the prejudice of Appellant in imposing the death sentence, for the Ohio death penalty statutes are unconstitutional, violating the Eighth Amendment proscription of cruel and unusual punishments, the Fourteenth Amendment guarantees to due process of law and to the equal protection of the laws, and also violating the concomitant

provisions of the Ohio Constitution.

A.    The death penalty is so totally without penological justification that it results in the gratuitous infliction of suffering, and that consequently, there is no rational state interest served by the ultimate sanction.

B.    Both locally, statewide and nationally, the death penalty is inflicted disproportionately upon those who kill whites as opposed to those who kill blacks, and even within Hamilton County, the death penalty is selectively imposed, rendering the penalty as applied in Hamilton County arbitrary and capricious on the one hand, and the product of racial discrimination on the other.

C.    The use of the same operative fact to first elevate what would be "ordinary" murder to aggravated murder, and then to capital, death-eligible aggravated murder permits the state (1) to obtain a death sentence upon less proof in a felony murder case than in a case involving prior calculation and design, although both crimes are ostensible [sic] equally culpable under the Revised Code, and (2) fails to narrow the capital class to those murderers for whom the death penalty is constitutionally appropriate.

D.    The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree the mitigating circumstances renders the Ohio capital [punishment] statutes quasi-mandatory and permits the execution of an offender even though the mitigating evidence falls just short of equipoise with the aggravating factors, with the result that the risk of putting someone to death when it is practically as likely as not that he deserves to live renders the Ohio capital process arbitrary and capricious, and, in the absence of a requirement that, before death may be imposed, aggravating factors must substantially outweigh mitigating factors, unconstitutional.

E.    The Ohio capital statutes are constitutionally infirm in that they do not permit the extension of mercy by the jury even though aggravating factors may only slightly outweigh mitigating factors.

F.    The provisions of Crim. R. 11(c)(3) permitting a trial court to dismiss specifications upon a guilty plea only under the nebulous and undefined concept "in the interests of justice" (1) needlessly encourages guilty pleas and the concomitant waiver of the right to jury, to compulsory process and to confrontation and (2) reintroduces the possibility that the death sentence will be imposed arbitrarily and capriciously.

G.    The Ohio capital sentencing scheme is unconstitutional because it provides no standards for sentencing or review at several significant stages of the process and consequently death sentences are imposed, and reviewed, without sufficient statutory guidance to juries, trial courts and reviewing courts to prevent the unconstitutional[ly] arbitrary and capricious infliction of the death penalty.

H.    The decision[s] of the Supreme Court of Ohio in State v. Gumm and State v[.] Wogenstahl [have] rendered the Ohio capital statutes unconstitutional in that they encourage, rather than prevent, the arbitrary and capricious imposition of the penalty of death.

18.    The trial court erred to the prejudice of Appellant's rights under the Sixth, Eighth and Fourteenth Amendments in unduly restricting the defense in conducting its voir dire of the jury.

19.    The trial court erred in imposing the death sentence because the jury that convicted the appellant and recommended the death sentence was improperly constituted in violation of Appellant's right to a fair and impartial jury under the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and under the Bill of Rights under the Ohio Constitution, in addition to constituting a violation of Ohio statutory law.

20.    The trial court erred to the prejudice of Appellant's rights under the Sixth, Eighth and Fourteenth (as to both due process and equal protection rights) Amendments in overruling Appellant's exceptions to the exclusion of certain African[-]American [prospective] jurors from Appellant's panel through exercise of the State's peremptory challenges.

21.    The trial court erred to the prejudice of Appellant's Sixth, Eight[h] and Fourteenth Amendment right to a fair and

10

impartial jury in overruling a defense challenge for cause of a prospective juror.

22. The trial court erred to the prejudice of Appellant by entering judgment of conviction after a trial in which Appellant was denied his right to the effective assistance of counsel, secured to him by the Sixth and Eighth Amendments to the Constitution of the United States, and by Art. I §§ 9 [and] 10 of the Ohio Constitution.

23. The trial court erred in entering judgment of conviction, and the death sentence, after a trial during which several errors were committed, and where the cumulative effect of such errors deprived the accused of fair trials of both guilt/innocence and penalty issues.

24. The trial court erred to the prejudice of Appellant by referring to the jury's life or death decision as a "recommendation," thus diminishing the jury's sense of responsibility for their decision, in violation of Appellant's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States, and Art. I. Sec. 9 of the Ohio Constitution.

25. The trial court erred to the prejudice of Appellant by restricting him to [six] peremptory challenges, in violation of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Art. I. Sec[s.] 5, 9 and 16 of the Ohio Constitution.

26. The trial court erred in denying defense requests for instructions at the penalty phase, and in denying defense objections to the penalty phase instructions, in violation of Appellant's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States, and their corollaries under the Ohio Constitution, Art. I. Secs. 9 and 16.

(Appendix, Volume IV at 70-191.)

The court of appeals found each of Sheppard's assignments of error meritless, save for the fourteenth, which it found moot after the parties stipulated that the twelve jurors were unanimous in their recommendation of death. *State v. Sheppard*, No. B-94-05527 (Ohio App. 1st Dist. May 30, 1995). On appeal to the Ohio Supreme Court, Sheppard advanced the following twenty-seven

11

propositions of law:

1.  Where a juror, during the penalty phase of a capital trial in which the defense offers expert testimony that the defendant suffers from a mental disease or defect, contacts a nontestifying psychologist outside of the court proceedings to acquire information with respect to the defense expert's diagnosis of the defendant, and thereafter votes with other jurors to impose the death sentence on the defendant, the defendant's constitutional rights to due process, to a fair and impartial jury and to be free from cruel and unusual punishment have been violated, and he is entitled to be resentenced to life imprisonment.

2.  Evidence in the form of affidavits of a non-testifying psychologist contacted by a juror during the penalty phase of a capital prosecution is not evidence *aliunde* such as to permit the trial court, considering a motion for new trial and/or to resentence the defendant, to inquire as to the effect of such contact upon the deliberations of the errant juror, or any other juror.

3.  At the penalty phase of an aggravated murder prosecution the trial court is required to extend considerable latitude to the defense in the admission of evidence with respect to mitigation of the death penalty, and where the trial court excludes relevant, probative evidence of mitigation, by granting an objection which was never made, and which was expressly disavowed by the prosecutor, and which evidence is proffered into the record by the defense, the right of the accused to due process of law under the Fourteenth Amendment, and to be free form cruel and unusual punishment under the Eighth Amendment, and under Art. I. Secs. 9 and 16, O[hio] Const[itutuion], have been violated, the death sentence imposed is unlawful and unconstitutional, and must be reversed, and the accused resentenced to life imprisonment.

4.  Egregious misconduct by the prosecutor in the penalty phase of capital proceedings requires reversal, and where the prosecutor's final argument for death argues nonstatutory aggravating factors, argues "facts["] outside the evidence, attacks the relevance of evidence admitted by the court, contains inflammatory remarks and invective against the accused and his counsel, a death sentence based on a jury verdict following such arguments violates due process and the Eighth Amendment of the United States Constitution, and

their counterparts in the Ohio Constitution.

5.    Specifications under R.C. 2929.04(A)(3) and (A)(7) are duplicative, and must be merged prior to sentencing proceedings, upon motion of the accused. The failure of the trial court, *sua sponte*, to merge such specifications constitutes a violation of the rights of the accused under the United States Constitution and the Ohio Constitution as well where the death sentence is imposed thereafter.

6.    The power conferred by R.C. 2929.05 upon appellate courts to review aggravating and mitigating factors, and to determine the appropriateness of a given death sentence, is subordinate to the right of the accused to trial by jury under Art. I §§ 5 and 10 of the Ohio Constitution.

7.    Unless it can fairly be held beyond a reasonable doubt that penalty phase error in a capital trial had no effect upon the jury's sentencing verdict, appellate courts are rendered powerless by the right to trial by jury set forth in the Ohio Constitution, Art. 1 §§ 5 and 10, from purporting to "cure" the error and to affirm the death sentence; any such affirmance violates the right of the accused to trial by jury, and the death sentence must be vacated and set aside.

8.    The affirmance of a death sentence by an appellate court which has reweighed the aggravating and mitigating factors absent duplicative and improper aggravating circumstances originally considered and weighed by the jury in recommending the death sentence, constitutes a violation of the right of the accused under the Eighth Amendment to have the death sentence imposed only after the proper procedures have been followed under the state scheme for imposing the death sentence, and also constitutes a violation of the right to due process of law in that such appellate reweighing abrogates the liberty interest created by state law to jury participation in the capital sentencing process.

9.    It is impermissible for a sentencer in a capital case to weigh the nature and circumstances of the offense as an aggravating circumstance, and to weigh as aggravating an aggravating circumstance which the law requires to be merged with another such circumstance for sentencing purposes, and, where a trial court considers, and weighs, both such improper aggravators, the death sentence imposed violates the offender's constitutional rights under the Eighth and Fourteenth Amendments to the U[nited] S[tates] Constitution,

and Art. I. Secs. 9 and 16 of the Ohio Constitution, and must be reversed.

10.     Where the state fails to establish beyond a reasonable doubt that aggravation outweighs mitigation beyond a reasonable doubt, the death penalty is absolutely precluded, and the imposition of the death sentence under such circumstances constitutes a violation of the offender's constitutional right to be free of cruel and unusual punishment and also his right to due process of law.

11.     Egregious prosecutorial misconduct during the guilt phase of a capital prosecution prejudices the due process right of the accused to a fair trial under the Fourteenth Amendment to the U[nited] S[tates] Constitution, and Art. I. Sec. 16 of the Ohio Constitution, requiring reversal of his conviction and a new trial.

12.     The admission of involuntary, incriminating statements, or those given without a valid waiver of the suspect's privilege against self-incrimination, violates that privilege, guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and Art. I., § 10 of the Ohio Constitution.

13.     Where police enter a residence prior to the issuance of a warrant, and where the warrant does not describe the premises as the residence of the accused, who resides at that residence, nor does it connect the accused with the offense, the search and resulting seizure violate the rights of the accused under the Fourth and Fourteenth Amendment to the United States Constitution, and Art. I. Sec. 4 of the Ohio Constitution, and a motion to suppress the evidence seized therefrom should be granted.

14.     Involuntary manslaughter is always a lesser included offense of aggravated murder, and where the accused has denied a purposeful killing, he is entitled by due process to an instruction on the lesser offense, and denial of a proper request for an instruction on the lesser offense violates the Due Process Clause of the U[nited] S[tates] and Ohio Constitutions, rendering the conviction of capital murder unconstitutional, and the death sentence void.

15.     The Due Process clause of the Fourteenth Amendment to the Constitution of the United States, and the Ohio Constitution guarantee to the due course of law require the prosecution prove each and every element of a criminal offense beyond a

reasonable doubt, and in the absence of evidence sufficient to persuade a rational factfinder of each such element to that degree, a conviction is based upon insufficient evidence, offends due process, and must be reversed.

16.     A conviction – and a death sentence – must be reversed, and a new trial granted, where the conviction is contrary to the manifest weight of the evidence.

17.     The Ohio capital [punishment] statutes [provide], for purposes of proportionality review, [that] death sentences must be compared with all other cases within the jurisdiction in which the death sentence was imposed, as well as those capital cases in which it was not imposed.

18.     The Ohio death penalty statutes are unconstitutional, violating the Eighth Amendment proscription of cruel and unusual punishments, the Fourteenth Amendment guarantees to due process of law and to the equal protection of the laws, and also violating the concomitant provisions of the Ohio Constitution.

   A.     The death penalty is so totally without penological justification that it results in the gratuitous infliction of suffering, and that consequently, there is no rational state interest served by the ultimate sanction.

   B.     Both locally, statewide and nationally [sic], the death penalty is inflicted disproportionately upon those who kill whites as opposed to those who kill blacks, and even within Hamilton County, the death penalty is selectively imposed, rendering the penalty as applied in Hamilton County arbitrary and capricious on the one hand, and the product of racial discrimination on the other.

   C.     The use of the same operative fact to first elevate what would be "ordinary" murder to aggravated murder, and then to capital, death-eligible aggravated murder permits the state (1) to obtain a death sentence upon less proof in a felony murder case than in a case involving prior calculation and design, although both crimes are ostensible [sic] equally culpable under the Revised Code, and (2) fails to narrow the capital class to those murderers for whom the death penalty is constitutionally appropriate.

D.  The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree the mitigating circumstances renders the Ohio capital [punishment] statutes quasi-mandatory and permits the execution of an offender even though the mitigating evidence falls just short of equipoise with the aggravating factors, with the result that the risk of putting someone to death when it is practically as likely as not that he deserves to live renders the Ohio capital process arbitrary and capricious, and, in the absence of a requirement that, before death may be imposed, aggravating factors must substantially outweigh mitigating factors, unconstitutional.

E.  The Ohio capital [punishment] statutes are constitutional infirm in that they do not permit the extension of mercy by the jury even though aggravating factors may only slightly outweigh mitigating factors.

F.  The provisions of Crim. R. 11(c)(3) permitting a trial court to dismiss specifications upon a guilty plea only under the nebulous and undefined concept "in the interests of justice" (1) needlessly encourages guilty pleas and the concomitant waiver of the right to jury, to compulsory process and to confrontation[,] and (2) reintroduces the possibility that the death sentence will be imposed arbitrarily and capriciously.

G.  The Ohio capital sentencing scheme is unconstitutional because it provides no standards for sentencing or review at several significant stages of the process and consequently death sentences are imposed, and reviewed, without sufficient statutory guidance to juries, trial courts and reviewing courts to prevent the unconstitutional arbitrary and capricious infliction of the death penalty.

H.  The decision of the Supreme Court of Ohio in State v. Gumm and State v[.] Wogenstahl has rendered the Ohio capital statutes unconstitutional in that they encourage, rather than prevent, the arbitrary and capricious imposition of the penalty of death.

19.  Prospective jurors who believe that the death penalty should

always, or "automatically" be imposed if the accused is convicted of capital murder must be excluded from the jury for cause, and the defense is entitled to explore on voir dire examination the attitudes of prospective jurors pertaining to the automatic imposition of the death sentence. The presence of even one such juror on the panel renders the death sentence unconstitutional under the Sixth, Eighth and Fourteenth Amendments to the U[nited] S[tates] Constitution, and Art. I. Secs[.] 9, 10 and 16 [of the Ohio Constitution].

20.    A death sentence recommended by a jury from service on which one or more veniremen were excused because of their views concerning capital punishment cannot stand unless it affirmatively appears on the record that each such veniremen [sic] excused for cause unequivocally indicates that his scruples against capital punishment will automatically prevent him from recommending the death penalty and/or that such views will render him unable to return a verdict of guilty no matter what the evidence, and that he is prevented by his scruples from following the instructions of the court and considering fairly the imposition of the death sentence.

21.    It is constitutionally impermissible under the equal protection and due process clauses of the Fourteenth Amendment to the U[nited] S[tates] Constitution for the state, in a capital prosecution, to exclude from the jury prospective jurors solely on the basis of their race.

22.    Where a prospective juror in a capital case lived in eh [sic] neighborhood where the murder occurred, knew the victim and had seen the accused around the area, and had coached football at a high school where the accused had played football, there is an unacceptable risk that such juror would bring to his deliberations information not brought out in the evidence.

23.    Where the defense fails to move to merge capital specifications which ought to be merged, such failure constitutes constitutionally ineffective assistance of counsel, and, where the accused is sentenced to death in reliance upon an improper aggravating circumstance as a result, the accused's Eighth Amendment rights are violated as well as his Sixth Amendment right to effective assistance of counsel.

24.    Where, during a criminal trial, there are multiple instances of error, and the cumulative effect of such errors deprives the

accused of a fair trial and undermines the reliability of the conviction and the sentence of death imposed upon a jury verdict, the rights of the accused to due process and to be free from cruel and unusual punishment, under the Fourteenth and Eighth Amendments, respectively, of the United States Constitution, and their corollaries in the Ohio Constitution, have been violated, requiring reversal.

25.    It is impermissible under the Eighth and Fourteenth Amendments to the U[nited] S[tates] Constitution and Art. I. Sec. 9 of the Ohio Constitution for the trial court to instruct the jury that their verdict is merely a recommendation, as such an instruction impermissibly attenuates the jury's sense of responsibility for its decision, and a death sentence imposed following such in instruction is constitutionally infirm.

26.    The increased need for reliability required in capital cases by the Ohio and federal constitutions mandates the granting to the defense more than six peremptory challenges.

27.    Where the trial court's instructions at the penalty phase of a capital prosecution are prejudicially erroneous, the death sentence imposed based upon the jury's death verdict violates the rights of the accused under the Eighth and Fourteenth Amendments to the U[nited] S[tates] Constitution, and their corollaries under the Ohio Constitution, and must be reversed, and the offender sentenced to life imprisonment.

(Appendix, Volume VI at 18-144.)

The Ohio Supreme Court affirmed the court of appeals, and denied Sheppard's subsequent request for reconsideration.  *State v. Sheppard*, 84 Ohio St. 3d 230, 703 N.E.2d 286 (1998).  The United States Supreme Court later denied Sheppard's petition for a writ of certiorari.  *Sheppard v. Ohio*, 528 U.S. 1168 (2000).

On January 28, 1997, Sheppard filed a petition for post-conviction relief in the trial court. (Appendix, Volume II at 124A.)  Throughout the remainder of 1997 and the first half of 1998, Sheppard filed numerous amendments to his post-conviction petition.  *See State v. Sheppard*, No. C-980569, 1999 WL 162457 at *1 (Ohio App. 1st Dist. March 26, 1999).  The last of the amended

18

petitions was dismissed at the State's request because Sheppard filed it after the State filed its

responsive pleading, and did not request leave of court to do so as required by Ohio Rev. Code §

2953.21(F).    Consequently, the court addressed Sheppard's third amended petition for post-

conviction relief, in which Sheppard advanced the following five claims for relief:

> 1.    Petitioner's convictions and sentence are void or voidable
> because the Court, in violation of the Fourteenth
> [A]mendment to the United States Constitution and Section
> 16, Article I of the Ohio Constitution failed to maintain a
> complete record of all proceedings.
>
> 2.    Petitioner's convictions and sentence are void or voidable
> because the Court, in violation of the Fifth, Sixth and
> Fourteenth Amendments to the United States Constitution and
> Sections 5, 10 and 16, Article I of the Ohio Constitution
> failed to conduct a public trial by jury for the accused.
>
> 3.    Petitioner's convictions and sentence are void or voidable
> because the Court, in violation of the Fifth, Sixth and
> Fourteenth Amendments to the United States Constitution and
> Sections 5, 10 and 16, Article I of the Ohio Constitution
> failed to conduct a public trial by jury for the accused.  [Sic]
>
> 4.    Petitioner's convictions and sentence are void or voidable
> because the [p]etitioner was denied effective assistance of
> counsel, in violation of the Fifth, Sixth, and Fourteenth
> Amendments to the United States Constitution and Sections
> 5, 10 and 16, Article I of the Ohio Constitution.
>
> 5.    The warden having custody of Petitioner Sheppard has not
> given notice to a judge of the court of common pleas of the
> county in which the [p]etitioner is confined that Petitioner
> Sheppard appears to be insane.

(Appendix, Volume II at 68-74.)    The trial court rejected the first four claims on *res judicata*

grounds.  (Appendix, Volume II at 138-41.)    The court found the fifth ground for relief did not raise

an issue involving the denial of a constitutional right at trial, and that it was consequently not

cognizable in post-conviction.  *Id*. at 141-42.

Sheppard appealed the trial court's denial of his petition for post-conviction relief to the

Hamilton County Court of Appeals. There, Sheppard asserted a single assignment of error, arguing that the trial court had erred in dismissing the amended petition he had filed after the State had filed its responsive pleading, and before Sheppard had been afforded an opportunity to respond to the State's motion to dismiss the petition. (Appendix, Volume VII at 4-10.) Sheppard argued the court's error violated his right to due process of law as guaranteed under both the United States and Ohio Constitutions. *Id.* The court of appeals concluded that any error was harmless because Sheppard's claims were either barred by the doctrine of *res judicata* or not cognizable in post-conviction. *Id.* It further found that the trial court had not abused its discretion in dismissing the fourth amended petition since Sheppard had filed three previous amendments to his original petition. *Id.* Sheppard's subsequent motion for reconsideration was denied by the court of appeals. (Appendix, Volume VII at 91, 97.) Next, Sheppard appealed the denial of his petition for post-conviction relief to the Ohio Supreme Court, but that court declined jurisdiction. (Appendix, Volume VI at 308.)

On March 9, 2000, Sheppard filed an application for reopening pursuant to Ohio R. App. P. 26(B), alleging his appellate counsel were ineffective during his direct appeal for not raising the following seven assignments of error:

> 1.   The trial court committed constitutional error in violation of the Eight and Fourteenth Amendments by excluding relevant mitigating evidence from the jury's consideration at the penalty phase of Mr. Sheppard's capital trial.
>
> 2.   The trial court's instructions on reasonable doubt denied Mr. Sheppard his right to due process under the Fourteenth Amendment.
>
> 3.   The trial court erred to Mr. Sheppard's prejudice at the penalty phase by re-admitting all trial phase evidence; by instructing jurors to consider the "nature and circumstances of the aggravating circumstances"; and by instructing jurors that their verdict had to be unanimous while refusing a defense request to instruct the jurors that if they could not

unanimously agree on the death sentence they should proceed
to consider a life sentence.

4.  The trial judge's penalty phase comments demonstrate that he
could not fairly consider Mr. Sheppard's mitigating evidence
of mental illness.

5.  The actions and omissions of Mr. Sheppard's trial attorneys
denied him the right to effective assistance of counsel at his
capital trial.

6.  The selection of grand jury forepersons for panels returning
capital indictments in Hamilton County violates equal
protection, due process and fair cross-section guarantees
under the Sixth and Fourteenth Amendments.

7.  Flagrant and sustained prosecutorial misconduct at the
penalty phase denied Mr. Sheppard his right to a
fundamentally fair trial as guaranteed by the Due Process
Clause of the Fourteenth Amendment.

(Appendix, Volume V at 75-85.)  The court of appeals denied Sheppard's motion concluding that

he failed to show "good cause" for filing it more than ninety days after the journalization of the court

of appeals' opinion on direct appeal.  *State v. Sheppard*, Nos. C-950402, C-950744 (Ohio App. 1st

Dist. Oct. 2, 2000).  Sheppard took an appeal to the Ohio Supreme Court advancing the following

three propositions of law:

1.  An appellate court commits constitutional error when it
denies an application for reopening where the appellant has
shown good cause for an untimely filing.

2.  The failure to brief meritorious issues that could result in
reversal of a defendant's capital convictions and/or death
sentence under state of federal law and the failure to preserve
these issues for subsequent review constitutes a denial of a
capital defendant's right to the effective assistance of counsel
on direct appeal as guaranteed by the Sixth and Fourteenth
Amendments.

A.  The trial court violated [Sheppard's] Eighth and
Fourteenth Amendment rights by excluding relevant
mitigating evidence form the jury's consideration at
the penalty phase of Mr. Sheppard's capital trial.

21

B.      The trial judge violated [Sheppard's] rights under the Eighth and Fourteenth Amendments because the judge unfairly and arbitrarily refused to consider the mitigating evidence of mental illness.

C.      Flagrant and sustained prosecutorial misconduct at the penalty phase denied [Sheppard] his right to a fundamentally fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment.

D.      The trial court denied [Sheppard's] rights under the Eighth and Fourteenth Amendments at the penalty phase by re-admitting all trial phase evidence; by instructing jurors to consider the "nature and circumstances of the aggravating circumstances"; and by instructing jurors that their verdict had to be unanimous while refusing a defense request to instruct jurors that if they could not unanimously agree on the death sentence they should proceed to consider a life sentence.

E.      The trial court's instructions on reasonable doubt denied [Sheppard] his right to Due Process under the Fourteenth Amendment.

F.      The actions and omissions of Bobby Sheppard's trial attorneys denied him the right to effective assistance of counsel at his capital trial.

G.      The judicial selection of grand jury forepersons for panels returning capital indictments in Hamilton County has resulted in systematic racial and gender discrimination in violation of Bobby Sheppard's rights under the equal protection, due process and fair cross-section guarantees of the Sixth and Fourteenth Amendments.

H.      This Court's failure to merge the duplicative aggravating circumstances in [Sheppard's] case under R.C. §§ 2929.04(A)(3), (A)(7) and consequent reweighing of an invalid, duplicative aggravating circumstance.

I.      This Court's purported "curing" of the egregious sentencing phase prosecutorial misconduct by independent sentence assessment.

22

3.     The failure of appellate judges to disqualify themselves from an appeal where their impartiality could reasonably be questioned denies the defendant-appellant his right to due process of law guaranteed by the Fourteenth Amendment.

(Supplemental Appendix, Doc. No. 37 at 8-41.)  The Ohio Supreme Court affirmed the court of appeals, but for different reasons.  *State v. Sheppard*, 91 Ohio St. 3d 329, 744 N.E.2d 770 (2001). Rather than rely on the state procedural requirement that a 26(B) motion must be filed within ninety days of the journalization of the court of appeals' direct appeal opinion unless good cause is shown for a later filing, the supreme court reviewed on the merits Sheppard's allegations that his appellate counsel were ineffective and concluded that Sheppard had failed to raise a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal before the court of appeals as required by Ohio. R. App. P. 26(B)(5).

In the meantime, Sheppard also filed a motion for relief from the judgment denying his first petition for post-conviction relief pursuant to Ohio R. Civ. P. 60(B)(5). (Appendix, Volume II at 148-65.)  Sheppard contended that his first post-conviction counsel was ineffective, and that he was deprived of his state statutory right to effective representation without due process of law. In his motion, Sheppard argued that due to his post-conviction counsel's ineffectiveness, claims concerning the systematic discrimination in the selection of grand jury forepersons, prosecutorial misconduct, juror misconduct, and ineffective assistance of trial counsel had not been presented to the trial court in Sheppard's first petition for post-conviction relief.  The trial court overruled Sheppard's 60(B) motion with the following language:

This matter is before the Court on [D]efendant's Civ.R. 60(B) motion, and the state's memorandum in opposition.  Defendant's motion is overruled for the following reasons, each of which is independent of the others, and sufficient on its own to overrule [D]efendant's motion.

(1)     Civil R. 60(B) motions cannot be filed in an action under R.C. 2953.21.  At best, [D]efendant's pleading is a successive

petition to vacate, which does not satisfy the requirements of R.C. 2953.23 and is therefore denied.  State v. Hill, 129 Ohio App.3d 658 (1998).

(2)    Claims of ineffective assistance of post-conviction counsel are barred by R.C. 2953.21(I).  State v. Scudder, 131 Ohio App.3d 470 (1998).

(3)    Defendant's motion is not timely filed.

For each of the above independent reasons, [D]efendant's motion is overruled.

(Appendix, Volume III at 27.)  Sheppard appealed the trial court's decision to the Hamilton County Court of Appeals, which affirmed the trial court, stating that "[p]ermitting a claim of ineffective assistance of post[-]conviction counsel to proceed under Civ.R. 60(B) would conflict with the prohibition of such a claim under the post[-]conviction statutes."  (Supplemental Appendix, Doc. No. 38 at 74.)  The Ohio Supreme Court declined jurisdiction over Sheppard's appeal from the court of appeals' judgment.  (Supplemental Appendix, Doc. No. 38 at 272.)

Sheppard filed a second or successive post-conviction relief petition on May 23, 2000, advancing the following claims for relief:

1.    Petitioner Sheppard's convictions and sentences are void and/or voidable because the selection of grand jury foreperson [sic] in Ohio and Hamilton County violates due process, fair cross-section, and equal protection guarantees.

2.    Petitioner Sheppard's convictions and sentences are void or voidable because prosecutorial misconduct at the penalty phase denied his right [sic] to a fundamentally fair sentencing determination at his capital trial in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

3.    Petitioner Sheppard's convictions and sentences are void or voidable because of juror misconduct at the penalty phase of his trial in violation of the Sixth, Eighth and Fourteenth Amendments.

4.    Petitioner Sheppard's convictions and sentences are void or

> voidable because he was denied the effective assistance of counsel at his capital trial in violation of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(Appendix, Volume III at 28-59, 153-84.)  The trial court's entry declining to entertain Sheppard's successive post-conviction petition reads in relevant part as follows:

> This matter is before the Court on the defendant's successive petition to vacate filed May 23, 2000, and amended on June 20, 2000, and the State's responsive pleading.  The Court finds that none of the five [sic] claims raised by [P]etitioner satisfy the provisions of R.C. 2953.23(A)(1).  The Court also finds that the claim for relief designated as the First Ground for Relief fails to satisfy the requirements of R.C. 2953.23(A)(2). State v. Garner, C-990659 (1st Dist. C/A, 4-28-00), unreported.  Because of the findings regarding R.C. 2953.23(A)(1), the Court need not consider R.C. 2953.23(A)(2), except as specifically noted regarding the First Ground for Relief.  Based on the above finding, the Court will not consider the successive petition to vacate.

(Supplemental Appendix, Doc. No. 39 at 3.)  Sheppard appealed to the Hamilton County Court of appeals, advancing seven assignments of error:

> 1.    The trial court erred by failing to declare that O.R.C. § 2953.23(A) is unconstitutional
>
> 2.    The trial court erred by summarily dismissing Petitioner's second or successive post[-]conviction petition.
>
> 3.    The trial court erred by denying Petitioner's First Ground for Relief.
>
> 4.    The trial court erred by denying Petitioner's Second Ground for Relief.
>
> 5.    The trial court erred by denying Petitioner's Third Ground for Relief.
>
> 6.    The trial court erred by denying Petitioner's Fourth Ground for Relief.
>
> 7.    The trial court erred by denying Appellant Sheppard's motion for recusal.

25

(Supplemental Appendix, Doc. No. 39 at 5-25.)  The court of appeals denied Sheppard the relief requested on April 6, 2001.  (Supplemental Appendix, Doc. No. 39 at 66-71.)  The court noted that the claims advanced in Sheppard's second petition could have been raised in his first, and that Sheppard's ineffective assistance of his previous post-conviction counsel was not a claim cognizable in a second or successive post-conviction petition.  *Id*. at 69.

Sheppard carried his appeal from the denial of his second or successive request for post-conviction relief to the Ohio Supreme Court, advancing the following five propositions of law:

1.  A post[-]conviction petitioner is "unavoidably prevented from discovery of facts" as set forth in R.C. 2953.23(A) when the performance of his counsel for the initial post[-]conviction petition is so grossly deficient as to constitute the constructive denial of counsel.

2.  It is error for the trial court to dismiss a post-conviction petition that presents unrebutted evidence of nearly 20 years of systematic racial and gender discrimination in selection of grand jury forepersons for Hamilton County capital cases.

3.  Egregious prosecutorial misconduct at th penalty phase denies a capital defendant his Due Process Clause right to a fundamentally fair trial guaranteed by the Fourteenth Amendment.

4.  The misconduct of a juror in seeking extraneous information about the central issue at the penalty phase of a capital trial is prejudicial error requiring reversal under the Sixth and Fourteenth Amendment of the U[nited] S[tates] Constitution.

5.  Unreasonable errors and omissions of trial counsel deny a capital defendant the right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the U[nited] S[tates] Constitution.

(Supplemental Appendix, Doc. No. 29 at 80-97.)  The Ohio Supreme Court declined jurisdiction.

*State v.Sheppard*, 92 Ohio St. 3d 1445, 751 N.E.2d 483 (2001).

## ANALYSIS

Since Sheppard filed his petition for a writ of habeas corpus well after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter "AEDPA"), the amendments to 28 U.S.C. § 2254 embodied in that Act are applicable to his petition.  (*See* Petition, Doc. No. 4.)  *Mason v. Mitchell*, 320 F. 3d 604, 613 (6th Cir. 2003).   The standard of review under 28 U.S.C. § 2254 as amended by the AEDPA is as follows:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

A state court's decision is contrary to the Supreme Court's clearly-established precedent if (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case."  *Williams*, 529 U.S. at 407-08.  For a federal court to find a state

court's application of Supreme Court precedent unreasonable, the state court's decision must have

been more than incorrect or erroneous; it must have been "objectively unreasonable." *Wiggins v.*

*Smith*, 539 U.S. 510, ___(2003); *Williams*, 529 U.S. at 407, 409.

In *Jamison v. Collins*, 100 F. Supp. 2d 647 (S.D. Ohio 2000), Judge Arthur Spiegel of this

Court noted that:

> Principles of comity necessary to a federal system narrow a federal court's review of a petition for a writ of habeas corpus brought by a state prisoner. *See Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court explains that "[u]nder our federal system, the federal and the state 'courts [are] equally bound to guard and protect rights secured by the [C]onstitution.'" *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (quoting *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)); *see Coleman*, 501 U.S. at 731, 111 S.Ct. 2546 (quoting same). Thus, to ensure the states an opportunity to protect these rights, the doctrine of procedural default requires that the state courts retain "the first opportunity to address and correct alleged violations of state prisoner's [sic] rights." *Coleman*, 501 U.S. at 731, 111 S.Ct. 2546. The doctrine of procedural default provides that, if a state court previously dismisses a state prisoner's federal claim on the grounds that the prisoner failed to comply with a state procedural rule, then a federal court ordinarily cannot consider the merits of that federal claim. *Id*. at 729-730, 111 S.Ct. 2546.
>
> This procedural default doctrine bars federal habeas review of a state court ruling only if the following requirements have been satisfied:
>
> (1)     the petitioner actually violated an applicable state procedural rule;
>
> (2)     the procedural violation provides an "adequate and independent state ground" for denying the petitioner's federal constitutional claim; and
>
> (3)     the state court actually enforced the procedural violation; that is, the highest state court to rule on the claim clearly and unambiguously relied upon the procedural violation as the reason for rejecting the claim.
>
> *See generally Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. However, the petitioner can excuse the procedural default by demonstrating either:

(d)    that there was "cause" for the procedural default and actual prejudice by the alleged constitutional error; or

(e)    that the case falls within the category of cases considered [a] "fundamental miscarriage of justice."

See *id*. . . .; *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Harris v. Reed*, 489 U.S. 255, 260-62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

For the cause and prejudice standard, the petitioner must provide a "substantial" reason that is "external" to the petitioner as the cause for the procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). In addition, the petitioner must show that the alleged trial errors "not merely . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

To demonstrate a "fundamental miscarriage of justice,' a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 496, 106 S.Ct. 2639. This exception applies only in "extraordinary cases." *Id*. The standard requires a petitioner to show that he is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To establish a probability of innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*.

*Jamison*, 100 F.Supp.2d at 669-70. These principles guide the Court in its discussion of Sheppard's asserted grounds for relief.

**First Ground for Relief**

In his first ground for relief, Sheppard argues that a prospective juror was improperly excused for cause after she stated an accused's repentance or remorse would be an important factor for her in determining the appropriate sentence. Respondent makes no claim that Sheppard has

procedurally defaulted this claim, and contends instead that it is without merit.

The United States Supreme Court has articulated a defendant's right to an impartial jury as it relates to prospective jurors' views on the death penalty as follows:

> In *Witherspoon* [*v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d. 776 (1968)], this Court held that a capital defendant's right, under the Sixth and Fourteenth Amendments, to an impartial jury prohibited the exclusion of venire members "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S., at 522 . . . . It reasoned that the exclusion of venire members must be limited to those who were "irrevocably committed . . . to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings, "and to those whose views would prevent them from making an impartial decision on the question of guilt. *Id.*, at 522, n. 21 . . . . We have reexamined the *Witherspoon* rule on several occasions, one of them being *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), where we clarified the standard for determining whether prospective jurors may be excluded for cause based on their views on capital punishment. We there held that the relevant inquiry is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* at 424, . . . quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980).

*Gray v. Mississippi*, 481 U.S. 648, 657-58 (1987). In addition, the Supreme Court has long rejected the notion that the erroneous dismissal of a prospective juror on account of her views on the death penalty is amenable to harmless error analysis. *Id.* at 668, *citing Chapman v. California*, 386 U.S. 18, 23 (1967). "The nature of the jury selection process defies any attempt to establish that an erroneous *Witherspoon-Witt* exclusion of a juror is harmless." *Gray*, 481 U.S. at 665.

In presenting the excusal of Prospective Juror 23,[2] (hereinafter "PJ-23") as his nineteenth assignment of error on direct appeal to the court of appeals, and his twentieth proposition of law on direct appeal to the Ohio Supreme Court, Sheppard did so on the ground that the dismissal of PJ-23

---

[2] In the state courts, Sheppard alleged error in the dismissal of four prospective jurors. Here, however, he challenges only PJ-23's excusal.

and other prospective jurors was contrary to Ohio constitutional and statutory law, which codified the holding of *Witherspoon*, *supra*.[3]  Sheppard acknowledged the United States Supreme Court's modification of *Witherspoon* in *Witt*, but argued that Ohio's constitution and statutory law provided greater protection against dismissal of a prospective juror who might have general objections to the death penalty than the federal constitution provided after *Witt*.  Sheppard vigorously argued that *Witt* was irrelevant to his claim, and repeatedly stated that it was state law rather than federal law upon which he rested his claim.  By so arguing, Sheppard pointedly de-federalized his claim.  The state court of appeals concluded that PJ-23's dismissal comported with the state statute, and although the Ohio Supreme Court's opinion included a heading entitled "Jury Selection Issues," it never addressed Sheppard's claim respecting the dismissal of prospective jurors based on their opposition to the death penalty.  *State v. Sheppard*, 84 Ohio St. 3d 230, 234-35, 703 N.E.2d 286 (1998).

Here, Sheppard argues that his federal constitutional rights, as articulated by the United States Supreme Court in *Witt*, were violated by the dismissal of PJ-23.  Since Sheppard never raised this *federal* claim in the state courts, it is procedurally defaulted.  The Court acknowledges that while unusual, it is not inappropriate for a procedural default to be raised *sua sponte*.  *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).  *See also Trest v. Cain*, 522 U.S. 87, 89 (1997) (noting a circuit court is not obliged to raise a procedural default *sua sponte*); *United States v. Willis*, 273 F.3d 592, 596-97 (5th Cir. 2001) (acknowledging federal courts' authority to invoke a procedural default *sua sponte*).  It may not be desirable for the court to raise a procedural default in all or even most

---

[3] Ohio Rev. Code § 2945.25(C) provides that "A person called as a juror in a criminal case may be challenged for the following causes: . . . In the trial of a capital offense, that he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case.  A prospective juror's conscientious or religious opposition to the death penalty in and of itself is not grounds for a challenge for cause.  All parties shall be given wide latitude in voir dire questioning in this regard."  The statute has been unchanged since 1981.

cases where it has been overlooked by the State. In situations such as this, however, where the petitioner explicitly argued in the state courts that state law provided him with more protection that the corresponding federal law, and where he rested his state claims exclusively on state law, it is particularly appropriate for the Court to acknowledge the procedural default.

Even if Sheppard had properly preserved his claim for review in habeas corpus, it is unavailing. Although the prosecutor and judge interrupted PJ-23 and prevented her from fully answering some of the questions they themselves had asked her, she stated that she could not impose the death penalty on someone who was repentant, and conversely, could only impose it on someone who was not sorry for what he had done. (Trial Tr. at 327-31.) Given the deference the trial judge's credibility determinations are due, this Court could not say that the judge's decision to excuse PJ-23 for cause "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Moreover, the Ohio Supreme Court has very recently summarized the state law as follows:

> [T]he constitutional standard for determining when a prospective juror may be excluded for cause based on his views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath. *Wainwright v. Witt* (1985), 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841; *State v. Rogers* (1985), 17 Ohio St. 3d 174, 17 OBR 414, 478 N.E.2d 984, paragraph three of the syllabus [*reversed on other grounds*, *Rogers v. Ohio*, 474 U.S. 1002 (1985)]. We have held that if a juror satisfies the *Witt* criterion, he may be excluded for cause under the catchall provision of R.C. 2945.25(O) even when he does not satisfy the more specific R.C.2945.25(C). *State v. Buell* (1986) 22 Ohio St. 3d 124, 139, 22 OBR 203, 489 N.E.2d 795; *State v. Bueke* (1988), 38 Ohio St. 3d 29, 38, 526 N.E.2d 274. [Appellant] invites us to overrule these holdings, but we decline.

*State v. Williams*, 99 Ohio St. 3d 493, 499-500, 794 N.E.2d 27, 39 (2003). Thus, Sheppard's brief

argument that the State violated his right to Fourteenth Amendment right to due process by not following its own law is based upon an incorrect interpretation of the state law, and would fail even if it had been properly preserved.

For the foregoing reasons, Sheppard's first ground for relief should be denied as procedurally defaulted and on the merits.

**Second Ground for Relief**

In his second ground for relief, Sheppard argues that his death sentence was unconstitutionally imposed because it rests on a duplicative capital specification. Respondent contends this ground for relief is procedurally defaulted.

In the mitigation phase of Sheppard's trial, the judge gave the following instructions to the jurors on the aggravating circumstances:

> Aggravating circumstances in this case are as follows:
>
> 1.   That the aggravated murder of Dennis Willhide was committed while the defendant was committing or attempting to commit, or while fleeing immediately after committing or attempting to commit the offense of aggravated robbery, and the defendant was the principle [sic] offender in the commission of the aggravated murder.
>
> 2.   That the defendant committed the offense of aggravated murder for the purpose of escaping detection, or apprehension, or trial, or punishment for another crime committed by him, to wit, aggravated robbery.
>
> By your verdict in the guilt or innocence phase of this trial, you have already decided that the foregoing aggravating circumstances exist in this case. The prosecution has no obligation to prove the existence of the aggravating circumstances again to you.
>
> . . . .
>
> You should weigh against the aggravating circumstances the nature and circumstances of the offense, the history, character, background

of the offender and [other enumerated mitigating factors].

. . . .

Weighing the aggravating circumstances and mitigating factors: The word outweigh means to weigh more than[,] to be more significant than.

It is the quality of the evidence that must be weighed. The quality of the evidence may or may not be identical with the quantity of the evidence, that is, the number of witnesses or exhibits presented.

The fact that one or more of the mitigating factors are present does not preclude the death sentence if you find, beyond a reasonable doubt, that the aggravating circumstances still outweigh the mitigating factors.

(Trial Tr. at 1234-36.) Defense counsel did not lodge an objection to that portion of the instructions. It is further noted that the prosecutor argued both aggravating circumstances in his closing argument, and although there were objections made by defense counsel, it is not at all clear that the objections related to the prosecutor's arguing both aggravating circumstances. (Trial Tr. at 1165-68.) Defense counsel also did not object to the instruction on both aggravating circumstances before the instructions were read to the jury. (Trial Tr. at 1154-56.) In fact, defense counsel repeatedly referred to the aggravating circumstances, in the plural, when making other objections to the mitigation phase jury instructions. *Id.*

On direct appeal, Sheppard raised as error the failure to merge the capital specifications for sentencing purposes in his fifth assignment of error. The court of appeals determined that Sheppard had never moved for merger of the specifications, and had failed to object when they were not merged, so all but plain error had been waived. (Appendix, Volume IV at 364.) That court concluded that, although the two specifications should have been merged in Sheppard's case, no plain error occurred. *Id*. at 365. In addition, in the course of its independent reweighing of the aggravating circumstances against the mitigating factors, the court of appeals considered only one

34

aggravating circumstance, and determined that it outweighed the mitigating factors. *Id*. at 368.

Sheppard also raised the failure to merge the aggravating circumstances in the sentencing phase as error on direct appeal to the Ohio Supreme Court. (Appendix, Volume VI at 36.)  The supreme court did not discuss Sheppard's claim, although it did weigh both aggravating circumstances against the mitigating factors in its independent evaluation of Sheppard's sentence. *State v. Sheppard*, 84 Ohio St. 3d 230, 241, 703 N.E.2d 286, 296 (1998).   Under these circumstances, this Court "looks through" the Ohio Supreme Court's silence to the intermediate appellate court's reasoning in its resolution of the claim of error. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-4 (1991).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros,* 170 Ohio St. 2d 471, 166 N.E.2d 379 (1960) paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground.  *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001);  *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  The rule was applied in Sheppard's case, and was relied upon by the state court of appeals.  Consequently, Sheppard's second ground for relief is procedurally defaulted. *See Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998)*; Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). In addition, Sheppard has not demonstrated prejudice from the alleged error, so even if he can show cause for having procedurally defaulted the claim, the default is not excused.

Sheppard argues that the state supreme court's inclusion of both aggravating circumstances in its independent sentencing evaluation essentially revived the instant ground for relief.  (Amended Petition, Doc. No. 77 at 18.)  Had the supreme court addressed the merits of the issue Sheppard

presented, this Court would agree. Instead, however, the court ignored Sheppard's claim, and only came near the duplicative aggravating circumstances issue in its statutorily compelled independent independent sentencing evaluation. As previously noted, in such situations, this Court looks through the state supreme court's decision to the last reasoned state court decision, in Sheppard's case, the court of appeals' decision. *Ylst*, 501 U.S. at 803-4. As discussed above, the court of appeals denied Sheppard relief on state procedural grounds, resulting in a procedural default of the issue for habeas purposes. The state supreme court's fulfillment of a statutory directive to reweigh the aggravating circumstances and mitigating factors does not save Sheppard's claim of *lower court* error from the procedural default, however, and his claim of error resulting from the Ohio Supreme Court's reintroduction of both aggravating circumstances in its independent sentencing evaluation is addressed in his twelfth ground for relief below.

For the foregoing reasons, Sheppard's second ground for relief should be denied as procedurally defaulted.

**Third Ground for Relief**

In his third ground for relief, Sheppard claims his death sentence was unconstitutionally imposed because certain mitigation evidence was excluded during the penalty phase of his trial. Respondent contends this ground for relief is partially procedurally defaulted.

Sheppard argues that he was erroneously prevented from presenting five categories of evidence during the mitigation phase of his trial. Those categories are as follows:

1. Certain testimony from Sheppard's mother;

2. Testimony from a social worker involved with the Sheppard family for many years;

3. Two charts intended to assist in the presentation of Dr. Smalldon's testimony;

4.    Records of the Sheppard family's history of mental illness, and;

5.    Dr. Smalldon's testimony that a treatise on neurological aspects of psychiatry recognized the connection between mild head injuries and the onset of paranoid schizophrenia, along with the relevant excerpt from that treatise.

On direct appeal to the court of appeals and then to the Ohio Supreme Court, Sheppard raised as error the exclusion of all but the first two categories of evidence. The issue was not raised in the course of Sheppard's post-conviction relief proceedings. Respondent argues Sheppard procedurally defaulted his claim on all but the excerpt from the neurological treatise. It appears, however, that Respondent has relied upon the Ohio Supreme Court's discussion of Sheppard's claim advanced there rather than Sheppard's appellate brief to that court. The record shows Sheppard did raise the third and fourth categories of excluded evidence in both the state appellate and supreme courts. That the Ohio Supreme Court chose not to address Sheppard's arguments relating to the two categories of excluded evidence is irrelevant to whether the sub-claims have been procedurally defaulted. Therefore, since Sheppard raised as error on direct appeal to the state appellate court his claim relating to the third, fourth, and fifth categories of evidence, and that court addressed the merits of his claim, habeas corpus review is not precluded. Under such circumstances, this Court presumes the Ohio Supreme Court upheld the court of appeals' judgment on the same ground articulated by the appellate court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-4 (1991)(holding that where there has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment rest on the same ground). Sheppard's argument that this Court should engage in an "independent review" of claims not addressed by the Ohio Supreme Court, however, ignores both the court of appeals' judgment and the United States Supreme Court's directive in *Ylst*, and is therefore unavailing. (*See* Traverse, Doc. No. 89 at 6-7.)

The Court notes that Sheppard raised the exclusion of the first and second categories of evidence, his mother's and social worker's testimonies, respectively, as error in his Ohio App. R. 26(B) application for reopening.  Specifically, he claimed that his appellate counsel were ineffective for failing to raise as error the exclusion of his mother's and social worker's testimonies on direct appeal.  The court of appeals denied Sheppard's motion without reaching the merits, reasoning that Sheppard had not filed the application until nearly three years after the journalization of the appellate court's judgment on direct appeal and Sheppard's failure to demonstrate good cause for the delay.  (Supplemental Appendix, Doc. No. 37 at 1-2.)  The Ohio Supreme Court affirmed the court of appeals, but not on timeliness grounds.  *State v. Sheppard*, 91 Ohio St. 3d 329, 330, 744 N.E.2d 770 (2001).  Instead, the supreme court addressed the merits of Sheppard's ineffective assistance of appellate counsel claims and rejected them as having presented no genuine issue.  *Id*. The Court further observes that Sheppard has advanced his appellate counsels' ineffectiveness as constitutional error in his tenth ground for relief, and that he cites appellate counsels' failure to raise the exclusion of Sheppard's mother's and social worker's testimony as error on direct appeal in the state courts as a basis for the claim of ineffectiveness.  Thus, the Court will address whether Sheppard has properly preserved his ineffective assistance of appellate counsel claim, and whether his counsels' ineffectiveness provides cause and prejudice for his procedural default as to the first two categories of excluded evidence when it considers Sheppard's tenth ground for relief.

The third category of excluded evidence consisted of two charts Sheppard wished to use and introduce in the presentation of Dr. Smalldon's testimony.  The first of the charts was a list of Sheppard's family members who suffer or suffered from mental illness.  (Trial Tr. at 1010.)  The second illustrated the differences, from a psychologist's point of view, between evaluating a person in light of a not guilty by reason of insanity defense and evaluating a person's mental health in the mitigation context.  The trial court excluded the two charts because the prosecutor had not been

provided with copies of them in advance, and because "the one is certainly clearly an opinion." (Trial Tr. at 1011.)  Defense counsel claimed, and the prosecutor did not dispute, that copies of the charts were given to the prosecutor the prior morning.  Nevertheless, the trial court excluded the charts from being used to assist in the presentation of Dr. Smalldon's testimony.

The information presumably set forth on the charts,[4] however, was not excluded, and Sheppard's expert witness, Dr. Jeffrey Smalldon, testified both to the prevalence of mental illness in Sheppard's extended and immediate family members (Trial Tr. at 1056-59), and to the difference between the standards for an NGRI defense in the guilt phase of a capital trial and a "mental disease or defect" evaluation for use in the mitigation phase of trial (Trial Tr. at 1091-95).  Thus, the charts were essentially summaries of certain evidence to which Dr. Smalldon testified.  Sheppard has failed to demonstrate that he was prevented from presenting the contents of the charts to the jury, *albeit* not in chart form, much less that the omission of the charts implicated a federal constitutional right. Moreover, that the charts might have been "helpful" or "an important visual tool" to the jury, falls short of demonstrating prejudice warranting habeas corpus relief.

The fourth category of evidence claimed to have been erroneously excluded in the mitigation phase is a collection of medical records detailing Sheppard' mother's and uncle's hospitalizations for mental illnesses.  Since this issue was presented to the state courts only on direct appeal, where no supplementation to the record is permitted in Ohio, the medical records claimed to have been erroneously excluded are not a part of the habeas corpus record.  Thus, even if Sheppard could show that exclusion of those records amounted to error of a constitutional dimension, which he has not, he cannot make out the prejudice necessary to succeed on this issue.

The final category of evidence is an excerpt from a neurological treatise Sheppard wished to use during the presentation of Dr. Smalldon's testimony.  Essentially, the excerpt was intended

---

[4]The charts have not been made part of the record in these proceedings.

to bolster Dr. Smalldon's diagnosis that Sheppard suffers from paranoid schizophrenia precipitated, at least in part, by a mild head injury he received some time prior to Willhide's murder.  At the time of Sheppard's trial, the state law respecting the use of learned treatises as evidence was that "textbooks and other learned treatises are considered hearsay, may not be used as substantive evidence, and are specially limited to impeachment purposes only."  *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St. 3d 97, 110, 592 N.E.2d 828 (1992).  The United States Supreme Court has had the following to say respecting state evidentiary rules and capital sentencing proceedings:

> Petitioner's argument, pared down, seems to be a request that we fashion general evidentiary rules, under the guise of interpreting the Eighth Amendment, which would govern the admissibility of evidence at capital sentencing proceedings.  We have not done so in the past, however, and we will not do so today.  The Eighth Amendment does not establish a federal code of evidence to supersede state evidentiary rules in capital sentencing proceedings.

*Romano v. Oklahoma*, 512 U.S. 1, 11-12 (1994).  Sheppard cites no Supreme Court law to support his claim that the state appellate court's decision on the propriety of excluding the excerpt of the treatise was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor does he claim that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d)(1).  Moreover, in light of *Romano*, it is difficult to imagine how Sheppard could do so.

The Court has considered each of the items of evidence claimed by Sheppard to have been wrongfully excluded from the penalty phase of his trial, and found none to have implicated the federal constitution, nor do they do so cumulatively as there is nothing to cumulate.  Therefore Sheppard's third ground for relief should be denied.

**Fourth Ground for Relief**

In his fourth ground for relief, Sheppard argues that the jury instructions given to the jury in the penalty phase of his trial were constitutionally infirm in five respects. First, Sheppard claims the trial judge erroneously denied his request for a jury instruction that the aggravated murder itself was not an aggravating circumstance to be weighed against the mitigating factors. Next, Sheppard contends error in the trial court's overruling of a defense objection to an instruction to the jurors that the jury should consider the nature and circumstances of the aggravating circumstances as an aggravating circumstance in the weighing process. Third, Sheppard claims it was error for the jury to be instructed to consider duplicative aggravating circumstances in determining the proper sentence. Fourth, Sheppard argues it was error to instruct the jury that the State had not been afforded access to Sheppard for the purpose of a psychological examination, even though the instruction included the acknowledgment that the State was not entitled to such access. Finally, Sheppard contends the trial court erred in refusing to instruct the jury that it could consider one of the life sentences if they could not unanimously agree on death as the appropriate sentence.

Respondent contends the third of these sub-claims has been procedurally defaulted because the court of appeals relied on the contemporaneous objection rule in denying it. This Court observes, however, that the third sub-claim presented in the instant ground for relief was never actually raised in the state courts. The claims raised in the state courts relating to jury instructions in the penalty phase were that the trial court failed to instruct the jury that they need not unanimously reject the death sentence before considering the life sentence options, failed to instruct that the nature and circumstances of the aggravating circumstances were not themselves an aggravating circumstance, did instruct that the aggravating circumstances had been found by the jury to exist in the guilt phase, and did instruct that the jury consider the nature and circumstances of the aggravating circumstances in their weighing process. In his state court arguments, Sheppard merely

noted that the prejudice from the errors alleged there was exacerbated by the trial court's failure to merge the two aggravating circumstances. *Id.* Those arguments fall short of "fairly presenting" the duplicative aggravating circumstances issue advanced in this Court to the state courts. *See Baldwin v. Reese*, ___ U.S. ___, 124 S. Ct. 1347 (2004)*; Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987)(stating that a claim is "fairly presented" when a petitioner asserts both the factual and legal basis for his claim to the state courts).[5] Moreover, the factual basis of Sheppard's third sub-claim in his fourth ground for relief in these proceedings was not presented to the state courts as a claim underlying his Ohio App. R. 26(B) application for reopening. As such, Sheppard's third sub-claim is indeed procedurally defaulted, although not for the reason argued by Respondent.

Respondent does not advance a procedural default defense respecting any of Sheppard's remaining sub-claims under the fourth ground for relief, and, having found each to have been raised as error on direct appeal, this Court will address their merits. As noted earlier, Sheppard's first sub-claim involves a contention that the trial court should have granted defense counsels' request that the jurors be instructed the aggravated murder itself was not an aggravating circumstance to be weighed against the mitigating factors in the penalty phase. In his second sub-claim, Sheppard argues instructing the jury to weigh the nature and circumstances of the aggravating circumstances as aggravating was error. The state court of appeals held that since the jurors were never instructed that the aggravated murder *was* an aggravating circumstance, there was no reason to inform them that it was *not*. In addition, the court noted that while Sheppard correctly stated that the nature and circumstances of the *offense* may only be considered for their mitigatory value, if any, the nature and

---

[5]In his traverse, Sheppard states he raised the erroneous jury instruction that the jury should consider duplicative aggravating circumstances as an underlying claim to his ineffective assistance of trial counsel claim in his twenty-second assignment of error on direct appeal to the court of appeals. (Traverse, Doc. No. 89 at 46.) Sheppard contends trial counsels' ineffectiveness provides the cause and prejudice necessary to excuse the procedural default of his third sub-claim. Sheppard's twenty-second assignment, however, claims only that his defense counsel were ineffective for not moving for merger of the aggravating circumstances, and does not challenge the jury instructions.

circumstances of the *aggravating circumstances* are "fair game" on the aggravating side of the scales. (Appendix, Volume IV at 366.) The Ohio Supreme Court did not comment on the issue, though it was raised in Sheppard's twenty-seventh proposition of law to that court. Consequently, this Court "looks through" the Ohio Supreme Court's presumed affirmance of the court of appeals' judgment, to determine whether the court of appeals' reasoning was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Ylst v. Nunnemaker*, 501 U.S. 797, 803-4 (1991); 28 U.S.C. 2254(d)(1).

Essentially, Sheppard argues that the jury instructions telling the jury to consider the nature and circumstances of the aggravating circumstances as aggravating, and the nature and circumstances of the offense as mitigating in the penalty phase weighing process made it more likely that the aggravated murder itself was weighed as an aggravating circumstance. The instruction requested but denied by the court would have clarified the confusion inherent in the given instructions, according to Sheppard. The Sixth Circuit, however, has rejected the argument that the Ohio statutory scheme requiring the sentencer to consider the nature and circumstances of the aggravating circumstances as aggravating, and the nature and circumstances of the offense as mitigating, is unconstitutionally vague. *Cooey v. Coyle*, 289 F.3d 882, 927-28 (6th Cir. 2002). In fact, the court went further in stating, "[w]e cannot even imagine a constitutional violation here." *Id.* Thus, the instructions given in Sheppard's case, which were consistent with the Ohio statutes, required no clarification of the sort suggested and requested by Sheppard, and his first and second sub-claims lack merit.

In his fourth sub-claim, Sheppard contends the instruction relating to the prosecution's lack of access and entitlement to access to Sheppard for psychological evaluation purposes during the

penalty phase was erroneous. Specifically, the trial court instructed the jurors that "the State of Ohio has not been afforded access to the defendant for purposes of a psychological examination in the penalty phase of this trial, nor, constitutionally, are they entitled to that access." (Trial Tr. at 1236-37.) Sheppard argues that the instruction was wrong because "[t]he state never requested an exam, and had it, it would have been entitled to an exam," citing Fifth Circuit and D.C. Circuit cases in support. *See LaGrone v. Cockrell*, 2003 U.S.App. LEXIS 18150 (5th Cir. 2003); *United States v. Byers*, 740 F.2d 1104 (D.C.Cir. 1984). In Ohio, however, only the defendant may request a pre-sentence investigation or mental examination during the penalty phase of a capital trial. Ohio Rev. Code §2929.03(D)(1). That the trial court stated the prohibition against the State's access to Sheppard to conduct a psychological examination was a constitutional one may have been error, but it is highly unlikely that any juror would have been persuaded to vote for a life sentence had they known the State's access was precluded on state statutory grounds instead. The fact that an instruction is improper or incorrect under state law is not a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Moreover, since Sheppard has no federal constitutional right to be free from a psychological examination by a prosecution expert once he has put his mental condition at issue, there was no improper comment in the trial court's instruction on Sheppard's exercise of a constitutional right. Thus, his fourth sub-claim should be denied.

In his fifth and final sub-claim under his fourth ground for relief, Sheppard contends the trial court erred in refusing to instruct the jury that it could consider one of the life sentences if it could not unanimously agree on death as the appropriate sentence. For the reasons that follow, the Magistrate Judge disagrees.

The jury instructions relevant to Sheppard's sub-claim were given by the trial judge as follows:

> If you find that the prosecutor has proved, beyond a reasonable

44

doubt, that the aggravating circumstances outweigh mitigating factors, then you must impose the death penalty.

If you find that the prosecutor has failed to prove, beyond a reasonable doubt, that the aggravating circumstances outweigh mitigating factors, then you must impose a life sentence, and you must further impose either a full 30[-]year parole eligibility or a full 20[-]year eligibility.

. . . .

Mitigating factors:  Mitigating factors are factors that, while they do not justify or excuse the crime of aggravated murder, nevertheless may be considered by you in determining whether to impose a penalty less than death.

You should weigh against the aggravating circumstances the nature and circumstances of the offense, the history, character, background of the offender and the following:

> 1.    Whether, at the time of committing the offense, the offender because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of conduct [sic], or to conform his conduct to the requirements of the law.

> 2.    The youth of the offender.

> 3.    The offender's lack of a significant history of prior criminal conviction and delinquency adjudication.

> 4.    Any other factors relevant to the issue of whether the offender should be sentenced to death.

Weighing the aggravating circumstances and the mitigating factors: The word outweigh means to weigh more than[,] to be more significant than.

It is the quality of the evidence that must be weighed. . . .

The fact that one or more of the mitigating factors are present does not preclude the death sentence if you find, beyond a reasonable doubt, that the aggravating circumstances still outweigh the mitigating factors.

Mitigating factors must be considered collectively when they are weighed against the aggravating circumstances.  Mitigating factors

may not be considered for any purpose other than mitigation.

. . . .

Verdicts: I will now discuss with you the verdicts that you will take with you to the jury room. No inference is to be made in the [sic] order that I mention them, since it is impossible to read them simultaneously.

You will have the following forms of recommend [sic]:

1.  Death penalty.

2.  Life with parole after a full 30 years.

[3.]  Life with parole after a full 20 years.

With regard to the verdict that you render, all 12 must sign in ink in the line provided for your signatures, foreman or forelady signing on the 12th line under which is printed the phrase foreman of the jury.

Your verdict must be unanimous. That means that you must agree to it. Cannot be 11 to 1, 10 to 2, 9 to 3, et cetera. It must be 12 nothing. Put nothing on the verdicts that are not yours.

(Trial Tr. at 1233-39.)

In his Traverse (Doc. No. 89 at 54-56) Sheppard cites *Davis v. Mitchell*, 318 F.3d 682, 690 (6th Cir. 2003), in support of his argument. There, the Sixth Circuit Court of Appeals held that the combination of (1) a jury instruction stating unanimity was required on any sentencing decision, (2) a jury instruction stating the jury must first reject the death sentence before considering the life sentence options available, and (3) an instructional void concerning the lack of unanimity required respecting mitigating factors was contrary to *Mills v. Maryland*, 486 U.S. 367 (1988), and *McKoy v. North Carolina*, 494 U.S. 433 (1990). Those cases establish that "in order for Eighth Amendment law on mitigating factors to be coherent and capable of judicial administration without serious confusion, a capital jury must understand that . . . 'a finding with respect to a mitigating factor may be made by one or more members of the jury.'" *Davis*, 318 F.3d at 688. The instructions in *Davis*,

which admittedly included an "acquittal first" instruction not given in Sheppard's case, were constitutionally infirm because they were

> [S]ilent as to the different unanimity requirements for aggravating and mitigating circumstances, making no mention of the individual juror's power to prevent the death penalty by giving effect to mitigating circumstances absent the agreement of the other jurors regarding the presence of those mitigating circumstances. Nor do they make clear that the jury need not be unanimous in rejecting death in order to render a verdict for life imprisonment. The inescapable likelihood in this case that the jury understood the instructions to require unanimity in both its ultimate and interim conclusions violates *Mills*.

*Id*. at 690. In addition, the court found it "hard to conceive" how the unanimity instruction and the requirement that each juror sign one of the twelve bars on the verdict form could be interpreted in any way other than that a jury finding that one or more of the mitigating factors existed and outweighed the aggravating circumstances must be unanimous. *Id*. at 691.

The import of *Davis*, however, has been questioned by our sister court in the Northern District. In *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 783-85 (N.D. Ohio 2003), the district court observed that *Davis* was in conflict with three earlier Sixth Circuit cases, specifically, *Roe v. Baker*, 316 F.3d 557 (6th Cir. 2002), *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), and *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998). The court stated:

> [A]lthough *Davis* is in conflict with *Coe*, *Roe*, and *Scott*, these three cases remain controlling authority because "'[a] panel of this [the Sixth Circuit] Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" *Taylor v. Mitchell* [296] F.Supp.2d [784, 813], 2003 WL 1477010 (N.D. Ohio Mar. 3, 2003)(discussing the effect of *Davis* and quoting *United States v. Smith*, 73 F.3d 1414[, 1418] (6th Cir. 1996).

*Madrigal*, 276 F. Supp. 2d at 785. Thus, Sheppard's claim challenging the penalty phase jury instructions must be evaluated under the precedents of *Coe*, *Roe*, and *Scott*.

In *Coe*, the jury was instructed as follows:

> If you unanimously determine that at least one statutory aggravating circumstance or . . . circumstances have been proved by the State, beyond a reasonable doubt, and said circumstance or circumstances are not outweighed by any mitigation circumstances, the sentence shall be death.   The Jury shall state in writing the statutory aggravating circumstance or . . . circumstances so found, and signify in writing that there were no mitigating circumstances sufficiently substantial to outweigh the [aggravating circumstances].

*Coe*, 161 F.3d at 336-37.   The jury was then told that the form of its verdict should be as follows:

> (1)   We, the Jury, unanimously find the following listed statutory aggravating circumstance or circumstances;
>
> . . . .
>
> (2)   We, the Jury, unanimously find that there are no mitigating circumstances sufficiently substantial to outweigh the [aggravating circumstances] so listed above.
>
> (3)   Therefore, we, the Jury, unanimously find that the punishment shall be death.

*Id*. at 337.   In addition, the jury was instructed on the alternative result:

> If you unanimously determine that no statutory aggravating circumstance has been proved by the State beyond a reasonable doubt; or if the Jury unanimously determine that [aggravating circumstances] have been proved by the State beyond a reasonable doubt; but that said [aggravating circumstances] are outweighed by one or more mitigating circumstances, the sentence shall be life imprisonment.

*Id*.   The *Coe* court found the jury instructions did not violate *Mills v. Maryland*, 486 U.S. 367, 373-75 (1988), reasoning that the challenged instructions required unanimity as to the weighing process, but not to the existence of a mitigating factor.   The court noted that "[t]he instructions say clearly and correctly that in order to obtain a unanimous verdict, each juror must conclude that the mitigators do not outweigh the aggravators."   *Coe*, 161 F.3d at 338.   In addition, the court

48

acknowledged that an instruction requiring unanimity in the finding of aggravating circumstances, in combination with one instructing the jury to consider any mitigating factors, was not improper. *Id*. The inclusion of the unanimity feature in the instruction on aggravating circumstances, and its exclusion from the instruction on mitigating factors sufficiently informed jurors that unanimity was not required with respect to the existence of mitigating factors. *Id*. at 338-39.

The *Coe* court also squarely addressed the issue Sheppard presents: that the jurors were not told what the effect of a deadlock in the sentencing hearing would be. The court rejected Coe's contention that jurors must be informed of the consequences of the jury's failure to achieve unanimity.

In Scott's case, the jury instructions were as follows:

> If all 12 members of the jury find, by proof beyond a reasonable doubt, that the aggravating circumstances which Jay Scott was found guilty of committing outweigh the mitigating factors, then you must return such a finding to the Court. I instruct you as a matter of law that if you make such a finding, then you have no choice and must recommend to the Court that the sentence of death be imposed upon the defendant . . . .

> On the other hand, if after considering all of the relevant evidence raised at trial, the testimony, other evidence, the statement of Jay Scott, and the arguments of counsel, you find that the State of Ohio failed to prove that the aggravating circumstances which the defendant, Jay Scott, was found guilty of committing, outweigh the mitigating factors, then you will return your verdict reflecting your decision.

> In this event, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court. . . . .

> [The verdict form] says, "Verdict: We, the jury in this case being duly empaneled and sworn, do find beyond a reasonable doubt that the aggravating circumstances which the defendant, Jay Scott, was found guilty of committing, are sufficient to outweigh the mitigating factors presented in this case."

> "We, the jury, recommend that the sentence of death be imposed

upon the defendant, Jay Scott.' and, again, signed by the foreman or forelady and all 12 of you must sign.

The second form is: "We, the jury in this case being duly empaneled and sworn, do find that the aggravating circumstances which the defendant, Jay Scott, was found guilty of committing, are not sufficient to outweigh the mitigating factors presented in this case."

"We, the jury, recommend that the defendant, Jay Scott, be sentenced to life imprisonment with parole eligibility after sentencing," and then there's a blank with an asterisk which refers down and says, "insert years of imprisonment," and again, the signatures, and the first line is reserved for the foreman or forelady, and the remainder of the eleven of you must sign that verdict form.  It must be unanimous. . . .

[W]hen all 12 of you – I repeat – all 12 of you agree upon a verdict, you will sign the verdict in ink, and advise the Court of this fact.

*Scott*, 209 F.3d at 874.[6]  Again, the court differentiated between an instruction requiring the jury to be unanimous in its finding of each mitigating factor, as in *Mills v. Maryland*, 486 U.S. 367 (1988) and *Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989), and a unanimity instruction relating only to the overall weighing of mitigating factors and aggravating circumstances, as the court found was present in Scott's case.  *Scott*, 209 F.3d at 875.  As in *Coe*, the court found the *Scott* instructions did not violate *Mills*.  *Id*. at 877.  In *Scott*, the court again rejected the argument that the jury must be

---

[6]In his Amended Petition, Doc. No. 77 at 51, Sheppard cites the district court's treatment of Scott's case as support for his claim that the unanimity instruction violated both state and federal law.  The Sixth Circuit *Scott* case cited here reversed the district court, however, stating:

[T]he district court erred in concluding that Scott's claim of constitutional error with regard to the penalty-phase unanimity instruction was not procedurally defaulted, and in further concluding that even if the claim were defaulted, Scott demonstrated cause and prejudice to excuse the procedural default.  We further hold that the Ohio Supreme Court relied on Ohio's contemporaneous-objection rule – an adequate and independent state ground – in holding that this claim had been defaulted; that Scott failed to demonstrate cause and prejudice to excuse the default[;] and that the district court erred in reaching the merits of this claim.

*Scott*, 209 F.3d at 873.  The court of appeals, "out of an abundance of caution and in order to clarify our precedents governing sentencing-phase instructions on jury unanimity" considered the merits of Scott's claim, ultimately rejecting it, despite the procedural default.  *Id*. at 873-78.  The court of appeals also reversed the district court's finding of error in the trial court's failure to advise the jury in its unanimity instruction as to the consequences of a deadlock.  *Id*. at 877.

informed of the consequences of a deadlock, stating as follows:

> [T]he district court was clearly incorrect in finding error in the trial court's failure to advise the jury in its unanimity instruction as to the consequences of deadlock.  The Supreme Court has chastised such instructions as encouraging deadlock and undermining the strong governmental interest in unanimous verdicts.  *See Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 2099-2100, 144 L.Ed.2d 370 (1999).

*Scott*, 209 F.3d at 877.

In *Roe v. Baker*, 316 F.3d 557, 562-63 (6th Cir. 2002), the complained-of instructions were as follows:

> Now each of you must decide the case for yourself, but you should do so only after a discussion and consideration of this case with your fellow jurors.  Now do not hesitate to change an opinion if you later find that that opinion or that position is wrong.  However, you should not surrender honest convictions in order to be congenial or in order to reach a verdict solely based upon the opinion of the other jurors.
>
> . . . .
>
> [Y]our verdict must be a unanimous verdict.  All 12 of the jurors must agree unanimously on the appropriate verdict.  Once you have made such a finding, again you would notify my bailiff with respect to that .  All 12 jurors have to sign the verdict form.

The Sixth Circuit recognized that although the challenged instruction might well have been incorrect under state law, it was not a basis for habeas relief since the unanimity requirement referred to the sentencing recommendation rather than to the existence of mitigating factors.  *Id*. at 564, *citing Estelle v. McGuire*, 502 U.S 62, 71-72 (1991).  Once again, the court rejected the argument that the jury must be informed of the consequences of a deadlock, relying on *Jones*, 527 U.S. at 381-84, and *Coe*, 161 F.3d at 339-40.  *Roe*, 316 F.3d at 564.

The instructions given in Sheppard's case are not contrary to clearly established federal law. The United States Supreme Court has chastised instructions such as the one requested by Sheppard's defense counsel as "encouraging deadlock and undermining the strong governmental interest in unanimous verdicts."  *Scott*, 209 F.3d at 877, *citing Jones v. United States*, 527 U.S. 373 (1999).

*See also Coe*, 161 F.3d at 339-40.

 For the reasons stated above, Sheppard's fourth ground for relief should be denied.

**Fifth Ground for Relief**

 In his fifth ground for relief, Sheppard claims prosecutorial misconduct during the penalty phase of his trial deprived him of his rights to a fair trial and due process. In particular, Sheppard argues that the following conduct constituted prosecutorial misconduct:

1. The prosecutor told jurors to consider the brutality of the crime, the horrible cold-blooded murder, the enormity of what Sheppard had done, and the nature and circumstances of the crime as aggravating circumstances;

2. The prosecutor told jurors the defense was trying to "hoodwink" the jury into believing Sheppard was mentally ill, argued the mitigation evidence presented by Sheppard was a sham, claimed the State was ambushed by Sheppard's presentation of mental illness evidence in the mitigation phase rather than in the guilt phase, accused the defense of being unscrupulous for doing so, repeatedly played the surveillance video of the offense during closing arguments, commenting that Sheppard did not appear to be mentally ill in the video, and trivialized the mental illness evidence presented by Sheppard;

3. The prosecutor argued that Sheppard's personality change was not due to mental illness, but could instead be explained by drug abuse;

4. The prosecutor told the jury that Sheppard's youth had no mitigatory value since Sheppard was "street smart";

5. The prosecutor stated that Sheppard's lack of a significant criminal record was not because he was not a criminal, but rather was because he had just not gotten caught;

6. The prosecutor argued that the mitigating factors did not outweigh the aggravating circumstances, setting the weighing process on its head.

(Amended Petition, Doc. No. 77 at 28-35.)

Respondent contends the third and fourth instances of alleged prosecutorial misconduct have been procedurally defaulted, as they were not raised in the state court on direct appeal. Both sub-claims were included as claims underlying Sheppard's Ohio App. R. 26(B) ineffective assistance of appellate counsel claim. They are similarly included under Sheppard's tenth ground for relief in his habeas petition, again as claims underlying his ineffective assistance of appellate counsel claim. As such, neither sub-claim is preserved for habeas review as a free-standing claim, and are procedurally defaulted. Their merits will be discussed to the extent appropriate in the Court's consideration of Sheppard's tenth ground for relief.

The Sixth Circuit has recently articulated the relevant standard for habeas claims of prosecutorial misconduct as follows:

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citation omitted). Even if the prosecutor's conduct was improper or even "universally condemned," *id.*, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair. Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003). When the prosecutorial misconduct claim

alleges prejudicial impropriety in closing arguments in the mitigation phase of a capital trial, the comments must be examined within the context of the trial to determine whether they constituted prejudicial error. *United States v. Young*, 470 U.S. 1, 11-12 (1985); *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). "When a prosecutor's actions are so egregious that they effectively 'foreclose the jury's consideration of . . . mitigating evidence,' the jury is unable to make a fair, individualized determination as required by the Eighth Amendment." *DePew v. Anderson*, 311 F.3d 742, 748 (6th Cir. 2002), *quoting Buchanan v. Angelone*, 522 U.S. 269, 277 (1998). Thus, the Eighth Amendment is violated when a prosecutor's comments are so prejudicial as to "constrain the manner in which the jury was able to give effect" to mitigating evidence. *Buchanan*, 522 U.S. at 277.

Sheppard's mitigation evidence consisted of the testimony of his sister, mother, and former social worker. The crux of his mitigation case, however, related to the "mental disease or defect" mitigating factor, which Sheppard supported with the testimony of Dr. Jeffrey Smalldon, a psychologist. A summary of each mitigation witness' testimony is helpful.

Sheppard's sister Alberta testified that Sheppard had been a normal child growing up, but that he had changed after he was injured in a car accident in 1993 when he was in the tenth grade. (Trial Tr. at 961-63, 969.) Sheppard suffered a mild head injury in the accident, after which he would see people or things that were not there, and throw objects across the room at them. *Id*. at 963. Alberta testified that there is a history of mental illness, including paranoid schizophrenia, in her family, and that she herself was, at the time, being medicated for depression. *Id*. at 965.

Sheppard's mother Dolores testified that Sheppard was a good student in elementary school and that he had participated in extracurricular sports activities before tenth grade. (Trial Tr. at 974-76.) When Sheppard was between ninth and tenth grade, the family moved from Hamilton to Cincinnati, and after an initial adjustment period, Sheppard's grades were high enough in the tenth grade that he was on the honor roll. *Id*. at 967-78. Dolores described the injuries Sheppard suffered

in the car accident, and testified he was kept overnight in the hospital for observation. *Id*. at 979-81.

She, too, noticed a change in Sheppard following the car accident, and told about instances where

Sheppard would stay in the house for extended periods of time, seeing things that were not there,

and throwing objects at them. *Id*. at 981. After withdrawing from the extracurricular activities he

had been involved in, Sheppard dropped out of high school before the second semester of eleventh

grade. *Id*. at 983. Dolores described her brother Darryl's paranoid schizophrenia, and testified that

he was instutitonalized. She stated that she tried to get help for Sheppard after he exhibited the

changes she described, but he refused, saying he did not want to be like his Uncle Darryl. *Id*. at 986.

She testified that her son did not have a drug or alcohol abuse problem. *Id*. at 979.

Gwendolyn Bradbury knew the Sheppard family through her involvement with them as a

social worker from about 1981 to 1992, when they lived in Hamilton, Ohio. (Trial Tr. at 991.) She

testified that Dolores Sheppard did the best she could raising her children, that there were never any

allegations of abuse, and that her involvement with the family came about primarily because there

was some concern as to whether Dolores could properly care for the children when they were young,

given her numerous health problems. *Id*. at 991-93. Bradbury corroborated Dolores Sheppard's

testimony that Sheppard received good grades through elementary school, and that he became

involved in extracurricular sports in junior high school. *Id*. at 994-95. She testified that Sheppard's

Uncle Darryl would periodically become homeless and come live with the family for awhile. *Id*.

at 997. Although her official position as the Sheppards' social worker terminated when they moved

from Hamilton to Cincinnati, Bradbury remained in contact with the family, and she noticed changes

in Sheppard following his car accident. *Id*. at 998-999. For instance, Sheppard seemed distant,

hardly spoke, and came to and went from the family home at unusual hours. (Trial Tr. at 999.)

Bradbury testified that Sheppard did not have a substance abuse problem, so far as she knew. *Id*.

at 1001. She was unaware whether Sheppard had been skipping school prior to the family's move

to Cincinnati. *Id*. at 1003.

The final mitigation witness was Dr. Jeffrey Smalldon, a psychologist whom defense counsel retained to perform a comprehensive psychological and neuropsychological evaluation of Sheppard. (Trial Tr. at 1030.)  When asked his view on the death penalty, Dr. Smalldon replied that he was personally opposed to it, but added that he grew up in a household influenced by law enforcement, as his father was an agent for the Federal Bureau of Investigation. *Id*. at 1029.  At the beginning of his involvement in Sheppard's case, his understanding was that he was to evaluate Sheppard's competency and the possibility of a not-guilty-by-reason-of-insanity defense on a continuing basis. *Id*. at 1030.  He understood the scope of his involvement to include the "develop[ment] of a rich appreciation for Sheppard and his functioning over time" for use in the mitigation phase, if necessary. *Id*. at 1031.  Dr. Smalldon interviewed Sheppard seven times, six of which were in person; administered a variety of psychological tests to Sheppard; and reviewed Sheppard's educational, medical, juvenile court, and incarceration records as well as records pertaining to the mental health history of many of Sheppard's relatives. *Id*.  In addition, he interviewed several of Sheppard's relatives, friends, and acquaintances. *Id*. at 1032.

Dr. Smalldon described what he had learned about Sheppard's family and their changing situations throughout Sheppard's childhood, including such events as the mother's hospitalizations, the children's shuffling to relatives, and their move from Cincinnati to Hamilton and back again. *Id*. at 1039-45.  Dr. Smalldon related Sheppard's academic performance and achievements to the jury, and described repeated visits to the doctor following Sheppard's injury in the 1993 car accident. *Id*. at 1048-50.

Dr. Smalldon offered his expert opinion that Sheppard suffers from paranoid schizophrenia, based on an extensive history of psychiatric-like illnesses in Sheppard's family, and reports of a rapid and dramatic deterioration of Sheppard's behavior and functioning in late 1993 and early 1994.

(Trial Tr. at 1064.)  In addition, the results of the tests administered to Sheppard were all consistent with a diagnosis of paranoid schizophrenia.  *Id*. at 1088.  Dr. Smalldon stated he was not aware of any drug use by Sheppard other than occasional marijuana use, and that there is a well-established clinical view that a connection exists between mild head trauma and the onset of a psychotic illness. *Id*. at 1067.  He testified that he had turned over to the prosecution all the records he had used in diagnosing Sheppard, and said the likelihood of another clinician agreeing with his diagnosis, given the same information, would be very high.  (Trial Tr. at 1090.)

Dr. Smalldon differentiated between an NGRI defense, which Sheppard did not mount, and the "mental disease or defect" mitigating factor, on which Dr. Smalldon's testimony was offered. When evaluating a person in the context of an NGRI defense, for instance, Dr. Smalldon explained that the question is whether the individual, because of a severe mental illness, brain impairment, or mental retardation, did not know that what he was doing was wrong at the time the criminal offense was committed.  *Id*. at 1093.  In the mental disease or defect mitigating factor context, however, the inquiry is not so narrow.  There, he evaluates whether, because of a severe mental illness, brain impairment, or mental retardation, the defendant was substantially impaired in his capacity to appreciate the criminal nature of what he was doing, or to conform his conduct to the requirements of the law.  *Id*.  Dr. Smalldon testified that Sheppard's paranoid schizophrenia was not so severe that it would make him eligible for an NGRI defense.

On cross-examination, Dr. Smalldon stated that there would be no way to tell what Sheppard's mental condition was at the time of the murder by simply watching the videotape of the offense.  *Id*. at 1102.  He denied there was any conduct or behavior observable on the videotape that was inconsistent with his diagnosis of paranoid schizophrenia, (Trial Tr. at 1103), nor were Sheppard's statements to the police that he had planned the robbery for months, bought the gun two days before the murder, disposed of the money, and hid the gun inconsistent with a diagnosis of

paranoid schizophrenia, *id*. at 1107. Although Dr. Smalldon stated the offenses Sheppard committed were not preceded or accompanied by logical planning on Sheppard's part, such planning is not necessarily inconsistent with serious mental illness. (Trial Tr. at 1108.) Dr. Smalldon acknowledged that Sheppard's "L" scale on the MMPI was elevated, but added that that scale, formerly and to him unfortunately referred to has the "lie" scale, is designed to detect a naive, unsophisticated attempt to "look good" or to appear to be concerned with correctness. *Id*. at 1117. The effort Sheppard put forth on the tests that were administered to him also informed Dr. Smalldon's determination that the MMPI scores were valid ones. *Id*. at 1113-14. Dr. Smalldon stressed that although he relied on information given to him by Sheppard's family members about the family history of mental illness, he did not base his opinion on any such information that could not be corroborated by actual documentation. *Id*. at 1127.

Dr. Smalldon did not request an MRI, CAT scan, or EEG on Sheppard because he did not expect those tests to reveal any unusual results, since the head injury Sheppard suffered in 1993 was mild. *Id*. at 1113. He rejected the prosecutor's suggestion that the particular "constellation of symptoms" he describes as being present in Sheppard were ones that would be present in teenagers abusing substances, although he acknowledged there could be some overlap of symptoms, and that Sheppard had admitted to having consumed alcohol and marijuana on occasion. *Id*. at 1121. Dr. Smalldon stated that Sheppard's illness "substantially impaired his ability to conform his conduct to the law because of his radically compromised insight [and] judgment." *Id*. at 1109, 1123-24.

On redirect, Dr. Smalldon clarified that MRIs, CAT scans, and the like are performed to detect structural or organic damage in the brain, and that paranoid schizophrenics do not generally suffer those kinds of brain damage. *Id*. at 1133. In addition, mild head trauma is more likely to precipitate a latent psychotic illness than a severe head injury, even though it causes little to no structural damage to the brain.

Since this Court must view the prosecutor's statements in light of the totality of the circumstances during the penalty phase of Sheppard's trial, a description of the statements relating to each sub-claim will be set forth and a determination made as to whether the comments were improper. Following that, the Court will consider any prejudice flowing from comments found to be improper, if any.

Sheppard's first sub-claim under the current ground for relief, in which he argues the prosecutor improperly urged jurors to consider non-statutory aggravating circumstances, arises out of the following statements made by the prosecutor in mitigation-phase closing arguments:

> What can you consider in [weighing the aggravating circumstances against the mitigating factors]? Consider everything that you considered in part one [of the trial].
>
> Again, I don't want to harp on that tape, but the one thing that the tape tells us is the absolute brutality of this crime.
>
> . . . .
>
> You're going to balance this horrible, cold-blooded . . . murder which occurred August 19, 1994, with the mitigation that was offered by the defense.
>
> You're going to be permitted to consider the nature and circumstances of this crime. Dennis' bullet hole is back here because he had his hand on his head, doing everything that this killer wanted him to do.

(Trial Tr. at 1168, 1206, 1231.) The prosecutor's encouragement to the jurors that they should weigh the "horrible, cold-blooded," and brutal nature of Dennis Willhide's murder against the mitigating factors is, in a weighing state such as Ohio, is violative of the Eighth Amendment to the United States Constitution. *Espinosa v. Florida*, 505 U.S. 1079, 1081 (1992); *but cf. Smith v. Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003)(*citing Barclay v. Florida*, 463 U.S. 939, 956-57 (1983) for the proposition that the consideration of a non-statutory aggravating circumstance does not violate the United States Constitution). There is, however, nothing improper about the prosecutor's

argument that the jurors should consider evidence presented in the guilt phase in determining the appropriate sentence for Sheppard. After all, the aggravating circumstances, an essential component of the sentencing process, were found beyond a reasonable doubt to exist in the first phase of Sheppard's trial. To disallow evidence of the aggravating circumstances in the penalty phase would leave nothing for the jurors to weigh against the mitigation evidence, and while that approach might be favored by defendants, it is not the law.

In his second sub-claim, Sheppard claims the prosecutor improperly suggested that the defense was underhanded and unscrupulous in not presenting an NGRI defense in the guilt phase of the trial, that the State was ambushed by Sheppard's presentation of mental illness evidence in the penalty phase, trivialized the mental health evidence, and suggested the jurors could tell if Sheppard was mentally ill by viewing the surveillance tape of the murder. The comments precipitating Sheppard's sub-claim are as follows:

> A little bit of an ambush by Doctor Smalldon here [in not preparing a written report].
>
> . . . .
>
> [B]ecause the defendant took a, took a true-false test and because mother says that there is [sic] people in the family that did do some strange things, and because the defendant had a slight, I'm not going to bang my head, but I can tell you that I can bang it as hard as the defendant did in that accident because the defendant had a slight knock on the head that, you know, they watched him, observed him, sent him home.
>
> Because of all that, he now suffers from a mental disease or defect?
>
> . . . .
>
> [W]here on that tape does he exhibit all these symptoms that you say that he has? Where has he exhibited this flat affect where he says that there is absolutely no emotion in his voice? I believe that I heard some emotion in that voice when he went in that store.
>
> Where did he exhibit this shy, withdrawn person? Was Bobby

Sheppard shy in booking in that store with the gun, put that to the back of the head of Dennis Willhide?

Is that shyness?  When was he hallucinating?  Did he imagine that Mr. Willhide was coming at him with a knife or a gun?

. . . .

[Dr. Smalldon is a v]ery slick guy.  Knows how to slip a question when Mark [Piepmeier, prosecutor] was cross-examining him.

. . . .

[H]ow slick is it to put this doctor, this psychologist, to use their expert only in mitigation.

. . . .

They are saying that he suffered at the time of committing this offense, because of a mental disease or defect, that he lacked a substantial capacity to appreciate the criminality of his conduct, or to conform his conduct to the requirements of the law.

You know, Mr. Ranz [defense counsel] has a great problem explaining to you why that's not really not guilty by reason of insanity.

If I am on this jury, I think to myself why didn't they bring this up in the first . . . . Why was this not brought out?

. . . .

Don't you think this type of psychological testing, this type of information that you heard from Doctor Smalldon, may have found him not guilty by reason of insanity?

. . . .

But why was that not even a whisper?  Why was there not even a whisper of that defense in the guilt phase of this trial?

Because they know if they do that, we have access to the defendant.

. . . .

They don't want someone else to talk to him.

They just want Doctor Smalldon to talk to him.

. . . .

They want the unchallenged testimony of Doctor Smalldon. That's fine. You need to understand why that happened.

Doctor Smalldon's unchallenged testimony, and Judge Crush will charge you, he'll tell you that because he was offered only for mitigation, that we didn't have access to him.

. . . .

MMPI-2, it was done in October, when the doctor was first retained. He gives a little blip on the screen, uh-huh, he is schizophrenic.

. . . .

He gives the tests, sees a little blip on the screen. Well, forget about the fact that he was probably lying, let's go to the family.

. . . .

Then we listen to a litany of every conceivable relative in this defendant's family who ever had some type of cross or bad thought.

. . . .

How ludicrous. Aunt Martha was sad at Christmastime. Well, she is depressed.

His great aunt always talks to herself, she had multiple personalities. This is junk. Oh, great grandma once saw a man in a [S]tetson, she is psychotic and delusional.

. . . .

His second cousin, he thought that the police were after him once. Oh, he is paranoid. This is what he is basing one of his three prongs on that he wants to tell you that this guy is schizophrenic.

. . . .

So you're supposed to believe, based upon nobody, that this existed, this magical transformation of Bobby Sheppard from honor student, football player, has a little accident, bump on the head, boom, he is crazy.

. . . .

[T]hank God that we can't hide, or try to fool a jury about the during event [sic] because you now know what happened during that event.

. . . .

I will show you the video one more time.  You can look at it back in the jury room, too.

. . . .

This is the time that they claim he was suffering under such a severe mental illness that he could not help himself.

He is communicating, he is communicating very well with his friends.  Months before, as he plans this robbery, talking about robbing other convenient [sic] stores.  Is that delusional?  That's the act of a criminal.  That's the act of a killer.

This is the same person that Doctor Smalldon said that he would not leave his home.  He is hanging around with his friends in the neighborhood, plotting convenient [sic] stores to rob.  Is that some severely depressed withdrawn kid facing the floor?  He is out there.

What affectation does that defendant exhibit?  . . .  When he went down to Northside by himself to buy a gun, when he buys this murder weapon, is that the act of some delusional mental case?

. . . .

His discussion with his friends, did you hear anything delusional about those discussions?

. . . .

Delusional?  Give me a break.

. . . .

(The video was played for the jury.)

. . . .

You are the most important witnesses to his mental condition right there.  Don't leave your common sense at the courthouse steps.

Doctor says that oh, he has a flat affectation and that's a sign that he is schizophrenic. Means that he just talks. Didn't sound very flat in affectation in walking in that place and says freeze, mother fucker, does he? Is that the sign-off [sic] a flat affectation, excuse myself for the language. You can hear it yourself.

Goes directly to what this doctor says in contradiction, every point of it. Does that sound like somebody totally out of it? Goes right to his target. Right to Dennis Willhide.

He marches him back to the register. Is that somebody under some delusions?

. . . .

Lays Dennis back down. Cash register is open. This is the psychotic. What is he doing now? Scooping up the money as fast as he can to rob the place, just like we planned it.

Delusional? Starting to sound a little repetitious? Excuse me for that. That's what the defense wants you to believe.

. . . .

Who knows what kind of testimony that we would have heard from the defense if we didn't have the actual videotape.

. . . .

[A]fter you realize the fact that there is not a single, solitary piece of mitigation to indicate to you that he was suffering from a delusions [sic] that night, you know, where does that leave us?

. . . .

And is it presented in such a way that we cannot examine the defendant himself.

. . . .

Had he pled not guilty by reason of insanity, we would have had that option.

. . . .

[T]his doctor said if someone else did these tests, examined this defendant, they would come up with the same conclusions.

What arrogance.

. . . .

Now, you're going to go back and you're going to weigh that tiny bit of, what I submit, is absolute sham mitigation, with the enormity of what he did on August 19, 1994.

(Trial Tr. at 1173, 1177-79, 1210-15, 1218, 1220-27, 1229-30.)  The Ohio Supreme Court found the prosecutor's argument that the defense was underhanded in not advancing an NGRI defense was error, but that its own independent reweighing of the aggravating circumstances against the mitigating factors cured any prejudice flowing therefrom.  *State v. Sheppard*, 84 Ohio St. 3d 230, 239, 703 N.E.2d 286, 294-95 (1998).  This Court agrees with the state court's determination of impropriety, but notes that the prosecutor's closing argument went well beyond suggesting underhandedness on the defense counsels' part.  The prosecution not only argued that the defense was unscrupulous in its choice of presenting psychological evidence in mitigation rather than in the guilt phase, it repeatedly and adamantly argued the State had been cleverly deprived of *any* ability to evaluate, and perhaps present contradictory evidence on, Dr. Smalldon's diagnosis.  In truth, however, the prosecution was provided with all of Dr. Smalldon's raw data and could have obtained its own expert to interpret the data and rebut Dr. Smalldon's conclusions.  In addition, the prosecution accused Dr. Smalldon of being "slick" by not preparing a written report of his evaluation of Sheppard (Trial Tr. at 1210); conflated the very different standards applicable to an NGRI defense on one hand, and the mental disease or defect and catch-all mitigating factors, on the other, *id*. at 1210-11; told the jurors they were in the best position to determine Sheppard's mental condition because they had watched the videotape of the murder, *id*. at 1223; and speculated that absent the videotape, the defense would have put on false or untruthful evidence during the trial, *id* at 1225.  Moreover, since these comments were made in the prosecution's rebuttal argument, defense counsel were unable to counter them.  Also, defense counsel made numerous objections

during the prosecution's rebuttal argument, but they were overruled by the trial court.  (Trial Tr. at 1210 (two), 1211 (three), 1212, 1225, 1226 (two)).[7]  The Ohio Supreme Court's determination that the prosecutor's statements relating to Sheppard's mental disease or defect mitigating evidence were improper has not been challenged, is accorded deference, and is agreed with by this Court.  Thus, the state court's determination stands.

The prosecutor's comments on the fifth sub-claim respecting the mitigating factor of Sheppard's lack of a significant history of prior criminal convictions and delinquency adjudications appear in the transcript as follows:

> Defense wants to argue mitigation from a lack of prior record.  Has no other convictions.  We know that he conspired to rob other stores prior to this robbery.
>
> . . . .
>
> More a matter of never being caught than a lack of prior record.
>
> Never been convicted.
>
> . . . .
>
> He admits to using marijuana.  He is twice the legal limit [for blood alcohol after the 1993 car accident].  This is supposed to be this good kid who never had a problem?

(Trial Tr. at 1206-08.)  In Ohio, a capital defendant's lack of a significant history of prior criminal convictions and delinquency adjudications is a mitigating factor to be considered by the jury in the sentencing phase.   Ohio Rev. Code § 2929.04(B)(5).   Although the prosecutor improperly encouraged the jurors to consider allegations of Sheppard's prior criminal conduct in determining the appropriate sentence, he also acknowledged that Sheppard had never been convicted of a criminal offense.  The Ohio Supreme Court has previously allowed that knowledge of a capital

---

[7]The number of objections on a particular page relevant to the second sub-claim are indicated in parentheses following the page number.  Any page numbers unaccompanied by such information indicates that one objection appears on that page.

defendant's prior criminal *conduct* can diminish the potency of the defendant's lack of a significant history of criminal *convictions*. *State v. Ballew*, 76 Ohio St. 3d 244, 667 N.E.2d 369 (1996). Thus, the prosecutor's argument here was not irrelevant. While the argument pushes the envelope of propriety nearly to the bursting point, this Court cannot say it was wholly beyond the pale. Even if it were, however, the Ohio Supreme Court gave some weight to the "lack of a significant history of criminal convictions and juvenile adjudications" mitigating factor in its independent weighing, and never mentioned any alleged prior criminal conduct by Sheppard.

In his sixth sub-claim, Sheppard contends that the prosecutor improperly suggested that the mitigating factors had to outweigh the aggravating circumstances in order for the jury to return something other than a death verdict. The prosecutor argued as follows:

> [W]hen you look at the attempt by the defense to prove mitigation, even if you find some exists, in no way can that outweigh what Bobby Sheppard did on August 19, 1994.

(Trial Tr. at 1179.) The prosecutor's argument completely reverses the weighing process as it is the aggravating circumstances that must outweigh the mitigating factors, not the other way around as the prosecutor stated. The comment is unquestionably improper.

Since some of the prosecutor's statements are deemed improper, the Court must determine whether they were so flagrant that they rendered Sheppard's penalty phase fundamentally unfair. As noted above, there is a four-part inquiry employed to make such a determination: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).

The prosecutor's encouragement to the jurors that they consider a non-statutory aggravating circumstance, to wit, that the murder was horrible, cold-blooded, and brutal, may have misled the

jury in their penalty determination, but that possibility is diminished by the clear and accurate jury instructions given by the trial court prior to their deliberations. The court articulated precisely what the aggravating circumstances were, explained to the jury that those circumstances must outweigh any mitigating factors found by the jury to exist, and instructed that the result of that weighing process would determine whether Sheppard's sentence would be death or one of the life imprisonment options. In addition, the improper comment was made only once by the prosecutor, and could reasonably be seen as an unfortunate choice of words rather than a deliberate misstatement of the law. The evidence against Sheppard, particularly going to his guilt, but also to the needlessness of the murder, was substantial. Moreover, even if the prosecutor's statements were improperly argued as an aggravating circumstance, such argument would not necessarily have been improper if argued to demonstrate the absence of anything of mitigatory value in the nature and circumstances of the offense. Thus, the prosecutor's improper encouragement to the jurors that they consider the horror, cold-bloodedness, and brutality of the murder as an aggravating circumstance was not flagrant.

"[A] jury generally has confidence that a prosecuting attorney is faithfully observing his obligation as a representative of a sovereignty." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). "Because jurors are likely to 'place great confidence in the faithful execution of the obligations of a prosecuting attorney, improper insinuations or suggestions [by the prosecutor] are apt to carry [great] weight against a defendant; and therefore are more likely to mislead a jury." *United States v. Carter*, 236 F.3d 777, 786 (6th Cir. 2001) *quoting United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991). Here, the prosecutor's numerous comments suggesting defense counsel and Dr. Smalldon had resorted to trickery in presenting the psychological evidence in mitigation rather than in the penalty phase of Sheppard's trial had substantial potential to mislead the jury and prejudice Sheppard. The misleading and prejudicial effect of those comments was exacerbated by

the prosecutor's allegation that the reason for the supposed trickery was to deprive the State of access to Sheppard for psychological evaluation purposes, his explicit disparagement of the psychological evidence presented, and his encouragement to the jurors to draw their conclusions regarding Sheppard's mental state at the time of the offense from the surveillance video instead. The comments were scattered and repeated throughout fifty-seven pages of the trial transcript, and so cannot be said to have been isolated. Moreover, the prosecutor's repetition of the comments, and their exclusive and presumably strategic employment in rebuttal argument, precludes a finding that they were accidentally made. While the evidence against Sheppard at the guilt phase of trial was overwhelming, the same cannot be said of the separate penalty phase. All four of the criteria for determining whether a prosecutor's improper argument was flagrant support Sheppard's claim. In addition, no cure was effected by admonishment to the jury or by jury instructions. Although the jury was reminded at the outset that closing arguments are not evidence, that instruction was not included in the jury instructions at the conclusion of the penalty phase of trial. Furthermore, the curative effect, if any, from the trial court's reminder to the jury that argument is not evidence was diluted by the court's repeated overruling of defense objections to the prosecutor's improper argument. (Trial Tr. at 1210, 1211, 1212, 1225, 1226.)

The state supreme court did not find that Sheppard had not been prejudiced by the prosecutor's improper comments. Instead, it stated that its own independent reweighing of the aggravating circumstances against the mitigating factors cured any prejudice. Independent reweighing by a reviewing court, however, at least in the context of prosecutorial misconduct, does not cure the resulting prejudice. Instead, only curative admonishments, and in some cases jury instructions, have been acknowledged as remedies for prosecutorial misconduct in closing arguments. *See Greer v. Miller,* 483 U.S. 756, 765-67 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974); *Frazier v. Huffman*, 343 F.3d 780, 792-93 (6th Cir. 2003); *United States v.*

*Galloway*, 316 F.3d 624, 633 (6th Cir. 2003); *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002); *United*

*States v. Emuegbunam*, 268 F.3d 377, 405-6 (6th Cir. 2001); *United States v. Tocco*, 200 F.3d 401,

421-23 (6th Cir. 2000). Thus, the Ohio Supreme Court appears to have propelled the holding of

*Clemons v. Mississippi*, 494 U.S. 738 (1990) – that a jury's consideration of an invalid aggravating

circumstance may be deemed harmless error after reweighing by a reviewing court – into the

prosecutorial misconduct context. Moreover, it has been noted that in Ohio:

> [T]he jury has the power to spare the capital defendant's life, a power
> which no court can override. Anyone familiar with the imposition of
> the death penalty in Ohio realizes that the jury's power is vital to a
> capital defendant. This Court could locate no decisions in which the
> trial court or the intermediate appellate court, after re-weighing the
> aggravating circumstances and mitigating factors, concluded that the
> jury erroneously imposed the death penalty. The Ohio Supreme
> Court has on only two occasions reversed the imposition of the death
> penalty on the basis that the state had failed to prove beyond a
> reasonable doubt that the aggravating circumstances outweighed the
> mitigating factors. *State v. Claytor*, 61 Ohio St. 3d 234, 574 N.E.2d
> 472 (1991); *State v. Lawrence*, 44 Ohio St. 3d 24, 541 N.E.2d 451
> (1989).

*Lawson v. Warden, Mansfield Corr. Inst.*, 197 F. Supp. 2d 1072, 1086 (S.D. Ohio 2002).

Because the prosecutor's comments denigrating the integrity of defense counsel and Dr.

Smalldon were improper and flagrant, they violated Sheppard's right to due process of law. No

curative admonition or jury instruction negated the prejudice suffered by Sheppard as a result of the

prosecutor's improper arguments because no such admonition or instruction was given. In addition,

the state court's independent review of Sheppard's sentence could not cure the error.

In *Gall v. Parker*, 231 F.3d 265, 316 (6th Cir. 2000), the Sixth Circuit Court of Appeals

recognized that where an insanity defense is a central issue to a case, it should be expected that a

prosecutor would bring out "heavy artillery" against that defense. The court of appeals observed

the following:

> [B]ecause our is a system of law, the arsenal available to a prosecutor

70

> to achieve . . . [a] legitimate goal is limited to arguments rooted in
> properly introduced evidence and testimony rather than words and
> tactics designed to inflame passions, air unsubstantiated prosecutorial
> beliefs, and downplay the legitimacy of a legally recognized defense.
> . . . If we are to take at all seriously the Kentucky legislature's
> decision to provide insanity as a defense to murder, we cannot
> countenance the prosecutor's highly improper methods to overcome
> that defense in this case.

*Id*. The same is true of a capital sentencing scheme where the defendant's mental health evidence is the strongest of his mitigating factors. The State of Ohio has accorded Sheppard the right to present evidence of a mental disease or defect and to have that evidence fairly considered in the sentencing hearing. Sheppard was entitled to present that evidence in the penalty phase of trial without also having advanced an NGRI defense in the guilt phase. The prosecutor's highly improper arguments with respect to Sheppard's presentation of psychological evidence in only the penalty phase could serve no function other than to confuse the jury and cause them to question the integrity of the defense. Sheppard's jury was entitled to evaluate his mental health evidence as it was presented during the sentencing hearing, without the prosecutor's accusation of purposeful deceitfulness by defense counsel and Dr. Smalldon, without the prosecutor's suggestion that the defense offered truth during the trial only because the offense was captured on videotape, without the prosecutor's deliberate conflation of the mental disease or defect mitigating factor with an NGRI defense, and without the prosecutor's encouragement that the jury determine Sheppard's mental health based on the videotape instead of the "sham" evidence presented from the "slick" expert.

Even if the prosecutor's comments were not flagrant, Sheppard would succeed under the criteria for evaluating an improper, non-flagrant argument by the prosecutor. Those factors are that (1) the proof of the defendant's guilt is not overwhelming, or in the case of a sentencing hearing, the proof that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt is not overwhelming; (2) the defense counsel objected; and (3) the trial court failed to cure the

impropriety by failing to admonish the jury. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

As noted above, the AEDPA confines federal courts to granting a petitioner's request for habeas corpus relief on a claim that has been adjudicated on the merits in state court proceedings to cases in which the decision (1) was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d). It is the "unreasonable application" clause that is at issue here. The Supreme Court explained that the "unreasonable application" clause can justify habeas relief if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-8 (2000). After discussing some problems the Court perceived with the Fourth Circuit Court of Appeals' holding in *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), which held that the "unreasonable application" clause applied to situations where a state court might have unreasonably extended a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refused to extend a legal principle to a new context where it should apply, the Supreme Court explicitly declined to decide how such "extension of legal principle" cases should be treated under the AEDPA.[8] *Williams*, 529 U.S. at 408-09. The Court noted, however, that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the

---

[8]Although the Sixth Circuit has suggested that in *Williams* the Supreme Court approved the Fourth Circuit's "extension of legal principle" interpretation of the "unreasonable application" clause, the closest the Supreme Court actually got to approval in *Williams* was to say that the Fourth Circuit's interpretation "may perhaps be correct." *Williams*, 529 U.S. at 408; *Hunt v. Mitchell*, 261 F.3d 575, 580 (6th Cir. 2001). *See also Lurie v. Wittner*, 228 F.3d 113, 129 (2d Cir. 2000)(recognizing the *Williams* Court declined to answer whether a state determination may be set aside under the AEDPA if, under clearly established federal law, the state court unreasonably refused to extend the governing legal principle to a context in which the principle should have controlled).

state-court decision falls within that provision's 'unreasonable application' clause." *Id*. at 409.

After determining that "unreasonable application" meant that the state court's application of clearly established federal law was "objectively unreasonable," the Court acknowledged the difficulty of defining the term "unreasonable." *Id*. at 409-10. It distinguished an "unreasonable" application from one that is incorrect or erroneous, concluding that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. The application of law must also be unreasonable. *Id*. In summary, the Court stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Later, the Court noted that, "[i]n other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, ___ (2003), *citing Lockyer v. Andrade*, 538 U.S. 63, 65 (2003).

Here, Sheppard was deprived of a fundamentally fair penalty determination because of the prosecutor's improper and flagrant comments in his rebuttal arguments. The state appellate court's determination that the prejudice from the prosecutor's improper statements was cured by the court's independent reweighing of the aggravating circumstances against the mitigating factors was objectively unreasonable because it effectively deprived the jury of its opportunity to make the first determination as to an appropriate sentence. Where, as in Ohio, "the jury has the power to spare the capital defendant's life, a power which no court can override," correcting prosecutorial misconduct by appellate court reweighing is especially troublesome. After all, the appellate court only gets the chance to reweigh the aggravating circumstances and mitigating factors if the jury returns a

recommendation of death, in other words, after the damage has been done to the fairness of the defendant's penalty hearing, or even more appropriately, after the jury's opportunity to irrevocably spare the defendant's life has passed. Moreover, as recently as 2002, no Ohio state court decisions could be located in which the trial court or the appellate court has concluded after independent reweighing that the jury erroneously imposed the death penalty. *Lawson v. Warden, Mansfield Corr. Inst.*, 197 F. Supp. 2d 1072, 1086 (S.D. Ohio 2002).

Finally, the Court finds that although the prosecutor's argument that the mitigating factors must outweigh the aggravating circumstances was improper, it was not flagrant. The comment was isolated, and the correct weighing formula was repeatedly stated by the prosecutor (Trial Tr. at 1164, 1165, 1205), defense counsel (Trial Tr. at 1188, 1198, 1203), and the trial judge (Trial Tr. at 1233, 1236). In addition, the jury verdict form correctly stated the weighing process. (Trial Tr. at 1249.) Thus, any prejudice flowing from the prosecutor's isolated statement was cured by repetition of the correct formula, and by the jury instructions.

In summary, the Court finds the comments relating to the cold-blooded, horrible nature of Dennis Willhide's murder were improper, as were the prosecutor's statements relating to the mental disease or defect mitigating factor, and the prosecutor's misstatement of the weighing process. Of the improper statements, only those relating to the mental disease or defect mitigating factor were flagrant and uncured.

Accordingly, the writ of habeas corpus should be conditionally granted on Sheppard's fifth ground for relief.

**Sixth Ground for Relief**

In his sixth ground for relief, Sheppard claims the trial court's independent reweighing of the aggravating circumstances and mitigating factors improperly considered two duplicative

aggravating circumstances, and arbitrarily ignored or discounted the psychological evidence Sheppard presented in the penalty phase of his trial. For the reasons noted in this Court's discussion of Sheppard's second ground for relief, the claim of improper consideration of both aggravating circumstances has been procedurally defaulted. Thus, only the second of Sheppard's arguments in this ground for relief is addressed here. Respondent does not advance the defense of procedural default as to that portion of the instant ground for relief.

The mental health evidence Sheppard presented in the mitigation phase of his trial has been summarized under his fifth ground for relief and need not be repeated here. In the trial court's discussion of the evidence in its sentencing opinion, it found as follows:

> The psychologist called by the defense at the mitigation hearing gave the opinion that the defendant suffered from paranoid schizophrenia, the general symptoms of which were described to include one's alienation from one's environment and other people; one's feeling radically removed from what is going on around oneself; difficulty in appreciating the sequence of events on a day-to-day basis; desperately searching for structure; being terrified under one's surface presentation; terrified that one is going to disappear; wariness, fearing that one will be hurt; feeling extremely vulnerable; feeling helpless; decline in personal grooming; sometimes planning towards an absurd end. The psychologist further stated that schizophrenia runs in families.

> From the jury's recommendation of the death penalty it is reasonable to infer that they did not find the diagnosis of paranoid schizophrenia credible. The Court certainly did not find such testimony credible. The actions of the defendant in planning the robbery, and contemplating murder, for two to three months before the crime does not indicate a feeling of helplessness and vulnerability. The use of a disguise and the various stories told to police, first to evade responsibility and later to reduce it, do not indicate an alienation from reality. The defendant's description of the events to the police does not indicate difficulty in appreciating the sequence of events. The defendant's actions in organizing the robbery to include one, and perhaps two or three, accomplices does not indicate a feeling of vulnerability or helplessness. The defendant's commanding and brutal treatment of Dennis Willhide does not betoken a man feeling radically removed from what is going on around him, or feeling that he will be hurt. The planning to rob for money and kill for pleasure

> is a logical and real end, and not absurd, but evil. Further, there is no
> indication that the defendant was suffering from delusions, but rather
> that he knew exactly what he was doing. Additionally, the cavalier
> way in which the psychologist found mental illness in large numbers
> of the defendants [sic] family, based on a few anecdotes from
> [D]efendant's mother, cannot be given credence. In short, the facts
> of this case belie a claim of schizophrenia. Therefore, the Court finds
> that this alleged mitigating factor does not exist.

(Appendix, Volume I at 364-66.) Sheppard contends that earlier comments by the judge disparaging

his mental health evidence, and mental health as a mitigating factor generally, add further context

and legitimacy to his claim that the trial judge unfairly ignored his psychological evidence. Those

comments, uttered outside the presence of the jury but on the record and in the course of the

admission of defense exhibits, were as follows:

> This is a record about all of her [Mrs. Sheppard's] physical problems.
> Then her mental problems are not, as far as I can see, severe.
> Depression, doesn't show schizophrenia.
>
> . . .
>
> Now, we can put 75 percent of the women and teenagers in the
> United States in hospitals, not for obesity, but we could for being
> periodically depressed.
>
> . . .
>
> I don't want the jury being sympathetic to the defendant because his
> mother is a mental wreck . . . .
>
> Depressed because she has been gaining weight at a rapid rate. I
> hope that people who are depressed are not all mental cases.

(Trial Tr. at 1143-45.)

Respondent argues that the state court of appeals correctly stated that the requirement that

the trial court give consideration to the mental health mitigation evidence did not impose a similar

requirement that it give weight to the evidence. Respondent's additional argument, however, to wit

that "in 'non-weighing states' the jury or trial court is not required to do any weighing whatsoever,

but is permitted to adjudge a sentence of death based solely on the constitutionally narrowing criteria, so long as it is not precluded from considering mitigating circumstance s [sic] or evidence," (Return of Writ, Doc. No. 12 at 72) is irrelevant because Ohio is a weighing state. *Hamblin v. Mitchell*, 354 F.3d 482, 493 (6th Cir. 2003).

From the trial court's sentencing opinion it is apparent that the trial judge dismissed entirely Dr. Smalldon's testimony on Sheppard's mental health. That is not to say, however, that there is evidence that the trial judge *ignored* the evidence, as Sheppard contends. The court's discussion of the mental disease or defect mitigating factor alone comprises nearly two pages of its opinion. Thus, it is far more likely that the trial judge did exactly as he stated he had in concluding that Dr. Smalldon's testimony lacked credibility, rather than ignoring the testimony altogether. Generally, the assessment of the credibility of witnesses who testified in a state trial is beyond the scope of habeas review. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). Neither does the, in Sheppard's words, "uncontroverted" nature of Dr. Smalldon's testimony require the trial court to give it weight. In addition, the court of appeals gave some weight to Sheppard's mental disease or defect evidence, but found it outweighed by the single appropriate aggravating circumstance. *State v. Sheppard*, Nos. C-950402, C-950744 at 18 (Ohio App. 1st Dist. June 11, 1997). The Ohio Supreme Court similarly gave Sheppard's mental health evidence some weight in its own independent reweighing of the aggravating circumstances and mitigating factors. *State v. Sheppard*, 84 Ohio St. 3d 230, 241, 703 N.E.2d 286 (1998). The trial court's treatment of Sheppard's mental health evidence was not, therefore, contrary to clearly established federal law as articulated by the Supreme Court and does not warrant habeas relief.

That said, however, this Court notes that the trial court's supposition that the jury did not find Dr. Smalldon's diagnosis of paranoid schizophrenia credible was unfortunate and unnecessary. When the jury returned a death verdict, whether it found certain testimony incredible or whether it

instead found that the aggravating circumstances outweighed mitigating factors found to exist was and is unknowable. It is entirely possible that the jury believed Dr. Smalldon, but found the evidence presented through him was outweighed by the aggravating circumstances in Sheppard's case. The Supreme Court has never held that a capital jury's reasons for recommending the death sentence must mirror or parallel the trial court's reasons in its independent reweighing of the aggravating circumstances and mitigating factors. Ohio law merely requires that the two bodies, the jury and the trial court, must, after weighing the aggravating circumstances against the mitigating factors, come to the same conclusion for the death sentence to be imposed. That one of those finds the mitigation evidence lacking credibility and unavailing in establishing the existence of a mitigating factor, and the other might have credited the evidence, but found it outweighed by the aggravating circumstances is of no constitutional import. Nevertheless, speculation as to what the jury may or may not have found, in the absence of anything more telling than a verdict form recommending the death sentence, is gratuitous.

Finally, the trial judge's on-the-record comments disparaging Sheppard's mental health evidence and the mental disease or defect mitigating factor generally were indeed insensitive. Fortunately, they were not uttered in the presence of the jury. Given that fact, and this Court's discussion above, the trial judge's disparaging remarks are not of constitutional consequence.

Therefore, Sheppard's sixth ground for relief should be denied.


**Seventh Ground for Relief**

In his seventh ground for relief, Sheppard claims that the misconduct of a juror denied him a fundamentally fair trial. Respondent argues the claim is meritless.

Two weeks after the jury returned the recommendation of death but before the trial court adopted the recommendation, it came to light that prior to the penalty phase deliberations, juror

Stephen Fox had telephoned an acquaintance he believed to be a psychologist and asked for a "real boiled down" definition of paranoid schizophrenia. (Trial Tr. at 1254, 1256.) The acquaintance, Helen Jones, explained to Fox that paranoid schizophrenics are "not in touch with realty [sic]." *Id.* at 1256. Fox had mentioned the phone call to a neighbor of his who happened to be an assistant prosecutor for Hamilton County, and she repeated Fox's story to the Prosecutor's Office. *Id.* at 1254. In an in-chambers hearing on the matter, Fox admitted having made the phone call, but denied discussing it with any of the other jurors. (Trial Tr. at 1254-58.) Fox stated the phone conversation did not affect his deliberation and that he would have come to the same sentencing decision even if he had never made the phone call. *Id.* at 1255. He explained that Jones did not tell him anything he did not already know, and that he had called Jones because he needed someone to confirm his own thoughts about paranoid schizophrenia. *Id.* at 1257. Fox participated in the deliberations, but did not recall any specific discussions with the other jurors about the mental health evidence. *Id.* at 1258. Soon after the in-chambers hearing, the trial court determined there was no reason to delay imposition of sentence, and the jury's recommendation of death was adopted.

Sheppard's subsequent motion for a new trial based on the claim of juror misconduct was denied. (Appendix, Volume II at 1, 58.) On direct appeal, the court of appeals held that Fox's misconduct was obvious, that prejudice is presumed from such misconduct unless the trial judge is convinced that the improper communication did not compromise the fairness of the trial, and that the jury was able and willing to decide the case based solely on the evidence presented in court. *State v. Sheppard*, Nos. C-950402, C-950744 at 5 (Ohio App. 1st Dist. June 11, 1997). The appellate court found that the "boiled down" definition of paranoid schizophrenia was consistent with Dr. Smalldon's testimony, that all parties participated in the in-chambers hearing, that Fox stated he did not communicate what Jones had told him to the other jurors, and that the trial court was satisfied that the misconduct did not prevent a fair trial. *Id.* at 4-7. It concluded that the presumption of

prejudice had been rebutted, and the Ohio Supreme Court subsequently agreed. *Id*. at 7; *State v. Sheppard*, 84 Ohio St. 3d 230, 232-34, 703 N.E.2d 286 (1998).

At the evidentiary hearing held in connection with Sheppard's petition for habeas corpus filed in this Court, Fox denied he had contacted Jones to assist him in his sentencing decision in any way. (Evid. Hrg. Tr. at 135.) Fox acknowledged that at the time of the phone call he was not sure whether Sheppard was a paranoid schizophrenic, but stated he only phoned Jones for a definition of the term so he could understand what he was "dealing with." *Id*. at 133-34. Although his recollection was that he had already made up his mind about the appropriate sentence for Sheppard, he recognized at the evidentiary hearing that if Jones' definition had caused him to believe Sheppard was afflicted with paranoid schizophrenia, he would not have cast his vote for the death sentence. *Id*. at 135. Fox again stated that he had not mentioned the phone call or Jones' definition to any of the other jurors, and that the conversation had not biased him against Sheppard. *Id*. at 139. He did not feel that the information gained in talking with Jones caused him to consider Sheppard's psychological evidence as less worthy of his consideration. *Id*. at 140.[9]

Helen Jones also testified in the habeas evidentiary hearing. Her educational background is in education and the arts and sciences, and her career has focused mostly on development of interpersonal skills and team building for businesses and organizations. (Evid. Hrg. Tr. at 162-64.) She acknowledged that she has never been licensed as a psychologist, nor has she ever held herself out to be so licensed. *Id* at 165. She has never been charged with the responsibility of diagnosing mental illness and does not consider herself qualified to give a professional opinion on schizophrenia, paranoid or otherwise. *Id*. at 166.

---

[9]Stephen Fox's testimony was taken subject to Respondent's objection to his testifying as to how the information obtained from Helen Jones had impacted his mental process during the penalty phase deliberations. (Evid. Hrg. Tr. at 122-24.) Having determined that the objected-to testimony does not prejudice Respondent, the objection is overruled.

Jones testified that the definition of paranoid schizophrenia she provided to Fox was one she found in a general dictionary she had in her home. (Evid. Hrg. Tr. at 167.) She looked up the words "paranoid" and "schizophrenia" in her dictionary because she understood Fox to be asking about two different mental illnesses, not one. *Id*. at 170. She agreed that paranoid schizophrenia is a very complex mental illness and that the definition she provided to Fox was oversimplified, but did not believe her definition would be misleading. *Id*. at 180. Admittedly, there were many features of paranoid schizophrenia that Jones did not communicate to Fox. *Id*. at 184-89. Although she did not recall whether she read the transcript of Dr. Smalldon's testimony, Jones expressed certainty that her "boiled down" definition of paranoid schizophrenia was not inconsistent with the psychological evidence presented at trial. *Id*. at 195. Her certainty was based on her assumption that the opinions of individuals working in the same field would be consistent, "just like in the legal field." *Id*. at 196. Nevertheless, Jones acknowledged that she did not work in clinical psychology, Dr. Smalldon's field, and that she did not know how Dr. Smalldon might have described the symptoms of paranoid schizophrenia.. *Id*. at 196-97.

Defense counsel thoroughly questioned Jones on what Jones did *not* tell Fox about the mental disease of paranoid schizophrenia as it is described in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, published by the American Psychiatric Association ("DSM-IV"). (Evid. Hrg. Tr. at 184-89.) The parties do not contest that Jones' definition was incomplete. They disagree whether Jones' definition was inconsistent with the psychological testimony presented during the trial. This Court assumes, without deciding, that the definition Jones provided to Fox was inconsistent with Dr. Smalldon's testimony on paranoid schizophrenia.

As noted above, the state court of appeals observed in its opinion that prejudice is presumed from juror misconduct unless the trial judge is convinced that the improper communication did not compromise the fairness of the trial, and that the jury was able and willing to decide the case based

solely on the evidence presented in court. In other words, the prosecution must prove that there was no prejudice. Under the federal constitution, however, that proposition is simply incorrect. The United States Supreme Court has long recognized that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias," placing the burden squarely on the defendant. *Smith v. Phillips*, 455 U.S. 209, 215 (1982). Thus, for Sheppard to succeed on the instant claim, this Court must be convinced that he demonstrated to the state courts that Fox's improper communication with Jones substantially affected or influenced the jury's verdict, *Doan v. Brigano*, 237 F.3d 722, 736 (6th Cir. 2001), and that the state court's judgment to the contrary was itself contrary to, or an unreasonable application clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d). Federal statutory law also requires a presumption of correctness with respect to state court factual determinations, 28 U.S.C. § 2254(e)(1); a presumption which is strengthened when the state court has held an evidentiary hearing on the alleged juror misconduct. *See generally Remmer v. United States*, 347 U.S. 227 (1954) (remanding case to trial court for a hearing to determine whether the alleged juror misconduct was harmful to the defendant); *Gilliam v. Marshall*, 812 F.2d 1406 (6th Cir. 1987)(table)(noting that no abuse of discretion on the state trial court's part was possible because that court held an evidentiary hearing concerning the claim of juror misconduct). Moreover, the Supreme Court has observed that "if in the federal system a post-trial hearing . . . is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system." *Smith v. Phillips*, 455 U.S. 209, 218 (1982).

Sheppard has not met his burden here. Fox has never stated unequivocally that Jones' definition of paranoid schizophrenia influenced him in a way that was damaging to Sheppard's defense. In fact, Fox implicitly suggests that Jones' definition had only the potential to help

Sheppard when he testified in this Court that he would have voted against the death penalty if Jones' definition had persuaded him that Sheppard was paranoid schizophrenic. This statement, along with Fox's others that he had not communicated the "boiled down" definition to any of the other jurors, that he had already made up his mind that death was appropriate prior to his phone call to Jones, and that Jones' definition did not cause him to view the psychological evidence presented at trial differently, fails to meet Sheppard's high burden under the AEDPA. *See* 28 U.S.C. § 2254(d). Sheppard's suggestions that Fox was "uncomfortable" with the prospect of a death verdict, that the prosecutor's allegedly unfair tactics convinced Fox that a second opinion on paranoid schizophrenia was needed, and that Fox's phone call to Jones was only a part of his "investigation" (Traverse, Doc. No. 89 at 22) are not apparent in the record.

Sheppard also takes issue with the trial court's handling of the in-chambers hearing because Jones, the assistant prosecutor Fox told about the telephone call, and the other jurors were not questioned. Fox described the phone call, denied it had any bearing on his vote for the death penalty, and stated he had not mentioned his conversation with Jones to any of the other jurors. The trial court obviously found Fox's statements credible. There was simply no need to expand the *Remmer* hearing beyond the questioning of Fox. As for Sheppard's suggestion that Fox's statements were "self serving" (Traverse, Doc. No, 89 at 23), the Supreme Court has observed that:

> Respondent correctly notes that determinations made in *Remmer*-type hearings will frequently turn upon testimony of the juror in question, but errs in contending that such evidence is inherently suspect. As we said in *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), "[o]ne may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter." *Id.*, at 171, 70 S.Ct., at 523. See also *United States v. Reid*, 12 How. 361, 366, 13 L.Ed. 1023 (1852 [sic]).

*Smith v. Phillips*, 455 U.S. at 217 n.7. There is no evidence in the record to support Sheppard's

contention that Fox was evasive or cagey in his responses to the trial court's or defense counsels' questions in the *Remmer* hearing.

Having made no showing that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), or that the state trial court's resolution of the juror misconduct issue was based on an unreasonable determination of the facts in light of the evidence presented at trial, 28 U.S.C. § 2254(d)(2), Sheppard should be denied relief on his seventh ground.

**Eighth Ground for Relief**

In his eighth ground for relief, Sheppard claims the jury instructions given in the guilt phase, and the definition of reasonable doubt contained therein, were inappropriately incorporated into the penalty-phase instructions.  Respondent asserts this claim is procedurally defaulted.

Sheppard did not present the issue concerning the reasonable doubt instruction on direct appeal to either the court of appeals or the state supreme court, and it was not the basis of a claim for relief in his post-conviction relief proceedings.  The first mention of the complained-of instruction was as an underlying claim in Sheppard's Ohio R. App. Proc. 26(B) motion in which he alleged his appellate counsel were ineffective for their failure to raise the reasonable doubt instruction as error on direct appeal.  Thus, Sheppard has not preserved the issue for habeas review, except as a claim underlying his ineffective assistance of appellate counsel claim, and it is, as a free-standing claim, procedurally defaulted and should be denied.

The Magistrate Judge recommends that Sheppard's eighth ground for relief be denied.

**Ninth Ground for Relief**

In his ninth ground for relief, Sheppard claims his trial counsel provided ineffective

representation during his trial.  Included in his claim are six sub-claims, which are as follows:

> 1.  Trial counsel did not question prospective jurors about any possible racial biases;
>
> 2.  Trial counsel didn't investigate or raise a challenge to the systemic discrimination in grand jury foreperson selection for capital cases in Hamilton County;
>
> 3.  Trial counsel didn't provide all available evidence to support Sheppard's family history of mental illness;
>
> 4.  Trial counsel didn't object to "duplicative" aggravating circumstances;
>
> 5.  Trial counsels' failure to rebut baseless prosecutorial cross-examination and arguments was unreasonable, and;
>
> 6.  Trial counsel should have submitted evidence from Dr. Smalldon or another expert to show how Jones' nutshell definition of paranoid schizophrenia was misleading and inaccurate.

(Amended Petition, Doc. No 77 at 46-48.)

Respondent contends all the sub-claims except the fourth are procedurally defaulted. Respondent is correct with regard to the first sub-claim.  Sheppard raised that claim only as one underlying his ineffective assistance of appellate counsel claim in his Ohio R. App. Proc. 26(B) application for reopening.  (Appendix, Volume V at 81.)  The ineffective assistance of trial counsel claim was not raised on direct appeal or in either of Sheppard's two post-conviction relief petitions. As such, it has been procedurally defaulted.

In a similar, but not identical procedural posture are Sheppard's second, third, fifth, and sixth sub-claims.  The ineffective assistance of trial counsel claims he asserts were raised in his second or successive post-conviction relief petition, but the trial court declined to consider the petition because Sheppard "fail[ed] to satisfy the requirements of R.C. 2953.23(A)(2).  (Entry Declining to Entertain Successive Petition to Vacate, Appendix, Volume III at 295.)  On direct appeal from that

judgment, the court of appeals affirmed, and elaborated on the fatal flaws in Sheppard's second post-conviction petition. *State v. Sheppard*, No. C-000665, 2001 WL 331936 at *2 (Ohio App. 1st Dist. April 6, 2001). The appeals court explained as follows:

> Sheppard's successive petition contained no assertion that it was based upon a newly recognized federal or state right that applied retroactively to him. Therefore, in order for Sheppard to have met the first prong of R.C. 2953.23(A), he would have had to demonstrate that he was unavoidably prevented from discovering the facts upon which he had relied in presenting his claim for relief. But, where, as here, the petitioner's claims for relief could have been raised in his first post[-]conviction petition, a successive petition was insufficient to invoke the trial court's jurisdiction to entertain his claims.

> Furthermore, Sheppard's contention that he was denied the effective assistance of counsel in the preparation of his initial post[-]conviction petition is not cognizable in a successive post[-]conviction petition petition.

> . . . .

> Therefore, we overrule Sheppard's first through sixth assignments of error and affirm the trial court's dismissal of his successive post[-]conviction petition.

*Id*. The Ohio Supreme Court declined review. *State v. Sheppard*, 92 Ohio St. 3d 1445, 751 N.E.2d 483 (2001).

Recall that when a federal habeas petitioner's state court claims are denied on procedural grounds, a four-part inquiry is employed to determine whether the claims have been procedurally defaulted for habeas corpus purposes. That inquiry, articulated in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), is as follows:

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

> . . . .

> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster*

*County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under [*Wainwright v.*] *Sykes*[, 433 U.S. 72, 90-91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)] that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138. The first two of the *Maupin* factors are easily satisfied here. Ohio Rev. Code § 2953.23 governs second or successive post-conviction relief petitions. In relevant part, it provides as follows:

(A)    [A] court may not entertain . . . a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:

(1)    Either of the following applies:

(a)    The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

(b)    Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2)    The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would

87

have found the petitioner eligible for the death sentence.

The effective date of Ohio Rev. Code § 2953.23 is September 21, 1995, and Sheppard filed his second or successive post-conviction relief petition on June 20, 2000. Thus, there was at the time of Sheppard's filing a state procedural rule applicable to his second or successive post-conviction relief petition. Moreover, the state courts actually applied that procedural rule in Sheppard's case as is demonstrated by the excerpt from the court of appeals' opinion quoted above. In addition, the trial court invoked, without naming, the doctrine of *res judicata* as a procedural bar to Sheppard's second or successive post-conviction relief petition.

As for the third *Maupin* factor, the Sixth Circuit has noted that to be an independent and adequate state ground, the procedural rule must have been firmly established and regularly followed. *Mitchell v. Mason*, 325 F.3d 732, 738-39 (6th Cir. 2003) *citing Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). The rule employed by the state in Sheppard's case, Ohio Rev. Code § 2953.23(A), was firmly established and regularly followed in the state courts at the time he filed his second or successive post-conviction relief petition. *See, e.g.*, *State v. Beuke*, 130 Ohio App. 3d 633, 636, 720 N.E.2d 962 (Ohio App. 1st Dist. 1998); *State v. Mootispaw*, No. CA2000-06-017, 2001 WL 322732 at *1 (Ohio App. 12th Dist. April 2, 2001); *State v. Harris*, No. 18525, 2001 WL 109144 at *2 (Ohio App. 2d Dist. Feb. 9, 2001); *State v. Hamilton*, No. 19214, 1999 WL 1140879 at *1 (Ohio App. 9th Dist. Dec. 1, 1999); *State v. Howard*, No. 74103, 1999 WL 328720 at *2 (Ohio App. 8th Dist. May 20, 1999); *State v. Harris*, No. 98CA007050, 1999 WL 194534 at *2 (Ohio App. 9th Dist. Mar. 31, 1999); *State v. Bew*, No. 98CA007138, 1999 WL 294564 at *1 (Ohio App. 9th Dist. Mar. 24, 1999); *State v. Peeples*, No. 98 CA 24, 1998 WL 975256 at *2 (Ohio App. 4th Dist. Dec. 30, 1998); *State v. Freeman*, Nos. 73784, 73785, 73786, 73787, 1998 WL 855613 at *1 (Ohio App. 8th Dist. Dec. 10, 1998); *State v. Ferguson*, No. 97CA006976, 1998 WL 417272 at *2 (Ohio App. 9th Dist. July 15,

1998); *State v. Kahl*, No. 97CA006816, 1998 WL 193486 at *2 (Ohio App. 9th Dist. Apr. 22, 1998);

*State v. Abuhilwa*, Nos. 18444, 18620, 1998 WL 103335 at *3 (Ohio App. 9th Dist. Feb. 18, 1998);

*State v. Oliver*, No. 97CA006756, 1998 WL 65488 at *2 (Ohio App. 8th Dist. Feb. 4, 1998); *State*

*v. Velez*, No. 97CA006696, 1998 WL 15593 at *1 (Ohio App. 9th Dist. Jan. 7, 1998); *State v.*

*McMinn*, No. 2653-M, 1997 WL 578683 at *3 (Ohio App. 9th Dist. Sept. 10, 1997). In each of the

foregoing cases, the requirements of Ohio Rev. Code §2953.23(A) were not met, and the relevant

assignment(s) of error were denied on that ground. In addition, the Ohio courts have continued to

apply the statutory requirements to subsequent cases, including death penalty cases. *See State v.*

*Scott*, 91 Ohio St. 3d 1268, 1270-71, 747 N.E.2d 242 (2001); *State v. Jordan*, No. L-02-1322, 2003

WL 23167339 at *2 (Ohio App. 6th Dist. Dec. 31, 2003)(death penalty case); *State v. Anderson*, No.

21569, 2003 WL 22439802 at *2 (Ohio App. 9th Dist. Oct. 29, 2003)(death penalty case); *State v.*

*Reed*, No. 03-CA-0004, 2003 WL 22110389 at *1-2 (Ohio App. 2d Dist. Sept. 12, 2003); *State v.*

*Jalowiec*, No. 02CA008130, 2003 WL 21396681 at *3 (Ohio App. 9th Dist. June 18, 2003)(death

penalty case); *State v. Kennedy*, Nos. L-02-1117, L-02-1173, 2003 WL 21040654 at *3 (Ohio App.

6th Dist. May 9, 2003); *State v. Bies*, No. C-020306, 2003 WL 202177 at *1 (Ohio App. 1st Dist. Jan.

31, 2003)(death penalty case); *State v. McDerment*, No. 02CA008117, 2003 WL 187582 at *2 (Ohio

App. 9th Dist. Jan. 29, 2003); *State v. Sanders*, No. C-020077, 2002 WL 31127540 at *2 (Ohio App.

1st Dist. Sept. 27, 2002)(death penalty case); *State v. Lott*, Nos. 79790, 79791, 79792, 2002 WL

1265579 at *5 (Ohio App. 8th Dist. May 30, 2002)(death penalty case); *State v. Davie*, No. 2000-T-

0104, 2001 WL 1647193 at *6 (Ohio App. 11th Dist. Dec. 21, 2001)(death penalty case). Thus,

Ohio Rev. Code § 2953.23(A) was at the time of Sheppard's second or successive petition for post-

conviction relief and remains an independent and adequate state procedural rule, satisfying the third

*Maupin* requirement. Therefore, Sheppard's second, third, fifth, and sixth sub-claims are

procedurally defaulted.

In addition, insofar as the trial court relied on the doctrine of *res judicata* in its denial of Sheppard's second or successive post-conviction relief petition, that state procedural rule has also been found to be an independent and adequate state ground upon which to find a habeas petitioner's claim procedurally defaulted.  *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000), *cert. denied* 531 U.S. 1082 (2001); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994).  Thus, to the extent the trial court relied on the doctrine of *res judicata* in denying the relevant sub-claims, the sub-claims are procedurally defaulted.

Except for his third sub-claim, Sheppard has made no showing of cause and prejudice to excuse the procedural default as it relates to the present sub-claims.  (Amended Petition, Doc. No. 77 at 46-49; Merits Brief and Traverse, Doc. No. 89 at 107-9.)  Thus, the Magistrate Judge recommends the second, fifth, and sixth sub-claims be denied as they are procedurally defaulted. The Court notes, however, that in his next ground for relief, Sheppard argues that his appellate counsels' ineffectiveness accounts for his failure to raise trial counsels' ineffectiveness respecting the systemic discrimination issue in Sheppard's second sub-claim.  (Amended Petition, Doc. No. 77 at 54.)  For the reasons stated below, Sheppard has not demonstrated that his counsel on direct appeal were ineffective for not raising trial counsels' failure to challenge the alleged systemic discrimination in grand jury foreperson selection for capital cases in Hamilton County.  Thus, even though appellate counsels' ineffectiveness was not argued here as the "cause" component of the cause and prejudice excuse of a procedural default, the Court concludes that such an argument would  have been unavailing.

Arguing against the procedural default of his third sub-claim, Sheppard relies on an Ohio Supreme Court case, *State v. Walden*, 19 Ohio App. 3d 141, 493 N.E.2d 859 (1984), in which the court noted that a claim presented in a motion for new trial, as the third sub-claim was, may not be

heard in a post-conviction petition.    (Traverse, Doc. No. 89 at 109.)    The supreme court's

explanation for its conclusion was as follows:

> Although the parties and the trial court refer primarily to the granting
> of a new trial, [D]efendant has also sought relief after judgment upon
> constitutional grounds.    The basic difference between a motion for
> new trial under Crim.R. 33 and a petition for relief after judgment
> pursuant to R.C. 2953.21 is that the latter must be predicated upon
> denial or infringement of constitutional rights so substantial as to
> render the judgment void or voidable.    While such a basis may
> constitute justification for a new trial pursuant to  Crim.R. 33, only
> prejudicial error need be demonstrated in support of such a motion.
> Accordingly, relief under R.C. 2953.21 is not available where the
> defendant has litigated the issue by way of [a] motion for new trial or
> upon appeal.

*Walden*, 19 Ohio App. 3d at 146.

In context, this Court does not read the last sentence of the excerpt above as a declaration

of a procedural rule.  The Ohio Supreme Court simply made the observation that where a defendant

has failed to meet the lower burden required in a motion for a new trial, success on a post-conviction

petition, which carries a more stringent burden for defendants, is precluded as a practical matter.[10]

Thus, Sheppard's reliance on the *Walden* case does not save his third sub-claim from the procedural

default analysis above.    Consequently, the Magistrate Judge recommends its denial.

In his fourth sub-claim, which Respondent has not argued is procedurally defaulted,

Sheppard claims his trial counsel were ineffective for not objecting to the duplicative aggravating

circumstances.  The underlying claim was presented above as Sheppard's second ground for relief,

but was found to have been procedurally defaulted for the reasons stated there.  In discussing that

claim, the Court found, *inter alia*, that Sheppard had not made a showing of prejudice to excuse the

procedural default.  Since an ineffective assistance of counsel claim also requires a showing of

---

[10]It should be noted that Sheppard's argument on the third sub-claim does not contend there was trial or
appellate court error in the denial of his motion for a new trial.  Instead, he argues his trial counsel were ineffective
for failing to present all available evidence of the history of mental illness in Sheppard's family.

prejudice flowing from counsels' failure, *Strickland v. Washington*, 466 U.S. 668, 693 (1984), and no such prejudice has been demonstrated, Sheppard's fourth sub-claim is without merit.

In summary, Sheppard's first ineffective assistance of trial counsel sub-claim has been procedurally defaulted as a free-standing claim. His second, fifth, and sixth sub-claims are procedurally defaulted for the reasons set forth above. Sheppard's third sub-claim has also been procedurally defaulted, and he has not demonstrated prejudice to excuse the procedural default. Finally, his fourth sub-claim is meritless.

Sheppard's ninth ground for relief should be denied.


**Tenth Ground for Relief**

In his tenth ground for relief, Sheppard contends his appellate counsel were ineffective for not raising on direct appeal the following assignments of error:

A.  Trial court erred in excluding mitigation testimony from Mrs. Sheppard and the Sheppard family's social worker;

B.  The unanimity instruction in the penalty phase was improper;

C.  The trial judge was unable to fairly consider the mental disease or defect mitigating factor;

D.  Penalty phase instruction to jurors on the nature and circumstances of the aggravating circumstances was unconstitutional;

E.  Prosecutorial misconduct

   1.  Prosecutor misstated the law when he argued that the mitigation evidence cannot outweigh what Sheppard did;

   2.  Prosecutor misstated the law by arguing Sheppard's age was not mitigatory since he was "street smart" and knew how to buy beer and marijuana;

3.     Baseless questions and assertions in the penalty phase cross-examination and closing argument suggesting Sheppard's behavior was substance abuse related, not mental illness;

4.     Baseless penalty phase assertion that Sheppard's mild head injury could not have caused Sheppard's mental illness since no MRI or CAT scan was administered;

5.     Complete trivialization of defense mitigation evidence supporting Sheppard's mental disease or defect;

6.     Prosecutors misled the jury by arguing the State was at a disadvantage because they had no idea what mitigation evidence was going to be precluded, when all documents, reports, raw data and other records Der. Smalldon would be referring to was ordered to be provided to the prosecution;

7.     Improper penalty phase expressions of personal opinion and attacks on the defense counsel and their mitigation witness, Dr. Smalldon;

F.     Instances where trial counsels' representation was deficient and prejudicial:

1.     Trial counsels' unreasonable failure to question jurors about potential racial bias on voir dire;

2.     Trial counsels' unreasonable failure to raise a challenge to the systematic racial and gender discrimination choosing grand jury forepersons for capital cases in Hamilton County.

(Amended Petition, Doc. No. 77 at 50-56.)

Respondent asserts the defense of procedural default, based on the Ohio Court of Appeals' dismissal on procedural grounds of Sheppard's Ohio App. R. 26(B) application for reopening. Ordinarily, such would be the result, but each of Sheppard's sub-claims above were presented to the Ohio Supreme Court in his merit brief (Supplemental Appendix, Volume I, Doc. No. 37 at 24-36), and that court addressed the ineffective assistance of appellate counsel claims on their merits,

revitalizing the claims for procedural default purposes on habeas review. Thus, Respondent's defense of procedural default fails.

Sheppard's first sub-claim concerning the excluded testimony of Sheppard's mother and social worker is meritless. On direct examination of Mrs. Sheppard, defense counsel asked several questions regarding her feelings upon learning that her son was charged with aggravated murder, how it had affected her family, and whether there was anything she had not been asked about that she would like to say about her son. (Trial Tr. at 987-89.) On direct appeal, an Ohio appellate court will not consider an issue which relies upon evidence outside the record for its proof. *See State v. Cooperrider*, 4 Ohio St. 3d 226, 228, 448 N.E.2d 452 (1983)(noting that where it is impossible to determine an attorney's ineffectiveness by resort to the record, the proper procedure for presenting an ineffectiveness claim is via a petition for post-conviction relief). Here, in order for Sheppard to demonstrate the prejudice requisite to his ineffective assistance of appellate counsel claim, he would have had to submit to the court of appeals the substance of what Mrs. Sheppard would have said had she been allowed to answer defense counsels' questions. This being the case, the court of appeals would have denied relief on direct appeal. Similarly, for appellate counsel to present Sheppard's claim that the Sheppard family's social worker was erroneously precluded from testifying as to her feelings about Sheppard at the time of her testimony and anything else she would like to tell the jury would necessarily have required counsel to present the substance of the precluded testimony. Such claims are not cognizable on direct appeal in Ohio courts. *Cooperrider*, 4 Ohio St. 3d at 228. While the claims could have been raised in Sheppard's post-conviction relief proceedings, his post-conviction counsel did not do so. Sheppard has no constitutional right to effective assistance of counsel in post-conviction proceedings, and he correctly has not asserted such a claim here. Sheppard's first sub-claim should be denied.

In his second sub-claim Sheppard argues that the unanimity instruction during the penalty

phase of his trial was improper, and that his appellate counsel were ineffective for not raising the issue as error on direct appeal. As a federal claim, the underlying issue concerning the unanimity instruction in the penalty phase of Sheppard's trial is meritless, as discussed in Sheppard's fourth ground for relief. Although errors of state law are not cognizable in federal habeas corpus, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), they may, if meritorious, support a petitioner's claim that his appellate counsel were ineffective. Thus, the Court considers now whether the complained-of jury instructions were erroneous under state law so as to support his ineffective assistance of appellate counsel claim here.

The Ohio Supreme Court has stated that "[i]n Ohio, a solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors. Jurors from this point forward should be so instructed." *State v. Brooks*, 75 Ohio St. 3d 148, 162, 661 N.E.2d 1030 (1996). Sheppard's case, however, predates *Brooks*, which, in the quoted passage, was made explicitly prospective in nature. *Mapes v. Coyle*, 171 F.3d 408, 431 (6th Cir. 1999)(Siler, J., concurring in part and dissenting in part); *State v. Goff*, 82 Ohio St. 3d 123, 129, 694 N.E.2d 916 (1998). Even so, later cases have at least made the pronouncement in *Brooks* less potent. The state supreme court has upheld death sentences where the jury instruction did not explicitly require unanimous rejection of the death recommendation prior to the jury's consideration of the alternative life sentences. In fact, this Court's research reveals not one case in which the state supreme court reversed a death sentence on the failure of the trial court to give a *Brooks* instruction. *See e.g., State v. Smith*, 97 Ohio St. 3d 367, 372, 780 N.E.2d 221 (2002) (upholding death verdict where jury was instructed to return a life verdict if not all twelve agreed to recommend death); *State v.LaMar*, 95 Ohio St. 3d 181, 206, 767 N.E.2d 166 (2002)(concluding that nothing in instruction prevented the jury from considering a life sentence without first unanimously rejecting the death penalty); *State v. Yarbrough*, 95 Ohio St. 3d 227, 246, 767 N.E.2d

216 (2002)(identifying as *dictum Brooks*' suggestion that jurors be instructed that a single juror could prevent a death penalty recommendation, and finding no plain error where instruction was that the jury must recommend death if they unanimously found the aggravating circumstances outweighed the mitigating factors); *State v. Hartman*, 93 Ohio St. 3d 274, 291-92, 754 N.E.2d 1150 (2001)(holding omission of explicit instruction suggested in *Brooks* was error, but instruction given was not inconsistent with Ohio Rev. Code § 2929.03(D)(2), and finding no prejudicial error); *State v. Stallings*, 89 Ohio St. 3d 280, 294, 731 N.E.2d 159 (2000)(rejecting claim of error where trial court declined to instruct jurors that they need not unanimously reach a verdict on the death penalty before moving on to consider life, and where jurors were instructed that if they did not unanimously agree that the aggravating circumstances outweighed the mitigating factors, they should return their recommendation reflecting their decision); *State v. Madrigal*, 87 Ohio St. 3d 378, 395, 721 N.E.2d 52 (2000)(concluding that in the absence of the instruction recommended in *Brooks*, instruction that did not misstate the law was not error). Sheppard's penalty phase instructions fall into this category. True, his jury was not instructed that it could consider the life sentences available without first unanimously rejecting the death sentence, but neither were they instructed to consider, much less unanimously reject, the death sentence before considering the life sentence options. Instead, they were instructed that they must be unanimous in their verdict, which is a true statement of the law in Ohio. *State v. Jenkins*, 15 Ohio St. 3d 164, 213-14, 473 N.E.2d 264 (1984); Ohio Rev. Code § 2929.03(D)(2); Ohio R. Crim. Proc. 31(A). In addition, Sheppard's trial counsel did not request that the jury be instructed that a single juror could prevent a death sentence. Instead, counsel requested that the jury be told that if it failed to unanimously find death the appropriate sentence, it should consider one of the life imprisonment options. (Trial Tr. at 1155.) When asked by the trial court which case supported the request, defense counsel cited *State v. Springer*, 63 Ohio St. 3d 167, 586 N.E.2d 96 (1992), which relates to an instruction given to a deadlocked jury. Sheppard's trial judge

acknowledged *Springer*, then agreed to give the requested instruction if the jury could not reach a verdict. (Trial Tr. at 1156.) In addition, and for the reasons set forth in Sheppard's fourth ground for relief, *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003) provides no support for his claim.

Under the law of Ohio as it existed at the time of Sheppard's trial, in other words, pre-*Brooks*, Sheppard's claim was unlikely to succeed. Sheppard's reliance on *Springer* at trial, and on *Springer* and two cases that post-date his trial in his amended petition and traverse, namely *Brooks* and *Davis*, reveals the weakness of his argument. *Springer* involved a jury deadlock instruction, *Brooks* stated the jury could not be required to unanimously reject the death sentence before considering the life imprisonment options, and *Davis* has no precedential value, as discussed above. Moreover, *Brooks*, despite its forthright declaration that jurors should be informed that a single juror could prevent a death sentence, has not made claims such as the one asserted here by Sheppard more likely to succeed. As noted above, *Brooks* has consistently been narrowly construed by the state supreme court. Sheppard's appellate counsel cannot be ineffective for bypassing a claim that had so little likelihood of success. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). Sheppard's second sub-claim under his tenth ground for relief should be denied.

Next, Sheppard contends his appellate counsel were ineffective for not raising as error the trial judge's alleged inability to fairly consider the mental health evidence presented in the penalty phase of Sheppard's trial. Sheppard presented the underlying claim of trial court error in his sixth ground for relief here, and it was determined that the claim was unavailing. Again, appellate counsel cannot be ineffective for failing to raise a meritless claim. *Mapes*, 171 F.3d at 413. The third sub-claim of Sheppard's tenth ground for relief should be denied.

In his fourth sub-claim, Sheppard argues his appellate counsel were ineffective for their failure to raise as error on direct appeal the penalty phase instructions on the nature and circumstances of the aggravating circumstances. The underlying claim was presented in the second

sub-claim of Sheppard's fourth ground for relief, and denial of that sub-claim was recommended. For the reasons stated in the Court's discussion of the second and third sub-claims of the instant ground for relief, the Court recommends the fourth sub-claim also be denied.

In his fifth sub-claim, Sheppard contends his appellate counsel were ineffective for their failure to raise as error on direct appeal several instances of prosecutorial misconduct. First he claims his appellate counsel should have raised as error on direct appeal the prosecutor's statement that the mitigation evidence could not outweigh the murder. The comment itself was determined to have been improper in this Court's discussion of Sheppard's fifth ground for relief. Since the comment was isolated and because the prosecutor, defense counsel, and trial judge all articulated the correct weighing formula in closing arguments and the jury instructions, it was not flagrant. Had the issue been raised on direct appeal, there is little likelihood that it would have succeeded, so Sheppard's appellate counsel cannot now be said to have been ineffective for not raising the error.

Next, Sheppard contends his appellate counsel were ineffective for not raising as error on direct appeal the prosecutor's argument that Sheppard's youth was of no mitigatory value since he was "street smart," and knew how to procure marijuana and alcohol. The Ohio Supreme Court has held that the word "age" as used in Ohio Rev. Code § 2929.04(B)(4), the statute setting forth the "youth of the offender" mitigating factor, refers to chronological age. *State v. Rogers*, 17 Ohio St. 3d 174, 478 N.E.2d 984 (1985), paragraph seven of the syllabus, *rev'd on other grounds*, *Rogers v. Ohio*, 474 U.S. 1002 (1985). In *State v. Landrum*, 53 Ohio St. 3d 107, 112, 559 N.E.2d 710 (1990), however, the supreme court explained that even though the statutory reference to "youth" referred to a defendant's chronological age, a prosecutor was free to argue the offender's relative maturity in response to defense counsel's assertion that age was important and relevant. The court further observed that it has specifically recognized the importance of relative maturity in *State v. Brewer*, 48 Ohio St. 3d 50, 57, 549 N.E.2d 491, 498 (1990); *State v. Cooey*, 46 Ohio St. 3d 20, 544 N.E.2d

895 (1989), paragraph four of the syllabus; and *State v. Steffen*, 31 Ohio St. 3d 111, 128, 509 N.E.2d 383 (1987). Since Sheppard's underlying claim of prosecutorial misconduct on this point had little likelihood of success, his appellate counsel were not ineffective for failing to raise it as error on direct appeal. The Magistrate Judge recommends the instant sub-claim be denied.

In his third and fourth examples of prosecutorial misconduct undergirding his ineffective assistance of appellate counsel claim, Sheppard points to his counsels' failure to raise as error the prosecutor's suggestions that Sheppard's behavior was a result of substance abuse instead of mental illness, and that Sheppard's mild head injury could not have caused his mental illness. The prosecutor's questions during cross-examination of mitigation witnesses and comment on the root of Sheppard's apparent personality change following the 1993 automobile accident were fair. Dr. Smalldon testified that Sheppard's paranoid schizophrenia was brought on by the mild head injury Sheppard sustained in the accident. (Trial Tr. at 1067, 1077.) The prosecutor was free to inquire into other events in Sheppard's life, such as his substance abuse, and to argue an alternative cause for Sheppard's behavior to the jury. Furthermore, the prosecutor's attempt to discredit Dr. Smalldon's diagnosis of paranoid schizophrenia based on the absence of an MRI or CAT scan was of questionable success. Dr. Smalldon testified that he did not request such tests in the course of his evaluation because those tests were used to detect organic brain damage, which is neither a cause nor a symptom of paranoid schizophrenia. (Trial Tr. at 1133.) Other than the "prejudice" inherent in any competing theory or explanation for one's behavior, Sheppard cannot demonstrate that he was prejudiced by the prosecutor's inquiries into the cause of Sheppard's apparent personality change after 1993, or the observation that no MRI or CAT scan was conducted in the course of Dr. Smalldon's psychological evaluation. In closing argument, the prosecutor argued the State's alternative explanation for Sheppard's behavior and tried once again to discredit Dr. Smalldon's diagnosis of paranoid schizophrenia. Because the prosecutor's questions and argument on these

issues was neither improper nor prejudicial, Sheppard's appellate counsel cannot have been ineffective for their failure to raise them as error on direct appeal.

Sheppard's final three allegations of ineffective assistance of appellate counsel based upon prosecutorial misconduct concern the prosecutor's closing arguments relative to Sheppard's mental health evidence, Sheppard's unavailability to the prosecution for a mental health evaluation, and the "sham" mitigation put forth by an unscrupulous defense team via the testimony of "slick" Dr. Smalldon, which are described more fully in Sheppard's fifth ground for relief, above. There, the Magistrate Judge recommended Sheppard's request for a writ of habeas corpus be conditionally granted after concluding that the prosecutor's improper and flagrant comments had deprived Sheppard of a fundamentally fair penalty determination. Having shown constitutional error and prejudice therefrom respecting the underlying claim of prosecutorial misconduct, Sheppard has simultaneously demonstrated the ineffectiveness of his appellate counsel for their failure to raise as error on direct appeal the prosecutor's misconduct. To that extent, the Magistrate Judge recommends a conditional grant of a writ of habeas corpus on Sheppard's ineffective assistance of appellate counsel claim.

In his sixth sub-claim, Sheppard contends his appellate counsel were ineffective for their failure to raise as error trial counsels' ineffectiveness by failing to question potential jurors about possible racial biases they might hold, and in trial counsels' failure to challenge the alleged systemic racial and gender discrimination in the selection of Hamilton County grand jury forepersons. Both of these claims, however, would have necessitated resort to material outside the record in order for appellate counsel to demonstrate prejudice from trial counsels' failures. In the first instance, demonstrating prejudice would require showing that a race- or gender-biased individual served on Sheppard's jury, a feat that could not be accomplished without resort to evidence outside the record. In the second, in order to challenge the allegedly discriminatory selection of grand jury forepersons

in Hamilton County, either as an ineffective assistance of trial counsel claim or as a free-standing claim, Sheppard's appellate counsel would have had to produce materials demonstrating a pattern of discrimination in the selection process to show the requisite prejudice to Sheppard.  Such materials would have been outside the record of Sheppard's trial.  Therefore, Sheppard's appellate counsel were unable to bring the claim on direct appeal; had they done so, it would unquestionably have been denied by the state court of appeals.  Appellate counsel cannot be ineffective for failing to raise on direct appeal a claim that relies on evidence outside the record.  Therefore, Sheppard's sixth sub-claim should be denied.

In summary, all but one of Sheppard's sub-claims in his tenth ground for relief should be denied.  He would be entitled to a  writ of habeas corpus on his fifth sub-claim to the extent that he claims his appellate counsel were ineffective for not raising as error on direct appeal the prosecutor's trivialization of Sheppard's mental health evidence, the prosecutor's improper statements about having been unscrupulously deprived of access to Sheppard for purposes of a psychological examination, the prosecutor's suggestion that defense counsel would have put on false evidence had it not been for the videotape of the offense, and the prosecutor's highly improper denigration of Dr. Smalldon and defense counsel.  In all other respects, Sheppard's fifth sub-claim of his tenth ground for relief should be denied.

The appropriate relief for a denial of effective assistance of appellate counsel would be a new direct appeal raising the improperly omitted assignments of error.  Because the Magistrate Judge has recommended a conditional writ be granted on the underlying claim of prosecutorial misconduct, there is no need to issue a conditional writ on the one meritorious portion of the fifth sub-claim, unless the Court disagrees and declines to issue the writ on the underlying claim.

**Eleventh Ground for Relief**

In his eleventh ground for relief, Sheppard contends his rights to equal protection, due

process, and fair cross section were violated by Hamilton County's systemic discrimination in the selection of grand jury forepersons. Respondent argues Sheppard has procedurally defaulted his ground for relief.

Sheppard first raised the issue in his second or successive post-conviction relief petition as his first ground for relief. (Appendix, Volume III at 174.) The trial court declined to entertain Sheppard's successive petition, and stated that Sheppard had failed to satisfy the requirements of Ohio's second or successive post-conviction relief petition statute respecting his first ground for relief. (Appendix, Volume III at 295.) The court of appeals affirmed on the same ground, *State v. Sheppard*, No. C-000665, 2001 WL 331936 (Ohio App. 1st Dist. April 6, 2001), and the Ohio Supreme Court disallowed a discretionary appeal, *State v. Sheppard*, 92 Ohio St. 3d 1445, 751 N.E.2d 483 (2001).

The Ohio statute providing for second or successive post-conviction relief petitions allows such petitions only if either of the following applies:

> (a)    The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

> (b)    Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

Ohio Rev. Code § 2953.23(A). If a petitioner satisfies both of the foregoing requirements, he must then show by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner either guilty of the offense of which he was convicted or eligible for the death sentence. *Id*. The statute sets forth the state procedural rule applicable to Sheppard's second or successive post-conviction relief petition. *See Maupin v. Smith*, 785 F.2d 135,

102

138 (6th Cir. 1986). As is evident from the state courts' dispositions of Sheppard's successive petition, the state procedural rule was actually applied in Sheppard's case. In addition, and as noted in Sheppard's ninth ground for relief, the procedural rule was firmly established and regularly followed at the time Sheppard filed his successive post-conviction relief petition, and has continued to be regularly followed since that time, even in death penalty cases. Finally, Sheppard has not established that there was cause for his failure to raise the alleged systemic discrimination claim in his first post-conviction relief petition. Consequently, his eleventh ground for relief has been procedurally defaulted.

Sheppard also raised the systemic discrimination claim as one underlying his ineffective assistance of appellate counsel claim in his Ohio App. R. 26(B) application for reopening. Sheppard argues that the state supreme court's decision on the merits of his ineffective assistance of appellate counsel claim saves the instant ground for relief from procedural default. How that could be so, however, is mystifying. Raising a claim as one underlying an ineffective assistance of appellate counsel claim does not preserve the underlying claim for habeas review. Moreover, Sheppard's suggestion that his appellate counsels' ineffectiveness operates as cause for his procedural default is unavailing. As discussed in Sheppard's tenth ground for relief, had appellate counsel attempted to raise the systemic discrimination claim on direct appeal, the state courts would unquestionably have rejected it as one relying on evidence outside the record because such claims are not cognizable on direct appeal in Ohio. Since counsel were not ineffective, their alleged ineffectiveness cannot serve as cause for Sheppard's procedural default of the systemic discrimination claim.

Sheppard's eleventh ground for relief should be denied.


**Twelfth Ground for Relief**

In his twelfth ground for relief, Sheppard contends his Eighth and Fourteenth Amendment

rights were violated by the Ohio Supreme Court's consideration of duplicative aggravating circumstances in its independent reweighing of the aggravating circumstances and mitigating factors on direct appeal. Respondent does not argue procedural default of the claim, but contends it is meritless.

Recall from Sheppard's second ground for relief that his jury was instructed on and weighed against the mitigating factors two duplicative aggravating circumstances, that the trial court also weighed both aggravating circumstances against the mitigation evidence, that the state court of appeals found the weighing of both aggravating circumstances erroneous but not plain error, that the court of appeals weighed only one aggravating circumstance against the mitigating factors and affirmed the death sentence, and that the Ohio Supreme Court reverted to weighing both aggravating circumstances against the mitigating factors in its independent penalty review. Although Sheppard subsequently filed a motion for reconsideration in the Ohio Supreme Court, he did not argue that the court had erred in weighing both aggravating circumstances against the mitigating factors. (Appendix, Volume VI at 298.) Since a motion for reconsideration is the only procedure available in Ohio by which Sheppard could have challenged the supreme court's inclusion of both aggravating circumstances in the weighing process,[11] the present ground for relief has arguably been procedurally defaulted. In addition, the Sixth Circuit has suggested that the failure to request reconsideration in at least some circumstances might constitute a procedural default. *Rust v. Zent*, 17 F.3d 155, 159 (6th Cir. 1994)(stating that the petitioner has defaulted on some claims due in part to his failure to request reconsideration of the appellate court's decision on direct appeal). Nevertheless, since Respondent does not advance the affirmative defense of procedural default, and

---

[11]The alleged error could not be raised in a post-conviction proceeding since the Ohio Supreme Court has stated it would be inappropriate for a lower court to review a higher court's judgment for error. *See State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992). There is no legitimate way to raise the claimed error in an application for reopening, either, since the only allowable use of that process is to assert claims of appellate counsels' ineffectiveness. Ohio App. R. 26(B).

because the peculiar circumstances of the error Sheppard argues in the instant ground for relief, the Court declines to raise the procedural default *sua sponte*.  Thus, the Court turns its attention to the merits of Sheppard's claim, and considers it *de novo*.

Sheppard argues that the Ohio Supreme Court erred in weighing both aggravating circumstances against the mitigating factors in its independent sentence evaluation, and erred again in attempting to cure the prejudice caused by the misconduct of the prosecutor with its flawed reweighing.  In this Court's discussion of Sheppard's tenth ground for relief, it found the state supreme court's purported curing of the prejudice that flowed from prosecutorial misconduct was contrary to clearly established federal law as articulated by the United States Supreme Court.  Thus, no further discussion of that part of Sheppard's argument is necessary at this juncture, and the Court will confine its analysis to the alleged error committed by the state supreme court in its reweighing of the aggravating circumstances and mitigating factors.

The two aggravating circumstances included in the Ohio Supreme Court's independent sentencing evaluation were that (1) Sheppard committed the aggravated murder while he was committing aggravated robbery and was either the principal offender of the aggravated murder or committed the aggravated murder with prior calculation and design, and (2) Sheppard committed the offense for the purpose of escaping detection, apprehension, trial, or punishment for another crime committed by him.  Those aggravating circumstances are similar, and thus, duplicative.  The United States Supreme Court has distinguished, however, between duplicative aggravating circumstances and invalid aggravating circumstances, as follows:

> We have never before held that aggravating factors could be duplicative so as to render them constitutionally invalid . . . .  What we have said is that the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor.  *See Stringer v. Black*, 503 U.S. 222, 232, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).  Petitioner's argument . . . would have us reach a quite different proposition – that if two aggravating factors are

> "duplicative," then the weighing process necessarily is skewed, and
> the factors are therefore invalid.

*Jones v. United States*, 527 U.S. 373, 398 (1999).  Thus, the Ohio Supreme Court's reintroduction of both aggravating circumstances into its independent sentencing evaluation may have been contrary to state law, but it is not an error of federal constitutional magnitude.  Consequently, Sheppard's twelfth ground for relief should be denied.

**Thirteenth Ground for Relief**

In his thirteenth ground for relief, Sheppard claims he was deprived of the due process of law by the Ohio Supreme Court's approach to proportionality review of his death sentence.  These same arguments have been rejected in *Smith v. Anderson*, 104 F. Supp. 2d 773, 829-30 (S.D. Ohio 2000).  *See also Scott v. Anderson*, 58 F. Supp. 2d 767, 797-98 (N.D. Ohio 1998), *reversed in part on other grounds*, *Scott v. Mitchell*, 209 F.3d 854 (2000)(noting that "when a state appellate court expressly states that it has conducted a proportionality review, this court may not assume that the review was inadequate [or did not really occur] merely because the state court did not describe in writing all aspects of its review"); *McQueen v. Scroggy*, 99 F.3d 1302, 1333-34 (6th Cir. 1996)(stating that there is "no federal constitutional requirement that a state appellate court conduct a comparative proportionality review").  On the authorities cited, Sheppard's thirteenth ground for relief should be denied.

**Fourteenth Ground for Relief**

In his fourteenth ground for relief, Sheppard advances several arguments contending the Ohio death penalty scheme is unconstitutional.  As best the Court can discern, Sheppard's arguments are as follows:

1.  The uncontrolled discretion prosecutors in Ohio possess in determining whom to charge with a capitally eligible offense permits racially discriminatory administration of the death penalty and creates a mandatory death penalty contrary to *Woodson v. North Carolina*, 428 U.S. 280 (1976);

2.  Ohio underfunds defense counsel and does not guarantee a fair and adequate process for appellate review;

3.  Ohio's death penalty scheme requires the aggravating circumstances to be proven in the guilt phase of trial;

4.  Ohio's death penalty scheme unfairly burdens a defendant's right to a jury trial by permitting a trial judge to dismiss death penalty specifications "in the interest of justice" in the event a defendant pleads guilty or no contest to an indictment;

5.  Ohio requires submission of any presentence investigation report or psychological evaluation to the trier of fact;

6.  Ohio's proportionality review compares a defendant's death sentence only to other cases that resulted in a death sentence;

7.  Ohio's courts of appeals and supreme court have not followed the dictates of the death penalty statute respecting the mandated independent sentencing review.

Sheppard's first contention has been rejected by this Court in *Zuern v. Tate*, 101 F. Supp. 2d 948, 1002 (S.D. Ohio 2000), *reversed in part on other grounds*, 336 F.3d 478 (6th Cir. 2003), on the authority of *Gregg v. Georgia*, 428 U.S. 153 (1976). Moreover, it is not unconstitutional to require the death penalty if the state has proved beyond a reasonable doubt that aggravating circumstances outweigh mitigating factors. *Blystone v. Pennsylvania,* 494 U.S. 299, 305 (1990); *Boyde v. California*, 494 U.S. 370, 377 (1990). Ohio's death penalty scheme requires such proof and consequently does not create the kind of mandatory death penalty prohibited by *Woodson v. North Carolina*, 428 U.S. 280 (1976).

Next, Sheppard argues that the Ohio death penalty scheme is unconstitutional because defense counsel are underfunded and does not guarantee a fair and adequate process for appellate

review. Sheppard cites recent recommendations from the American Bar Association and the results of a study by the United Nations High Commissioner for Human Rights for support. The AEDPA, however, does not mention either organization, and instead restricts habeas relief to violations of federal constitutional law. Sheppard makes no such argument, except to imply that a violation of the ABA recommendations or the High Commissioner's results necessarily makes out a federal constitutional violation. Sheppard's argument, such as it is, fails to persuade this Court that habeas relief is appropriate.

Sheppard also contends Ohio's statutory scheme violates federal constitutional guarantees by permitting the aggravating circumstances to be proven in the guilt phase of trial. This argument has been rejected by this Court in *Zuern v. Tate*, 101 F. Supp. 2d 948, 1003-04 (S.D. Ohio 2000), *reversed in part on other grounds*, 336 F.3d 478 (6th Cir. 2003), on the authority of *Tuilaepa v. California*, 512 U.S. 967, 971-72 (1994).

Next, Sheppard claims Ohio's death penalty scheme unfairly burdens a defendant's right to a jury trial by permitting a trial judge to dismiss death penalty specifications "in the interest of justice" in the event that a defendant pleads guilty or no contest to an indictment. This claim, too, was rejected in *Zuern*, 101 F. Supp. 2d at 1004-05, on the authority of *Corbitt v. New Jersey*, 439 U.S. 212, 218 (1978). *Accord*, *Scott v. Anderson*, 58 F. Supp. 2d 767, 796 (N.D. Ohio 1998), *reversed in part on other grounds*, *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).

Sheppard argues that the requirement that the trier of fact be provided with any presentence investigation report or mental health evaluation requested by defense counsel in the penalty phase is unconstitutional. Although the provision of Ohio law Sheppard complains of has been described as "troubling," *Jamison v. Collins*, 100 F. Supp. 2d 647, 764 (S.D. Ohio 2000), rejection of the same claim has been affirmed by the Sixth Circuit Court of Appeals, *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000). It is rejected on the authority of *Byrd*.

Next, Sheppard claims the Ohio proportionality review of death sentences by appellate courts is contrary to the federal constitution. This Court has rejected these same arguments in *Smith v. Anderson*, 104 F. Supp. 2d 773, 829-30 (S.D. Ohio 2000). *See also Scott v. Anderson*, 58 F. Supp. 2d 767, 797- 98 (N.D. Ohio 1998), *reversed on other grounds*, *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000)(noting that "when a state appellate court expressly states that it has conducted a proportionality review, this court may not assume that the review was inadequate [or did not really occur] merely because the state court did not describe in writing all aspects of its review"); *McQueen v. Scroggy*, 99 F.3d 1302, 1333-34 (6th Cir. 1996)(stating that there is "no federal constitutional requirement that a state appellate court conduct a comparative proportionality review).

Finally, Sheppard contends the state courts in Ohio have not adhered to the statutory dictates concerning their independent sentencing review, and that such failure constitutes a violation of his federal constitutional rights. Sheppard complains that the independent sentencing analysis engaged in by the state courts is perfunctory and does not rationally distinguish a defendant deserving a death sentence from one deserving a lesser sentence. Aside from his conclusory statements, however, Sheppard provides no evidence that his allegations are factual. Habeas relief cannot be granted on such thin grounds.

For the reasons stated, Sheppard's fourteenth ground for relief should be denied.

**Fifteenth Ground for Relief**

In his fifteenth ground for relief, Sheppard argues the cumulative effect of the foregoing alleged errors entitles him to habeas relief. The Magistrate Judge has recommended that a writ of habeas corpus be conditionally granted on parts of two grounds for relief, those being his fifth and tenth grounds. Neither those errors nor any of Sheppard's other alleged errors cumulate to warrant habeas relief. Sheppard's fifteenth ground for relief should be denied.

## CONCLUSION

For the reasons stated, the Magistrate Judge recommends the writ of habeas corpus be conditionally granted on that part of Sheppard's fifth ground for relief that has been found meritorious, the condition being that the State conduct a new sentencing proceeding within 180 days from the date of final judgment. If Court rejects this recommendation, it should grant relief on that portion of the tenth ground for relief found to be meritorious, the condition being that the State conduct new appellate proceedings raising the improperly omitted assignments of error, within 180 days of final judgment.

In all other respects, Sheppard's petition for writ of habeas corpus should be denied.

June 1, 2004.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Death Penalty\Sheppard v. Bagley\Sheppard R&R as filed.wpd