IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BOBBY T. SHEPPARD, | ) | |
| | ) | CASE NO. C-1-00-493 |
| Petitioner, | ) | |
| | ) | JUDGE RICE |
| v | ) | |
| | ) | MAGISTRATE JUDGE MERZ |
| MARGARET BAGLEY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATIONS OF JUNE 1, 2004 AND
ACCOMPANYING MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS**

Respondent Margaret Bagley herein objects to that portion of the Magistrate Judge's June 1, 2004 Report and Recommendations in which the Magistrate Judge recommends the conditional grant of a writ of habeas corpus, based on the Petitioner's Fifth and Tenth Grounds.    A memorandum in support follows.

Respectfully Submitted,

**JIM PETRO (0022096)**
**Ohio Attorney General**

s/Charles L. Wille
_____
**CHARLES L. WILLE (0056444)**
**Assistant Attorney General**
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)

**COUNSEL FOR RESPONDENT**

## STATEMENT OF THE FACTS

The Ohio Supreme Court described as follows the facts and circumstances surrounding

Sheppard's arrest, trial, conviction and sentencing:

On August 27, 1994, Bobby T. Sheppard, defendant-appellant, was indicted for the August 19, 1994 aggravated robbery and murder of fifty-six-year-old Dennis Willhide.

Willhide owned the C & D Drive-thru beverage store, located in Cincinnati. On August 19, 1994, Willhide and an employee, Darren Cromwell, were working at the store. Approximately one-half hour before closing time, appellant and his fourteen-year-old accomplice, Antwan (Cory) Little, ran into the front entrance. Appellant wore dark clothing and a dark mask and had a gun. Little wore a white t-shirt pulled over his head. Little went to the cash register and tried to open it. Appellant grabbed Willhide and forced him down to the floor by the cash register. Little removed the money from the register then ran out the door. Appellant remained a few seconds longer and fired a single gunshot to the back of Willhide's head. He, too, then ran out the exit door.

In the meantime, Cromwell had escaped out the back door. He ran down the street and tried to flag down some cars. He managed to stop a taxicab. He entered the cab and asked the driver to call the police. The driver called his dispatcher and drove Cromwell back to the drive-through. While in the cab, Cromwell heard one gunshot and then saw appellant and Little run from the store.

Cromwell went back into the drive-through. He walked behind the register and saw Willhide lying face down on the floor. He ordered people out of the store (several cars had entered while Cromwell was gone). Cromwell called the police.

Police officer Daniel M. Nickum and his tracking dog, Luke, were summoned to the scene. Luke was taken to the area where Cromwell had last observed appellant and Little. He picked up their scent and followed it to appellant's nearby house. Nickum contacted more police cars, and appellant and Little were immediately arrested. The residence was secured, and a search warrant was obtained.

Inside appellant's home, the police found $114 (three $20 bills, two $5 bills, one $2 bill, and forty-one $1 bills) partly stuffed into a plastic bag and partly lying loose on a kitchen closet floor. In a bedroom near the kitchen, the police uncovered a dark blue hooded sweatshirt and a black mask under a bed.

The next day, with the assistance of Deangelo Graham, a fifteen-year-old friend of appellant and Little, the police uncovered $390 in currency and a chrome-plated .22 caliber semiautomatic pistol containing six bullets from a neighbor's bush

2

next to appellant's house.

The gun was test-fired and found to be operable. An expert testified that a cartridge casing found on the drive-through floor had been fired from this weapon. In addition, it was determined that the bullet retrieved from Willhide's brain was consistent with the bullets test-fired from the gun.

Appellant made several statements. Shortly after he was arrested and read his Miranda rights, but before he was told the reason for the arrest, he announced that he "didn't do a robbery." The second statement was made at the police station. In this version, appellant explained that he and Little had gone to the drive-through to purchase a forty-ounce bottle of beer. Willhide would not sell it to him because he was too young. Willhide then pulled out "something." Appellant thought it might be a gun, so he shot Willhide once in the head as Willhide turned away.

Appellant changed his story when challenged by police. He gave an accurate account of what had occurred as evidenced on the surveillance tape.  In his confession, he said that he "did not mean to shoot" Willhide and that he wasn't "in [his] right mind." But appellant admitted that he shot Willhide because he did not want Willhide to identify him. Appellant gave police $89, hidden in his shoe, which he said was proceeds from the robbery. Thus, together with the $114 from appellant's kitchen and the $390 from the neighbor's bush, the police recovered a total of $593.

The fifteen-year-old acquaintance, Deangelo Graham, related three conversations that he had with appellant. The first conversation took place approximately two to three months before August 19. The second occurred just a few days before the robbery and murder. The last conversation happened just minutes before the tragedy. Appellant related his intent to rob the drive-through and a BP station. Appellant wondered what it would feel like to shoot someone. In the second conversation, appellant stated that he might have to kill the man if he did not cooperate. In the last conversation, appellant was convincing a reluctant Little to go through with the plan. After the last conversation, Graham saw appellant and Little walk into the store and saw appellant grab Willhide and force him to the ground. Graham then walked away. Graham also described the gun appellant had purchased just a few days before on the streets. The description matched the gun offered into evidence.

The jury found appellant guilty as charged of aggravated robbery and aggravated murder with gun specifications. He was also convicted of death penalty specifications for murder to escape detection or apprehension for another offense, R.C. 2929.04(A)(3), and murder in the course of a robbery, R.C. 2929.04(A)(7). The jury recommended death. The trial court sentenced appellant to imprisonment for the aggravated robbery and the gun specifications, and to death for the aggravated murder. The court of appeals affirmed.

State v. Sheppard, 84 Ohio St. 3d 230, 231-232 (1998).

## APPLICABLE STANDARD OF REVIEW

Title 28 U.S.C. Section 2254(d), as amended, provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

In Williams v. Taylor,  529 U.S. 362 (2000), the United States Supreme Court addressed for the first time the Section 2254(d) standard.  Through a concurring opinion by Justice O'Connor, the Court summarized the standard as follows:

> In sum, Section 2254(d) (1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under Section 2254 (d) (1), the writ may issue only if one of the following two conditions is satisfied -- the state court adjudication resulted in a decision that (1) "was contrary to .... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts on the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-13.

Justice O'Connor also stated three important interpretive guidelines. First, under Section 2254(d)(1)'s "unreasonable application" clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." 529 U.S. at 411. Second, the phrase "clearly established Federal law, as determined by the Supreme Court," refers to the Supreme Court's holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. Id. And third, the standard requires an assessment of objective reasonableness; hence, it does not require that "all reasonable jurists" would agree that a state court decision is unreasonable. 529 U.S. at 410.

In a number of recent cases, the Supreme Court of the United States has applied Section 2254(d)'s standard of review in reversing the granting of relief by the courts of appeal. See Mitchell v. Esparza, __ U.S. __ , 123 S.Ct. 7 (2003); Yarborough v. Gentry, __ U.S. __, 124 S.Ct. 1 (2003); Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003) Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 363 (2002); Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357 (2002). In doing so, the Supreme Court has observed that "objectively unreasonable" is not the same thing as "clear error," nor may the federal court grant relief because it has a "firm conviction" that the state court's decision is erroneous. Lockyer v. Andrade, 123 S.Ct. at 1175. To grant relief under Section 2254(d)(1), a federal court may not simply find that the State court "failed to apply" the clearly established law, and then proceed to determine that the State court had erred to the petitioner's substantial prejudice. Early v. Packer, 123 S.Ct. at 363. Rather, *before* determining whether there is constitutional error, and the effect, if any, that the error had on the verdict, the federal court must *first* find that the State court's decision was "contrary to" or involved an unreasonable application of clearly established Supreme Court law. Id.

These decisions emphatically reinforce <u>Williams'</u> core holding that "unreasonable" and "erroneous" are not the same thing, even if, in the judgment of the federal court, the state court clearly erred. Moreover, the deferential standard required by Section 2254(d)(1) applies no less in capital cases. Thus, in most recently reversing a grant of the writ by the Sixth Circuit based on a claimed violation of the Eighth Amendment, the Supreme Court observed:

> In relying on the absence of precedent to distinguish our non-capital cases, and to hold that harmless-error review is not available for this type of Eighth Amendment claim, the Sixth Circuit exceeded its authority under Section 2254(d)(1). A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous. As the Ohio Court of Appeals' decision does not conflict with the reasoning or the holdings of our precedent, it is not "contrary to ... clearly established Federal law."

<u>Mitchell v. Esparza</u>, 124 S.Ct. at 11. In short, the primary question in federal habeas corpus is the reasonableness of the state court's denial of relief. Apart from this consideration, the federal court's assessment of the merit of a particular constitutional claim is irrelevant.

## **ARGUMENT**

**1.    The Magistrate Judge clearly erred in recommending a conditional grant of the writ based on the Fifth Ground.**

In his Fifth Ground in support of habeas corpus relief, Sheppard alleged that the prosecutor committed prejudicial misconduct as follows:

1.    The prosecutor told jurors to consider the brutality of the crime, the horrible cold-blooded murder, the enormity of what Sheppard had done, and the nature and circumstances of the crime as an aggravating circumstance;

2.    The prosecutor told jurors the defense was trying to "hoodwink" the jury into believing Sheppard was mentally ill, argued the mitigation evidence presented by Sheppard was a sham, claimed the State was ambushed by Sheppard's presentation of mental illness evidence in the mitigation phase rather than the guilt phase, accused the defense of being unscrupulous for doing so, repeatedly played the surveillance video of the offense during closing arguments, commenting that

Sheppard did not appear to be mentally ill in the video, and trivialized the mental illness evidence presented by Sheppard;

3.    The prosecutor argued that Sheppard's personality change was not due to mental illness, but could instead be explained by drug abuse;

4.    The prosecutor told the jury that Sheppard's youth had no mitigatory value since Sheppard was "street smart;"

5.    The prosecutor stated that Sheppard's lack of a significant criminal record was not because he was not a criminal, but rather was because he had just not gotten caught;

6.    The prosecutor argued that the mitigating factors did not outweigh the aggravating circumstances, setting the weighing process on its head.

Amended Petition, Doc. No. 77, at 28-35.

On direct appeal before the Supreme Court of Ohio, Sheppard presented the first, second,

fifth and sixth allegations of misconduct as described above.  In denying relief, the Supreme Court

of Ohio held as follows:

Prosecutorial misconduct. In Proposition of Law No. 4, appellant makes several arguments. First, appellant cites State v. Gumm (1995), 73 Ohio St. 3d 413, 653 N.E.2d 253, and State v. Wogenstahl (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, and argues that the prosecutor is restricted from making certain comments on the underlying facts of an aggravated murder. We disagree with appellant's analysis. Wogenstahl recognizes that evidence relating to the facts of the aggravating circumstances must be considered in the penalty determination.  Id. at 355, 662 N.E.2d at 321. Although, according to Wogenstahl, paragraph two of the syllabus, prosecutors cannot argue that the nature and circumstances of an offense are aggravating circumstances, the facts and circumstances of the offense must be examined to determine whether they are mitigating. R.C. 2929.04(B). Thus, a prosecutor may legitimately refer to the nature and circumstances of the offense, both to refute any suggestion hat they are mitigating and to explain why the specified aggravating circumstance outweigh mitigating factors. State v. Combs (1991), 62 Ohio St. 3d 278, 283, 581 N.E.2d 1071, 1077.

Here, for the most part, the prosecutor's sentencing argument was restrained and straightforward and dealt reasonably with the facts of the crime. The two speculative comments on what Willhide was thinking at the moment he was shot were not so egregious as to constitute prejudicial error.

Although he overstated the evidence, the prosecutor did not commit grievous

error by asserting that appellant "conspired to rob other stores prior to this robbery." The guilt phase evidence did show that appellant had purchased a firearm and had said that he planned to rob a BP station.

Appellant also contends that error occurred when the prosecutor was permitted to replay the crime scene videotape during the penalty phase. Undoubtedly, the tape served to emphasize the facts of the murder as well as the facts of the aggravating circumstance. However, the video is an objective and impartial depiction of exactly what occurred during the crime and of the aggravating circumstance, and is a better witness than any other source. Both the facts of the offense as well as those of the aggravating circumstance are relevant in the weighing process. Gumm and Wogenstahl, supra.

More troublesome, however, is the prosecutor's argument asserting that the defense was underhanded by not entering a plea of not guilty by reason of insanity. The appellant was free to enter whatever plea he wished and cannot be chastised for doing so.  Landrum, 53 Ohio St. 3d at 110, 559 N.E.2d at 717. Also, Dr. Smalldon's testimony setting forth an R.C. 2929.04(B)(3) mitigating factor did not justify an insanity plea, nor was that testimony admissible in the trial phase.  State v. Cooey (1989), 46 Ohio St. 3d 20, 544 N.E.2d 895, paragraph one of the syllabus. Nonetheless, this court's independent sentence assessment cures the effect of this sentencing error. Landrum, 53 Ohio St. 3d at 124-126, 559 N.E.2d at 729-730.

State v. Sheppard, 84 Ohio St. 3d at 238-239.

In Darden v. Wainwright, 477 U.S. 168, 181 (1986) the United States Supreme Court described as follows the standard to be applied in federal habeas corpus to claims of improper prosecutorial arguments:

...But as both the District Court and the original panel of the Court of Appeals (whose opinion on this issue still stands) recognized, it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 699 F.2d, at 1036.  The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed. 2d 431 (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  Id., at 642, 94 S.Ct., at 1871.

Darden v. Wainwright, 477 U.S. at 181.

With respect to the allegations fairly presented in state court, the Warden submits that the

Ohio Supreme Court's adjudication of Sheppard's claims did not result in a decision contrary to or involve as unreasonable application of federal law. The Ohio Supreme Court determined, first, that the prosecutor's arguments concerning the murder itself were proper under Ohio law. The definition of aggravating circumstances in Ohio, with the exception of the issue of unconstitutional vagueness, is a question of state law. Thus the Ohio Supreme Court did not misapply federal law in rejecting Sheppard's allegations. Moreover, the Ohio Supreme Court held reasonably that the prosecutor's arguments "for the most part" were fair comment on the evidence.

Second, the Ohio Supreme Court determined that to the extent they were erroneous, the prosecutor's arguments were not so egregious as to constitute prejudicial error. Although the Ohio Supreme Court did not apply expressly the constitutional standard for finding a Due Process violation, the Ohio Supreme Court's decision that no "egregious" error resulted is consistent with Darden v. Wainwright, supra, and a reasonable holding, based on the record as a whole, including the overwhelming evidence of Sheppard's guilt. See Early v. Packer, supra, 123 S.Ct. at 365 ("[The AEDPA standard] does not even require awareness of [the Supreme Court's] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."); Hough v. Anderson, 272 F.3d 878, 903-904 (7th Cir. 2001) (state court's decision "essentially" though not explicitly applied Darden factors).

Third and finally, the Supreme Court of Ohio's "cure" of any prejudice possibly caused by the prosecutor's inappropriate remarks concerning Dr. Smalldon, is consistent with and a reasonable application of Clemons v. Mississippi, 494 U.S. 738 (1990) (state appellate court properly upheld a jury-imposed death sentence, which was based in part on an invalid or improperly defined aggravating circumstance, by re-weighing the aggravating and mitigating evidence). In Clemons, the Supreme Court of the United States held explicitly that it is constitutionally permissible for state

appellate courts to use reweighing or harmless error analysis when errors have occurred in a capital

sentencing proceeding.  494 U.S. at 754.

In recommending a grant of the writ on the Fifth Ground, the Magistrate Judge conducted an

extensive de novo analysis of the arguments in question, and then concluded:[1]

> In summary, the Court finds the comments relating to the cold-blooded,
> horrible nature of Dennis Willhide's murder were improper, as were the
> prosecutor's statements relating to the mental disease or defect mitigating factor,
> and the prosecutor's misstatement of the weighing process.  Of the improper
> statements, only those relating to the mental disease or defect mitigating factor were
> flagrant and uncured.

Report and Recommendations at page 74.  With respect to the Supreme Court of Ohio's decision

relative to the allegations set forth in the Fifth Ground, the Magistrate Judge held specifically:

> The state appellate court's determination that the prejudice from the prosecutor's
> improper statements was cured by the court's independent reweighing of the
> aggravating circumstances against the mitigating factors was objectively
> unreasonable because it effectively deprived the jury of its opportunity to make the
> first determination as to an appropriate sentence.

Report and Recommendations at page 73.

The Warden respectfully submits that the Magistrate Judge erred in recommending a grant of

the writ based on his de novo determination that the prosecutor's comments concerning the mental

disease or defect mitigating factor violated Sheppard's constitutional rights.  Lockyer v. Andrade,

123 S.Ct. at 1175;  Early v. Packer, 123 S.Ct. at 363.  Moreover, the Magistrate Judge clearly erred

in finding the Supreme Court of Ohio's decision objectively unreasonable "because it effectively

deprived the jury of its opportunity to make the first determination as to an appropriate sentence."

---

[1]The Magistrate Judge agreed with the Warden that Sheppard's Fifth Ground was procedurally
defaulted, insofar as it included the third and fourth allegations of prosecutorial misconduct as
described above, due to the failure of Sheppard's appellate counsel to present them on direct appeal
to the Supreme Court of Ohio.  Report and Recommendations at page 53.  The Magistrate Judge
concluded, in his assessment of the Tenth Ground, that Sheppard's appellate counsel were not
constitutionally ineffective, in declining to present the latter allegations.  Report and

As noted above, the Supreme Court of the United States, in <u>Clemons v. Mississippi</u>, <u>supra</u>, generally and explicitly permitted state appellate courts to use appellate reweighing "when errors have occurred in a capital sentencing proceeding."  494 U.S. at 754.

For all the above reasons, the Warden respectfully objects to the Magistrate Judge's recommended grant of the writ on the Fifth Ground.

> **2.      The Magistrate Judge clearly erred in recommending a conditional grant of the writ based on the Tenth Ground.**

In his Tenth Ground, Sheppard alleged that his appellate counsel were deficient in that they "failed to raise meritorious issues which would have resulted in the reversal of his capital conviction or his death sentence."  Among these allegedly "meritorious issues" were the following:

> A.      Trial court erred in excluding mitigating testimony from Mrs. Sheppard and the Sheppard family's social worker;

> B.      The unanimity instruction in the penalty phase was improper;

> C.      The trial judge was unable to fairly consider the mental disease or defect mitigating factor;

> D.      Penalty phase instruction to jurors on the nature and circumstances of the aggravating circumstances was unconstitutional;

> E.      Prosecutorial misconduct

>> 1.      Prosecutor misstated the law when he argued that the mitigating evidence cannot outweigh what Sheppard did;

>> 2.      Prosecutor misstated the law by arguing Sheppard's age was not mitigatory since he was "street smart" and knew how to buy beer and marijuana;

>> 3.      Baseless questions and assertions in the penalty phase cross-examination and closing argument suggesting Sheppard's behavior was substance abuse related, not mental illness;

---

Recommendations at pages 98-99.

4.      Baseless penalty phase assertion that Sheppard's mild head injury could not have caused Sheppard's mental illness since no MRI or CAT scan was administered;

5.      Complete trivialization of defense mitigation evidence supporting Sheppard's mental disease or defect;

6.      Prosecutors misled the jury by arguing the State was at a disadvantage because they had no idea what mitigation evidence was going to be produced, when all documents, reports, raw data and other records Dr. Smalldon would be referring to was ordered to be provided to the prosecution;

7.      Improper penalty phase expressions of personal opinions and attacks on the defense counsel and their mitigation witness, Dr. Smalldon.

F.      Instances where trial counsel's representation was deficient and prejudicial:

1.      Trial counsel's unreasonable failure to question jurors about potential racial bias on voir dire;

2.      Trial counsel's unreasonable failure to raise a challenge to the systematic racial and gender discrimination choosing grand jury forepersons for capital cases in Hamilton County.

Amended Petition, Doc. No. 77 at 50-56.

Sheppard presented a claim of ineffective assistance of appellate counsel to the Ohio courts in an application to the Ohio Court of Appeals to reopen his direct appeal. He alleged, specifically, that his counsel were ineffective in failing to raise seven meritorious issues, which included the issues set forth in the Tenth Ground of his federal habeas corpus petition. The Ohio Court of Appeals denied Shepard's application as untimely; upon Sheppard's appeal, the Supreme Court of Ohio held that Sheppard failed to raise a "genuine issue", under the constitutional standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1884), as to whether he was deprived of the effective assistance of counsel on appeal. <u>State v. Sheppard</u>, 91 Ohio St. 3d 329 (2001).

The right to effective counsel on appeal, as defined by <u>Strickland v. Washington</u>, <u>supra</u>, requires

that an attorney be available to assist in preparing and submitting a brief to the appellate court, and to vigorously advocate the interests of the defendant.   Smith v. Murray, 477 U.S. 527, 535-536 (1986) (applying Strickland standard to attorney error on appeal);  Swenson v. Bosler, 386 U.S. 258. (1967); Anders v. California, 386 U.S. 738 (1967).  However, an appellate defense counsel does not have a constitutional duty to raise non-frivolous issues at the request of the defendant if, as a matter of professional judgment, counsel decides not to raise such issues.  Jones v. Barnes, 463 U.S. 745 (1983). Moreover, the exercise of professional judgment in "culling" out marginal claims is well recognized. In the words of Justice Jackson, as quoted in Jones v. Barnes, supra:

> "One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally.  Legal contentions, like the currency, depreciate through over-use. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error.  But receptiveness declines as the number of assigned errors increases. Multiplicity hints at a lack of confidence in any one...[E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one." Jackson, Advocacy Before the United States Supreme Court 25 Temple L.Q. 115, 119 (1951).

Jones v. Barnes, supra, at 752.

The Supreme Court of Ohio's rejection of Sheppard's claim of ineffective assistance of appellate counsel was neither contrary to nor an unreasonable application of federal law as clearly established by the Supreme Court of the United States.   In simply alleging that counsel failed to raise "meritorious issues," Sheppard presented no basis for a finding that appellate counsel was deficient in not recognizing and presenting the claims allegedly omitted.  Sheppard did not contend that one or more of the omitted issues were demonstrably stronger or more likely to result in relief than the issues actually presented.   Accordingly, the Ohio Supreme Court's rejection of Sheppard's claim is an objectively reasonable application of the controlling constitutional standard.  See Coleman v. Mitchell, 268 F.3d 417, 431 (6th Cir. 2001) (ineffective assistance of appellate counsel

claim rejected where petitioner alleged no facts which may have lent particular importance to some of the omitted claims relative to the strategic value of the claims actually raised on appeal).

The Magistrate Judge recommended a conditional grant of the writ on the Tenth Ground, "to the extent that [Sheppard] claims his appellate counsel were ineffective for not raising as error on direct appeal the prosecutor's trivialization of Sheppard's mental health evidence, the prosecutor's improper statements about having been unscrupulously deprived of access to Sheppard for purposes of a psychological examination, the prosecutor's suggestion that defense counsel would have put on false evidence had it not been for the videotape of the offense, and the prosecutor's highly improper denigration of Dr. Smalldon and defense counsel." Report and Recommendations, page 101. The Magistrate Judge did not determine that the Supreme Court of Ohio's rejection of Sheppard's claim was contrary to or an unreasonable application of federal law as clearly established by the Supreme Court of the United States.

The Warden respectfully submits that the Magistrate Judge clearly erred in recommending a grant of the writ based on his de novo determination of constitutional error. Lockyer v. Andrade, 123 S.Ct. at 1175; Early v. Packer, 123 S.Ct. at 363. Moreover, assuming that the Magistrate Judge's de novo determination can properly support habeas corpus relief, the Magistrate Judge erred in applying the constitutional standard. The Magistrate Judge failed to assess the relative strength of the omitted claims upon which he based appellate counsel's alleged ineffectiveness -- primarily, the prosecutor's attack on the defense's mental health evidence -- against the strength of the claims actually presented. In the latter regard, the Warden notes that Sheppard's appellate counsel raised on appeal the propriety of the prosecutor's description of the defense as "underhanded" in not presenting an insanity defense during the guilt phase.

For all the above reasons, the Warden respectfully objects to the Magistrate Judge's recommended grant of the writ on the Tenth Ground.

## REQUEST FOR RELIEF

The Warden therefore respectfully requests that the Court overrule the Magistrate Judge's recommendations with respect to the Fifth and Tenth Grounds, and deny Sheppard's petition for a writ of habeas corpus.

Respectfully Submitted,

**JIM PETRO (0022096)**
**Ohio Attorney General**

s/Charles L. Wille
**CHARLES L. WILLE (0056444)**
**Assistant Attorney General**
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)
Email: cwille@ag.state.oh.us

**COUNSEL FOR RESPONDENT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and accurate copies of the foregoing *Respondent's Objections* were

sent electronically, and via first-class U.S. Mail, postage prepaid, to Counsel for Petitioner this 11th

day of June, 2004, to:


Geoffrey J. Moul, Esq.,                    Timothy R. Payne
 326 S. High Street, Suite 400,            Asst. State Public Defender
Columbus, Ohio, 43215                      Office of the State Public Defender
                                           8 East Long Street, 11th Floor
                                           Columbus, Ohio, 43215
                                           Email: PayneT@opd.state.oh.us



                        s/Charles L. Wille
                        CHARLES L. WILLE (0056444)
                        Assistant Attorney General