UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Bobby T. Sheppard, | : | **Death Penalty Case** |
| | : | |
| Petitioner, | : | Case No. 1:00cv493 |
| | : | |
| -vs- | : | Judge Walter Herbert Rice |
| | : | |
| Margaret Bagley, Warden, | : | Magistrate Judge Merz |
| | : | |
| Respondent. | : | |

**PETITIONER'S MEMORANDUM IN OPPOSITION TO RESPONDENT'S
OBJECTIONS**

This Court should adopt the report and recommendation of the Magistrate and

grant the writ of habeas corpus because of prosecutorial misconduct. The objections of

the Warden should be overruled.

Respectfully submitted,

**s/Geoffrey J. Moul**
Geoffrey J. Moul (0070663)
Murray Murphy Moul + Basil LLP
326 S. High Street / Suite 400
Columbus, Ohio 43215
Telephone:  (614) 469-0400
E-mail:  moul@mmmb.com

Timothy R. Payne (0069329)
Assistant State Public Defender
Office of the Ohio Public Defender
8 E. Long Street, 11th Floor
Columbus, Ohio 43215
Counsel for Petitioner Bobby Sheppard

**TABLE OF CONTENTS**

TABLE OF CONTENTS                                                                i

TABLE OF AUTHORITIES                                                            ii

I.      Bobby Sheppard's Central Theory of Mitigation:  Paranoid        1
        Schizophrenia

II.     Rather Than Offer Rebuttal Evidence, the State Responded With    2
        Improper Attacks.

III.    The Magistrate's Analysis In Recommending the Grant of a Writ    7

IV.     The Warden's Objection                                          10

V.      The Magistrate's Decision Was Correct; In Fact, the Magistrate Could   10
        Have and Should Have Gone Farther, Finding That Additional Instances
        of Prosecutorial Misconduct Support the Grant of the Writ.

CONCLUSION                                                              22

CERTIFICATE OF SERVICE                                                  23

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Bowling v. Parker,* 344 F.3d 487 (6th Cir. 2003) ......................................... 8, 10

*Boyle v. Million,* 201 F.3d 711 (6th Cir. 2000) .......................................... 11, 15

*Bruno v. Rushen,* 721 F.2d 1193 (9th Cir. 1983) ............................................ 12

*Buchanan v. Angelone,* 522 U.S. 269, 139 L.Ed.2d 702,
118 S. Ct. 757 (1998) 8, 10 ................................... 11, 16, 19, 20, 21

*Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633,
86 L.Ed.2d 231 (1985) ......................................................... 15

*Clemons v. Mississippi,* 494 U.S. 738, 108 L.Ed.2d 725,
110 S.Ct. 1441 (1990) 9, 10 ................................................. 18, 19

*Darden v. Wainwright,* 477 U.S. 168 (1986) ....... 8, 9, 10, 11, 12, 16, 18, 19, 20

*Davis v. Mitchell,* 318 F.3d 682 (6th Cir. 2003) ............................................ 21

*Depew v. Anderson,* 311 F.3d 742 (6th Cir. 2002) ....... 8, 10, 11, 13, 15, 16, 19, 20

*Eddings v. Oklahoma,* 455 U.S. 104 (1982) ................................................ 19

*Gall v. Parker,* 231 F.3d 265 (6th Cir. 2002) .................... 8, 10, 12, 13, 14, 16

*Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197 (1977) ................................... 20

*Lockett v. Ohio,* 438 U.S. 586 (1978) ................................................. 15, 19

*McCarthy v. Bruno,* 469 U.S. 920, 105 S.Ct. 302,
83 L.Ed.2d 236 (1984) .......................................................... 12

*Mapes v. Coyle,* 171 F.3d 408 (6th Cir. 1999) ............................................ 22

*McKoy v. North Carolina,* 494 U.S. 433 (1990) ............................................. 21

*Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860 (1988) .................................... 21

*Paxton v. Ward,* 199 F.3d 1197 (10th Cir. 1999) .......................................... 20

*Penry v. Lynaugh,* 492 U.S. 302, 106 L.Ed.2d 256,
109 S.Ct. 2934 ................................................................. 19

*Skipper v. South Carolina*, 476 U.S. 1 (1986)                                      20

*State v. Brooks*, 661 N.E.2d 1030 (Ohio 1996)                                      21

*State v. Sheppard*, 84 Ohio St. 239                                                18

*United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980)                          12

*United States v. Young*, 470 U.S. 1, 84 L.Ed.2d 1, 105 S.Ct. 1038             12, 13

*U.S. v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001)                                12

*U.S. v. Dakota*, 197 F.3d 831, 828 (6th Cir. 1999)                                17

*U.S. v. Preston*, 1994 U.S. App. Lexis 25624, *10-11 (6th Cir. 1994)             12

## **STATUTES**

R.C. §2929.03(D)(2)                                                                 20

R.C. §2929.04(B)(3)                                                                  1

R.C. §2929.04(B)(7)                                                                  1

R.C. §2945.371                                                                      2

**I.**     **Bobby Sheppard's Central Theory of Mitigation:  Paranoid Schizophrenia**

During the second phase of his trial, the sentencing phase before a jury, Bobby Sheppard presented evidence in mitigation on several statutory mitigating factors, but the heart of his case in mitigation lay in his mental illness, paranoid schizophrenia, as diagnosed by Dr. Jeffrey Smalldon.  Tr. Vol. VI at 1018 - 1135.  Smalldon's testimony on Sheppard's paranoid schizophrenia was evidence to be weighed as part of the mitigation process under either R.C. §2929.04(B)(3) (at the time of the offense the offender lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to requirements of law) or R.C. §2929.04(B)(7) (any other factor relevant to whether the offender should be sentenced to death).

Well before trial began, the prosecution was aware that Sheppard's mental health would be at issue in the sentencing phase as mitigation evidence.  *See* ROW Appendix, Vol. I (Trial Court "A"), p. 48 (trial court entry of September 24, 1994 granting defense motion to employ psychologist Dr. Smalldon to assist in preparation for mitigation). And, the trial judge ordered Dr. Smalldon to turn over all of his records, including the raw data from his psychological tests, to the state in advance of trial.  ROW Appendix, Vol. I, (Trial Court "A"), p. 321; Tr. Vol. III at 554-576, Tr. Vol. VI at 1089-90. Prosecutors were then able to take those records and data and consult with their own psychologist about them.  Tr. Vol. VI at 1089-90, Tr. Vol. VII at 1266-67.  In addition, prior to trial, the prosecution was afforded access to a written report of a court-ordered psychiatric examination of the defendant conducted by Dr. William Walters of the Court Psychiatric Center.   This psychiatric examination and written report was ordered by the trial court pursuant to a suggestion of defendant's incompetence to stand trial.  *See* ROW

Appendix, Vol. I (Trial Court "A"), p. 295, 297, 306-07.   In accordance with state law, a written report of the examiner was required to be filed with the court and provided to both the prosecutor and defense counsel.  R.C. §2945.371.

## II.    Rather Than Offer Rebuttal Evidence, the State Responded With Improper Attacks.

The state offered no evidence to rebut Bobby Sheppard's illness.  It did not call an expert to rebut Dr. Smalldon's diagnosis and testimony or offer medical records to the contrary.  Rather, the state used improper tactics in an attempt to defeat Sheppard's unrebutted evidence in mitigation and encouraged the jury to disregard the evidence altogether.

Through accusation, innuendo, misstatements of law and misstatements of fact, the prosecutor encouraged the jury to find that the defense claim of paranoid schizophrenia could not be believed and was "absolute sham mitigation." *See* Tr. Vol. II at 1230.

The prosecutors encouraged the jury to discredit Sheppard's mental illness evidence based on the repeated accusation that the use of the mental illness evidence as mitigation rather than as an NGRI defense was an ambush, designed to deprive the prosecutors of the ability to evaluate and offer evidence contradicting Smalldon's diagnosis of Sheppard.  The prosecutor's claim of underhanded tactics started in the initial penalty phase closing argument, where the prosecutor accused the defense and Dr. Smalldon of attempting to ambush the state by not preparing a written report:

> We also known [sic] from Doctor Smalldon that, although in a normal case, he prepares a report ahead of time that both sides get, both sides can look at, both sides can ask him about, he didn't do that in this case.  A little bit of ambush.

2

Tr. Vol. VII at 1173.[1]

These assertions of underhandedness then continued by innuendo in the state's final closing, where the prosecutor misstated both the fact that it did not have access and the law on whether it was entitled to access to the defendant for a mental health examination:

> [D]id the state have access to the defendant? I don't know. He (Dr. Smalldon) knows. He knows. He doesn't make a report. You know, when I said in opening statement to you that I have no idea what mitigation that he is going to bring in, I had not [sic] idea. I heard it with you. I sat there, took notes. That's the first time.

Tr. Vol. VII at 1227.

The assault on the credibility of Smalldon and the right of the defendant to put mental illness in mitigation culminated when the prosecutor expressly and through innuendo railed that Dr. Smalldon and defense counsel's presentation of mental illness as a mitigating factor (rather than an NGRI defense) was an unscrupulous tactic intended to keep the state from exposing Sheppard's mental illness as a fraud:

> DETERS: Doctor Smalldon…Very slick guy… I want this jury to know how slick it is to put this doctor, this psychologist, to use their expert only in mitigation.
>
> MR. RANZ (defense counsel): An objection, Your Honor.
>
> THE COURT: Overruled. Argument.
>
> MR. DETERS (prosecutor): We have no right to examine him for his mental condition, none at all, if they only used it in mitigation. Think about it…You know, Mr. Ranz has a great problem explaining to you why that's not really not guilty by reason of insanity. If I am on this jury, I think to

---

[1] In fact, Smalldon said only that he normally prepared expert reports in cases where he testifies as to the *competency* of a defendant. Tr. Vol. VI at 1098.

myself why didn't they bring this up in the first (phase of trial) -

MR. CRISCI (defense counsel):  Objection, if the Court pleases.

THE COURT:  Overruled.

MR. DETERS:  Why was this not brought out?…Don't you think this type of psychological testing, this type of information that you heard from Dr. Smalldon, may have found him not guilty by reason of insanity?

MR. CRISCI:  Objection.

THE COURT:  Overruled.

MR. DETERS:  But why was that not even a whisper? Why was there not even a whisper of that defense in the guilt phase of this trial?  Because they know if they do that, we have access to the defendant.

MR. RANZ:  There is an objection, Your Honor, to that.

THE COURT:  Overruled.

MR. DETERS:  … They (defense counsel) don't want that to happen.  They don't want someone else to talk to him. They just want Doctor Smalldon to talk to him.

MR. CRISCI:  Objection.

THE COURT:  Overruled.  This is argument.

MR. DETERS:  That's fine.  Thank you, Judge.  That's fine.  They want the unchallenged testimony of Doctor Smalldon.  That's fine.  You need to understand why that happened.  Doctor Smalldon's unchallenged testimony, and Judge Crush will charge you, he'll tell you that because he was offered only for mitigation, that we didn't have access to him.

Tr. Vol. VII at 1210 - 1212.

4

The prosecutors then continued to inject their personal beliefs that the entire defense strategy of putting the mental illness in mitigation was dishonest and that the alleged sandbagging suggested that Sheppard or the defense counsel would have lied had the state not had a videotape:

> MR. DETERS:  Who knows what kind of testimony that we would have heard from the defense if we didn't have the actual videotape.
>
> MR. RANZ:  Objection.
>
> THE COURT:  Proceed.  Go ahead.
>
> MR. DETERS:  I'm sure that he would have been seeing ghosts everywhere…You have a defendant who desperately wants you to believe that he is mentally ill with little or no proof.  And it is presented in such a way that we cannot examine the defendant himself…

Tr. Vol. VII at 1226.

The state then tried to bolster the claim of ambush, and that therefore the Smalldon testimony could not be believed because it was untested, by appealing to the jury's ignorance and asserting personal opinions.   For example, using nothing more than personal beliefs, the prosecution challenged the mental health tests relied on and performed by Smalldon in making his diagnosis: "He was asked is there some type of validity scale built into that? He said yes, there is L scale, known as the lie scale.  *I don't put much validity into that*."  Tr. Vol. VII at 1174.

And still later, again relying on mere personal opinions of what tests measure and the ignorance of the jury, the prosecutor minimized the effectiveness of the tests and the scope of the evaluation performed to complete Dr.  Smalldon's diagnosis.  "Let's go through the three things [relied on by Smalldon in making his diagnosis.  First] MMPI 2, it

was done in October, when the doctor was first retained.  He gives a little blip on the screen, uh huh, he is schizophrenic." Tr. Vol. VII at 1213.

The prosecutor then attacked Smalldon's theory that a head injury could trigger a mental illness with nothing more than personal belief that such a theory was bogus:

> The bottom line is . . . Smalldon made a great leap to say that because the defendant took a true false test and because mother says that there is people in the family that did do some strange things and because the defendant had a slight, *I'm not going to bang my head, but I can tell you that I can bang it as hard as the defendant did in that accident because the defendant had a slight knock on the head,* that you know, they watched him, observed him, sent him home. Because of all that, he now suffers from a mental disease or defect?

Tr. Vol. VII at 1178.

And, without any evidentiary foundation on which to challenge what source of medical history a psychologist should and should not rely upon when diagnosing mental illness, the prosecutor injected his personal opinion that Smalldon's diagnosis was not reliable because Smalldon relied on testimonials from family members:

> So he talks to the family…Give me what is it that he needs to ask the family about. . . the mother is depressed . . . One of the sisters is depressed . . .Has this doctor ever seen one medical record . . .How ludicrous.  Aunt Martha was sad at Christmas time.  Well, she is depressed.  His great aunt always talks to herself . . . This is junk.

Tr. Vol. VII at 1216.

Finally, laying the foundation that Smalldon's diagnosis could not believed because the state had been ambushed and therefore no second opinion was available, the prosecutors then appealed to the ignorance of the jury by asking the jury to "see for themselves" that Sheppard was not paranoid schizophrenic by watching the video.  Tr.

Vol. VII at 1221-1225.  In reality, however, the only evidence in the record on whether the jury had the expertise to diagnosis Sheppard by "seeing for themselves" was that from Smalldon, who offered unrebutted testimony that a snapshot of a person based by the untrained eye may not suggest paranoid schizophrenia.  Tr. Vol. VI at 1102 ("there would be no way to tell one way or the other from that videotape what the mental condition of Mr. Sheppard might have been at the time"), Tr. Vol. VI at 1102-1103 (nothing in videotape inconsistent with paranoid schizophrenia), Tr. Vol. VI at 1060 (diagnosis typically involves evaluation for look for two of five symptoms), Tr. Vol. VI at 1082 ("many aspects of the interlife or the internal world of people with severe mental illness are, as you would imagine, not directly accessible to view").

## III.    The Magistrate's Analysis In Recommending The Grant Of A Writ

In Petitioner's Fifth Claim For Relief, Sheppard alleged the following as the first, second, fifth and sixth allegations supporting the claim for relief:

> 1. The prosecutor told jurors to consider the brutality of the crime, the horrible cold-blooded murder, the enormity of what Sheppard had done, and the nature and circumstances as an aggravating circumstance;
>
> 2. The prosecutor stated that Sheppard's lack of a significant criminal record was not because he was not a criminal, but rather because he had just not gotten caught;
>
> 5. The prosecutor told jurors the defense was trying to "hoodwink" the jury into believing Sheppard was mentally, ill, argued the mitigation evidence presented Sheppard was a sham, claimed the State was ambushed by Sheppard's presentation of mental illness evidence in mitigation phase rather than the guilt phase, accused the defense of being unscrupulous for doing so, repeatedly played the surveillance video of the offense during closing arguments, commenting that Sheppard did not appear to be mentally ill in the video, and trivialized the mental illness evidence presented by Sheppard;

6. The prosecutor argued that the mitigating factors did not outweigh the aggravating circumstances, setting the weighing process on its head.

Amended Petition, Doc. 77, at 28-35.

The Magistrate found these allegations had been properly raised in the state court and thus were not procedurally defaulted. Report and Recommendations at 42 (hereinafter referred to as "R&R"). The Warden does not object to that finding and in fact states in its objection, "[O]n direct appeal before the Supreme Court of Ohio, Sheppard presented the first, second, fifth, and sixth allegations of misconduct." Obj. at 7. Instead, the State objects to the substantive analysis by the Magistrate.

Over the span of 22 pages, the Magistrate analyzed the Petitioner's Fifth Claim for relief. R&R at 52-74. The state does not object to a single statement of the factual record set forth by the Magistrate, so Petitioner will not recite the R&R at length here.

To paraphrase, the Magistrate made the following findings:

First, the Magistrate found that standards set forth in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), and *Buchanan v. Angelone*, 522 U.S. 269, 276, 139 L.Ed.2d 702, 118 S.Ct. 757 (1998), govern claims of prosecutorial misconduct, as applied by the Sixth Circuit in *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003), R&R at 53, *Depew v. Anderson*, 311 F.3d 742 (6th Cir. 2002), R&R at 53-54, and *Gall v. Parker*, 231 F.3d 265, 316 (6th Cir. 2000), R&R at 70-71.

Second, the Magistrate adopted the state court's finding that the prosecutors engaged in misconduct by attacking and accusing defense counsel and Dr. Smalldon of engaging in trickery, which was exacerbated by improperly calling for jurors to "see for themselves" whether Sheppard was paranoid schizophrenic. R&R at 65-66, 69. The Magistrate thoroughly analyzed and recited the improper, baseless accusations of trickery

8

and sandbagging, the speculation that the defense would have put on untruthful evidence if a video did not exist, and the conflation of the standards of NGRI on the one hand and mental disease catch all mitigating factors on the other, which occurred over Defendant's objections in rebuttal, without the opportunity of defense counsel to counter. R&R 65-66. The Magistrate also found that the prosecutors engaged in misconduct by arguing that "mitigating factors must outweigh the aggravating circumstances" and encouraging the jury to weigh the "horrible, cold-blooded" and brutal nature of the killing. R&R at 59, 74.

Third, the Magistrate applied the analytical structure of *Darden v. Wainwright* and found that the attacks on Smalldon and defense counsel "were flagrant, extensive, and had the substantial potential to mislead the jury and prejudice Sheppard." R&R at 68-74. In so doing, the Magistrate concluded that the state supreme court unreasonably applied the U.S. Supreme Court decision in *Clemons v. Mississippi,* 494 U.S. 738, 752, 108 L.Ed.2d 725, 110 S.Ct. 1441 (1990), to purportedly "cure" the prosecutorial prejudice through appellate "reweighing of the evidence," because to apply *Clemons* in the context of prosecutorial misconduct in Ohio "would effectively deprive the jury of its opportunity to make the first determination as to the appropriate sentence . . .[because in] Ohio 'the jury has the power to spare the capital defendant's life, a power no court can override'…[and reweighing therefore necessarily fails to cure because they come] 'after the damage has been done to the fairness of Defendant's penalty phase hearing.'" R&R at 73.

Finally, the Court found that the prosecutor's improper argument that "mitigating factors must outweigh the aggravating circumstances" and improper encouragement to weight the "horrible, cold-blooded" and brutal nature of the killing were not prejudicial.

## IV.    The Warden's Objection

The Warden lodged a very narrow objection to the R&R on the Fifth Ground for Relief.  Indeed, it is not until the end of the 10th page of its "Objections" memorandum that the Warden explains what its objection is to the Report and Recommendation, and then it states its objection on one ground:

> The Warden respectfully submits that the Magistrate Judge erred in recommending a grant of the writ based on his de novo determination that the prosecutor's comments concerning the mental disease or defect mitigating factor violated Sheppard's constitutional rights.  (citations omitted).  Moreover, the Magistrate clearly erred in finding the Supreme Court of Ohio's decision objectively unreasonable "because it effectively deprived the jury of its opportunity to make the first determination as to an appropriate sentence."  As noted above, the Supreme Court of the United State in *Clemons v. Mississippi*, supra, generally and explicitly permitted state appeallate courts to use appellate reweighing "when errors have occurred in a capital sentencing proceeding." (citation omitted).

## V.    The Magistrate's Decision Was Correct.[2]

The Magistrate recommended that standards set forth in *Darden v. Wainwright* and *Buchanan v. Angelone* govern claims of prosecutorial misconduct, as applied by the Sixth Circuit in *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003), R&R at 53, *Depew v. Anderson*, 311 F.3d 742 (6th Cir. 2002), R&R at 53-54, and *Gall v. Parker*, 231 F.3d 265, 316 (6th Cir. 2000), R&R at 70-71.  As set forth by the Magistrate, to be cognizable under

---

[2] Sheppard has filed limited objections to the R&R, including the assertion that the Court should have concluded that other examples of prosecutorial misconduct further supported the grant of the writ.  Rather than brief the issue of misconduct separately, those examples are referenced herein.

*Darden*, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. Similarly, as correctly found by the Magistrate, the Court must first inquire as to whether the statements were improper and then consider four factors in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Prejudice exists when a prosecutor acts so egregiously so as to "effectively 'foreclose the jury's consideration of . . . mitigating evidence.'" *Buchanan v. Angelone*, 522 U.S. 269, 276, 139 L. Ed. 2d 702, 118 S. Ct. 757 (1998); *Depew v. Anderson*, 311 F.3d 742 (6th Cir. 2002).

The Warden does not take issue with the Magistrate's recommendation of those legal standards for determining prosecutorial misconduct in habeas. [3] Those standards apply.

The Magistrate also correctly found that the Supreme Court of Ohio "did not find that Sheppard had not been prejudiced." R&R at 69. The Ohio Supreme Court found that "sentencing error" due to prosecutorial misconduct did exist but was somehow "cured" on appeal. Indeed, the Supreme Court's use of the phrase "sentencing error" that needed "curing" indicates that the Supreme Court of Ohio in fact found prejudice. The Warden does not take issue with any of this (although on page 9, in the middle of the

---

[3] Indeed, the Warden explicitly concedes that on habeas review, claims of prosecutorial misconduct must be reviewed under the Supreme Court standards of *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Resp. Obj. at 8.

page, when reciting the background, the Warden does wrongly state that the Supreme Court concluded the misconduct was not "prejudicial").

In any event, given that the Supreme Court of Ohio at a minimum "did not find that Sheppard had not been prejudiced" (and in fact seemingly indicated that prejudice did exist which needed curing), it was incumbent upon the Magistrate to recite the record and apply the standards of *Darden*. Of course, the *Darden* analysis requires a review of whether there had in fact been prejudice. And, the Magistrate correctly applied *Darden* and found unmistakable prejudice given the improper attacks on the defense and repeated appeals to juror ignorance to encourage the jurors to ignore the evidence. R&R at 65-66, 70-71, 73-74.

The United States Supreme Court and the Sixth Circuit have repeatedly found that it is improper for counsel to make personal attacks on an opposing advocate. *United States v. Young*, 470 U.S. 1, 9 (1985); *see also, U.S. v. Preston*, 1994 U.S. App. Lexis 25624, * 10-11 (6th Cir. 1994) (finding that the statement that defense counsel is selling a "bill of goods" and the defense counsel is "flim flamming" the jury are improper); *U.S. v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001) (ad hominem attacks on opposing counsel are plain error); *United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980) (prosecutor implied that defendant's lawyer helped destroy evidence); *Bruno v. Rushen*, 721 F.2d 1193 (9th Cir. 1983); *McCarthy v. Bruno*, 469 U.S. 920, 105 S. Ct. 302, 83 L. Ed. 2d 236 (1984) (prosecutor suggested that defendant's hiring counsel proved his guilt and that all criminal defense counsel lie and distort facts). Likewise, improper comments include the misstating of evidence by prosecutors. *Gall v. Parker*, 231 F.3d 265, 312-313 (6th Cir.

2000).   Improper comments also include statements based on prosecutors' personal

beliefs, not evidence.  *Id*. at 312.    Courts frown upon such statements for two reasons:

> …such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on the
> basis of the evidence presented to the jury; and the
> prosecutor's opinion carries with it the imprimatur of the
> Government and may induce the jury to trust the
> Government's judgment rather than its own view of the
> evidence.

*United States v. Young*, 470 U.S. 1, 18, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985).

Indeed, this Court need look no further than the recent decision in *Gall v. Parker,* 231

F.3d 265 (6th Cir. 2000) and *Depew v. Anderson*, 311 F.3d 742 (6th Cir. 2000) to find

cases where the Sixth Circuit found prosecutorial misconduct based on facts virtually

indistinguishable from Sheppard's trial.

For example, in *Gall*, the Sixth Circuit granted habeas relief because the trial

prosecutor engaged in a nearly identical strategy in assaulting the use of a mental illness

defense by misstating the law and the facts and by attacking the credibility of the expert

and the defense.  *Gall v. Parker,* 231 F.3d 265 (6th Cir. 2000).  The prosecutor in *Gall*

improperly downplayed the legitimacy of recognized tools for diagnosing mental illness

by using what the Sixth Circuit referred to as "know-nothing appeals to ignorance" of

jurors and "belittl[ing] the tests [of ] Dr.[s]:"

> For instance, the Commonwealth mocked Dr. Noelker's
> use of a "House, Tree Person Test" to show insanity as
> opposed to the Commonwealth's evidence of a "smoking
> gun."  He asked: "isn't that a convenient time to go into a
> [schizophrenic state]?"…At the same time, the prosecutor
> minimized the testimony of Drs. Noelker and Toppen that
> Gall could appear both calm and sane to an "untrained
> observer" even if examinations and tests revealed that he

> was insane or severely mentally ill:  "He may look sane, but folks, he isn't.  Now they are telling us folks, 'you can't look and judge for yourself.'" He then argued to the jury that because Gall appeared intelligent at trial, he must be sane, and he must have been sane on April 4.

*Gall* at 314 (citations omitted).

Likewise, the prosecutor in *Gall* exacerbated the prejudice by injecting his personal beliefs as to the credibility of test results and of witnesses.  The prosecutor inappropriately stated:

> For instance, the prosecutor declared in closing that he was "not convinced"…he stated that "I think you can probably be skeptical of" the results of  intelligence and psychiatric tests…Similarly, he clearly expressed his personal belief about the credibility of key witnesses [including the testifying doctors]. Of Dr. Noelker, the doctor who had thoroughly examined Gall, the prosecutor stated that "I have known him for along time and I know he is [a fine man]."  He then declared that Dr. Noelker was "a man of compassion" whose beliefs  "slant[ ] his opinions" . . .He also stated that "I thought" aspects of Dr. Noelker's and Dr. Toppen's testimony were "really unusual, really unique."

*Gall* at 312 (citations omitted).

Accordingly, the Court in *Gall* granted a writ of habeas corpus based on prosecutorial misconduct:

> In sum, facing Gall's considerable evidence of insanity and EED, counsel for the Commonwealth chose not to rebut that evidence directly.   Instead, he expressed his personal belief as to the weakness and partiality of Gall's expert witnesses' testimony, and he mischaracterized crucial aspects of that testimony. He disparaged the very use of an insanity defense as the "last line of defense" and the "M1 Rifle"; he belittled the medical and psychological tools used to support such a defense; and he equated the doctors' testifying about Gall's condition to three blind men "asked to identify an elephant"--"you can imagine the bizarre opinions which they got back." J.A. at 1589. He then pleaded with the jury not to let Gall loose through the

insanity defense. In addition to having no doubt that these
tactics were improper, we find that they easily satisfy the
criteria of "flagrancy" laid out in *Boyle*. They clearly
misled the jury and prejudiced Gall's defense of insanity.
The comments were not accidental or isolated, permeating
the Commonwealth's closing argument as well as other
portions of the trial. And they involved the central issue of
the case. Moreover, as explained infra, the total strength of
the evidence rebutting Gall's insanity defense was weak at
best, not to mention improperly presented. After a close
review of the record, we find that the Commonwealth's
misconduct was sufficiently egregious to render the entire
trial fundamentally unfair.

*Gall* at 315.

Similarly, in *Depew v. Anderson*, the Sixth Circuit held that the very tactic used in
this case -- prosecutorial misconduct that effectively denied a sentencing jury the
opportunity to consider the sole mitigating theory and the mitigation evidence on that
theory-- was prejudicial, requiring a writ be granted under the both the Fifth and Eighth
Amendment:

As the district court held, these improper statements,
particularly when taken together, were designed to keep the
jury from properly considering and weighing the mitigating
evidence offered by the defendant. While improper
comments of a prosecutor do not generally warrant
automatic reversal, the statements in the case at bar require
it because they go to the heart of the defendant's sole
mitigating theory. Allowing the prosecutor to make
inadmissible, inflammatory--and in the words of the Ohio
Supreme Court, "misleading"-- statements which directly
undercut the defendant's sole theory of mitigation
effectively undermines the defendant's right under the
Eighth Amendment to receive the "constitutionally
indispensable" consideration of his proffered mitigating
evidence. *Lockett*, 438 U.S. at 604, 98 S.Ct. 2954; *see also
Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86
L.Ed.2d 231 (1985) (applying stricter standards for
assessing validity of prosecutorial closing arguments in
capital cases than in noncapital cases). Thus, we remand
the case for resentencing based on this constitutional error.

15

311 F.3d 742, 749-50 (6th Cir. 2002)

Under the standards set forth in *Darden* and *Buchanan* -- as in *Gall* and *Depew* -- the Magistrate was correct in recommending the grant of a writ of habeas corpus. A writ is appropriate under the Fifth, Sixth, Eighth and Fourteenth Amendments and should be granted by this Court.

*First*, the prosecutors' numerous comments suggesting improper conduct by Dr. Smalldon and the defense team in Sheppard's mitigation, coupled with the appeals to juror ignorance to draw on their own beliefs, all had the substantial potential to mislead the jury and prejudice Sheppard. R&R at 69. The Warden has not objected to this finding. Indeed, the record is undeniable and speaks for itself. The prosecutor improperly argued that the very use of the mental illness defense in mitigation was deceitful strategy by the defense team. *See* Tr. Vol VII at 1172, 1210-12, 1226, 1227. And, rather than offer evidence, the prosecutor then bolstered the ambush theory with pleas to the ignorance of the jury and personal beliefs as to the weakness and partiality of Sheppard's expert witnesses' testimony, mischaracterized crucial aspects of that testimony, and belittled the tools used by the expert in an effort to convince the jury that the weakness in Smalldon's testimony motivated Sheppard's counsel to the "ambush" the state and thereby deprive it of any opportunity to evaluate Sheppard's mental illness. *See* Tr. Vol. VII at 1174, 1178, 1213, 1216. The Warden has not objected to this finding of the Magistrate.

*Second and third,* the Magistrate correctly found that the repeated attacks were extensive and flagrant, scattered throughout fifty seven pages, many of which were strategically placed in the state's rebuttal and were continued over the Defendant's

repeated objections.    R&R 65-66, 69.    Again, the Warden has not objected to this finding.

Indeed, the other instances of prosecutorial misconduct set forth above and in Sheppard's objections, namely the encouragement that the jurors flip the weighing process and that the jurors weigh the brutal nature of the crime (both of which the Magistrate concluded at R&R 74 were not prejudicial) existed as well; these bolster this finding and should have been relied upon by the Magistrate. After all, it is the record as a whole that must be looked at when evaluating prosecutorial misconduct. *U.S. v. Dakota*, 197 F.3d 831, 828 (6th cir. 1999).

***Fourth***, Sheppard offered considerable evidence on his mental illness in mitigation, while the state offered nothing on the mitigating factor.  Dr. Smalldon's testimony was unrebutted.   Tr. Vol. VI at 1018-1098.   And, yet again, the Warden does not—nor can it – take issue with this finding.

And, the Magistrate correctly found prejudice because the flagrant, repeated, egregious misconduct "had the substantial potential to mislead the jury."  R&R at 68. Indeed, as the Magistrate pointed out found:

> The misleading and prejudicial effect of those comments was exacerbated by the prosecutor's allegation that the reason for the supposed trickery was to deprive the State of access to Sheppard for psychological evaluation purposes, his explicit disparagement of the psychological evidence presented, and his encouragement to the jurors to draw their conclusions regarding Sheppard's mental state at the time of the offense from the surveillance video instead.

R & R 68-69.[4]

---

[4] For illustration, the "see for yourself" arguments include the following: (starting videotape and arguing "You are the most important witness to his mental condition right there…Didn't sound very flat in affection in walking into the place and says freeze, mother fucker, does he?…You can hear yourself.  Goes directly to what the doctor says in contradicting every point of it."; "He marches back to the register.  Is

None of this is objected to.

The Magistrate was unmistakably correct: "All four of the [*Darden*] criteria for determining whether a prosecutor's improper argument was flagrant supported Sheppard's claim." R&R at 69. The record demonstrates prosecutorial misconduct that was so flagrant and persistent as to render the penalty phase of the trial unfair, and therefore, a denial of due process. It is no wonder the State Supreme Court of Ohio found a "sentencing error" existed because of this misconduct. *State v. Sheppard*, 84 Ohio St. 3d 239.

And, it was similarly "contrary to" or an "unreasonable application of" clearly established Federal Law to attempt to sweep this "sentencing error," found by the Supreme Court of Ohio, under the rug by purportedly "curing" the prejudice through reweighing. The question before the Ohio Supreme Court should have been that which is clearly set forth in *Darden v. Wainwright*, namely, whether the misconduct had "'so infected the trial with unfairness as to make the resulting conviction a denial of due process,'" and the *Darden* analysis should have been applied to answer that question. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The *Clemons v. Mississippi* "reweighing" argued for the Warden has no application. *Clemons* dealt only with reweighing in the limited circumstance where a sentencing jury had been entitled to hear all relevant mitigating evidence and had been given both valid and invalid aggravators to weigh. In such a case, reweighing or harmless error analysis can be justified because there is a valid aggravator which underpins the jury's death verdict; in those cases, the

---

that somebody under delusions?...He wants the money...is that delusional? Absolutely not."); *see also, Id.* at 1221 ("During the event...He is communicating, he is communicating very well with is friends...is that delusional?") All of these and more examples in pages 1221-1225, and the question of "is he delusional," prey directly on the ignorance of the jury.

inclusion of the aggravator could be demonstrated to be harmless either through appellate reweighing or a traditional harmless error analysis. *See Clemons v. Mississippi*, 494 U.S. 738, 752, 108 L. Ed. 2d 725, 110 S. Ct. 1441 (1990). No court has ever relied on *Clemons v. Mississippi* to find that it is appropriate to cure actual prejudicial misconduct through reweighing where a sentencing jury (as this was on the issue of a potential "no death" vote) has been denied and where prosecutorial misconduct effectively precluded a jury from being able to give effect to mitigating evidence and denied due process.

The leap to apply *Clemons* in this uncharted territory defies not only the clear holding of *Darden*, but also directly conflicts with the Supreme Court's edict that where a sentencing jury exists, a capital defendant has a right to have that sentencing jury consider his mitigating evidence. *See Buchanan v. Angelone*, 522 U.S. 269-275 (1998); *Penry v. Lynaugh*, 492 U.S. 302, 319, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989); *Eddings v. Oklahoma*, 455 U.S. at 113-14; and *Lockett v. Ohio*, 438 U.S. at 604. As recognized by the Sixth Circuit in a case directly on point, a death eligible defendant in Ohio has the "indispensable" right under O.R.C. 2923.03 to have his sentencer (which on the issue of whether to vote for "no death" is the jury in Ohio) consider all mitigating evidence, and "[w]hen a prosecutor's actions are so egregious that they effectively "foreclose the jury's consideration of ... mitigating evidence," the jury is unable to make a fair, individualized determination as required by the Eighth Amendment. *Depew v. Anderson*, 311 F.3d 742. 748 (6th Cir. 2002), citing *Buchanan,* 522 U.S. at 277. As a result, a prosecutor's comments violate the Eighth Amendment when they are so prejudicial as to "constrain the manner in which the jury was able to give effect" to mitigating evidence. *Id.*

19

Thus, it comes as no surprise that the 10th Circuit has recognized the principle that "reweighing" cannot cure prejudice that effectively deprives a defendant of his or her right to have a sentencing jury consider relevant evidence:

> Moreover, unlike the reweighing cases cited by the state, the sentencing process here was rendered unreliable not because the jury weighed an invalid or unsupported aggravating circumstance, but because in reaching its result the jury was denied consideration of relevant mitigating evidence, see *Skipper*, 476 U.S. at 8, 106 S.Ct. 1669 (remanding for new sentencing proceeding at which petitioner could present previously excluded mitigating evidence), and was exposed to prejudicial evidence and argument, see *Gardner*, 430 U.S. at 362, 97 S.Ct. 1197 (remanding for new sentencing hearing when appellate review "could not fully correct" error in denying petitioner opportunity to rebut evidence and argument used against him).Under these circumstances, reweighing does not address the nature of the constitutional violations or fully correct the errors. See id. Accordingly, we affirm the district court's ruling that Mr. Paxton be given a new sentencing proceeding.

*Paxton v. Ward*, 199 F. 3d 1197, 1220 (10th Cir. 1999)

In short, as the Magistrate correctly found, the notion of reweighing in this context (where there was prejudice) is clearly and unmistakably at odds with not only the standards set forth in *Darden* but also irreconcilable with *Buchanan* in light of the right to have a jury in the state of Ohio consider mitigating evidence, because in Ohio, the jury in the sentencing phase has the absolute, non-reverseable power to decide in the first instance that death is not appropriate.   *See See* R.C. § 2929.03 (D)(2) (Ohio's death penalty statute providing life must be given unless trial jury first "determine[s]. . the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors…");  R&R at 73*; Depew v. Anderson*, 311 F.3d 742, 748

(6th Cir. 2002).    If even one juror votes "no death, the trial judge cannot impose death. *State v. Brooks*, 661 N.E. 2d 1030, 1042 (Ohio 1996) ("[A] solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors.")    Accordingly, the trial and appellate courts cannot reject such a finding of no death by the jury; the jury verdict of no death is not "advisory" it is dispositive.    Under these circumstances, therefore, reweighing does not and cannot address the nature of the constitutional violations or fully correct the errors because the harm has already befallen a Defendant; by the time of any appeal, he or she has already been denied the right to a fundamentally fair trial where his jury was unable to consider all evidence and vote for "no death."    Any holding to the contrary taken to its logical end would mean that the right to present mitigating evidence to the sentencing jury can simply be taken away altogether, which would make the right to a sentencing jury in Ohio a curious right indeed and raise questions as to merits of numerous decisions like *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003) or *Mills v. Maryland*, 486 U.S. 367, 108 S. Ct 1860 (1988) and *McKoy v. North Carolina*, 494 U.S. 433 (1990) for that matter because all ills could be cured by appellate reweighing.    That simply is not the law.    The right to have the jury consider mitigating evidence of a defendant cannot be taken away any more through prosecutorial misconduct than it could by fiat, by expressly excluding the consideration of mitigating evidence, or by, for example, excluding a sentencing jury altogether in Ohio.

Petitioner Bobby Sheppard is entitled to a writ of habeas corpus.[5]

---

[5] As to the claim of ineffectiveness of appellate counsel, Defendant is correct that Petitioner raised in the state courts the issue that prosecutors engaged in misconduct by employing a theme of attack including allegations of "underhandness" so that jurors would attempt to "see for themselves" that Sheppard was not paranoid schizophrenic.    (Obj. at 15). Indeed, the parties and the Court all agree that the Petitioner's Claim

## <u>CONCLUSION</u>

The Court should grant the writ of habeas corpus on grounds in addition to those

already recommended by Judge Merz.

Respectfully submitted,

**s/Geoffrey J. Moul**
Geoffrey J. Moul (0070663)
Trial Attorney for Petitioner
Murray Murphy Moul + Basil LLP
326 South High Street, Suite 400
Columbus, OH  43215
Telephone:  (614) 469-0400
Facsimile:  (614) 469-0402
E-mail:  moul@mmmb.com

Timothy R. Payne (0069329)
Assistant State Public Defender
Office of the Ohio Public Defender
8 E. Long Street, 11th Floor
Columbus, Ohio 43215
Telephone:  (614) 466-5394

Counsel for Petitioner Bobby Sheppard

---

Claim V, allegations 1, 2, 5 and 6 were all raised and preserved in state court. Therefore, the claim of ineffective assistance of appellate counsel appears moot.  If it is not, the Magistrate decision is correct, because under *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999), appellate counsel was ineffective. Petitioner's appellate counsel should have won on prosecutorial misconduct.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles L. Wille
Assistant Attorney General
Capital Crimes Section
30 E. Broad Street, 26th Floor
Columbus, OH  43215

<u>**s/Geoffrey J. Moul**</u>