

125 S.Ct. 400 Page 1
125 S.Ct. 400, 73 USLW 3294, 2004 Daily Journal D.A.R. 13,817, 18 Fla. L. Weekly Fed. S 6
**(Cite as: 125 S.Ct. 400)**

Briefs and Other Related Documents

Supreme Court of the United States

LaRoyce Lathair **SMITH**,
v.
**TEXAS**.

No. 04-5323.

Nov. 15, 2004.

**Background:** Defendant, convicted of capital murder and sentenced to death sentence, petitioned for writ of habeas corpus. The 265th District Court, Dallas County, Keith Dean, J., denied relief, and appeal was taken. The Court of Criminal Appeals, Cochran, J., 132 S.W.3d 407, affirmed. Certiorari was granted.

**Holdings:** The Supreme Court held that:
(1) defendant submitted relevant mitigation evidence, and
(2) nullification instruction failed to allow jury to accord full weight to such evidence.
Reversed and remanded.

West Headnotes
**[1] Sentencing and Punishment** ⛉1756
350Hk1756 Most Cited Cases
**[1] Sentencing and Punishment** ⛉1761
350Hk1761 Most Cited Cases
Evidence of capital murder defendant's troubled childhood, his IQ of 78, and his participation in special education classes was relevant for mitigation purposes, and thus Eighth Amendment required trial court to empower jury with vehicle capable of giving effect to that evidence. U.S.C.A. Const.Amend. 8.
**[2] Sentencing and Punishment** ⛉1757
350Hk1757 Most Cited Cases
**[2] Sentencing and Punishment** ⛉1780(3)
350Hk1780(3) Most Cited Cases
Eighth Amendment requires that capital sentencing jury be given effective vehicle with which to weigh mitigating evidence so long as evidence proffered is "relevant," i.e., tends logically to prove or disprove some fact or circumstance which fact-finder could reasonably deem to have mitigating value. U.S.C.A. Const.Amend. 8.
**[3] Sentencing and Punishment** ⛉1757
350Hk1757 Most Cited Cases
Eighth Amendment requires that capital sentencing jury be allowed opportunity to consider relevant mitigating evidence even if defendant cannot establish nexus between such evidence and crime. U.S.C.A. Const.Amend. 8.
**[4] Sentencing and Punishment** ⛉1757
350Hk1757 Most Cited Cases
**[4] Sentencing and Punishment** ⛉1780(3)
350Hk1780(3) Most Cited Cases
Supplemental "nullification instruction," directing capital sentencing jury to give effect to mitigation evidence but allowing it to do so only by negating what would otherwise be affirmative responses to two special issues relating to deliberateness and future dangerousness, failed to adequately allow jurors to give effect to relevant mitigating evidence proffered by defendant. U.S.C.A. Const.Amend. 8.

***401** PER CURIAM.

Petitioner LaRoyce Lathair Smith was convicted of capital murder and sentenced to death by a jury in Dallas County, Texas. Before the jury reached its sentence, the trial judge issued a supplemental "nullification instruction." *Ex parte Smith,* 132 S.W.3d 407, 409 (Tex.Crim.App.2004). That instruction directed the jury to give effect to mitigation evidence, but allowed the jury to do so only by negating what would otherwise be affirmative responses to two special issues relating to deliberateness and future dangerousness. In *Penry v. Johnson,* 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) *(Penry II),* we held a similar "nullification instruction" constitutionally inadequate because it did not allow the jury to give " '*full* consideration and *full* effect to mitigating circumstances' " in choosing the defendant's appropriate sentence. *Id., at 797, 121 S.Ct. 1910* (quoting *Johnson v. Texas,* 509 U.S. 350, 381, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (O'CONNOR, J., dissenting)). Despite our holding in *Penry II,* the Texas Court of Criminal Appeals rejected petitioner's request for postconviction relief. The court reasoned that the instruction either was irrelevant because petitioner did not proffer "constitutionally significant" mitigation evidence, or was sufficiently distinguishable from the instruction in *Penry II* to survive constitutional scrutiny. 132 S.W.3d, at 413, n. 21. We grant the petition for

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:00-cv-00493-GLF-MRM    Document 107-2    Filed 12/02/2004    Page 2 of 6

125 S.Ct. 400                                                                                           Page 2
125 S.Ct. 400, 73 USLW 3294, 2004 Daily Journal D.A.R. 13,817, 18 Fla. L. Weekly Fed. S 6
**(Cite as: 125 S.Ct. 400)**

certiorari and petitioner's motion for leave to proceed *in forma pauperis,* and reverse.

I

In 1991, petitioner was convicted of brutally murdering one of his former co-workers at a Taco Bell in Dallas County. The victim and one of her co-workers were closing down the restaurant when petitioner and several friends asked to be let in to use the telephone. The two employees recognized petitioner and let him in. Petitioner then told his former co-workers to leave because he wanted to rob the restaurant. When they did not leave, petitioner killed one co-worker by pistol-whipping her and shooting her in the back. Petitioner also threatened, but did not harm, his other former co-worker before exiting with his friends. The jury found petitioner guilty of capital murder beyond a reasonable doubt.

At the punishment phase, the jury was instructed on two special issues: first, whether the killing was deliberate; and second, whether the defendant posed a ***402** continuing danger to others. [FN1] Approximately two years prior to the trial, we had held that presenting only these two special issues, without additional instructions regarding the jury's duty to consider mitigation evidence, violated the Eighth Amendment. Penry v. Lynaugh, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (Penry I). Shortly after petitioner's trial, the Texas Legislature amended its capital sentencing scheme to require juries to take "into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant" in deciding whether there are sufficient mitigating circumstances to warrant a sentence of life imprisonment rather than a death sentence. Penry II, supra, at 803, 121 S.Ct. 1910 (citing Tex.Code Crim. Proc. Ann., Art. 37.071(2)(e)(1) (Vernon Supp.2001)). Petitioner, however, did not receive the benefit of the new statutory instruction at his trial. Instead, just as in Penry II, petitioner was sentenced pursuant to a supplemental instruction provided to the jury by the trial judge. [FN2] That instruction read:

> FN1. The text of the special issues given to the jury was as follows: "(1) Was the conduct of the defendant that caused the death of the deceased committed deliberately, and with the reasonable expectation that the death of the deceased or another would result? (2) Is there a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?" Pet. for Cert. 5.

> FN2. The supplemental instruction in Penry II stated: " 'You are instructed that when you deliberate on the questions posed in the special issues, you are to consider mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the state or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character and record or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, *you must* decide how much weight they deserve, if any, and therefore, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues.' " 532 U.S., at 789-790, 121 S.Ct. 1910 (emphasis added).

" 'You are instructed that you shall consider any evidence which, in your opinion, is mitigating. Mitigating evidence is evidence that reduces the Defendant's personal or moral culpability or blameworthiness, and may include, but is not limited to, any aspect of the Defendant's character, record, background, or circumstances of the offense for which you have found him guilty. Our law does not specify what may or may not be considered as mitigating evidence. Neither does our law provide a formula for determining how much weight, if any, a mitigating circumstance deserves. You may hear evidence which, in your judgment, has no relationship to any of the Special Issues, but if you find such evidence is mitigating under these instructions, you shall consider it in the following instructions of the Court. You, and each of you, are the sole judges of what evidence, if any, is mitigating and how much weight, if any, the mitigating circumstances, if any, including those which have no relationship to any of the Special Issues, deserves.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:00-cv-00493-GLF-MRM    Document 107-2    Filed 12/02/2004    Page 3 of 6

125 S.Ct. 400                                                                                                Page 3
125 S.Ct. 400, 73 USLW 3294, 2004 Daily Journal D.A.R. 13,817, 18 Fla. L. Weekly Fed. S 6
**(Cite as: 125 S.Ct. 400)**

" 'In answering the Special Issues submitted to you herein, if you believe that the State has proved beyond a reasonable doubt that the answers to the **\*403** Special Issues are "Yes," and you also believe from the mitigating evidence, if any, that the Defendant should not be sentenced to death, then you shall answer at least one of the Special Issues "No" in order to give effect to your belief that the death penalty should not be imposed due to the mitigating evidence presented to you. In this regard, you are further instructed that the State of Texas must prove beyond a reasonable doubt that the death sentence should be imposed despite the mitigating evidence, if any, admitted before you.

" 'You are instructed that you may deliberate as a body about mitigating circumstances, but you are not required to reach a unanimous verdict as to their existence or weight. When you vote about the Special Issues, each of you must decide for yourself whether mitigating circumstances exist and, if so, how much weight they deserve.' " 132 S.W.3d, at 409.

Employing the framework of special issues modified by the supplemental nullification instruction, the jury considered a variety of mitigation evidence. Petitioner presented evidence that (1) he had been diagnosed with potentially organic learning disabilities and speech handicaps at an early age; (2) he had a verbal IQ score of 75 and a full IQ of 78 and, as a result, had been in special education classes throughout most of his time in school; (3) despite his low IQ and learning disabilities, his behavior at school was often exemplary; (4) his father was a drug addict who was involved with gang violence and other criminal activities, and regularly stole money from family members to support a drug addiction; and (5) he was only 19 when he committed the crime.

In response, the prosecution submitted evidence demonstrating that petitioner acted deliberately and cruelly. The prosecution emphasized that petitioner knew his victim, yet stabbed her repeatedly in numerous places on her body. With respect to petitioner's future dangerousness, the prosecution stressed that petitioner had previously been convicted of misdemeanor assault and proffered evidence suggesting that he had violated several drug laws.

During closing arguments at the punishment phase, the prosecution reminded the jury of its duty to answer truthfully the two special issues of deliberateness and future dangerousness.

"Now, when we talked to you on voir dire, we talked to you about--and we spent a lot of time talking to you to determine whether or not you could follow the law. You told us two very important things when we talked to you. First of all, you told us that in the appropriate case that you could give the death penalty. Second, you said, 'Mr. Nancarrow, Ms. McDaniel, if you prove to me that the answers to those special issues should be yes, then I can answer them yes.' If you wavered, if you hesitated one minute on that, then I guarantee you, you weren't going to be on this jury. We believed you then, and we believe you now." Pet. for Cert. 6.

The jury verdict form tracked the final reminders the prosecution gave the jury. The form made no mention of nullification. Nor did it say anything about mitigation evidence. Instead, the verdict form asked whether petitioner committed the act deliberately and whether there was a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. The jury was allowed to give "Yes" or "No" answers only. The jury answered both questions "Yes" and sentenced petitioner to death. App. 4 to Pet. for Cert.

**\*404** On direct appeal, petitioner argued that our holding in _Penry I_ rendered his jury instructions unconstitutional because the special issues did not allow the jury to give effect to his mitigation evidence. The Texas Court of Criminal Appeals affirmed petitioner's sentence, reasoning that the nullification instruction provided an adequate vehicle through which the jury could consider petitioner's evidence. We denied certiorari on May 15, 1995. Smith v. Texas, 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857.

Petitioner filed an original writ of habeas corpus in the trial court in 1998. That suit was dismissed as untimely, but the Texas Legislature amended its criminal code in such a way as to allow petitioner to file a timely writ. Petitioner did so, claiming that his jury was instructed in violation of the Eighth Amendment. Before the Texas Court of Criminal Appeals, petitioner argued that the jury instructions in his case ran afoul of our holding in _Penry II._ The court denied petitioner's application on the merits. 132 S.W.3d 407 (2004). [FN3]

> FN3. Four judges would have found petitioner's claim procedurally defaulted. See 132 S.W.3d, at 417 (Hervey, J., concurring); id., at 428 (Holcomb, J., concurring). The majority of the court,

Case 1:00-cv-00493-GLF-MRM   Document 107-2   Filed 12/02/2004   Page 4 of 6

125 S.Ct. 400                                                                                                      Page 4
125 S.Ct. 400, 73 USLW 3294, 2004 Daily Journal D.A.R. 13,817, 18 Fla. L. Weekly Fed. S 6
**(Cite as: 125 S.Ct. 400)**

however, declined to adopt this holding and reached petitioner's claims on the merits.

II

[1] The Texas Court of Criminal Appeals issued its opinion just prior to our decision in *Tennard v. Dretke,* 542 U.S. ----, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004). In *Tennard,* we reversed the Fifth Circuit's refusal to grant a certificate of appealability (COA) to a defendant who was sentenced under the Texas capital sentencing scheme prior to the legislative revisions which took place in the aftermath of *Penry I.* Tennard, relying upon *Penry I,* argued that Texas' two special issues--deliberateness and future dangerousness--did not allow the jury to give effect to his mitigation evidence and that the trial court's failure to issue a supplemental mitigation instruction that would allow the jury to give full effect to his evidence rendered his death sentence unconstitutional. The state court and the Fifth Circuit both held that the lack of an adequate mitigation instruction was irrelevant. The courts both determined that Tennard had failed to satisfy the Fifth Circuit's threshold standard for " 'constitutionally relevant' mitigating evidence, that is, evidence of a 'uniquely severe permanent handicap with which the defendant was burdened through no fault of his own,' and evidence that 'the criminal act was attributable to this severe permanent condition.' " 542 U.S., at ----, 124 S.Ct., at 2568 (some internal quotation marks omitted).

[2] Our rejection of that threshold test was central to our decision to reverse in *Tennard.* We held that "[t]he Fifth Circuit's test has no foundation in the decisions of this Court. Neither *Penry I* nor its progeny screened mitigating evidence for 'constitutional relevance' before considering whether the jury instructions comported with the Eighth Amendment." *Id.,* at ----, 124 S.Ct., at 2570. Rather, we held that the jury must be given an effective vehicle with which to weigh mitigating evidence so long as the defendant has met a "low threshold for relevance," which is satisfied by " ' "evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." ' " *Id.,* at ----, 124 S.Ct., at 2570 (quoting *McKoy v. North Carolina,* 494 U.S. 433, 440, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990)).

**\*405** The Texas Court of Criminal Appeals relied on precisely the same "screening test" we held constitutionally inadequate in *Tennard.* 132 S.W.3d, at 413 (holding that mitigation evidence requires a special instruction only when that evidence passes the threshold test of "whether the defendant's criminal act was 'due to the uniquely severe permanent handicaps with which the defendant was burdened through no fault of his own' " (quoting *Robertson v. Cockrell,* 325 F.3d 243, 251 (C.A.5 2003) (en banc)). Employing this test, the court concluded that petitioner's low IQ and placement in special-education classes were irrelevant because they did not demonstrate that he suffered from a "severe disability." 132 S.W.3d, at 414. But, as we explained in *Tennard,* "[e]vidence of significantly impaired intellectual functioning is obviously evidence that 'might serve as a basis for a sentence less than death.' " 542 U.S., at ----, 124 S.Ct., at 2572 (some internal quotation marks omitted) (quoting *Skipper v. South Carolina,* 476 U.S. 1, 5, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)). There is no question that a jury might well have considered petitioner's IQ scores and history of participation in special-education classes as a reason to impose a sentence more lenient than death. Indeed, we have held that a defendant's IQ score of 79, a score slightly higher than petitioner's, constitutes relevant mitigation evidence. See *Wiggins v. Smith,* 539 U.S. 510, 535, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); see also *Tennard, supra,* at ----, 124 S.Ct., at 2572-73).

[3] The state court also held that petitioner had offered "no evidence of any link or nexus between his troubled childhood or his limited mental abilities and this capital murder." 132 S.W.3d, at 414. We rejected the Fifth Circuit's "nexus" requirement in *Tennard, supra,* at ----, 124 S.Ct., at 2571-72 (noting that none of our prior opinions "suggested that a mentally retarded individual must establish a nexus between her mental capacity and her crime before the Eighth Amendment prohibition on executing her is triggered" and holding that the jury must be allowed the opportunity to consider *Penry* evidence even if the defendant cannot establish "a nexus to the crime").

That petitioner's evidence was relevant for mitigation purposes is plain under our precedents, even those predating *Tennard.* See, *e.g., Penry I,* 492 U.S., at 319-322, 109 S.Ct. 2934; *Payne v. Tennessee,* 501 U.S. 808, 822, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *Boyde v. California,* 494 U.S. 370, 377-378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990); *Eddings v. Oklahoma,* 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The state court, however, erroneously relied on a test we never countenanced and now have unequivocally rejected. We therefore

Case 1:00-cv-00493-GLF-MRM    Document 107-2    Filed 12/02/2004    Page 5 of 6

125 S.Ct. 400                                                                                                    Page 5
125 S.Ct. 400, 73 USLW 3294, 2004 Daily Journal D.A.R. 13,817, 18 Fla. L. Weekly Fed. S 6
**(Cite as: 125 S.Ct. 400)**

hold that the state court "assessed [petitioner's legal] claim under an improper legal standard." *Tennard, supra,* at ----, 124 S.Ct., at 2572. Because petitioner's proffered evidence was relevant, the Eighth Amendment required the trial court to empower the jury with a vehicle capable of giving effect to that evidence. Whether the "nullification instruction" satisfied that charge is the question to which we now turn.

III

[4] The Texas Court of Criminal Appeals held that even if petitioner did proffer relevant mitigation evidence, the supplemental "nullification instruction" provided to the jury adequately allowed the jury to give effect to that evidence. The court found it significant that the supplemental instruction in this case "told the jury that it 'shall' consider all mitigating evidence, even evidence unrelated to the special issues, [and] it also told the **\*406** jury how to answer the special issues to give effect to that mitigation evidence." 132 S.W.3d, at 416. The court also concluded that the nullification instruction made it clear to the jury that a "No" answer was required if it "believed that the death penalty was not warranted because of the mitigating circumstances." *Ibid.*

In *Penry II,* we held that "the key under *Penry I* is that the jury be able to 'consider and *give effect to* [a defendant's mitigation] evidence in imposing sentence.' " 532 U.S., at 797, 121 S.Ct. 1910 (quoting *Penry I, supra,* at 319, 109 S.Ct. 2934); see 532 U.S., at 797, 121 S.Ct. 1910 (citing *Johnson v. Texas,* 509 U.S., at 381, 113 S.Ct. 2658 (O'CONNOR, J., dissenting) ("[A] sentencer [must] be allowed to give *full* consideration and *full* effect to mitigating circumstances" (emphasis in *Johnson*))). We explained at length why the supplemental instruction employed by the Texas courts did not provide the jury with an adequate vehicle for expressing a "reasoned moral response" to *all* of the evidence relevant to the defendant's culpability. 532 U.S., at 796, 121 S.Ct. 1910. Although there are some distinctions between the *Penry II* supplemental instruction and the instruction petitioner's jury received, those distinctions are constitutionally insignificant.

*Penry II* identified a broad and intractable problem-- a problem that the state court ignored here--inherent in any requirement that the jury nullify special issues contained within a verdict form.

"We generally presume that jurors follow their instructions. Here, however, it would have been both logically and ethically impossible for a juror to follow both sets of instructions. Because Penry's mitigating evidence did not fit within the scope of the special issues, answering those issues in the manner prescribed on the verdict form necessarily meant ignoring the command of the supplemental instruction. And answering the special issues in the mode prescribed by the supplemental instruction necessarily meant ignoring the verdict form instructions. Indeed, jurors who wanted to answer one of the special issues falsely to give effect to the mitigating evidence would have had to violate their oath to render a " 'true verdict.' "

"The mechanism created by the supplemental instruction thus inserted 'an element of capriciousness' into the sentencing decision, 'making the jurors' power to avoid the death penalty dependent on their willingness' to elevate the supplemental instruction over the verdict form instructions. There is, at the very least, 'a reasonable likelihood that the jury ... applied the challenged instruction in a way that prevent[ed] the consideration' of Penry's mental retardation and childhood abuse. The supplemental instruction therefore provided an inadequate vehicle for the jury to make a reasoned moral response to Penry's mitigating evidence." *Id.,* at 799-800, 121 S.Ct. 1910 (citations omitted).

It is certainly true that the mandatory aspect of the nullification instruction made petitioner's instruction distinct from Penry's. Indeed, the "shall" command in the nullification instruction resolved the ambiguity inherent in the *Penry II* instruction, which we held was *either* a nullification instruction or an instruction that " 'shackled and confined' " Penry's mitigating evidence within the scope of the impermissibly narrow special issues. *Id.,* at 798, 121 S.Ct. 1910. That being said, the clearer instruction given to petitioner's jury did not resolve the ethical problem described *supra,* at this page. [FN4] To the contrary, the **\*407** mandatory language in the charge could possibly have intensified the dilemma faced by ethical jurors. Just as in *Penry II,* petitioner's jury was required by law to answer a verdict form that made no mention whatsoever of mitigation evidence. And just as in *Penry II,* the burden of proof on the State was tied by law to findings of deliberateness and future dangerousness that had little, if anything, to do with the mitigation evidence petitioner presented. [FN5] Even if we were to assume that the jurors could easily and effectively have comprehended an orally delivered instruction directing them to disregard, in certain limited circumstances, a mandatory written instruction given

125 S.Ct. 400 Page 6
125 S.Ct. 400, 73 USLW 3294, 2004 Daily Journal D.A.R. 13,817, 18 Fla. L. Weekly Fed. S 6
**(Cite as: 125 S.Ct. 400)**

at a later occasion, that would not change the fact that the "jury was essentially instructed to return a false answer to a special issue in order to avoid a death sentence." Penry II, supra, at 801, 121 S.Ct. 1910.

FN4. The concurring opinions below straightforwardly recognized this problem. See 132 S.W.3d 407, 427 (Tex.Crim.App.2004) (Hervey, J., concurring) (concluding that the " 'nullification' instruction would, as a matter of federal constitutional law, suffer from the same defect as the one in Penry II had applicant presented any mitigating evidence that was beyond 'the effective reach of the sentencer' " and conceding that the instruction given to petitioner may have been inadequate "as a matter of federal constitutional law"); id., at 428 (Holcomb, J., concurring) ("The nullification instruction provided to Smith's jury contained the same defects the Supreme Court identified in Penry II. Therefore, the jury was unconstitutionally precluded from considering and giving effect to Smith's mitigating evidence").

FN5. There is another similarity between this case and Penry II. In Penry II, we found it significant that the prosecutor admonished the jury to " 'follow your oath, the evidence and the law' " prior to the deliberations in which the jury was required to fill out the verdict form. We held that this statement sent the jury "mixed signals" and "only reminded the jurors that they had to answer the special issues *dis*honestly in order to give effect to Penry's mitigating evidence." 532 U.S., at 802, 121 S.Ct. 1910. The prosecutor here similarly reminded the jury that each and every one of them had promised to "follow the law" and return a "Yes" answer to the special issues so long as the State met its burden of proof. Pet. for Cert. 6. Thus, the nullification instruction presented the same ethical dilemma here and, what is more, it seems that despite the inclusion of the mandatory "shall" language, the nullification instruction may have been more confusing for the jury to implement in practice than the state court assumed.

There is no principled distinction, for Eighth Amendment purposes, between the instruction given to petitioner's jury and the instruction in Penry II.

Petitioner's evidence was relevant mitigation evidence for the jury under Tennard and Penry I. We therefore hold that the nullification instruction was constitutionally inadequate under Penry II. The judgment of the Texas Court of Criminal Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Justice SCALIA, with whom Justice THOMAS joins, dissenting.

I would affirm the judgment of the Texas Court of Criminal Appeals. See Walton v. Arizona, 497 U.S. 639, 673, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (SCALIA, J., concurring in part and concurring in the judgment).

Briefs and Other Related Documents (Back to top)

• 04-5323 (Docket) (Jul. 22, 2004)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.