# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BOBBY T. SHEPPARD,

    Petitioner,

    -vs-

MARGARET BAGLEY, Warden,

    Respondent.

:

:

:

Case No. 1:00-cv-493

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This matter is before the Court on Respondent's Objections (Doc. No. 95, filed June 11, 2004), and Petitioner's Objections (Doc. No. 100, filed July 2, 2004), to the Report and Recommendations (Doc. 94, filed June 1, 2004). The parties have answered their opponent's objections (Doc. Nos. 102, 103, both filed on July 14, 2004), and Petitioner has filed a reply (Doc. No. 106, filed September 8, 2004) and a Notice of Supplemental Authority (Doc. No. 107, filed December 2, 2004).

The General Order of Reference for the Dayton location of court permits the Magistrate Judge to reconsider decisions or reports and recommendations when objections are filed.

### Respondent's Objections

Respondent's objections are twofold, but interrelated. First, Respondent claims the Magistrate Judge erred in recommending granting a writ of habeas corpus on Sheppard's fifth ground for relief, where Sheppard claimed prosecutorial misconduct had infected his trial. Second,

1

Respondent objects to the Magistrate Judge's recommending an additional grant of the writ on Sheppard's tenth ground for relief, an ineffective assistance of appellate counsel claim which has as an underlying claim the same prosecutorial misconduct described in Sheppard's fifth ground for relief.

**Respondent's First Objection Concerning Sheppard's Fifth Ground for Relief**

In her first objection, Respondent argues that the Ohio Supreme Court determined that the prosecutor's argument concerning the brutality and cold-bloodedness of the murder was proper under Ohio law. Aside from this Court's conclusion that that argument was, while improper, not flagrant (Report and Recommendations, Doc. No. 94 at 67-8), the Court notes that whether a practice is proper under Ohio law is no longer the question in Sheppard's case. In federal habeas proceedings, the prosecutor's conduct is examined under the principles and protections of the federal constitution, not Ohio law. Regardless, to the extent Sheppard claimed his federal constitutional rights were violated as a result of the prosecutor's argument about the brutality of the murder, habeas relief was denied, a conclusion to which Respondent surely does not object.

Respondent also notes that the Ohio Supreme Court reasonably held that "for the most part," the prosecutor's arguments were "fair comment on the evidence." (Respondent's Objections, Doc. No. 95 at 9.) This Court has no quarrel with either Respondent's argument or the Ohio Supreme Court's statement. For the most part, the prosecutor's argument *was* fair comment on the evidence, and the Magistrate Judge so found in the Report and Recommendations, denying habeas relief on all but one of Sheppard's prosecutorial misconduct sub-claims in his fifth ground for relief.

Next, Respondent argues that "the Ohio Supreme Court determined that to the extent they were erroneous, the prosecutor's arguments were not so egregious as to constitute prejudicial error." (Respondent's Objections, Doc. No. 95 at 9.) Respondent provides no citation for the state court's

2

finding, and this Court has only found such language in the state court's discussion of the claim of prosecutorial misconduct as it relates to a sub-claim that has not been raised in Sheppard's habeas petition, to wit, that the prosecutor improperly speculated as to Dennis Willhide's final thoughts. *State v. Sheppard*, 84 Ohio St. 3d 230, 238 (1998). Thus, the state court's finding cannot be applied now where it was not intended to be at its authorship.

Finally, Respondent accuses the Magistrate Judge of performing an "extensive *de novo* review" of the prosecutor's arguments, and criticizes the Court's conclusion that the Ohio Supreme Court's attempt to cure the prejudice from the prosecutor's improper argument concerning the "mental disease or defect" mitigating factor by reweighing the aggravating circumstances against the mitigating factors was objectively unreasonable. (Respondent's Objections, Doc. No. 95 at 10.)

Even if it were correct, which it is not, that the Court had engaged in *de novo* analysis in determining whether the prosecutor's comments were improper, only one category of comments, those relating to the mental disease or defect mitigation evidence, were found to have been prejudicial, and the impropriety of those comments was settled by the Ohio Supreme Court, a finding which is neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *See State v. Sheppard*, 84 Ohio St.3d 230, 239 (1998); 28 U.S.C. § 2254(d)(1). Thus, although the Magistrate Judge may have discussed the impropriety of the prosecutor's comments on Sheppard's failure to offer an insanity defense in the guilt phase with more specificity than the state court, rather than concluding *de novo* that the comments were improper, this Court merely undertook a more extensive explanation than did the state court.

Respondent also argues that under *Clemons v. Mississippi*, 494 U.S. 738 (1990), the Ohio Supreme Court's reweighing to cure the prejudice resulting from the prosecutor's improper comments was not objectively unreasonable. Under the "unreasonable application" clause of the

AEDPA, however, the starting point is whether the state court has identified the "correct governing legal principle" from the United States Supreme Court's decisions. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), *citing Lockyer v. Andrade*, 538 U.S. 63, 65 (2003). (*See also* Report and Recommendations, Doc. No. 94 at 73.) Here, the state court took the Supreme Court's approval of appellate reweighing to correct a jury's consideration of an invalid aggravating circumstance in *Clemons* and used it in an attempt to cure prejudice from prosecutorial misconduct. *Clemons*, however, stands for the proposition that a state appellate court may cure some sentencing errors by reweighing the aggravating circumstances and mitigating factors. Prosecutorial misconduct is not a sentencing error, and is not made so simply because it occurs in the mitigation phase of a capital trial. It is trial error, whether it occurs in the guilt phase or penalty phase of a capital trial, and there is no precedent cited to by Respondent or found by this Court to suggest that trial errors may be cured by appellate reweighing of the aggravating circumstances and mitigating factors. Trial errors cannot be cured by application of a technique used for correction of sentencing errors. Some errors committed in the weighing process are amenable to corrective re-weighing by an appellate court, but errors not rooted in the weighing process cannot be so corrected. In other words, the Ohio Supreme Court failed to "identif[y] the correct governing legal principle" applicable to the facts of Sheppard's case, and instead "misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Williams*, *supra*; *Wiggins*, *supra*. Habeas relief is therefore appropriate to the extent recommended in the Report and Recommendations.

In summary, Respondent has not persuaded the Court that its resolution of Sheppard's fifth ground for relief in the Report and Recommendations should be revised.

4

**Respondent's Second Objection Concerning Sheppard's Tenth Ground for Relief**

In his tenth ground for relief, Sheppard argued the ineffectiveness of his appellate counsel for their failure to raise various alleged errors on direct appeal. This Court recommended the writ of habeas corpus be granted to the extent that Sheppard claimed his counsel were ineffective for not raising as error the same misconduct on the prosecutor's part upon which partial relief had been recommended on Sheppard's fifth ground for relief. In all other respects, the Court recommended Sheppard's tenth ground for relief be denied.

Upon further consideration, the Magistrate Judge observes a logical inconsistency in his Report and Recommendations respecting Sheppard's fifth and tenth grounds for relief. In the fifth ground for relief, this Court determined there was merit to Sheppard's claim that the prosecutor's comments and imputation of nefarious intent respecting Sheppard's expert witness and trial counsels' decision not to advance an NGRI defense at trial constituted misconduct. Yet in the tenth ground for relief, the Court stated "[h]aving shown constitutional error and prejudice therefrom respecting the underlying claim of prosecutorial misconduct [in his fifth ground for relief], Sheppard has simultaneously demonstrated the ineffectiveness of his appellate counsel for their failure to raise as error on direct appeal the prosecutor's misconduct." (Report and Recommendations, Doc, No. 94 at 100.) The claim of prosecutorial misconduct was raised on appeal as was acknowledged in the fifth ground for relief of Sheppard's habeas petition.

Sheppard's habeas argument relating to the alleged ineffectiveness of his appellate counsel contains instances of specific statements made by the prosecutor in rebuttal argument during the mitigation phase that are not explicitly included in his claims of prosecutorial misconduct in the state courts or in his fifth ground for relief here. The factual allegations in the earlier claims, however, are broad enough to subsume the details of the additional comments by the prosecutor that Sheppard has included in his ineffective assistance of appellate counsel in these proceedings. Furthermore,

5

even if that were not so, appellate counsel advanced in the state courts the most potent part of Sheppard's ineffective assistance of appellate counsel ground for relief. Finally, in considering Sheppard's free-standing prosecutorial misconduct in his fifth ground for relief, the Court considered the prosecutor's argument in context as is required, *see Donnelly v. DeChristoforo*, 416 U.S. 637, 645-47 (1974). In so doing, all of the prosecutor's closing arguments were considered to the extent necessary to determine their ameliorative or exacerbating effect, if any, on the complained-of comments. In other words, the comments not raised the state courts form, in part, the context in which this Court evaluated Sheppard's prosecutorial misconduct claim. They significantly overlap and add strength to the prosecutorial misconduct claim, but they neither make out the claim nor would they have succeeded as a prosecutorial misconduct claim separate from the claim raised by appellate counsel in the state courts. Thus, Sheppard's appellate counsel were not ineffective for failing to raise as error on direct appeal every non-frivolous instance of prosecutorial misconduct, especially since they did raise the strongest instances of misconduct in the state courts.

Respondent does not object to the Report and Recommendations on this ground, but the Magistrate Judge, having realized his logical mistake, must correct it. The prior recommendation with respect to the Tenth Ground for Relief is WITHDRAWN and it is now recommended that this ground for relief be denied in its entirety.

**Petitioner's Objections**

**Sheppard's First Objection Concerning His Seventh Ground for Relief**

The Court recommended denial of Sheppard's seventh ground for relief, in which he claimed that juror misconduct rendered his trial unfair. In his Objections, Sheppard first argues that since claims of juror misconduct are mixed questions of law and fact, the Court should have reviewed the claim *de novo*. (Petitioner's Objections, Doc. No. 100 at 5). While he cites some law to support the

6

first part of that proposition, he cites none to support his conclusion that the appropriate standard of review is *de novo*. In fact, the applicable standard of review is set forth under 28 U.S.C. § 2254(d)(1), which prohibits this Court's granting of the writ unless the state courts' adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Hunt v. Mitchell*, 261 F.3d 575, 580 (6th Cir. 2001), *citing Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997), *see also Hartman v. Bagley*, 333 F. Supp. 2d 632, 651 (N.D. Ohio 2004)(noting that 28 U.S.C. § 2254(d)(1) provides appropriate standard of review for habeas claims involving mixed questions of law and fact); *Madrigal v. Bagley*, 276 F.Supp. 2d 744, 767 (N.D. Ohio 2003)(same). The standard set forth in the AEDPA is hardly as straightforward as *de novo* review. *See Williams v. Taylor*, 529 U.S. 362, 402-13 (2000). Thus, Sheppard's first argument is not well taken.

Next, Sheppard contends he has conclusively established that he was prejudiced beyond a reasonable doubt by Juror Fox's misconduct, which is described fully in the Report and Recommendations (Doc. No. 94 at 78-84) and need not be repeated here. He cites Fox's evidentiary hearing testimony in which Fox stated the comments of Helen Jones "influenced his verdict," and made it "easier" for him to sign the death verdict. But what Fox actually said was that Jones' definition of paranoid schizophrenia influenced his verdict to "some small degree," and that he "guesses, yes" her definition made it easier for him to vote for death. (Evid. Hrg. Tr. at 137-38.) These equivocal statements do not themselves make out the prejudice Sheppard contends is clear beyond a reasonable doubt. Moreover, the statements are not uncontroverted, as Sheppard argues. In Fox's own testimony, he has stated that Jones' definition did not affect his deliberation (Trial Tr. at 1255), that he called Jones to confirm what he was already thinking (Trial Tr. at 1257), that he had called her because he was uncomfortable with his understanding of paranoid schizophrenia (Evid. Hrg. Tr. at 133), that he had not called her for the purpose of trying to make a determination

7

(Evid. Hrg. Tr. at 134), that he thought he had already made up his mind about his verdict before he had called Jones (Evid. Hrg. Tr. at 136), that his conversation with Jones enabled him to affirm his conclusion that Sheppard was not paranoid schizophrenic (Evid. Hrg. Tr. at 137-38), that his conversation with Jones did not bias him against Sheppard or cause him to feel he could not listen to Sheppard's side of the case (Evid. Hrg. Tr. at 139), and that the information he received from Jones did not cause him to view the evidence submitted by Sheppard as any less worthy of his consideration (Evid. Hrg. Tr. at 140). Thus, the statements Sheppard argues establish clear prejudice are not only equivocal, they are controverted to some degree by Fox's own testimony.

Fox's predominant concern in calling Jones was due to his discomfort about his level of understanding of paranoid schizophrenia. (Evid. Hrg. Tr. at 133.) Even if Fox had been convinced that Sheppard suffered from that mental illness, however, there is no sure indication he would have preferred a life sentence to death. At best, he stated it was a "possibility" he might have rejected the death sentence if Jones' definition had convinced him Sheppard suffered from paranoid schizophrenia.[1] It is certainly permissible in Ohio for jurors to find the existence of a mitigating factor, but return a death verdict after finding the mitigation evidence outweighed by the aggravating circumstances. Thus, Sheppard's second argument in his first objection is also not well taken.

In his third argument, Sheppard contends the definition of paranoid schizophrenia Jones provided to Fox was so inconsistent with the DSM-IV's description of the disease and so misleading

---

[1] The Court may have overstated the certainty of Fox's statement in the Report and Recommendations where it stated that Fox said he would not have voted for death if Jones' definition had convinced him Sheppard suffered from paranoid schizophrenia. Fox merely stated it was a possibility, and that under persistent examination by Sheppard's counsel. (Evid. Hrg. Tr. at 133-37.) The point made in the Report and Recommendations, however, remains true: Fox stated he had already made up his mind about the verdict before his call to Jones, and he acknowledged that if Jones' definition had convinced him Sheppard suffered from paranoid schizophrenia, it was possible that Fox might have voted for life instead of death. In other words, it appears at least reasonably plausible that Fox was looking for reasonable doubt when he called Jones, and found none, rather than as Sheppard suggests, possessing reasonable doubt and looking for something to tip the scales. The difference between Fox's certainty that death was the appropriate sentence may have been between "beyond a reasonable doubt" and "way beyond a reasonable doubt" (Fox was never asked that question), which would not contradict his "guess" that Jones' definition made it easier for him to vote for death.

8

that prejudice to Sheppard was assured, especially in conjunction with the prosecutor's misconduct in rebuttal closing argument in the penalty phase. Fox was the only juror to hear Jones' definition, and the Court has reaffirmed its conclusion that Fox's subsequent statements in the trial court chambers, and in the evidentiary hearing here fall short of demonstrating the prejudice necessary to grant the writ of habeas corpus. That Jones' comments were inconsistent with the DSM-IV or Dr. Smalldon's testimony, or that they were coincidentally similar to certain arguments made by the prosecutor (arguments that, along with others, this Court has found to have constituted prosecutorial misconduct), does not change Fox's equivocal and contradictory expressions of how he used or did not use Jones' comments into prejudice warranting habeas relief. Thus, this argument, both alone and cumulatively with the others advanced in Sheppard's first objection, is not well taken.

**Sheppard's Second Objection Concerning His First Ground for Relief**

In his second objection, Sheppard challenges that part of the Magistrate Judge's recommendation that his first ground for relief be denied because Sheppard explicitly de-federalized his claim in the state court. As a consequence, the federal claim asserted in his habeas petition has never been raised in the state courts and is defaulted.

Sheppard argues first that the claim is not procedurally defaulted because there is no state procedural rule that Sheppard violated and no procedural bar applied by the state courts. Sheppard also contends the real issue is exhaustion, and that he has satisfied that requirement.

As noted in the Report and Recommendations (Doc. No. 94 at 30-31), in the state courts Sheppard distinguished the Ohio statutory standard for dismissing a juror based on her views on the death penalty from the federal constitutional standard articulated in *Wainwright v. Witt*, 469 U.S. 412 (1985), arguing that the state statute provided him with greater protections than the federal constitution. (Joint Appendix, Volume Six at 129-31.) Specifically, Sheppard argued that "*Witt*

9

merely governs under Eighth Amendment jurisprudence. Here, we have a state statute which codified *Witherspoon* [*v. Illinois*, 391 U.S. 510 (1968)], and even made that rule more stringently favorable to the defense. . . . [T]he decision in *Wainwright v. Witt* must be held to be ineffective to broaden R.C. 2945.25(C) beyond its clear requirement." (Joint Appendix, Volume Six at 132-33.) Thus, the claim Sheppard raised in the state courts was predicated on state statutory law, not federal constitutional law, and the claim he asserts in his first ground for relief, in which he contends the state court violated his federal constitutional rights under *Witt* has consequently been procedurally defaulted.

Sheppard denies these circumstances constitute a procedural default of his claim, however, and argues instead that they present an exhaustion issue.[2] While it is certainly possible for a procedurally defaulted claim to also be unexhausted, in Sheppard's case, his claim is exhausted by the procedural default.

The Court disagrees with Sheppard's assertion that he fairly presented his *Witt* claim to the state courts. Rather than relying on pertinent federal cases employing constitutional analysis, Sheppard advanced his claim in the state courts under state constitutional and statutory law, specifically distinguishing his claim from the governing federal legal standard set forth in *Witt*.

---

[2]There are two ways to satisfy the exhaustion requirement. First, satisfaction may be had by fair presentation of the legal basis and factual bases of the claim to the highest state court, or "exhaustion by presentment." *See Anderson v. Harless*, 459 U.S. 4, 6 (1982). Second, a claim is technically exhausted when the petitioner failed to fairly present it to the state court and no available state remedy remains, or "exhaustion by procedural default." *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Were this Court to agree with Sheppard, any return to the state courts to exhaust the *Witt* claim would undoubtedly be found by the state courts to be barred by the doctrine of *res judicata*. As the Sixth Circuit explained earlier this week, "forfeiture by failure to exhaust entails a legal fiction, of sorts. The state court has not rejected an appeal based on a state rule violation; there is no declaration by the state court of an independent and adequate state ground to which the federal court must defer. Instead, the federal court makes a presumption that the state court *would* reject the appeal on independent and adequate state grounds *if* the petitioner tried to file it. But, by declaring the claim forfeited, the federal court saves the petitioner and the state court from respectively preparing and rejecting a futile filing. The federal court then views the claim through the lens of procedural default to determine whether there is cause and prejudice to excuse the default. In short, the crux of forfeiture by failure to exhaust is that the federal court's default decision rests upon a presumption about what the state court *would* do, rather than respect for what a state court actually *did*." *Abdur'Rahman v. Bell*, ___ F. 3d ___, 2004 U.S. App. LEXIS 25609 (6th Cir. December 13, 2004)(en banc).

Although Sheppard claims to have discussed "at length" the federal constitutional holdings in *Witherspoon* and *Witt*, his discussion was in the context of illustrating the greater protections he enjoyed under state law than under federal law. Similarly, rather than asserting claims "in terms so particular as to call to mind a specific right protected by the federal constitution" (Objections, Doc. No. 100 at 20), Sheppard explicitly eschewed his federal claim in favor of his claim under state constitutional and statutory law. Thus, Sheppard deprived rather than provided the state courts with an opportunity to remedy the federal constitutional violation asserted in his habeas petition. *See Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993) *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995); *Riggins v. McMackin*, 935 F.2d 790 (6th Cir. 1987). Moreover, the language of Ohio Rev. Code § 2945.25 does not create any life, liberty, or property right that might trigger the Fourteenth Amendment's due process protections.

For the reasons stated, Sheppard's objections concerning his first ground for relief should be overruled.

**Sheppard's Third Objection Concerning His Third Ground for Relief**

In his third objection, Sheppard contends the Court wrongly recommended denial of his third ground for relief in which he argued that the trial court erroneously excluded mitigation evidence, specifically his mother's and uncle's mental health records, from the penalty phase of his trial.

Portions of both individuals' medical records were admitted into evidence by the trial court. Despite Sheppard's mother's diagnosis with mental and physical illnesses other than paranoid schizophrenia, the trial court admitted a single-paged summary of her condition. (Supplement to the Record, Doc. No. 26.) Although the page is practically illegible due apparently to repeated copying, it is possible to read the diagnoses of depressive disorder, diabetes mellitus, hypertension, bronchial asthma, gout, and obesity. *Id*. Thus, it appears that Sheppard's stated goal in seeking

11

admission of the excluded medical records relating to his mother, to wit, to provide a disinterested and factually corroborating source for Dr. Smalldon's testimony about the Sheppard family's history of mental illness, was met. It should also be noted that when admission of Sheppard's mother's medical records was being discussed at trial, Sheppard's trial counsel first agreed to the trial court's attempt to find a portion of the records to admit (Trial Tr. at 1143), then when the trial court felt it had done so, trial counsel stated, "If you want to put that last page in . . . that's all right" (Trial Tr. at 1145).[3] Aside from trial counsel's acquiescence in paring down Mrs. Sheppard's medical records to one page for admission into evidence, the trial judge's determination that her mental and physical illnesses were irrelevant to Smalldon's diagnosis of Sheppard with paranoid schizophrenia is not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Thus, the Court is unconvinced that it erred in its initial recommendation that Sheppard's third ground for relief be denied to the extent it claimed constitutional error resulting from the exclusion of some of Mrs. Sheppard's medical records.

As for Darryl Sheppard, Bobby Sheppard's maternal uncle, a two-page report of his mental illness and diagnosis with paranoid schizophrenia was admitted into evidence by the trial court. Again, admission of that report accomplished the goal of providing the jury with a disinterested source of Darryl Sheppard's paranoid schizophrenia, and to that extent corroborating Dr. Smalldon's testimony regarding the family history of paranoid schizophrenia. Thus, the Magistrate Judge is

---

[3]Although Sheppard argued in his habeas petition that his trial counsel were ineffective for not presenting all the mitigation evidence available relating to the family's history of mental illness, the claim there concerned primarily the mental health of Sheppard family members other than Mrs. Sheppard and Darryl Sheppard, and in any case that claim was found to have been procedurally defaulted. It is noted as well, that in the excluded portions of her medical records, Mrs. Sheppard's weight gain was described as "her most depressing factor," and both her depression and her weight gain were attributed to her taking the prescription drug Prednisone. (Doc. No. 26.) Thus, counsel may have agreed to admission of the single page of Mrs. Sheppard's medical records to prevent that information from getting to the jury since it contradicted the defense's theory that there was a genetic predisposition for mental illness generally, and paranoid schizophrenia specifically, in the family. All of this is neither here nor there, however, since the ineffective assistance of trial counsel claim was defaulted.

unpersuaded that his recommendation that Sheppard's third ground for relief be denied was erroneous.

**Sheppard's Fourth Objection Concerning His Fourth Ground for Relief**

In his fourth objection, Sheppard challenges the Magistrate Judge's recommendation that his fifth sub-claim in his fourth ground for relief be denied.  Essentially, Sheppard urges this Court to follow *Davis v. Mitchell*, 318 F.3d 682, 690 (6th Cir. 2003), rather than *Roe v. Baker*, 316 F.3d 557 (6th Cir. 2002), *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), and *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), in considering Sheppard's claim that the trial court erred in refusing to instruct the jury that it could consider one of the life sentences available if it could not unanimously agree on death as the appropriate sentence.  No further analysis is required beyond that set forth in the original Report and Recommendations.

**Sheppard's Fifth Objection Concerning His Fifth Ground for Relief**

In his fifth objection, Sheppard argues that two of the unsuccessful sub-claims in his fifth ground for relief warranted habeas relief.  So far as Sheppard's argument goes, no further analysis is required beyond that set forth in the original Report and Recommendations.

The Court notes, however, that in his objection, Sheppard states the following:

> Petitioner will not go on at length here on the subject.  Petitioner's claim of prosecutorial misconduct will be addressed in great detail in response to Respondent's objection [to that part of the fifth ground for relief upon which habeas relief was granted].  It seems that is the more efficient place to address the topic in that memorandum so that the Court is not subject to reviewing several briefs with essentially the same facts being discussed.

(Petitioner's Objections, Doc. No. 100 at 50.)  A petitioner does not preserve a claim upon which a denial of habeas relief has been recommended by addressing it in a memorandum in response to

13

his opponent's objection. *See* Fed. R. Civ. Proc. 72(b). Consequently, great care should be taken by counsel to avoid forfeiture of a claim by inappropriately addressing it in a responsive filing rather than in objections. The Court appreciates counsels' attempt to avoid inconveniencing the Court by making repetitious arguments in various documents, but recognizes that the preservation of Sheppard's claims is of primary importance. The spare argument here is minimally sufficient to accomplish that goal.

**Sheppard's Sixth Objection Concerning His Fifteenth Ground for Relief**

In his sixth objection, Sheppard argues the Magistrate Judge erred in recommending denial of his claim that cumulative error infected his trial with unfairness. No further analysis is required beyond that set forth in the original Report and Recommendations.

## CONCLUSION

Having reconsidered the positions of the parties, the Magistrate Judge recommends adheres to the recommendations made in the original Report and Recommendations, except that it is now respectfully recommended that the Tenth Ground for Relief be denied in its entirety.

December 15, 2004.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part

upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Death Penalty\Sheppard v. Bagley\Sheppard Supp. R&R.wpd