**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BOBBY T. SHEPPARD,**

        **Petitioner,**

   **v.**                                 **Case No.  1:00-cv-493**
                                           **JUDGE GREGORY L. FROST**
**MARGARET BAGLEY, Warden,**         **Magistrate Judge Michael R. Merz**

        **Respondent.**

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this

Court a habeas corpus action under 28 U.S.C. § 2254.  This matter is before the Court upon the

Magistrate Judge's Report and Recommendation of June 1, 2004 (Doc. # 94), in which the

Magistrate Judge recommended granting relief on the allegations of prosecutorial misconduct

during penalty phase closing arguments set forth in Petitioner's fifth ground for relief and certain

allegations of ineffective assistance of appellate counsel set forth in Petitioner's tenth ground for

relief.[1]  Also before the Court are Respondent's objections (Doc. # 95), Petitioner's limited

objections (Doc. # 100), Respondent's response to Petitioner's limited objections (Doc. # 102),

Petitioner's memorandum in opposition to respondent's response (Doc. # 103), and Petitioner's

reply in support of his limited objections (Doc. # 106).

This matter is also before the Court on upon the Magistrate Judge's Supplemental Report

and Recommendation of December 16, 2004 (Doc. # 108), in which the Magistrate Judge

essentially rescinded his recommendation to grant relief on certain allegations of appellate

---

[1]      The Magistrate Judge set forth the facts of this case in the original Report and
Recommendations.  (Doc. # 94, at 3-5.)

counsel ineffectiveness set forth in Petitioner's tenth ground for relief and stood by the original recommendation to grant relief on the allegations of prosecutorial misconduct during penalty phase arguments set forth in Petitioner's fifth ground for relief.  Also before the Court are Respondent's objections (Doc. # 110), Petitioner's objections (Doc. # 112), Petitioner's response to Respondent's objections (Doc. # 113), and Respondent's response to Petitioner's objections (Doc. # 114).

## II.  Standards of Review

This Court reviews *de novo* those portions of the Report and Recommendations to which the parties objected.  *See, e.g., Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).  In that regard, Fed. R. Civ. P. 72(b)(3) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).  Further, although "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings," *Thomas v. Arn*, 474 U.S. 140, 150 (1985), this Court has reviewed both Report and Recommendations *de novo*.  *See, e.g., Delgado v. Brown*, 782 F.2d 79, 82 (7th Cir. 1986).

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") that became effective prior to the filing of the instant petition, apply to this case.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under the AEDPA, a federal court shall not issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," 28

U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal

errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual

errors.

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent

"when the state court confronts facts that are materially indistinguishable from a decision of the

Supreme Court and nevertheless arrives at a result different from its precedent" or "when the

state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases."

*Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362,

406-07 (2000)). A state court decision involves an unreasonable application of Supreme Court

precedent if the state court identifies the correct legal principle from the decisions of the

Supreme Court but unreasonably applies that principle to the facts of the petitioner's case.

*Coyle*, 260 F.3d at 699. A federal habeas court may not find a state adjudication to be

"unreasonable" simply because the court concludes in its independent judgment that the relevant

state court decision applied clearly established federal law erroneously or incorrectly. *Id.*

Rather, a state court's application of federal law is unreasonable "only if reasonable jurists

would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the

realm of plausible credible outcomes." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999).

Further, § 2254(d)(2) prohibits a federal court from granting an application for habeas

relief on a claim that the state courts adjudicated on the merits unless the state court adjudication

of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct and that a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

### III. Petitioner's Claims

**A. <u>Ground One</u>: Improper Exclusion of Prospective Juror for Cause.**

In his first ground for relief, Petitioner argued that the trial court erred by excluding for cause a prospective juror who had stated that a defendant's expression of remorse would be an important factor to her in determining whether to recommend a death sentence. (First Amended Petition, Doc. # 77, at ¶¶ 1-16.)

The Magistrate Judge recommended denying Petitioner's claim as procedurally defaulted and without merit. (Doc. # 94, at 29-33.) Specifically, the Magistrate Judge concluded that Petitioner had procedurally defaulted this claim because he had argued in the state courts that the State violated his Fourteenth Amendment rights by failing to abide by its own statutory standard governing the exclusion of jurors who express scruples about the death penalty, while arguing in this habeas corpus proceeding that the State violated his Sixth, Eighth, and Fourteenth Amendment rights by failing to abide by clearly established federal law governing the exclusion of jurors who express scruples against the death penalty. In so doing, the Magistrate Judge acknowledged his unusual, albeit not inappropriate, action in raising *sua sponte* a procedural default that Respondent failed to raise. But the Magistrate Judge concluded that it was particularly appropriate to do so "where the petitioner explicitly argued in the state courts that

4

state law provided him with more protections tha[n] the corresponding federal law, and where he rested his state claims exclusively on state law...." (*Id*. at 32.)

The Magistrate Judge went on to recommend denying Petitioner's claim on the merits. Specifically, the Magistrate Judge explained:

> Although the prosecutor and judge interrupted [prospective juror number 23] and prevented her from fully answering some of the questions they themselves had asked her, she stated that she could not impose the death penalty on someone who was repentant, and conversely, could only impose it on someone who was not sorry for what he had done. (Trial Tr. at 327-31.) Given the deference the trial judge's credibility determinations are due, this Court could not say that the judge's decision to excuse PJ-23 for cause "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

(*Id*.) Quoting from *State v. Williams*, 99 Ohio St. 3d 493, 499-500, 794 N.E.2d 27, 39 (2003), the Magistrate Judge further concluded that even assuming that Petitioner had presented to this Court an argument that the State had violated his Fourteenth Amendment right to due process by not following its own law, the argument would have been unavailing because it was based upon an incorrect interpretation of the state law.

Subsequently, in a Supplemental Report and Recommendations, the Magistrate Judge reiterated his initial finding that Petitioner's claim was procedurally defaulted. (Doc. # 108, at 9-11.) Specifically, the Magistrate Judge concluded that Petitioner had not fairly presented to the state courts the federal claim that he advanced in his habeas petition because Petitioner had explicitly and deliberately eschewed federal cases employing constitutional analysis and terms particular to federal constitutional rights in favor of state constitutional and statutory law. By arguing that state law afforded him greater protection than federal law, the Magistrate Judge

5

concluded, Petitioner actually deprived rather than provided the state courts an opportunity to remedy the constitutional violation that Petitioner alleged in his habeas petition. Finally, the Magistrate Judge concluded that nothing in the statutory language relied upon by Petitioner, Ohio Rev. Code § 2945.25, created a life, liberty, or property interest sufficient to trigger the Fourteenth Amendment's due process protections.

Petitioner objects not only to the Magistrate Judge's *sua sponte* procedural default determination, but also to the Magistrate Judge's decision recommending denial of his claim on the merits. (Doc. # 100, at 21-34.) Regarding the former, Petitioner begins by arguing that the issue of whether or to what extent he properly preserved the claim is a question of whether he exhausted or fairly presented his claim to the state courts, rather than a question of whether he defaulted the claim by violating an adequate and independent state procedural rule. Framed as such, Petitioner argues that he <u>did</u> fairly present his federal claim to the state courts because he sufficiently alerted the state courts to the federal nature of his claim and afforded them a fair opportunity to apply controlling legal principles to the facts bearing upon his claim. (Doc. # 28-31.) He argues that a fair reading of his arguments on direct appeal reveals that he clearly was basing his argument in the state courts on state statutory law *in addition to* federal constitutional law and that he accomplished the latter not only by setting forth facts that were well within the mainstream of constitutional litigation but also by referencing federal constitutional case law and discussing certain Supreme Court cases at length.

Petitioner further argues that the Magistrate Judge erred in recommending denial of this claim on the merits. Petitioner relies extensively the Sixth Circuit decision of *Gall v. Parker*, 231 F.3d 265, 330-32 (6th Cir. 2000). There, according to Petitioner, the Sixth Circuit

acknowledged the deference that generally is owed to a trial judge's credibility determinations, but nevertheless looked at the trial transcript as a whole in finding reversible error in the trial judge's dismissal of a particular juror for cause. Petitioner argues that prospective juror Wells' statements in his case were even less of a cause for exclusion than those of the juror in *Gall v. Parker* who, according to the Sixth Circuit, the trial judge wrongly excluded for cause.[2] Whereas the prospective juror in *Gall* stated that he was undecided about whether he could impose a death sentence, Petitioner argues, Wells stated that she could. Petitioner argues that the most that Wells indicated, when her *voir dire* is read in its whole, was that if remorse were an appropriate mitigating factor to consider, it would be very important to her in determining whether to recommend a death sentence. Petitioner argues that, contrary to what the Magistrate Judge concluded, Wells never stated that remorse on the part of the defendant was dispositive. Further, Petitioner argues, there is no evidence in Wells' *voir dire* that she was irrevocably opposed to recommending a death sentence. Petitioner also argues that the situation was exacerbated by the prosecutor's misleading statement that remorse was not a lawful mitigating factor; by the prosecutor's possible ulterior motive to remove Wells because of a bad experience that she had had with law enforcement in the past; by the prosecutor's cutting Wells off in mid-sentence and then immediately moving to dismiss her for cause; by the trial judge's leading questions to Wells; by the trial judge's cutting off defense counsel during their questioning of Wells; and by the trial judge failing to wait for Wells to answer his question whether remorse was a "bottom line" dispositive factor before removing her for cause.

---

[2] The Magistrate Judge referred to the juror in question as prospective juror 23, or PJ 23. Petitioner herein refers to that juror by name, Joyce Wells.

Having conducted *de novo* review of the Report and Recommendations, the Supplemental Report and Recommendations, the *voir dire* transcript, Petitioner's appellate briefs on direct appeal to the state courts, the decisions of the state court of appeals and the Ohio Supreme Court on direct appeal, and the objections by Petitioner and Respondent, the Court overrules Petitioner's objections and agrees with both of the Magistrate Judge's Report and Recommendations rejecting this claim as waived. For the reasons set forth by the Magistrate Judge, upon which the Court expands below, this Court concludes that Petitioner waived this claim by failing to fairly present it to the state courts. Because this Court concludes that the claim is waived, the Court does not reach the merits and expresses no opinion about the Magistrate Judge's recommendation that the claim be denied on the merits.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. A petitioner fairly presents the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *Harless*, 459 U.S. at 6. Although a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal

courts under a different legal theory or a different set of facts.  Rather, he must present to the federal court essentially the same facts and legal theories that were considered and rejected by the state courts.  *See, e.g., Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001) (finding that relatedness of claim of involuntary jury waiver to claim of failure of trial court to follow statutory requirements for effectuating valid jury waiver was not enough to preserve the former for habeas review).

The Sixth Circuit has held that a petitioner fairly presents his federal claim to the state courts in one of four ways: (1) relying on federal cases employing constitutional analysis; (2) relying on state cases that employ federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts that are well within the mainstream of constitutional law.  *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Review of these facts supports the Magistrate Judge's conclusion that Petitioner waived this claim and underminds the arguments set forth in Petitioner's objections insisting that he <u>did</u> fairly present the claim.

Petitioner insists that he satisfied the fair presentment requirement by setting forth facts that are well within the mainstream of constitutional litigation, by citing federal constitutional case law, and by discussing certain United States Supreme Court cases in detail.  But his argument is belied by the fact that he set forth those facts and cited those cases for the express purpose of distinguishing them in urging the state courts to ignore them in favor of state statutory law.  As demonstrated below, Petitioner made several statements in his state appellate briefs that reflect a clear effort to remove his claim from the province of federal law and to place it instead

exclusively within the reach of state law.

Petitioner began his argument on appeal to both the state appellate court and Ohio Supreme Court by explaining that in *Witherspoon v. Illinois*, 391 U.S. 510 (1968), the Supreme Court held that a juror may be excused for cause only if he makes it unmistakably clear that he would automatically vote against imposition of the death penalty regardless of the evidence presented or that his views on capital punishment would prevent him from making an impartial decision about the defendant's guilt.  (App. Vol. VI, at 129-30.)  Petitioner went on to explain that subsequently, in *Wainwright v. Witt*, 469 U.S. 412 (1985), the Supreme Court "severely modified the *Witherspoon* standard" by holding that a juror could be excused for cause if his views on capital punishment would prevent or substantially impair his ability to perform his duties as a juror.  (App. Vol. VI, at 130.)  Petitioner then argued in unmistakable terms that "the criteria of *Witherspoon* are codified under Ohio law, O.R.C. 2945.25(C) and remain the law of Ohio."  (*Id.*)

After setting forth the state statutory standard governing dismissal for cause of jurors who express reservations about capital punishment, Petitioner argued that Ohio statutory law and the Ohio Constitution, which guaranteed an impartial jury, governed analysis of this issue "*regardless* of the decisions of the Supreme Court of the United States with respect to the Sixth Amendment."  (App. Vol. VI, at 131 (emphasis added).)  In arguing that four veniremen in particular were improperly excluded for cause on the basis of their views on capital punishment, Petitioner couched his argument using language from Ohio Rev. Code § 2945.25(C), rather than language from the controlling federal standard set forth in *Wainwright*, stating:

> [T]he jury which recommended the death sentence ultimately imposed upon
> appellant here was unconstitutionally tainted by the exclusion for cause of

venirepersons who, while they perhaps had some scrupulous objection to capital punishment under some circumstances, did not *unambiguously state on the record that such scruples would automatically result in a vote against guilt, or the imposition of the death penalty, nor that they could not conscientiously follow the instructions of the trial court of their oaths as jurors because of such scruples.* (emphasis added).

(App. Vol. VI, at 132.)  Petitioner then expressly urged the state courts to ignore *Wainwright v. Witt*, arguing that "[h]ere, we have a state statute which codified *Witherspoon*, and even made that rule more stringently favorable to the defense."  (*Id*.)

The only federal constitutional argument that Petitioner offered in the alternative to his state law argument was that "the federal constitution requires reversal of the death sentence as well, because the due process clause of the Fourteenth Amendment protects the accused where the state unfairly deprives him of a right previously extended by the state, even where the federal constitution guarantees no such right...."  (*Id*.)  It tests the limits of credulity to suggest that argument was tantamount to a claim that the Petitioner's jury was tainted by the improper exclusion for cause of jurors in violation of his Sixth and Eighth Amendment rights as set forth in *Wainwright v. Witt*. Indeed, Petitioner concluded by reiterating that "the decision in *Wainwright v. Witt* must be held to be ineffective to broaden O.R.C. 2945.25(C) beyond its clear requirement."  (*Id*. at 133.)

In light of the foregoing, Petitioner will not be heard to argue that his citation to and discussion of federal case law and Supreme Court decisions satisfied the "fair presentment" requirement; he cited those cases for the purpose of distinguishing them in an effort to remove his claim from their reach.  Nor will Petitioner be heard to argue that his reliance on facts within the mainstream of constitutional litigation satisfied the "fair presentment" requirement; he unmistakably couched his argument in language from the state statute, not controlling federal

law.  Finally, Petitioner cannot be said to have apprised the state courts of the federal nature of the claim when in fact he urged the state courts to ignore controlling federal case law and to apply state statutory law–and only state statutory law–instead.  Upon *de novo* review of the Report and Recommendation, Petitioner's direct appeals briefs, and Petitioner's objections to the Report and Recommendation, this Court agrees with and adopts the Magistrate Judge's conclusion that petitioner waived this claim by failing to fairly present it to the state courts as a federal claim.

This Court has no reservations about the Magistrate Judge's decision to *sua sponte* raise the "fair presentment" issue.  As a general rule, procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997) (holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996) (holding that procedural default is normally an affirmative defense that will be waived if not raised). Although federal courts are not required to raise procedural default *sua sponte*, *Trest*, 522 U.S. at 89, neither are they precluded from raising or recognizing a procedural default that was not expressly raised by the state.  That is especially true where, as here, petitioner has been given the opportunity to respond to the procedural default.  *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *r'hng and r'hng en banc denied* July 6, 2005 (citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002)); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).  Petitioner had an opportunity to respond via his objections to the Report and Recommendation, which this Court found unpersuasive.  Moreover, this Court fully agrees with the Magistrate Judge's rationale that "it is particularly appropriate" for the Court to *sua sponte* recognize a procedural default where,

as here, Petitioner went out of his way to argue that state law provided him more protection than corresponding federal law and to urge the state courts to apply only state law to his claim. (Doc. # 94, at 32.)

For the foregoing reasons, the Court overrules Petitioner's objections and agrees with the Magistrate Judge's Report and Recommendations to deny this claim as waived due to Petitioner's failure to fairly present the claim to the state courts as a federal claim. Because this Court concludes that Petitioner waived this claim, the Court does not reach the merits and expresses no opinion about the Magistrate Judge's Report and Recommendations rejecting the claim on the merits. The Court **DENIES** Petitioner's first ground for relief as waived.

An appeal from the denial of a habeas corpus action may not proceed unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). To warrant a certificate of appealability, a petitioner must make a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Barefoot v. Estelle*, 463 U.S. 880, 893 (1983); *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir. 1997). He need not demonstrate that he will prevail on the merits; he needs only to demonstrate that the issues he seeks to appeal are deserving of further proceedings or are reasonably debatable among jurists of reason. *Barefoot*, 463 U.S. at 893 n.4. "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy 28 U.S.C. § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This analysis should also be applied when the Court has denied a claim on procedural grounds. *Id*. at 483; *see also Porterfield v. Bell*, 258 F.3d 484, 486 (6th Cir. 2001). When the

Court dismisses a claim on procedural grounds, a certificate of appealability is warranted when petitioner demonstrates (1) that jurists of reason would find it debatable whether the petition states a valid claim and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

Because the Court agrees with and adopts the Magistrate Judge's decision to *sua sponte* recognize and enforce the default of Petitioner's first ground for relief, and because the Court views as a "close call" whether the dismissal of prospective juror Wells was proper under *Wainwright v. Witt*, 469 U.S. at 424, even though the Court was prevented by the procedural default from addressing the merits of the claim, the Court is satisfied that reasonable jurists could find debatable or wrong the Court's decision rejecting this claim. Accordingly, the Court hereby **CERTIFIES** for appeal not only its decision rejecting ground one as procedurally defaulted, but also, if appropriate, the merits of ground one.

### B. <u>Ground Two</u>: Improper Weighing of Duplicative Specifications.

Petitioner argued in his second ground for relief that his death sentence is constitutionally infirm and in violation of his rights under the Eighth and Fourteenth Amendments because the jury and trial judge improperly weighed duplicative aggravating circumstances in sentencing Petitioner to death. (Doc. # 77, at ¶¶ 17-24.) Petitioner further argued that the state courts failed to recognize, much less correct, the error, insofar as the appellate court invalidated *one* of the duplicative specifications in its independent weighing process, while the Ohio Supreme Court went on in its independent weighing process to consider *both* aggravating circumstances.

The Magistrate Judge recommended denying Petitioner's claim as procedurally defaulted. (Doc. # 94, at 33-36.) Specifically, the Magistrate Judge concluded that Petitioner

had defaulted the claim because he failed to raise a contemporaneous objection to the trial court's instructions to the jury to weigh both aggravating circumstances or to the failure of the trial court to merge the duplicative aggravating circumstances and because the state appellate court enforced the procedural default. The Magistrate Judge further concluded that Petitioner had not demonstrated cause and prejudice to excuse the default. The Magistrate Judge rejected Petitioner's argument that the Ohio Supreme Court had revived the otherwise defaulted claim when it included both aggravating circumstances during its independent reweighing of the aggravating circumstances and mitigating factors. The Magistrate Judge explained that the Ohio Supreme Court's reweighing, even if it included both aggravating circumstances, did not revive Petitioner's claim because the Ohio Supreme Court did not address the merits of Petitioner's claim that his death sentence resulted from the consideration of duplicative aggravating circumstances. The Magistrate Judge concluded by finding that because the Ohio Supreme Court ignored the merits of Petitioner's actual claim, the Magistrate Judge would "look through" the Ohio Supreme Court's decision to the state appellate court's decision, which definitively rejected the claim as procedurally defaulted.

It does not appear that Petitioner objected to the Magistrate Judge's conclusion or even once mentioned his second ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's second ground for relief as procedurally defaulted.

Because Petitioner did not object to the Magistrate Judge's decision recommending

denial of this claim as procedurally defaulted and because the default of Petitioner's second ground for relief was, in this Court's review, so definitive and beyond question,[3] this Court concludes that the issue is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground two for appeal.

### C. <u>Ground Three</u>: Trial Court's Exclusion of Relevant Mitigating Evidence.

In his third ground for relief, Petitioner charged that the trial court violated his rights to due process and a fair and reliable sentencing determination, guaranteed by the Eighth and Fourteenth Amendments, by improperly excluding certain relevant mitigating evidence. (Doc. # 77, at ¶¶ 25-40.) Petitioner argued that the trial court improperly excluded: (1) testimony from his mother Dolores about how the prosecution of Petitioner had affected his family and about whether there was anything that she wanted to tell the jurors about Petitioner; (2) testimony from social worker Gwen Bradbury, who had assisted and known the family for ten years, about how the prosecution of Petitioner had affected his family and about whether there was anything she wanted to tell the jurors about Petitioner; (3) demonstrative evidence prepared by defense counsel to assist testimony by Dr. Jeffrey Smalldon, to wit: a chart illustrating in "family tree" form relatives on Petitioner's mother's side who had suffered from mental illness and a chart illustrating the differences between mental illness supporting a Not Guilty By Reason of Insanity defense ("NGRI") and mental illness supporting a mitigating factor under Ohio Rev. Code § 2929.04(B)(3); (4) virtually all records documenting the history of mental illness in Petitioner's

---

[3]      Defense counsel failed to request merger of the duplicative aggravating circumstances, to object to prosecutorial argument or jury instructions that invited the jury to weigh both aggravating circumstances, or to object to the sentence as resting on duplicative aggravating circumstances, all in violation of Ohio's clearly established contemporaneous objection rule.

family, consisting primarily of records regarding the hospitalization of Petitioner's mother and the multiple hospitalizations of her brother, Petitioner's uncle; and (5) the psychiatric textbook upon which Dr. Smalldon relied in opining that there was a connection between a head injury that Petitioner had suffered from a car accident and the onset of psychotic illness in Petitioner. Petitioner argued that the prejudice and unfairness stemming from the exclusion is evident when juxtaposed against the prosecution's penalty phase closing arguments and the trial court's sentencing opinion. Petitioner argued that he was entitled by the Eighth and Fourteenth Amendments to great latitude in the presentation of mitigating evidence and that the trial court violated those rights.

Respondent argued in her Return of Writ that Petitioner's claim was procedurally defaulted in part and without merit in its entirety. (Doc. # 12, at 67-72.) Respondent argued that the only category of excluded evidence that Petitioner challenged on direct appeal was the neurological treatise referenced by Dr. Smalldon in opining that Petitioner's paranoid schizophrenia was precipitated in part by a mild head injury that he had suffered prior to the murder of Dennis Willhide. Respondent argued in the alternative that Petitioner's claim is without merit. Reasoning that the United States Supreme Court has never held that the Eighth Amendment requires it to fashion general evidentiary rules for capital sentencing proceedings to supersede state evidentiary rules, Respondent argues that the Ohio Supreme Court's decision rejecting Petitioner's claim did not contravene clearly established federal law as determined by the Supreme Court. Respondent further points out that although the trial court excluded certain items of evidence, Petitioner was not prevented from otherwise presenting the underlying information set forth or demonstrated in those items of evidence.

The Magistrate Judge recommended denying Petitioner's claim, in part as procedurally defaulted and in part as without merit. (Doc. # 94, at 36-40.) The Magistrate Judge concluded that Petitioner had preserved his claim on direct appeal as to all but the first two categories of evidence. Regarding those two categories, the Magistrate Judge noted that Petitioner had raised them in his Rule 26(B) application for delayed reopening as instances of appellate counsel ineffectiveness and that the Magistrate Judge would address in connection with Petitioner's tenth ground for relief whether appellate counsel ineffectiveness constituted cause and prejudice sufficient to excuse the default of Petitioner's claim that the trial court erred in excluding testimony from Petitioner's mother and a social worker.

As to the remaining three categories of evidence, the Magistrate Judge recommended denying on the merits Petitioner's claim that exclusion thereof by the trial court was improper and to his prejudice sufficient to warrant habeas relief. The Magistrate Judge found no error in the trial court's exclusion of two charts prepared by defense counsel for use during Dr. Smalldon's testimony–one to demonstrate in "family tree" form the history of mental illness in Petitioner's family the other to illustrate the differences between mental illness sufficient to support a NGRI defense and mental illness as a mitigating factor under Ohio Rev. Code § 2929.04(B)(3)–because the charts were essentially summaries and nothing about the trial court's exclusion of them prevented Petitioner from otherwise eliciting the same information, albeit not in demonstrative form, from Dr. Smalldon. With respect to the trial court's exclusion of a collection of records detailing the mental health hospitalizations of Petitioner's mother and one of Petitioner's maternal uncles, the Magistrate Judge concluded that even assuming that Petitioner could demonstrate that the exclusion was improper, Petitioner could not demonstrate

prejudice because those records had never been made a part of the record. Finally, the Magistrate Judge found no error in the trial court's exclusion of Dr. Smalldon's reference to a neurological treatise in support of his diagnosis that Petitioner suffered from paranoid schizophrenia, the onset of which was precipitated in part by a head injury that Petitioner had suffered. The Magistrate Judge explained that state evidentiary law at the time of Petitioner's trial clearly prohibited such evidence as hearsay and that the Supreme Court has declined to hold that the Eighth Amendment requires certain general evidentiary rules for capital sentencing proceedings that supersede state evidentiary rules. (Doc. # 94, at 40 (quoting *Romano v. Oklahoma*, 512 U.S. 1, 11-12 (1994)).)

In his limited objections filed on July 2, 2004, Petitioner challenges only the Magistrate Judge's rejection of Petitioner's claim that the trial court erred in excluding the collection of medical records detailing the psychiatric hospitalizations of Petitioner's mother and maternal uncle. (Doc. # 100, at 34-43.) Petitioner faults the Magistrate Judge for concluding that Petitioner could never demonstrate prejudice sufficient to warrant habeas relief, due to the fact that Petitioner raised the claim on direct appeal (where review is confined to the trial record) and never made the excluded documents a part of the record. Petitioner insists that he not only proffered the documents for review on direct appeal, but also added them to the record in this habeas corpus proceeding. Citing several Supreme Court decisions in support of the general proposition that the sentencer in a capital trial must not be precluded from considering any relevant mitigating evidence, Petitioner argues that it is "practically undeniable" that the trial

court in his case erred in excluding the psychiatric hospital records.[4]  (Doc. # 100, at 41.)
Petitioner argues that the content of those records not only corroborated his family history of
mental illness, but also presented firm, factual evidence from disinterested witnesses concerning
the family history of mental illness.  Thus, Petitioner argues, it is reasonable to conclude that the
exclusion of such evidence may have affected the jury's decision to recommend death, contrary
to the Magistrate Judge's conclusion that Petitioner could not demonstrate prejudice from the
exclusion of the documents.

Respondent takes issue with Petitioner's objections in two key aspects.  (Doc. # 102, at 8-
10.)  First, according to Respondent and contrary to Petitioner's assertion, the Magistrate Judge
in this case reviewed each item of excluded evidence, took note of Dr. Smalldon's extensive
testimony about the family history of mental illness, and still explicitly found no constitutional
violation or fundamental prejudice.  Further, Respondent distinguishes the Supreme Court cases
upon which Petitioner relies, insisting that those cases, unlike the instant case, involved the
categorical exclusion of relevant mitigating evidence.

The Magistrate Judge issued a Supplemental Report and Recommendation standing by
his initial rejection of Petitioner's claim that the trial court erred to Petitioner's prejudice in
excluding the bulk of the documents detailing the psychiatric hospitalizations of Petitioner's
mother and maternal uncle.  (Doc. # 108, at 11-13.)  The Magistrate Judge noted that the trial
court had admitted a one-page summary of the conditions suffered by Petitioner's mother and a

---

[4]	Petitioner cites *McKoy v. North Carolina*, 494 U.S. 433 (1990), *Hitchcock v. Dugger*, 481 U.S. 393 (1987), *McCleskey v. Kemp*, 481 U.S. 279 (1987), *California v. Brown*, 479 U.S. 538 (1987), *Skipper v. South Carolina*, 476 U.S. 1 (1986), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Woodson v. North Carolina*, 428 U.S. 280 (1976).

two-page summary of the conditions suffered by Petitioner's maternal uncle. Those summaries, the Magistrate Judge concluded, met Petitioner's stated goal of providing the jury with disinterested accounts of his family history of mental illness and corroborating Dr. Smalldon's testimony. The Magistrate Judge also noted that defense counsel had acquiesced to the admission of only the one-page summary concerning Petitioner's mother. In that regard, the Magistrate Judge opined that defense counsel may well have wanted to keep from the jury documents indicating that the weight gain and depression suffered by Petitioner's mother was attributable in part to medication that she was taking, insofar as such evidence contradicted defense counsel's theory that there was a genetic predisposition to Petitioner's mental illness, and specifically to paranoid schizophrenia. The Magistrate Judge concluded that the trial court's exclusion of the hospital documents in question did not contravene or unreasonably apply clearly established federal law.

It does not appear that Petitioner objected to the Magistrate Judge's recommendation that Petitioner's claim challenging the trial court's exclusion of the first two categories of evidence appeared to be barred by procedural default–although, to be fair, the Magistrate Judge deferred his final determination as to whether the claim was procedurally defaulted until consideration in connection with Petitioner's tenth ground for relief of whether appellate counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default of ground three as to the first two categories of excluded evidence. Nor does it appear that Petitioner objected to the Magistrate Judge's recommendation that Petitioner's claim challenging the exclusion of the third and fifth categories of evidence be denied on the merits. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and

Recommendations in those respects.

Regarding the fourth category of excluded evidence–documents detailing the psychiatric hospitalizations of Petitioner's mother and maternal uncle–upon *de novo* review of the Report and Recommendations, the Supplemental Report and Recommendations, and Petitioner's briefs on direct appeal to the intermediate court of appeals and the Ohio Supreme Court, this Court overrules Petitioner's objections and adopts the Magistrate Judge's Report and Recommendations and Supplemental Report and Recommendations. The Sixth Circuit has consistently recognized the United States Supreme Court's reluctance, even in light of its cases holding that the sentencer in a capital case cannot be precluded from considering or giving effect to relevant mitigating evidence, to hold that the Eighth Amendment forbids a state court from applying state evidentiary rules or exercising discretion in limiting the introduction of evidence as irrelevant or unduly prejudicial. In *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001), for example, the Sixth Circuit explained:

> *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), require that juries be allowed to consider all relevant mitigating evidence with the limitation that "[n]othing . . . limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett*, 438 U.S. at 604 n.12, 98 S.Ct. 2954.

*Stanford*, 266 F.3d at 461. *See also Alley v. Bell*, 307 F.3d 380, 398-99 (6th Cir. 2002) (finding that state courts did not exclude from jury's consideration the petitioner's multiple personality disorder simply by precluding admission of videotapes allegedly showing manifestation of the disorder as irrelevant and unreliable). In light of the foregoing, this Court does not believe that the trial court's decision excluding all but summaries of the conditions of Petitioner's mother and maternal uncle contravened or unreasonably applied clearly established federal law.

For the foregoing reasons, the Court overrules Petitioner's objections and adopts the Magistrate Judge's Report and Recommendations to **DENY** Petitioner's third ground for relief as to the third, fourth, and fifth categories of excluded evidence. The Court, as the Magistrate Judge did, **DEFERS** until consideration of Petitioner's tenth ground for relief whether Petitioner's third ground for relief as to the first and second categories of evidence is barred by procedural default.

Notwithstanding the determination of the Magistrate Judge and this Court, within the constraints of 28 U.S.C. § 2254(d)(1), that the trial court's exclusion of evidence that Petitioner sought to introduce during the penalty phase did not contravene or unreasonably apply clearly established federal law, the Court is of the view that reasonable jurists could find its decision debatable or wrong. Given the lengths to which the United States Supreme Court has gone to emphasize that the Eighth Amendment requires that the sentencer in capital cases be permitted to consider and give effect to relevant mitigating evidence, as well as the wide latitude capital defendants must be afforded in presenting mitigation evidence, the Court **CERTIFIES** for appeal Petitioner's third ground for relief as to the exclusion of the fourth category of evidence. Because Petitioner did not object to the Magistrate Judge's Report and Recommendations to deny ground three as to the third and fifth categories of evidence, this Court **DECLINES** to certify for appeal that portion of ground three. Because the Court defers until consideration of Petitioner's tenth ground for relief as to whether the first and second categories of evidence are barred by procedural default, the Court **DECLINES** to certify for appeal those portions of ground three.

### D. <u>Ground Four</u>: Trial Court's Penalty Phase Instructions.

In his fourth ground for relief, Petitioner alleged five errors in the penalty phase jury instructions.  (Doc. # 77, at ¶¶ 41-53.)  Specifically, Petitioner alleged as error: (1) the trial court's refusal to grant defense counsel's request for an instruction that the jury was not to consider the aggravated murder itself as an aggravating circumstance; (2) the trial court's instruction, over defense counsel's objection, that the jury was to consider the nature and circumstances of the aggravating circumstances; (3) the trial court's instruction on an invalid aggravating circumstance, *i.e.*, an instruction that the jury was to consider both aggravating circumstances, even though they were duplicative and should have been merged; (4) the trial court's instruction, over defense counsel's objection, that the prosecution had not been afforded access to Petitioner for a psychological evaluation; and (5) the trial court's refusal to grant defense counsel's request for an instruction that the jury could consider one of the life sentence options if it could not unanimously agree on the death sentence.

The Magistrate Judge recommended denying all five sub-parts of Petitioner's claim, the third sub-part on the basis of procedural default and the first, second, fourth, and fifth sub-parts on the merits.  (Doc. # 94, at 41-52.)  As to sub-part three, Petitioner's claim challenging the trial court's instruction on duplicative aggravating circumstances, the Magistrate Judge concluded that the claim was barred by procedural default, albeit not the procedural default that Respondent advanced.  Although Respondent argued that Petitioner defaulted the claim by failing to contemporaneously object to the instruction during trial, the Magistrate Judge concluded that Petitioner actually defaulted the claim by failing to raise it at all in the state courts.  Specifically, the Magistrate Judge concluded that Petitioner's claim on direct appeal challenging his death sentence as resulting from the weighing of duplicative aggravating circumstances was

24

insufficient to constitute fair presentment of a claim challenging the trial court's instructions on duplicative aggravating circumstances. The Magistrate Judge further rejected Petitioner's attempt to offer ineffective assistance of trial counsel as cause and prejudice to excuse the default. The Magistrate Judge noted that the only trial counsel ineffectiveness claim that Petitioner had asserted in the state courts, and was accordingly permitted to offer as cause, alleged only counsel's failure to request merger of the aggravating circumstances, not counsel's failure to object to the trial court's instructions on duplicative aggravating circumstances.

The Magistrate Judge addressed and rejected together sub-parts one and two of this ground. Specifically, the Magistrate Judge rejected Petitioner's claims challenging the trial court's refusal to give an instruction that the jury was not to consider the aggravated murder itself as an aggravating circumstances and challenging the trial court's instruction that the jury was to consider the nature and circumstances of the aggravating circumstances. The Magistrate Judge looked through the Ohio Supreme Court's decision, which was silent on the claims, to the appellate court's decision addressing and rejecting those claims. The Magistrate Judge explained that the Sixth Circuit in *Cooey v. Coyle*, 289 F.3d 882, 927-28 (6th Cir. 2002), rejected an argument that Ohio's statutory scheme requiring the sentencer to consider the nature and circumstances of the aggravating circumstances as aggravating and the nature and circumstances of the offense as mitigating is unconstitutionally vague. That being so, the Magistrate Judge concluded, the instructions at issue were consistent with Ohio law and required no clarification.

As to sub-part four, Petitioner's claim challenging the trial court's instruction that the prosecution had not been afforded access to Petitioner for purposes of conducting a psychological evaluation, the Magistrate Judge found that although the instruction may very well

have been an erroneous statement of Ohio law, it did not warrant habeas corpus relief because it was highly unlikely that any juror would have been persuaded to vote for life had he or she known that the prosecution's access was actually precluded by state statute. The Magistrate Judge also rejected Petitioner's argument that the trial court's instruction was tantamount to punishing Petitioner for exercising a constitutional right, much the way that prosecutors and trial courts are forbidden to comment on or otherwise punish defendants for exercising their right to remain silent. Specifically, the Magistrate Judge reasoned that Petitioner had no constitutional right to be free from a psychological evaluation by a prosecution expert once he put his mental health at issue.

Finally, the Magistrate Judge recommended denying Petitioner's claim alleging that the trial court erred in refusing to instruct the jury that it could consider one of the life sentence options in the event that it could not reach unanimity on a death sentence. The Magistrate Judge rejected Petitioner's reliance on *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003), noting that, "[i]n *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 783-85 (N.D. Ohio 2003), the district court observed that *Davis* was in conflict with three earlier Sixth Circuit cases, specifically *Roe v. Baker*, 316 F.3d 557 (6th Cir. 2002), *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), and *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998)." (Doc. # 94, at 47.) Evaluating Petitioner's claim under *Coe*, *Roe*, and *Scott*, the Magistrate Judge concluded that the jury instructions in Petitioner's case did not offend *Mills v. Maryland*, 486 U.S. 367, 373-75 (1988), because in *Mills*, the Supreme Court held that it was error only to require unanimity as to the existence of a mitigating factor, not to require unanimity as to the weighing process. The Magistrate Judge also noted that all three Sixth Circuit decisions rejected any claim that a trial court must inform the jury of the

consequences of deadlock in sentencing deliberations.

Petitioner directed his objections to only the Magistrate Judge's decision rejecting the claim that the trial court should have instructed the jurors that they could consider the life sentence options if they could not reach unanimity concerning a death sentence. (Doc. # 100, at 43-58.) The crux of Petitioner's argument is that it is the Sixth Circuit's discussion of this issue in *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999)–not *Coe*, *Scott*, and *Roe*–that controls. To support that argument, Petitioner offers *Davis v. Mitchell*, where, according to Petitioner, the Sixth Circuit recognized that instructions like those that Petitioner challenges herein create a substantial possibility that jurors could rest their verdict recommending the death penalty on an improper basis–namely, the misconception that they must unanimously reject a death sentence in order to recommend a life sentence. Petitioner emphasizes that *Coe* involved Tennessee's death penalty statute, while *Mapes* involved Ohio's death penalty statute, and that the Sixth Circuit in *Scott* and *Roe* erred in following *Coe*'s holding and in dismissing *Mapes*' holding as dicta.

Addressing Petitioner's objections in a Supplemental Report and Recommendation, the Magistrate Judge concluded: "No further analysis is required beyond that set forth in the original Report and Recommendation." (Doc. # 108, at 13.)

As noted above, it does not appear that Petitioner objected to the Magistrate Judge's conclusion rejecting the first four sub-parts of his fourth ground for relief. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendations to deny those claims, the first sub-part as procedurally defaulted and sub-parts two, three, and four as without merit.

Regarding Petitioner's claim that the trial court erred in failing to instruct the jury that it

could consider the life sentence options in the event that it failed to achieve unanimity on imposition of the death penalty, the Court overrules Petitioner's objections and adopts the Magistrate Judge's recommendation to deny that claim.[5]  As the Magistrate Judge did, this Court declines Petitioner's invitation to follow *Davis v. Mitchell* rather than *Roe v. Baker*, *Scott v. Mitchell*, and *Coe v. Bell*.  In fact, Petitioner's claim does not warrant relief under any of those decisions because the instructions at issue in his trial simply did not give rise to a risk that the jurors mistakenly believed either that they had to unanimously reject a death sentence before considering the life sentence options or that they had to achieve unanimity on the existence of mitigating factors.  Further, the trial court's instruction that the final verdict had to be unanimous and that all twelve jurors had to sign the verdict form was a correct statement of law.  Thus, Petitioner has not shown that the trial court's refusal to instruct the jury that it could consider the life sentence options in the event that it could not unanimously agree to impose death did not contravene or unreasonably apply clearly established federal law.

For the foregoing reasons, the Court overrules Petitioner's objections and adopts the Magistrate Judge's Report and Recommendations to **DENY** Petitioner's fourth ground for relief, the first sub-part as procedurally defaulted and the four remaining sub-parts as without merit.

Notwithstanding the determination of the Magistrate Judge and this Court, within the constraints of 28 U.S.C. § 2254(d)(1), that the trial court's refusal to instruct the jury as set forth

---

[5]        The Court notes, as Petitioner finally conceded in his July 2, 2004 Limited Objections, that *nowhere* on direct appeal did Petitioner actually raise this precise claim.  (Doc. # 100, at 47 n.8.)  Nonetheless, given Respondent's failure to raise, and the Magistrate Judge's failure to recognize, this blatant procedural default–even after Petitioner stated in his traverse and limited objections that the trial court's "refusal was an important legal error that appellate counsel should have raised on appeal"–this Court declines to raise it *sua sponte* at this late date.  (Doc. # 89, at 60.)

above did not contravene or unreasonably apply clearly established federal law, the Court is of the view that reasonable jurists could find its decision debatable or wrong. The instructions at issue are frequently problematic because with a misplaced word here or there, they can easily go from being constitutional to violating the Eighth and Fourteenth Amendments by misleading jurors into believing that they must unanimously reject the death sentence or be unanimous in finding the existence of mitigating factors. The Supreme Court has held that reviewing courts, when faced with ambiguous jury instructions, must determine whether there was a reasonable likelihood that the jury applied the instructions at issue in an unconstitutional manner. *Boyde v. California*, 494 U.S. 370, 380 (1990). Further, review of caw law reveals that the Sixth Circuit has been compelled to revisit this issue often to ensure that such instructions do not violate the Eighth and Fourteenth Amendments. Accordingly, the Court **CERTIFIES** for appeal Petitioner's fourth ground for relief as to the failure of the trial court to instruct the jury that it could consider the life sentence options in the event that it could not achieve unanimity on imposing the death penalty. Because Petitioner did not object to the Magistrate Judge's Report and Recommendations to deny ground four as to the first, second, third, and fourth sub-parts, this Court **DECLINES** to certify for appeal those components of ground four.

    **E.  <u>Ground Five</u>: Prosecutorial Misconduct.**

    In his fifth ground for relief, Petitioner argued that the prosecution committed prejudicial misconduct during the penalty phase. (Doc. # 77, at ¶¶ 54-63.) Petitioner argued that the prosecution made baseless assertions, factual misstatements, and legal misstatements in an effort to undercut the mitigating factors upon which Petitioner presented evidence, to wit: his youth under Ohio Rev. Code § 2929.04(B)(4) because he was barely 18-years-old at the time of the

offense; his lack of a significant criminal history pursuant to Ohio Rev. Code § 2929.04(B)(5) because he had been adjudicated only of juvenile truancy; and his suffering from paranoid schizophrenia under Ohio Rev. Code § 2929.04(B)(3) and/or § 2929.04(B)(7). As summarized, Petitioner argued that the prosecution:

1.    By urging jurors to consider everything from the first phase; emphasizing the brutality of the crime; urging jurors to balance the cold-blooded murder against mitigation; arguing that jurors must balance the sham mitigation with Petitioner's crime; and telling jurors they could consider the nature and circumstance of the offense, suggested that the jurors could consider the crime itself as an aggravating circumstance and that defense counsel were required to prove that the mitigation evidence outweighed the aggravating factors rather than the other way around.

2.    By repeatedly referring to the videotape of the crime, replaying it, and using it to assert that Petitioner did not look or act mentally ill, suggested that the crime itself should be considered as an aggravating circumstance and that Petitioner was not mentally ill because of how he appeared on two or three minutes of videotape.

3.    Told jurors that Petitioner's youth could not be considered as a mitigating factor because he had street smarts, was an old 18-years-old, was a very mature 18-years-old, and knew how to acquire beer and marijuana illegally.

4.    Asserted during cross examination and closing arguments that Petitioner's behavioral changes as reported by family members were the result of a substance abuse problem, rather than mental illness, when this was not necessarily the case and when, even if accurate, it ignored the fact that mentally ill individuals often abuse substances in an effort to self-medicate.

5.    Attempted to negate Petitioner's lack of a significant criminal history by arguing, without any evidentiary basis and knowing that Petitioner had been convicted only of juvenile truancy, that Petitioner simply had never been caught or convicted for other crimes.

6.    Misrepresented mitigating evidence by trivializing the history of mental illness in Petitioner's family; by referring to Petitioner's concussion from a car accident as a slight bump on the head; by undermining Dr. Smalldon's testimony that the concussion may have caused the onset of Petitioner's mental illness; and by giving an unsupported opinion that there could not possibly have been a nexus between Petitioner's head injury and the onset of mental illness because no CAT scan or MRI had been conducted.

7. By suggesting, inaccurately, that defense counsel and Dr. Smalldon had "ambushed" the prosecution with their mental illness mitigation evidence and railing that it was unscrupulous for defense counsel to have presented the mental health evidence as a mitigation factor instead of a Not Guilty By Reason of Insanity defense, when the standards for the two are different, made pervasive arguments that defense counsel and Dr. Smalldon were using underhanded tactics and essentially fabricating Petitioner's mental illness.

Petitioner argued that the prosecutorial misconduct summarized above warranted habeas corpus relief because it violated his rights to a fundamentally fair trial and due process.

Respondent argued that Petitioner defaulted sub-parts (3) and (4) by failing to present them on direct appeal and that the remaining sub-parts did not warrant habeas corpus relief because the Ohio Supreme Court's decision rejecting them did not contravene or unreasonably apply clearly established federal law. (Doc. # 12, at 79-83.) According to Respondent, the Ohio Supreme Court did not act unreasonably in determining that the prosecutor's comments were, for the most part, fair comments on the evidence and that the comments, to the extent they were erroneous, were not so egregious as to constitute prejudicial error. Respondent further argued that the Ohio Supreme Court's reasoning was consistent with the federal constitutional standard for assessing claims of prosecutorial misconduct in habeas corpus set forth in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), and that the Ohio Supreme Court acted reasonably in addressing any possible prejudice by reassessing the appropriateness of Petitioner's death sentence during its independent weighing of the aggravating circumstances and mitigating factors.

In his traverse, Petitioner reiterated his allegations of misconduct and argued that under controlling Sixth Circuit and Supreme Court precedent, the prosecution committed misconduct so egregious as to deny Petitioner fundamental fairness and necessitate habeas corpus relief.

(Doc. # 89, at 21-27, 36-43.)

The Magistrate Judge recommended granting relief on those allegations detailing the prosecution's numerous comments denigrating the integrity of defense counsel, Dr. Smalldon, and Petitioner's mental health evidence, (which actually consisted of portions of several sub-parts). (Doc. # 94, at 52-74.) After extensive analysis of the record, relevant case law, and the standard of review set forth in the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), the Magistrate Judge concluded:

> Because the prosecutor's comments denigrating the integrity of defense counsel and Dr. Smalldon were improper and flagrant, they violated Sheppard's right to due process of law. No curative admonition or jury instruction negated the prejudice suffered by Sheppard as a result of the prosecutor's improper arguments because no such admonition or instruction was given. In addition, the state court's independent review of Sheppard's sentence could not cure the error.

(Doc. # 94, at 70.)

The Magistrate Judge agreed with Respondent and recommended denying as procedurally defaulted the third and fourth sub-parts of Petitioner's claim–those complaining that the prosecution argued improperly that Petitioner's personality change was due to substance abuse rather than mental illness and that Petitioner's youth could not be considered a mitigating factor because he was "street smart." (Doc. # 94, at 53.) The Magistrate Judge then set forth the relevant standard for claims of prosecutorial misconduct brought in habeas corpus, as articulated by the Sixth Circuit in *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003), and summarized the mitigation evidence presented by Petitioner through testimony by his sister Alberta, his mother Dolores, a social worker familiar with the family named Gwendolyn Bradbury, and psychologist Dr. Jeffrey Smalldon, whose testimony, according to the Magistrate Judge, constituted the crux of Petitioner's mitigation case. (Doc. # 94, at 54.)

Regarding Petitioner's first sub-part, charging the prosecution with encouraging the jurors to consider non-statutory aggravating circumstances, the Magistrate Judge concluded that it was not improper for the prosecutor to argue that jurors should consider evidence presented during the guilt phase, and that although it was improper for the prosecutor to encourage the jury to consider the nature of the crime as an aggravating circumstance, that argument was not prejudicial because it was isolated and the trial court correctly explained the aggravating circumstances during jury instructions . (Doc. # 94, at 59-60, 67-68.) Regarding the fifth sub-part, where Petitioner complained about the prosecution's suggestion that Petitioner's lack of significant criminal history was not mitigating because he had simply never been caught or convicted, the Magistrate Judge concluded that the argument "pushes the envelope" but was not "wholly beyond the pale." (Doc. # 94, at 67.) Regarding sub-part six, where according to the Magistrate Judge Petitioner challenged the prosecution's argument reversing the weighing process by telling jurors that the mitigating factors had to outweigh the aggravating circumstances, the Magistrate Judge concluded that the comments were improper because they completely reversed the statutory weighing process, but were not so flagrant or prejudicial as to warrant relief. (Doc. # 94, at 67, 74.)

Regarding the second sub-part (and portions of sub-parts six and seven), where Petitioner claimed that the prosecution improperly suggested that the defense was underhanded for presenting mental health evidence in mitigation instead of presenting a NGRI defense during the guilt phase, the Magistrate Judge examined all of the comments giving rise to that claim and not only agreed with the Ohio Supreme Court that the comments were improper, but also concluded that the arguments "went well beyond suggesting underhandedness on the defense counsels'

part." (Doc. # 94, at 65.)  The Magistrate Judge explained:

> The prosecution not only argued that the defense was unscrupulous in its choice of presenting psychological evidence in mitigation rather than in the guilt phase, it repeatedly and adamantly argued the State had been cleverly deprived of *any* ability to evaluate, and perhaps present contradictory evidence on, Dr. Smalldon's diagnosis.  In truth, however, the prosecution was provided with all of Dr. Smalldon's raw data and could have obtained its own expert to interpret the data and rebut Dr. Smalldon's conclusions.  In addition, the prosecution accused Dr. Smalldon of being "slick" by not preparing a written report of his evaluation of Sheppard (Trial Tr. at 1210); conflated the very different standards applicable to an NGRI defense on one hand, and the mental disease or defect and catch-all mitigating factors, on the other, *id*. at 1210-11; told the jurors they were in the best position to determine Sheppard's mental condition because they had watched the videotape of the murder, *id*. at 1223; and speculated that absent the videotape, the defense would have put on false or untruthful evidence during the trial, *id*. at 1225.  Moreover, since these comments were made in the prosecution's rebuttal argument, defense counsel were unable to counter them.  Also, defense counsel made numerous objections during the prosecution's rebuttal argument, but they were overruled by the trial court.  (Trial Tr. at 1210 (two), 1211 (three), 1212, 1225, 1226 (two)).  The Ohio Supreme Court's determination that the prosecutor's statements relating to Sheppard's mental disease or defect mitigating evidence were improper has not been challenged, is accorded deference, and is agreed with by this Court.

(Doc. # 94 at 65-66.)

Using the four-part test articulated by the Sixth Circuit in *Boyle v. Million*, 201 F.3d at 717, the Magistrate Judge concluded that the prosecution's comments undermining Petitioner's mental health evidence, as detailed above, were so flagrant as to render Petitioner's penalty phase fundamentally unfair.  The Magistrate Judge explained:

> Here, the prosecutor's numerous comments suggesting defense counsel and Dr. Smalldon had resorted to trickery in presenting the psychological evidence in mitigation rather than in the penalty phase of Sheppard's trial had substantial potential to mislead the jury and prejudice Sheppard.  The misleading and prejudicial effect of those comments was exacerbated by the prosecutor's allegation that the reason for the supposed trickery was to deprive the State of access to Sheppard for psychological evaluation purposes, his explicit disparagement of the psychological evidence presented, and his encouragement to the jurors to draw their conclusions regarding Sheppard's mental state at the time

of the offense from the surveillance video instead. The comments were scattered and repeated throughout fifty-seven pages of trial transcript, and so cannot be said to have been isolated. Moreover, the prosecution's repetition of the comments, and their exclusive and presumably strategic employment in rebuttal argument, precludes a finding that they were accidentally made. While the evidence against Sheppard at the guilt phase of trial was overwhelming, the same cannot be said of the separate penalty phase. All four of the criteria for determining whether a prosecutor's improper argument was flagrant support Sheppard's claim. In addition, no cure was effected by admonishment to the jury or by jury instructions.

(Doc. # 94, at 68-69.)

In addition to concluding that the prosecution's comments were improper, so flagrant as to be prejudicial, and not diminished by admonishment or curative instruction, the Magistrate Judge concluded that the Ohio Supreme Court erred in purporting to cure any prejudice from the error through its own independent reweighing of the aggravating circumstances against the mitigating factors. The Magistrate Judge noted:

Independent reweighing by a reviewing court, however, at least in the context of prosecutorial misconduct, does not cure the resulting prejudice. Instead, only curative admonishments, and in some cases jury instructions, have been acknowledged as remedies for prosecutorial misconduct in closing arguments. (Citations omitted.)

(Doc. # 94, at 69.) The Magistrate Judge found it "especially troublesome" that the Ohio Supreme Court would purport to cure this prosecutorial misconduct through its independent review of the sentence because Ohio is a state where the jury has the power to spare a capital defendant's life and where no court can override that power. (Doc. # 94, at 73-74.)

Ultimately, the Magistrate Judge concluded that the misconduct committed by the prosecution in Petitioner's case mirrored that upon which the Sixth Circuit granted habeas corpus relief in *Gall v. Parker*, 231 F.3d 265, 316 (6th Cir. 2000). There, the Sixth Circuit found prejudicial error in the prosecution's arguments denigrating the petitioner's insanity defense.

Relying on *Gall*, the Magistrate Judge in the instant case explained:

> The State of Ohio has accorded Sheppard the right to present evidence of a mental disease or defect and to have that evidence fairly considered in the sentencing hearing. Sheppard was entitled to present that evidence in the penalty phase of trial without also having advanced an NGRI defense in the guilt phase. The prosecutor's highly improper arguments with respect to Sheppard's presentation of psychological evidence in only the penalty phase could serve no function other than to confuse the jury and cause them to question the integrity of the defense. Sheppard's jury was entitled to evaluate his mental health evidence as it was presented during the sentencing hearing, without the prosecutor's accusation of purposeful deceitfulness by defense counsel and Dr. Smalldon, without the prosecutor's suggestion that the defense offered truth during the trial only because the offense was captured on videotape, without the prosecutor's deliberate conflation of the mental disease or defect mitigating factor with an NGRI defense, and without the prosecutor's encouragement that the jury determine Sheppard's mental health based on the videotape instead of the "sham" evidence presented from the "slick" expert.

(Doc. # 94, at 71.)

Bolstering his recommendation, the Magistrate Judge further concluded that even if the prosecutor's comments were not flagrant, Petitioner would still be entitled to relief on the basis of factors for evaluating an improper, non-flagrant argument because proof was not overwhelming that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt, because defense counsel objected to the arguments, and because the trial court failed to cure the arguments with an admonishment to the jury. (Doc. # 94, at 71-71 (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).)

### 1. **Respondent's Objections**

Respondent objected on three bases to the Magistrate Judge's recommendation that the Court conditionally grant relief on Petitioner's fifth ground, arguing with respect to the AEDPA standard for granting habeas corpus relief that "unreasonable" and "erroneous" are not the same thing. (Doc. # 95, at 4-11.) First, according to Respondent, the Ohio Supreme Court did not

misapply clearly established federal law in determining that the prosecutor's comments concerning the murder itself were proper because the definition of aggravating circumstances is a question of state law. In this regard, Respondent also argued that the Ohio Supreme Court held reasonably that the prosecutor's arguments "for the most part" were fair comment on the evidence. Second, Respondent argued that the Ohio Supreme Court determined reasonably that the prosecutor's comments, to the extent they were improper, were not so prejudicial as to warrant reversal. In so arguing, Respondent points out that the Ohio Supreme Court essentially applied the due process standard set forth in *Darden v. Wainwright*, even if the Ohio Supreme Court did not explicitly cite to or define that standard. Finally, Respondent argued that the Ohio Supreme Court's decision curing any possible prejudice from the improper comments was consistent with and a reasonable application of *Clemons v. Mississippi*, 494 U.S. 738 (1990). In concluding, Respondent argued that the Magistrate Judge clearly erred in recommending relief because of the Magistrate Judge's extensive *de novo* determination that the prosecutor's comments violated Petitioner's constitutional rights and because of the Magistrate Judge's conclusion, on the basis of the determination that the prosecutorial misconduct deprived the jury of the opportunity to make the first determination as to the appropriate sentence, that the Ohio Supreme Court's decision rejecting these allegations was objectively reasonable.

### 2. **Petitioner's Objections**

It does not appear that Petitioner objected to the Magistrate Judge's recommendation to deny as procedurally defaulted sub-parts three and four of the fifth ground–those complaining that the prosecution argued improperly that Petitioner's personality change was due to substance abuse rather than mental illness and that Petitioner's youth could not be considered a mitigating

factor because he was "street smart."  Petitioner did, however, object to the Magistrate Judge's recommendation that the Court deny relief on certain sub-parts of ground five, asserting without much in the way of substantive argument that the Magistrate Judge should have considered sub-parts one and two, which he found to be improper, in the context of the other instances of misconduct to find that the prosecutor's conduct as a whole constituted a violation of Petitioner's due process rights warranting habeas corpus relief.  (Doc. # 100, at 59-60.)  Further, in his memorandum in opposition to Respondent's objections, Petitioner argued ad nauseam that the Magistrate Judge was correct in determining that Petitioner was entitled to relief on his allegations that the prosecutor's comments extensively, flagrantly, and prejudicially undermined Petitioner's mental health evidence in mitigation.  (Doc. # 103.)

### 3.  Supplemental Report and Recommendations

In the Supplemental Report and Recommendations, the Magistrate Judge rejected one by one Respondent's objections to the Magistrate Judge's resolution of the fifth ground for relief. (Doc. # 108, at 2-4.)  Regarding Respondent's argument that the Ohio Supreme Court's determination of the propriety of the prosecutor's remarks concerning the brutality of the offense was a matter of state law, the Magistrate Judge disagreed, noting that "[i]n federal habeas proceedings, the prosecutor's conduct is examined under the principles and protections of the federal constitution, not Ohio law."  The Magistrate Judge went on to reiterate, however, that under those principles and protections, the prosecutor's argument about the brutality of the murder did not warrant habeas corpus relief, "a conclusion to which Respondent surely does not object."  (Doc. # 108, at 2.)

Regarding Respondent's argument that the Ohio Supreme Court was reasonable in

holding that the prosecutor's penalty phase arguments "for the most part" were "fair comment on the evidence," the Magistrate Judge did not disagree. The Magistrate Judge explained that, "[f]or the most part, the prosecutor's argument *was* fair comment on the evidence, and the Magistrate Judge so found in the Report and Recommendations, denying habeas relief on all but one of Sheppard's prosecutorial misconduct sub-claims in his fifth ground for relief." (Doc. # 108, at 2.)

Regarding Respondent's argument lauding as reasonable the Ohio Supreme Court's determination that the prosecutor's arguments, to the extent they were erroneous, were not so egregious as to constitute prejudicial error, the Magistrate Judge found that the Ohio Supreme Court had made no such determination as to the prosecutor's improper arguments attacking Petitioner's mental health evidence. The Magistrate Judge found such language only in the Ohio Supreme Court's discussion of a claim of prosecutorial misconduct that Petitioner never raised in habeas corpus, and concluded accordingly that "the state court's finding cannot be applied now where it was not intended to be at its authorship." (Doc. # 108, at 3.)

Finally, the Magistrate Judge addressed both Respondent's accusation that the Magistrate Judge performed an extensive *de novo* review of the prosecutor's argument and Respondent's criticism of the Magistrate Judge's conclusion that the Ohio Supreme Court's decision purporting to cure any prejudice from the misconduct by independently reweighing the aggravating circumstances and mitigating factors was objectively unreasonable. First, the Magistrate Judge rejected any suggestion that he had engaged in *de novo* review of the prosecutor's comments, insisting that he only discussed the impropriety with more specificity than had the state courts. (Doc. # 108, at 3.)

The Magistrate Judge went on to explain why the Ohio Supreme Court's attempt to cure the prosecutorial misconduct through independent reweighing was objectively unreasonable sufficient to warrant habeas corpus relief under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1) as follows:

> Under the "unreasonable application" clause of the AEDPA, however, the starting point is whether the state court has identified the "correct governing legal principle" from the United States Supreme Court's decisions. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), *citing Lockyer v. Andrade*, 538 U.S. 63, 65 (2003). (*See also* Report and Recommendations, Doc. No. 94 at 73.) Here, the state court took the Supreme Court's approval of appellate reweighing to correct a jury's consideration of an invalid aggravating circumstance in *Clemons* and used it in an attempt to cure prejudice from prosecutorial misconduct. *Clemons*, however, stands for the proposition that a state appellate court may cure some sentencing errors by reweighing the aggravating circumstances and mitigating factors. Prosecutorial misconduct is not a sentencing error, and is not made so simply because it occurs in the mitigation phase of a capital trial. It is trial error, whether it occurs in the guilt phase or penalty phase of a capital trial, and there is no precedent cited to by Respondent or found by this Court to suggest that trial errors may be cured by appellate reweighing of the aggravating circumstances and mitigating factors. Trial errors cannot be cured by application of a technique used for correction of sentencing errors. Some errors committed in the weighing process are amenable to corrective re-weighing by an appellate court, but errors not rooted in the weighing process cannot be so corrected. In other words, the Ohio Supreme Court failed to "identif[y] the correct governing legal principle" applicable to the facts of Sheppard's case, and instead "misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.' "

(Doc. # 108, at 4.) The Magistrate Judge accordingly recommended habeas corpus relief to the extent set forth in the original Report and Recommendations.

The Magistrate Judge also summarily rejected Petitioner's sole objection, to wit: that two of the unsuccessful sub-claims in his fifth ground for relief also warranted habeas corpus relief. The Magistrate Judge disagreed, stating that no further analysis was required. (Doc. # 108, at

13.)

**4.  Respondent's Objections to Supplemental Report and Recommendations**

Respondent continues to object to the Magistrate Judge's conclusion that the Ohio Supreme Court unreasonably applied clearly established federal law in purporting to cure the prosecutorial misconduct by independently reweighing the aggravating circumstances and mitigating factors.  Respondent's objection is twofold–namely, that the Ohio Supreme Court did not contravene *Clemons* by extending it to cure prosecutorial misconduct and that the Ohio Supreme Court was not objectively unreasonable in extending *Clemons* to prosecutorial misconduct.  Regarding the first argument, Respondent reasons that the fact, "[t]hat the Supreme Court of the United States has not explicitly applied Clemons to claims of prosecutorial misconduct in a capital case does not necessarily mean that the Supreme Court of Ohio contravened Clemons in doing so."  (Doc. # 110, at 4 (discussing *Esparza v. Mitchell*, 540 U.S. 12, 124 S.Ct. 7, 11 (2003).)  Regarding the second argument, Respondent argues that the Ohio Supreme Court's extension of *Clemons* to cure prosecutorial misconduct was consistent with, if not compelled by, the principle announced in *Clemons*.  (Doc. # 110, at 4.)  Respondent further bolsters his objection by arguing that the Tenth Circuit, in the wake of *Clemons*, condoned the use of "sentence reassessment" to address prejudice stemming from prosecutorial misconduct. (Doc. # 110 at 6 (discussing *Carbray v. Champion*, 905 F.2d 314 (10th Cir. 1990).)

**5.  Petitioner's Objection to the Supplemental Report and Recommendations**

Petitioner raises no new objections to the Supplemental Report and Recommendations concerning ground five, but reiterates his argument that the Ohio Supreme Court's decision purporting to cure through independent review of Petitioner's sentence any prejudice from the

prosecutorial misconduct was both contrary to clearly established Supreme Court precedent, as well as an unreasonable application of that clearly established precedent.  (Doc. # 113.)

**6.  This Court's Decision**

Respondent's primary objection is that the Ohio Supreme Court's decision rejecting the claims of prosecutorial misconduct upon which the Magistrate Judge recommended granting habeas corpus relief neither contravened nor unreasonably applied clearly established federal law. This Court is constrained to agree.  For the reasons that follow, this Court sustains Respondent's objection and declines to adopt the Magistrate Judge's recommendation that the Court issue a conditional writ of habeas corpus on certain of Petitioner's claims of penalty phase prosecutorial misconduct.

The Ohio Supreme Court rejected all of Petitioner's claims of penalty phase prosecutorial misconduct.  In so doing, nowhere did the Ohio Supreme Court cite, make reference to, or incorporate language from cases employing federal constitutional analysis.  In regard to Petitioner's claim challenging the prosecution's denigration of defense counsel, Dr. Smalldon, and Petitioner's mental health evidence, the Ohio Supreme Court said:

> More troublesome, however, is the prosecutor's argument asserting that the defense was underhanded by not entering a plea of not guilty by reason of insanity.  The appellant was free to enter whatever plea he wished and cannot be chastised for doing so.  *Landrum*, 53 Ohio St.3d at 110, 559 N.E.2d at 717.  Also, Dr. Smalldon's testimony setting forth an R.C. 2929.04(B)(3) mitigating factor did not justify an insanity plea, nor was that testimony admissible in the trial phase.  *State v. Cooey* (1989), 46 Ohio St. 3d 20, 544 N.E.2d 895, paragraph one of the syllabus.  Nonetheless, this court's independent sentence assessment cures the effect of this sentencing error.  *Landrum*, 53 Ohio St.3d at 124-126, 559 N.E.2d at 729-730.

*Sheppard*, 84 Ohio St. 3d at 239, 703 N.E.2d at 294-95.  In conducting an independent review of the aggravating circumstances and mitigating factors, the Ohio Supreme Court concluded the

nature and circumstances of the offense offered no mitigating features, that Petitioner's family background and age of eighteen offered little by way of mitigation, and that Dr. Smalldon's opinion that Petitioner, due to mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform it to the requirements of the law was entitled to some weight. *Sheppard*, 84 Ohio St. 3d at 241, 703 N.E.2d at 296. Ultimately, however, the Supreme Court concluded that aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. *Id.*

In *Lundgren v. Mitchell*, 440 F.3d 754, 783 (6th Cir. 2006), the Sixth Circuit expressly condoned the use by a state appellate court of independent reweighing to "cure" prejudice from prosecutorial misconduct during penalty phase closing arguments. In that case, the Ohio Supreme Court had found the prosecution's repeated references to the unsworn nature of the petitioner's penalty phase statement to be improper but upheld the petitioner's death sentence on the ground that, notwithstanding the impropriety of the remarks, the aggravating circumstances in the case strongly outweighed any mitigating factors beyond a reasonable doubt. The State of Ohio argued in habeas corpus that the Ohio Supreme Court's reweighing cured any impermissible weight that the jury might have given to the prosecutor's improper remarks. The Sixth Circuit agreed and found no error in the Ohio Supreme Court's extension of *Clemons*-type reweighing to cure a trial error, explaining:

> This Court has held that reweighing by the Ohio Supreme Court under Ohio Rev. Code § 2929.05(A) satisfies the requirements of *Clemons* when the court either eliminates impermissible aggravating factors or adds overlooked mitigating factors. *See Baston v. Bagley*, 420 F.3d 632, 638 (6th Cir. 2005). This Court has not addressed a case, however, in which the reweighing is said to cure a trial level violation tending to prejudice the jury's view of the evidence, as opposed to the jury's inclusion of an impermissible factor or failure to consider a relevant mitigating factor. *See id.* We find, however, that the premise of

43

> *Clemons* supports application of the *Clemons* doctrine to errors of the sort complained here.

*Lundgren*, 440 F.3d at 783.

This Court recognizes that neither the parties nor the Magistrate Judge had the benefit of the *Lundgren* decision when they submitted their filings and Reports and Recommendations respectively. But the decision is no less binding on this Court and conveys unequivocally that it is permissible to extend *Clemons*-type reweighing to cure trial errors, such as prosecutorial misconduct during closing arguments. Thus, although the Ohio Supreme Court did err in characterizing the prosecutorial misconduct as a "sentencing error," *Sheppard*, 84 Ohio St. 3d at 239, 703 N.E.2d at 294-95, the Ohio Supreme Court's attempt to cure any prejudice stemming from prosecutorial misconduct through independent weighing of aggravating circumstances and mitigating factors did not contravene or unreasonably apply clearly established federal law because, according to *Lundgren*, the Ohio Supreme Court did not misapply a governing legal principle to facts that differed from the case in which the governing legal principle was announced.

The next issue before this Court is determining whether the Ohio Supreme Court unreasonably applied the otherwise correct governing legal principle. The governing legal principle at hand is that an appellate court may cure prejudice stemming from prosecutorial misconduct during penalty phase closing arguments through either independent weighing of the aggravating circumstances and mitigating factors. *See Lundgren*, 440 F.3d at 783 (citing *Clemons v. Mississippi*, 494 U.S. 738, 741 (1990)). A state court unreasonably applies a legal principle "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins*,

199 F.3d 867, 872 (6th Cir. 1999). The Ohio Supreme Court concluded that the aggravating circumstances outweighed the mitigating factors sufficiently to nullify any prejudice stemming from the prosecutorial misconduct. This Court may (and frankly does) disagree with that conclusion *without* finding it so unreasonable as to warrant habeas corpus relief under the constraints set forth in the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1).

The Ohio Supreme Court concluded that the remarks in question were improper, calling them "troublesome" and characterizing them as a "sentencing error." *Sheppard*, 84 Ohio St. 3d at 239, 703 N.E.2d at 294-95. The Magistrate Judge observed that "[t]he Ohio Supreme Court's determination that the prosecutor's statements relating to Sheppard's mental disease or defect mitigating evidence were improper has not been challenged, is accorded deference, and is agreed with by this Court." (Doc. # 94, at 66.) The Magistrate Judge found that the prosecutor's numerous comments suggesting that defense counsel and Dr. Smalldon had resorted to trickery in presenting the mental health evidence in mitigation had substantial potential to mislead the jury and prejudice Petitioner. (*Id*. at 68.) This Court agrees. The Magistrate Judge found that the potential to mislead and prejudice to Petitioner were exacerbated by the prosecutor's suggestion that the reason for the alleged trickery was to deprive the State of access to Petitioner, the prosecutor's explicit disparagement of the mental health evidence, and the prosecutor's encouragement to the jurors to draw their own conclusions about Petitioner's mental health from the surveillance video. (*Id*. at 68-69.) This Court agrees. The Magistrate Judge found that the remarks were extensive, rather than isolated, and that they were deliberate, rather than accidental. (*Id*. at 69.) This Court agrees. The Magistrate Judge found that no cure was effected by admonishment to the jury or by jury instructions. (*Id*.) This Court agrees. In fact, this Court

agrees with every finding that the Magistrate Judge made, but for the recommendation that relief is warranted.

To be clear, the Magistrate Judge recommended relief largely on the basis that once such prejudice had been found, it warranted relief and could not have been cured through the Ohio Supreme Court's independent sentence assessment.  (Doc. # 94, at 69-70; Doc. # 108, at 3-4.)  The Sixth Circuit has since expressly condoned the approach that the Ohio Supreme Court took and that the Magistrate Judge found impermissible.  That leaves for this Court to determine only whether the Ohio Supreme Court's independent reweighing constituted an unreasonable application of clearly established federal law.  This Court cannot reach that conclusion.

The Magistrate Judge found that "[w]hile the evidence against Sheppard at the guilt phase of trial was overwhelming, the same cannot be said of the separate penalty phase." (Doc. # 94, at 69.)  The Ohio Supreme Court obviously found otherwise after independently determining and reweighing the evidence to conclude that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt.  This Court cannot find that the Ohio Supreme Court's determination was an unreasonable application of clearly established federal law because this Court cannot find that "reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes."  *Barker*, 199 F.3d at 872.

After summarizing testimony provided by Petitioner's mother Dolores, his oldest sister Alberta, and social worker Gwendolyn Bradbury concerning Petitioner's childhood, as well as Dr. Smalldon's testimony detailing Petitioner's mental health problems, the Ohio Supreme Court concluded that Petitioner's "history, character and background offer minimal mitigating

features." *Sheppard*, 84 Ohio St. 3d at 240, 703 N.E.2d at 296. The Ohio Supreme Court

explained:

> Although appellant's father died when he was four, and his mother struggled with
> her own illnesses and limited financial resources, the family was religious and a
> close, loving family. The family received help from a social worker, and this
> social worker was extremely close to the family, visiting at least weekly for more
> than ten years. Appellant was described as a well-behaved boy with good
> manners. Generally he received good grades in school and was active in school
> sports. Because the mother was concerned about bad influences, she moved the
> family back to Cincinnati in 1992. We find that appellant's family background
> offers little by way of mitigation.

*Sheppard*, 84 Ohio St. 3d at 240-41, 703 N.E. 2d at 296. These observations were more than

supported by the record and although closeness of Petitioner's family and the love of Petitioner's

family for him might be deserving of some weight in mitigation under Ohio Supreme Court

precedent, *see, e.g., State v. Conway*, 109 Ohio St. 3d 412, 438, 848 N.E.2d 810, 836 (2006);

*State v. Brinkley*, 105 Ohio St. 3d 231, 258, 824 N.E.2d 959, 988 (2005); *State v. Davis*, 76 Ohio

St. 3d 107, 122, 666 N.E.2d 1099, 1112 (1996), this Court cannot find that reasonable jurists

would find the Ohio Supreme Court's conclusions "so arbitrary, unsupported or offensive to

existing precedent as to fall outside the realm of plausible credible outcomes." *Barker*, 199 F.3d

at 872.

The Ohio Supreme Court also concluded that Petitioner's age of eighteen offered little in

the way of mitigation because "'[a]t the time of the murder, appellant was a man of full legal

age. He was an adult with all of the privileges and responsibilities of an adult.'" *Sheppard*, 84

Ohio St. 3d at 241, 703 N.E.2d at 296 (quoting *State v. Slagle*, 65 Ohio St. 3d 597, 613, 605

N.E.2d 916, 931 (1992).) This Court has some reservations about the Ohio Supreme Court's

conclusion. The Ohio General Assembly saw fit to include as a statutory mitigating factor the

offender's youth. Ohio Rev. Code § 2929.04(B)(4). Petitioner was eighteen at the time he committed this offense.[6] In view of the fact that no one below the age of eighteen is eligible for the death penalty, *see, e.g.,* Ohio Rev. Code §§ 2929.03(B), 2929.03(D)(1), and 2929.023, it is difficult to conceive how much younger a person would have to be to qualify for the "youth of the offender" mitigating factor set forth in Ohio Rev. Code § 2929.04(B)(4). *See, e.g., Conway*, 109 Ohio St. 3d at 437-48, 848 N.E.2d at 836 (according some weight to offender's age of twenty-three); *State v. Phillips*, 74 Ohio St. 3d 72, 105, 656 N.E.2d 643, 672 (1995) (according some weight to offender's age of nineteen). That said, this Court cannot find that the Ohio Supreme Court's conclusion was "so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes," *Barker*, 199 F.3d at 872, given that the Ohio Supreme Court was following its own established precedent.

Further militating against any finding that the Ohio Supreme Court's independent reweighing unreasonably applied clearly established federal law is the fact that the Ohio Supreme Court *did* give some weight to the very evidence that the prosecutor's improper remarks were designed to undercut–Dr. Smalldon's opinion that Petitioner, due to a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform it to the requirements of the law. *Sheppard*, 84 Ohio St. 3d at 241, 703 N.E.2d at 296. The Ohio Supreme Court also gave "some weight" to Petitioner's lack of a significant criminal history (in spite of the prosecutor's arguments suggesting that his lack of a criminal history was owing not to his avoidance of criminal behavior but to the fact that he had never been caught or

---

[6] Tr. at 971 (testimony of Petitioner's mother Dolores); Tr. at 1005 (admission of Petitioner's birth certificate); Tr. at 1190-91 (defense counsel's mitigation phase closing arguments).

convicted).  *Sheppard*, 84 Ohio St. 3d at 241, 703 N.E.2d at 296.  Finally, this Court is not of the view that the Ohio Supreme Court's consideration of apparently duplicative aggravating circumstances rendered its independent sentence assessment unreliable or unreasonable.  It is clear from the Ohio Supreme Court's discussion of the penalty phase evidence that the court's consideration of both aggravating circumstances did not tip the scale in favor of death, and that the Ohio Supreme Court would have reached the same conclusion even if it had considered only one aggravating circumstance, as the intermediate appellate court did.

In sum, the mitigation evidence that Petitioner offered was compelling, but so were the aggravating circumstances that the jury found him guilty of committing beyond a reasonable doubt.  Even in view of the notably offensive and unprofessional prosecutorial misconduct at issue, this Court cannot find that reasonable jurists would find the Ohio Supreme Court's conclusion that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt "so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes."  *Barker*, 199 F.3d at 872.  That being so, this Court cannot find that the Ohio Supreme Court unreasonably applied clearly established federal law in rejecting Petitioner's claims of prosecutorial misconduct and is constrained by 28 U.S.C. § 2254(d)(1) from granting habeas corpus relief on those claims.

In support of the Magistrate Judge's conclusion that the Ohio Supreme Court erred in employing independent reweighing to cure prosecutorial misconduct during closing arguments, Petitioner's primary argument centered on the fact that in Ohio, a jury has the power to spare a capital defendant's life by failing to find that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt, a power that no court can override by finding the

opposite. In this regard, Petitioner further argued that in Ohio, a single juror can defeat the death penalty by failing to find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt, something that the other eleven jurors cannot override by finding the opposite. That aspect of Ohio's sentencing scheme, Petitioner argued, means that independent reweighing by an appellate court cannot logically cure a trial error because such reweighing effectively encroaches upon the jury's right to determine in the first instance whether to render a death verdict. Petitioner's argument, however persuasive, applies no less forcefully to the concept of appellate court reweighing in general, which has been endorsed by the United States Supreme Court and is the law of the land.

Nor do the remainder of the prosecutorial comments that Petitioner raised as error in this habeas corpus action warrant relief. First, as the Court noted earlier, it does not appear that Petitioner objected to the Magistrate Judge's recommendation to deny as procedurally defaulted sub-parts three and four of the fifth ground–those complaining that the prosecution argued improperly that Petitioner's personality change was due to substance abuse rather than mental illness and that Petitioner's youth could not be considered a mitigating factor because he was "street smart." For the reasons that the Magistrate Judge set forth and because Petitioner does not object, this Court adopts the Magistrate Judge's recommendation to **DENY** sub-parts three and four as procedurally defaulted.

The only other aspects of the Magistrate Judge's reports that Petitioner mentioned in his objections concerned allegations that the prosecution urged the jury to consider a non-statutory aggravating circumstance (the cold-blooded, brutal nature of the offense itself) and that the prosecution reversed the statutory weighing process by arguing to the jury that Petitioner was

required to prove that the mitigating factors outweighed the aggravating circumstances. (Doc. # 100, 59-60.) Beyond arguing that the Magistrate Judge should have granted relief on those comments by considering them in the context of the remarks upon which the Magistrate Judge did recommend granting relief, Petitioner offered nothing in the way of substance supporting those objections. For the reasons set forth by the Magistrate Judge in the initial Report and Recommendations and because Petitioner raised nothing substantive in support of his argument that those comments warranted relief, the Court overrules Petitioner's objections and adopts the Magistrate Judge's recommendation to **DENY** those allegations as without merit. Further, upon *de novo* review of the Reports and Recommendations, the parties' objections and responses, and the record, the Court **DENIES** any other allegations of prosecutorial misconduct that Petitioner set forth in his habeas corpus action, that the Magistrate Judge recommended denying, and that Petitioner did not expressly mention in objections.

Notwithstanding this Court's determination, within the constraints of 28 U.S.C. § 2254(d)(1), that the prosecutor's improper arguments generally denigrating defense counsel, Dr. Smalldon, and Petitioner's mental health evidence did not warrant habeas corpus relief because the Ohio Supreme Court's decision rejecting those claims did not contravene or unreasonably apply clearly established federal law, the Court is of the view that reasonable jurists could find its decision debatable or wrong. Further, given the other improprieties in the prosecution's penalty phase arguments that may not themselves have risen to the level of prejudice necessary to warrant habeas relief, this Court is of the view that all of the allegations of prosecutorial misconduct that Petitioner preserved in the state courts, challenged in habeas corpus, and mentioned in his objections are deserving of further review on appeal. The Court **CERTIFIES**

for appeal Petitioner's fifth ground for relief. Because Petitioner did not object to the Magistrate Judge's Report and Recommendations to deny ground five as to the sub-parts complaining that the prosecution argued improperly that Petitioner's personality change was due to substance abuse rather than mental illness and that Petitioner's youth could not be considered a mitigating factor because he was "street smart," this Court **DECLINES** to certify for appeal those portions of ground five. Further, the Court also **DECLINES** to certify for appeal any other allegations of prosecutorial misconduct that Petitioner set forth in his habeas corpus action, that the Magistrate Judge recommended denying, and that Petitioner did not expressly mention in objections.

F. <u>Ground Six</u>: **Trial Court's Errors in its Weighing Process.**

Petitioner argued in his sixth ground for relief that the trial court, the actual sentencer under Ohio law, erred to Petitioner's prejudice by weighing both aggravating circumstances when they were duplicative and should have been merged and by failing to give weight or effect to mitigating evidence of Petitioner's mental illness. (Doc. # 77, at ¶¶ 64-75.)

The Magistrate Judge recommended denying Petitioner's claim, the sub-part challenging the trial court's weighing of duplicative aggravating circumstances as procedurally defaulted and the sub-part challenging the trial court's refusal to consider Petitioner's mental illness evidence as a mitigating factor as without merit. (Doc. # 94, at 74-78.) As to the sub-part challenging the trial court's consideration of duplicative aggravating circumstances in the weighing process, the Magistrate Judge concluded as he had in recommending denial of Petitioner's second ground for relief that Petitioner defaulted any claim alleging that his death sentence was improperly based on consideration of duplicative aggravating circumstances due to his failure to raise a contemporaneous objection at trial.

The Magistrate Judge recommended denying on the merits Petitioner's claim alleging that the trial court had failed to consider as a mitigating factor the mental illness evidence that Petitioner offered. The Magistrate Judge concluded, based on the trial court's written sentencing decision, that the trial court obviously dismissed entirely the mental health evidence offered by Petitioner in mitigation, but did *not*, as Petitioner asserts, ignore it. The Magistrate Judge reasoned that the trial court's discussion comprised nearly two pages of its sentencing decision and that its credibility determination as to Dr. Smalldon's testimony is a determination that typically is beyond the scope of habeas corpus review. The Magistrate Judge further concluded that the "uncontroverted" nature of Dr. Smalldon's testimony did not require the trial court to give weight to that testimony. In short, according to the Magistrate Judge, the trial court's treatment of the mental illness evidence offered in mitigation did not contravene or unreasonably apply clearly established federal law. The Magistrate Judge went on to criticize the "the trial court's supposition that the jury did not find Dr. Smalldon's diagnosis of paranoid schizophrenia credible," noting that "whether [the jury] found certain testimony incredible or whether it instead found that the aggravating circumstances outweighed mitigating factors found to exist was and is unknowable." (Doc. # 94, at 77-78.) The Magistrate Judge also found certain of the trial court's comments disparaging mental health evidence to be "insensitive," but not of constitutional consequence because they were made outside the presence of the jury. (*Id*. at 78.)

It does not appear that Petitioner objected to the Magistrate Judge's conclusions or even once mentioned his sixth ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate

53

Judge's Report and Recommendation to **DENY** Petitioner's sixth ground for relief, the first sub-part as procedurally defaulted and the second sub-part as without merit.

Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim. Further, the default of sub-part one was, in this Court's review, so definitive and beyond question, and the sub-part alleging that the trial court failed to consider the mental illness evidence that Petitioner offered in mitigation finds no support in the record or case law. For these reasons, this Court concludes that this issue is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground six for appeal.

**G.  Ground Seven: Juror Misconduct During Penalty Phase.**

Petitioner argued in his seventh ground for relief that his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments were violated by juror misconduct during the penalty phase of his trial. (Doc. # 77, at ¶¶ 76-88.) Petitioner explained that two weeks after the jury returned a verdict recommending the death penalty but before the trial court entered final judgment, it became known that juror Stephen Fox had, at some point before the jury issued its sentencing verdict, telephoned former landlady and friend Helen Jones, who was a psychologist, and asked her for a "boiled down" definition of paranoid schizophrenia without telling her why he was asking. (An assistant prosecutor, Anne Flanagan, had apparently overheard the admission by Mr. Fox during a party and subsequently reported the transgression to the prosecutor's office, which in turn reported the issue to the trial court.) Dr. Jones, who was not a practicing psychologist but rather a psychologist who gave seminars and provided other human resources assistance to corporations, told Mr. Fox that "those kind of people are just not really in touch with reality." During an in chambers discussion to explore the incident, Mr. Fox insisted that the

conversation did not affect his views on the case and that he had never discussed the conversation with the other jurors. The trial court ultimately accepted the jury's verdict and sentenced Petitioner to death. Subsequently, the trial court denied Petitioner's motion for a new trial, concluding on the basis of affidavits from Dr. Jones, one filed by defense counsel and the other filed by the prosecutors, that no harm resulted from Mr. Fox's misconduct and that Dr. Jones' "boiled down" definition of paranoid schizophrenia was essentially consistent with Dr. Jeffrey Smalldon's penalty phase testimony.

Respondent conceded that Petitioner fairly presented this claim on direct appeal. Respondent did argue, however, that the Ohio Supreme Court identified the controlling cases on this issue, *Remmer v. United States*, 350 U.S. 357 (1956), and *Smith v. Phillips*, 455 U.S. 209 (1982), and that its decision rejecting the claim did not contravene or unreasonably apply that clearly established federal law and did not involve an unreasonable determination of the facts. (Doc. # 12, at 83-87.)

The Magistrate Judge permitted significant factual development on this claim. Pursuant to the Magistrate Judge's November 27, 2000 Order allowing discovery (Doc. # 21), Petitioner deposed Mr. Fox, Dr. Jones, and Assistant Prosecutor Anne Flanagan, as well as jurors Dan Davis, Mary Moeller, and Susan Kitchen. Those depositions were filed in March 2001. On February 19, 2002, the Magistrate Judge issued a decision that, as relates to Petitioner's juror misconduct claim, expanded the record with certain exhibits and allowed an evidentiary hearing. (Doc. # 42.) The Magistrate Judge conducted an evidentiary hearing on June 24-25, 2002, during which he heard testimony from, among others, Mr. Fox, Ms. Flanagan, and Dr. Jones. (Docs. # 63, 64.) Following a period of briefing, Magistrate Judge heard testimony from Dr.

Jeffrey Smalldon on June 5, 2003. (Doc. # 84.)

The Magistrate Judge recommended denying relief on Petitioner's claim. (Doc. # 94, at 78-84.) The Magistrate Judge began by overruling Respondent's objection to Mr. Fox's evidentiary hearing testimony and by assuming, without deciding, that the definition of paranoid schizophrenia that Dr. Jones provided Mr. Fox was inconsistent with Dr. Smalldon's mitigation testimony. The Magistrate Judge found that the state appellate court had erred in its conclusion that prejudice is presumed from juror misconduct and that the prosecution was obligated to prove that no prejudice resulted from the juror misconduct. Citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982), the Magistrate Judge explained that federal constitutional law clearly places the burden on the defendant to prove that juror misconduct resulted in prejudice. The Magistrate Judge thus explained that, "for Sheppard to succeed on the instant claim, this Court must be convinced that he demonstrated to the state courts that Fox's improper communication with Jones substantially affected or influenced the jury's verdict, *Doan v. Brigano*, 237 F.3d 722, 736 (6th Cir. 2001), and that the state court's judgment to the contrary was itself contrary to, or an unreasonable application [of] clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)." (Doc. # 94, at 82.) The Magistrate Judge further explained that any state court factual findings deserved a presumption of correctness under § 2254(e), a presumption that was only bolstered by the fact that the state trial court conducted a hearing into the juror misconduct at issue. The Magistrate Judge concluded from the foregoing that Petitioner had not met his burden because Mr. Fox never stated unequivocally that Dr. Jones' definition of paranoid schizophrenia influenced him in a manner that was damaging to Petitioner's mitigation defense.

The Magistrate Judge went on to conclude that Mr. Fox's implicit suggestion that the information that Dr. Jones provided him could only have helped Petitioner, combined with statements that he had not communicated Dr. Jones' information to the other jurors, that he had already made up his mind before he called Dr. Jones, and that Dr. Jones' information did not cause him to view Petitioner's psychological evidence differently translated into a failure on Petitioner's part to meet his high burden under the AEDPA.

The Magistrate Judge also dismissed Petitioner's complaints about the manner in which the trial court conducted its inquiry into Mr. Fox's misconduct. Specifically, the Magistrate Judge concluded that because the trial court found Mr. Fox's statements credible, the trial court had no reason to expand its in chambers hearing prior to entering final judgment to include testimony by Dr. Jones, Ms. Flanagan, or any other jurors. To that point, the Magistrate Judge further concluded that the record contained no evidence suggesting that Mr. Fox's responses to the trial court's questions were evasive or cagey.

Petitioner objects to the Magistrate Judge's ruling on numerous grounds. (Doc. # 100, at 10-21.) Petitioner argues that the Magistrate Judge applied the wrong standard of review under the AEDPA by analyzing the issue as whether the state courts' decisions involved an unreasonable determination of the facts and by affording a presumption of correctness to their fact-finding. Petitioner argues that the issue of whether prejudice resulted from the juror misconduct is a mixed question of law and fact deserving of *de novo* review by the Court and that the issue is whether the state courts unreasonably applied clearly established federal law. Petitioner goes on to argue that it was unreasonable under any standard of review to conclude that he was not prejudiced by Mr. Fox's misconduct. Petitioner argues that Mr. Fox's actions

and the whole of his testimony overwhelmingly establish prejudice. To that point, Petitioner argues that the trial court and Magistrate Judge were wrong to rely on one initial statement by Mr. Fox that he was not influenced by Dr. Jones' statement when the remainder of his statements to the trial court and testimony before the Magistrate revealed that the information provided by Dr. Jones reaffirmed his views and made it easier for him to vote for death. Petitioner also argues that Mr. Fox's actions in seeking out Dr. Jones' input revealed his reservations about casting a vote in favor of death. Petitioner goes on to argue that aside from Mr. Fox's admissions, Dr. Jones' statement was likely to cause prejudice because of its misleading nature and the manner in which it invited Mr. Fox to decide for himself whether Petitioner "looked" like he was "out of touch."

Responding to Petitioner's Limited Objections, Respondent argues that the Magistrate Judge applied the correct standard of review, that United States Supreme Court precedent explicitly required the Magistrate Judge to afford a presumption of correctness to the trial court's determination that Mr. Fox was competent to render an impartial verdict, and that the Magistrate Judge was correct in determining that the state court adjudications rejecting this claim were not objectively unreasonable in light of the evidence that was presented. (Doc. # 102, at 2-5.) In regard to the last point, Respondent argues that, to the extent that Petitioner seeks relief on the basis of facts developed for the first time in habeas corpus, Petitioner is not entitled to do so because he failed to exercise due diligence in developing those facts in the state courts. In fact, Respondent argues, rather than attempt to develop the facts in state court, Petitioner opted instead simply to argue that the State had failed to offer sufficient evidence to overcome the presumption of prejudice attached to Mr. Fox's misconduct.

In his reply, Petitioner argues that Respondent waived any right to object to the admission and consideration of Mr. Fox's habeas corpus testimony by failing in either the post-evidentiary hearing brief or objections to the Report and Recommendations to argue that the testimony should be excluded. Petitioner goes on to argue that, even assuming that Respondent could object to the admission of Mr. Fox's testimony, the Magistrate Judge was correct to admit the testimony because Petitioner exercised due diligence in attempting to develop these facts in the state courts. (Doc. # 106.) Noting that he and the trial court questioned Mr. Fox about his misconduct and whether it influenced his vote, Petitioner reasons that he cannot possibly be deemed less than diligent simply because Mr. Fox answered "no" in state court and subsequently answered "yes" in federal court. Petitioner goes on to argue in more detail that Mr. Fox admitted in the evidentiary hearing that his misconduct influenced his sentencing vote, and that even assuming the Court were to exclude Mr. Fox's habeas corpus testimony, Mr. Fox's state court answers establish that Petitioner is entitled to relief. Specifically, Petitioner argues that although Mr. Fox initially answered in the state trial court that his misconduct did not influence his sentencing vote, the whole of his testimony and his actions in telephoning Dr. Jones establish that his misconduct did in fact influence his sentencing vote. Petitioner argues that in Ohio, where a solitary juror can prevent a death sentence, he was plainly prejudiced where extraneous influences removed a juror's reservations about voting for death.

In the Supplemental Report and Recommendations, the Magistrate Judge addressed and rejected Petitioner's three objections to the original Report and Recommendations. (Doc. # 108, at 6-9.) Characterizing Petitioner's first objection as insisting that a mixed question of law and fact warranted *de novo* review in habeas corpus, the Magistrate Judge rejected that argument and

reiterated that the correct standard of review was that set forth in 28 U.S.C. §

2254(d)(1)–whether the state courts' adjudication was contrary to or an unreasonable application

of clearly established federal law as determined by the United States Supreme Court–a standard

that the Magistrate Judge employed in the original Report and Recommendations.  The

Magistrate Judge went on to overrule Petitioner's second objection–namely, that Mr. Fox's

statements to the trial court and testimony in habeas corpus constituted clear evidence that he

was influenced by Dr. Jones' definition of paranoid schizophrenia and clear evidence that

Petitioner was prejudiced by Mr. Fox's misconduct.  For every statement by Mr. Fox offered by

Petitioner as unequivocally establishing prejudice, the Magistrate Judge pointed to another that

was either equivocal or establishing the opposite.  The Magistrate Judge emphasized that it was

reasonably plausible that Mr. Fox was looking for reasonable doubt when he called Dr. Jones

and found none, rather than, as Petitioner argues, that Mr. Fox already possessed reasonable

doubt and called Dr. Jones in search of something to tip the scales.  (Doc. # 108, at 8 n.1.)

Finally, the Magistrate Judge rejected Petitioner's objection that Dr. Jones' definition of

paranoid schizophrenia was so at odds with that set forth in the DSM and so misleading as to

ensure prejudice, even in the absence of Mr. Fox's admissions.  The Magistrate Judge concluded

that Mr. Fox was the only juror who had heard Dr. Jones' definition and that Mr. Fox's

statements and testimony about the effect of that definition on his sentencing vote fall short of

demonstrating the prejudice necessary to warrant habeas corpus relief.

 In objections to the Supplemental Report and Recommendations, Petitioner continues to

argue that the Magistrate Judge applied the wrong standard for determining whether Petitioner

established prejudice from Mr. Fox's misconduct in both Reports and Recommendations.  (Doc.

# 112.)  Petitioner complains that the Magistrate Judge essentially required him to establish with certainty that Mr. Fox would have voted for a life sentence but for his misconduct.  Petitioner insists that under the correct standard of proof, he was required to establish only a reasonable probability that he would have received a sentence less than death but for Mr. Fox's misconduct.  In that regard, Petitioner continues to argue that the record is unmistakably clear that prejudice exists.  Pointing to those of Mr. Fox's statements that Petitioner views as unequivocally establishing that Dr. Jones' definition influenced his sentencing vote, as well as to those of Mr. Fox's statements that the Magistrate Judge viewed as equivocal, Petitioner argues that even the latter demonstrate that the information that Dr. Jones provided influenced Mr. Fox in his sentencing decision.

In response, Respondent continues to argue both that the Magistrate Judge applied the correct standard of review in finding that the state courts' adjudication did not contravene or unreasonably apply clearly established United States Supreme Court precedent and did not involve an unreasonable determination of the facts.  (Doc. # 114.)  Respondent also reiterates that the Magistrate Judge properly afforded a presumption of correctness to the state courts' determination that Mr. Fox was competent to serve as a juror.

The Court finds this issue troubling.  That said, upon review of both Reports and Recommendations, the in camera statements by Mr. Fox upon the trial court's inquiry into his misconduct, the trial court's decisions to go forward with sentencing and then to deny Petitioner's motion for a new trial, the decisions of the state appellate court and the Ohio Supreme Court rejecting Petitioner's juror misconduct claim, Mr. Fox's habeas corpus deposition, Mr. Fox's evidentiary hearing testimony, and relevant caselaw, this Court overrules

Petitioner's objections and adopts the Magistrate Judge's recommendation to deny relief on Petitioner's seventh ground for relief.

When credible evidence suggests that a juror has been exposed to improper extraneous influence, the trial court must conduct a hearing to determine the facts and circumstances, the impact on the juror, and whether the events at issue were prejudicial. *See Remmer v. United States*, 347 U.S. 227, 229-30 (1954); *see also Smith v. Phillips*, 455 U.S. 209, 215 (1982). Every court that has reviewed this issue has concluded that Mr. Fox committed misconduct. The only question that requires discussion is whether Mr. Fox's misconduct sufficiently prejudiced Petitioner so as to warrant relief.

Petitioner has failed, however, to meet his burden of proving actual bias or prejudice. *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000) (holding that *Smith v. Phillips*, 455 U.S. 209 altered the presumption of prejudice suggested in *Remmer v. United States*, 347 U.S. at 229); *see also United States v. Zelinka*, 862 F.2d 92, 95-96 (6th Cir. 1988); *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984). In determining whether Petitioner suffered prejudice, this Court must determine whether "there is any reasonable chance that the jury would have been deadlocked or would have reached a different verdict but for the fact that even one reasonable juror was exposed to prejudicial extraneous matter." *United States v. Hall*, 116 F.3d 1253, 1255 (8th Cir. 1997). Coupled with the burden of proving actual prejudice or bias is the burden of proving that the state courts' decisions denying relief contravened or unreasonably applied clearly established federal law or involved an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Further, factual findings made by the state courts enjoy a presumption of correctness, rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Under

these standards, this Court concludes that Mr. Fox's statements and testimony viewed as whole, not culled for isolated statements supporting one side or the other, fail to demonstrate that Mr. Fox was affected by the conversation sufficient to prejudice Petitioner. The Magistrate Judge concluded that Petitioner did not meet the showing necessary for habeas relief and, more particularly, that the state courts did not contravene or unreasonably apply clearly established federal law. This Court agrees.

For the foregoing reasons, the Court overrules Petitioner's objections and adopts the Magistrate Judge's Report and Recommendations to **DENY** Petitioner's seventh ground for relief as without merit.

Notwithstanding the determination of the Magistrate Judge and this Court that Petitioner was not prejudiced by juror misconduct sufficient to warrant habeas corpus relief, the Court is satisfied that reasonable jurists could find its decision debatable or wrong. The troubling aspects and fact-intensive nature of this claim warrant further review on appeal. Accordingly, the Court **CERTIFIES** for appeal Petitioner's seventh ground for relief.

**H. <u>Ground Eight</u>: Trial Court's Reasonable Doubt Instruction.**

Petitioner challenged in his eighth ground for relief the trial court's giving of what Petitioner conceded was Ohio's standard instruction on reasonable doubt. (Doc. # 77, at ¶¶ 89-98.) Specifically, Petitioner challenged as being too lenient in violation of the Due Process Clause the following jury instruction:

> Reasonable doubt is present when the jurors . . . cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense.

> Reasonable doubt is not mere possible doubt because everything related to human affairs or depending upon moral evidence is open to some possible or

imaginary doubt.

> Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

(Doc. # 77, at ¶ 89, quoting Tr. 910.)  Respondent argued that Petitioner defaulted this claim by failing to present it to the state courts and in the alternative that the claim is "patently meritless." (Doc. # 12, at 78-79.)  Petitioner appeared to concede in his traverse that he had defaulted this claim, offering ineffective assistance of appellate counsel as cause and prejudice to excuse the default before rehashing the merits of the claim.  (Doc. # 89, at 94-98.)

The Magistrate Judge agreed with Respondent that Petitioner failed to present the claim on direct appeal, further noted that Petitioner preserved the claim only as an underlying instance of ineffective assistance of appellate counsel, and recommended that the Court deny the claim as procedurally defaulted.  (Doc. # 94, at 84.)

It does not appear that Petitioner objected to the Magistrate Judge's conclusion or even once mentioned his eighth ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations.  For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's eighth ground for relief as procedurally defaulted.

Because Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim as procedurally defaulted and because the default of Petitioner's eighth ground for relief was, in this Court's review, so definitive and beyond question–Petitioner failed to raise this on-the-record claim in the state courts as anything other than an underlying instance

of ineffective assistance of appellate counsel–this Court concludes that this issue is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground eight for appeal.

**I.  Ground Nine: Ineffective Assistance of Trial Counsel.**

Petitioner offers six instances of unreasonable and prejudicial performance on the part of his defense attorneys in support of his claim of ineffective assistance of trial counsel. (Doc. # 77, at ¶¶ 99-102.) Specifically, Petitioner argues that his trial counsel performed unreasonably and to his prejudice when they: (1) failed to conduct any voir dire of the prospective jurors on the issue of racial bias; (2) failed to investigate or challenge the systemic discrimination in the selection of grand jury forepersons in Hamilton County; (3) failed to provide available documentation concerning the members of Petitioner's family who were hospitalized for mental illness; (4) failed to challenge the duplicative aggravating circumstances that both the jury and trial judge considered; (5) failed to rebut baseless misconduct by the prosecution during cross examination and arguments; and (6) failed to submit at least some evidence, such as an affidavit by Dr. Smalldon or another mental health expert, in support of the motion for a new trial on the basis of prejudicial juror misconduct.

Respondent argued that all but one of Petitioner's allegations–namely, his allegation that counsel were ineffective for failing to challenge the duplicative aggravating circumstances–are barred by procedural default due to Petitioner's failure to raise them on direct appeal or during his first round of postconviction. (Doc. # 12, at 87-90.) Respondent argued in the alternative that all of Petitioner's allegations are without merit.

In his traverse, Petitioner abandoned all but two of his allegations. Petitioner continued to argue that counsel performed deficiently and to his prejudice when they failed to object to the

duplicative aggravating circumstances and when they failed to offer evidence in support of their motion for a new trial on the basis of juror misconduct. Petitioner insisted that he defaulted neither, the former because Respondent raised no procedural default defense and the latter because a claim presented on a motion for new trial cannot be raised in postconviction under Ohio law.

The Magistrate Judge recommended denying Petitioner's claim sub-parts (1), (2), (3), (5), and (6) as procedurally defaulted–sub-part (1) due to Petitioner's failure to raise it as anything but an instance of ineffective assistance of appellate counsel; sub-parts (2), (5), and (6) due to Petitioner's inclusion of them only in an untimely and successive postconviction action; and sub-part (3) due to Petitioner's improper reliance on *State v. Walden*, 19 Ohio App. 3d 141, 483 N.E.2d 859 (1984), as establishing a procedural rule that relieved him of any obligation to raise the claim in postconviction. (Doc. # 94, at 84-92.) Finally, the Magistrate Judge recommended denying sub-part (4) as without merit, reasoning that Petitioner had not demonstrated ineffective assistance of counsel as cause and prejudice to excuse the default of his second ground for relief where he raised a free-standing claim challenging the duplicative aggravating circumstances.

It does not appear that Petitioner objected to the Magistrate Judge's conclusion or even once mentioned his ninth ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's ninth ground for relief–sub-parts (1), (2), (3), (5), and (6) ninth ground for relief as procedurally defaulted, and sub-part (4) as

without merit.

Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim. Further, because this Court is of the view that the default of sub-parts (1), (2), (3), (5), and (6) was so definitive and beyond question, and that sub-part (4) is plainly without merit, this Court concludes that this claim is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground nine for appeal.

**J. <u>Ground Ten</u>: Ineffective Assistance of Appellate Counsel.**

In his tenth ground for relief, Petitioner alleged that his appellate attorneys performed unreasonably and to his prejudice by failing to raise the following issues on direct appeal:

A. The trial court's error in precluding penalty phase testimony from Petitioner's mother and a social worker concerning the impact of the prosecution of Petitioner on his family and other reasons why jurors should not sentence him to death;

B. The trial court's instructions defining reasonable doubt;

C. The trial court's error in instructing the jurors to weigh the "nature and circumstances" of the aggravating circumstances;

D. Various instances of prosecutorial misconduct, including legal misstatements that mitigation could not outweigh what Petitioner did and that Petitioner's chronological age of 18 could not be considered as mitigation because he was street smart; baseless assertions and questions suggesting that Petitioner's behavior was the result of substance abuse instead of mental illness and that Petitioner's head injury could not have caused his mental illness; trivialization of defense counsel's mitigation evidence supporting mental illness; telling jurors that the prosecution had no idea what mitigation evidence Petitioner would offer, as if it were at a disadvantage, when judge ordered during *voir dire* that defense counsel disclose all mitigation evidence to the prosecution; and improper penalty phase expressions of personal belief and attacks against defense counsel; and

E. Instances of ineffective assistance of trial counsel, including counsel's failure to ask prospective jurors during *voir dire* about the issue of racial bias and failure to challenge systemic discrimination in the selection of grand jury

67

foreperson in Hamilton County.

(Doc. # 77, at ¶¶ 103-110.)  In support of his claim, Petitioner argued that counsel could not have had any tactical reasons for failing to raise these issues, not only because the omitted issues were meritorious but also because appellate counsel in capital cases have a duty to preserve all potential issues for review.  Petitioner also argued that his rights on direct appeal were further compromised by the fact that one of his appellate attorneys was suffering from mental problems and physical ailments that were substantial enough to have warranted disciplinary action against him by the Ohio Supreme Court.

Respondent argued that Petitioner's claims were presumptively barred by procedural default because Petitioner did not timely file the Rule 26(B) application for delayed reopening of his direct appeal in which he included his claims of appellate counsel ineffectiveness.  (Doc. # 12, at 91-94.)  Respondent argued in the alternative that Petitioner's claims are without merit because appellate counsel do not have a duty to raise every non-frivolous issue.  Respondent further condemned Petitioner for offering as instances of appellate counsel ineffectiveness issues that correspond with habeas corpus claims otherwise subject to procedural default.  In so doing, Respondent observed, Petitioner essentially invites the Court to review otherwise defaulted claims because the Court, in order to determine whether appellate counsel were ineffective, would have to determine whether the omitted (and defaulted) issues were meritorious.

In his traverse, Petitioner argued first that his claims were not barred by procedural default because, even though the appellate court rejected his claims as untimely, the Ohio Supreme Court expressly refused to apply that procedural bar and rejected Petitioner's claims on the merits, albeit without discussion.  (Doc. # 89, at 118-23.)  In asserting the merits of his

68

claims of appellate counsel ineffectiveness, Petitioner focused only on appellate counsel's failure to challenge the trial court's failure to instruct jurors that unanimity was not required in order to recommend a life sentence and appellate counsel's failure to emphasize certain instances of prosecutorial misconduct, to wit: the prosecution's legal misstatement that no amount of mitigation could outweigh what Petitioner did; the prosecution's assertions that Petitioner's chronological age of eighteen was not a mitigating factor because he was street smart and knew how to buy alcohol and marijuana illegally; the prosecution's assertions that it had no idea what mitigation evidence defense counsel would offer, as if the prosecution were disadvantaged when it was clear during *voir dire* that it was aware of the mental health testimony that defense counsel planned to offer; and improper penalty phase expressions of personal opinions and attacks against defense counsel, including calling Dr. Smalldon "very slick," suggesting that absent a video tape of the robbery and murder, defense counsel would have had Petitioner "seeing ghosts everywhere," and calling the mitigation defense an "absolute sham." Relying on the Sixth Circuit's discussion of the factors to consider when reviewing claims of appellate counsel ineffectiveness in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999), Petitioner argued that these two omitted issues were significant and obvious, as well as clearly stronger than the issues that appellate counsel did raise.

The Magistrate Judge recommended denying on the merits all but one of the sub-parts of Petitioner's tenth ground for relief. (Doc. # 94, at 92-101.) Specifically, the Magistrate Judge recommended that Petitioner be granted a conditional writ of habeas corpus on his fifth sub-claim to the extent that he claimed that his appellate counsel were ineffective for not raising as error on direct appeal the prosecution's trivialization of Petitioner's mental health evidence, the

prosecution's improper statements about having been denied access to Petitioner for purposes of a mental health evaluation, the prosecution's suggestion that defense counsel would have presented false evidence but for the existence of a videotape of the offense, and the prosecution's improper denigration of Dr. Smalldon and defense counsel. In so recommending, the Magistrate Judge clarified that because he had already recommended granting relief on Petitioner's underlying claims of prosecutorial misconduct set forth in ground five, relief on ground ten–a new direct appeal–would be warranted only if the Court declines to grant relief on ground five. The Magistrate Judge recommended denying relief on the remaining sub-claims of Petitioner's tenth ground for relief, finding for various reasons that because none of the omitted issues were likely to succeed on appeal, appellate counsel were not ineffective for failing to raise them.

Petitioner objected to no aspect of the Magistrate Judge's decision, but Respondent objected to the Magistrate Judge's decision to the extent that it recommended granting relief. Respondent argued that the Ohio Supreme Court's summary decision rejecting Petitioner's appellate counsel ineffectiveness claims did not contravene or unreasonably apply clearly established federal law sufficient to permit habeas corpus relief under 28 U.S.C. § 2254(d)(1). Respondent argued that the Magistrate Judge essentially engaged in *de novo* review of Petitioner's claims, rather than the deferential standard of review set forth in § 2254(d)(1). Respondent argued that the Magistrate Judge also had failed to assess the relative strength of the issues that appellate counsel omitted against the strength of the issues that appellate counsel did raise. Finally, Respondent noted that appellate counsel did challenge on appeal the propriety of the prosecution's description of defense counsel as "underhanded" in not presenting an insanity defense during the trial phase.

In the Supplemental Report and Recommendations, the Magistrate Judge withdrew his previous recommendation and recommended denying relief on Petitioner's tenth ground for relief. (Doc. # 108, at 5-6.) The Magistrate Judge recognized a "logical inconsistency" in recommending that relief be granted not only on certain instances of prosecutorial misconduct alleged in ground five, but also on the failure of appellate counsel to raise as error those same instances of prosecutorial misconduct alleged in ground ten. That is, the Magistrate Judge recognized that appellate counsel *had* indeed raised on appeal the instances of prosecutorial misconduct for which the Magistrate Judge previously had judged them ineffective for not raising. The Magistrate Judge further concluded that the prosecutorial misconduct that Petitioner alleged in ground five was broad enough to subsume any statements made by the prosecution during penalty phase rebuttal arguments that Petitioner charged appellate counsel in ground ten for failing to raise on appeal. In that regard, the Magistrate Judge also noted that even if that were not so, appellate counsel advanced in the state courts the most potent part of Sheppard's prosecutorial misconduct claims. Finally, the Magistrate Judge pointed out, with regard to any prosecutorial misconduct that appellate counsel failed to raise as error, that in granting relief on Petitioner's free-standing prosecutorial misconduct claim, the Magistrate Judge had considered the prosecutor's argument in its entirety as required by *Donnelly v. DeChristoforo*, 416 U.S. 637, 645-47 (1974). For all of those reasons, the Magistrate Judge concluded that appellate counsel were not ineffective for failing to raise as error every non-frivolous instance of prosecutorial misconduct.

It does not appear that Petitioner objected to the Magistrate Judge's revised conclusion or even once mentioned his tenth ground for relief in any of the objections or responses that he filed

in response to the Magistrate Judge's two Reports and Recommendations. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's tenth ground for relief in its entirety as without merit.

Because Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim and because this Court is of the view that the claim is so plainly without merit, this Court concludes that this claim is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground ten for appeal.

**K.  Ground Eleven: Discrimination in Selection of Grand Jury Forepersons.**

Petitioner complained in his eleventh ground for relief of systemic racial and gender discrimination in Hamilton County's grand jury foreperson selection process as violating his rights to equal protection, due process, and fair cross-section. (Doc. # 77, at ¶¶ 111-19.) Noting that Ohio law permits the presiding common pleas judge to go outside the grand jury venire to select anyone from the county-wide population to serve as grand jury foreperson, Petitioner asserts that common pleas judges in Hamilton County have abused that discretion in disproportionately selecting white males to serve as grand jury foremen. Respondent argued that Petitioner defaulted this claim because he failed to present it at trial, on direct appeal, or in his first round of postconviction. (Doc. # 12, at 95-96.) Respondent argued in the alternative that Petitioner's claim is without merit. In his traverse, Petitioner offered appellate counsel ineffectiveness as cause and prejudice to excuse the default and proceeded to set forth statistics that, according to Petitioner, establish not only that the selection of grand jury forepersons in Ohio has been tainted by racial and gender discrimination, but also that that discrimination has

resulted in racism in the administration of capital punishment in Hamilton County. (Doc. # 89, at 87-94.)

The Magistrate Judge recommended denying Petitioner's claim as procedurally defaulted. (Doc. # 94, at 101-03.) The Magistrate Judge noted that Petitioner first raised the claim in his second or successive postconviction action, which the state courts declined to entertain due to Petitioner's failure to comply with state statutory requirements for filing a second or successive postconviction action. The Magistrate Judge concluded that Petitioner had procedurally defaulted his claim in that regard. The Magistrate Judge further concluded that Petitioner's inclusion of that claim in his Rule 26(B) application for reopening of his direct appeal as an instance of appellate counsel ineffectiveness was insufficient to preserve the underlying claim itself. The Magistrate Judge also concluded that, to the extent that Petitioner was offering appellate counsel ineffectiveness as cause to excuse the default of the claim, his argument was unavailing because appellate counsel could not possibly be deemed ineffective for failing to raise on appeal a claim that so clearly required evidence outside the trial record.

It does not appear that Petitioner objected to the Magistrate Judge's conclusion or even once mentioned his eleventh ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's eleventh ground for relief as procedurally defaulted.

Because Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim and because this Court is of the view that the default of his claim was so

definitive and beyond question, this Court concludes that this claim is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground eleven for appeal.

L. <u>Ground Twelve</u>: **Constitutional Deficiencies in Ohio Supreme Court's Review.**

In his twelfth ground for relief, Petitioner argued that the Ohio Supreme Court's review and affirmance of the judgment against him was Constitutionally deficient in two respects. (Doc. # 77, at ¶¶ 120-29.) First, Petitioner argues that the Ohio Supreme Court erred during its independent reweighing of the aggravating circumstances and mitigating factors by considering invalid, duplicative aggravating circumstances. Second, Petitioner argues that the Ohio Supreme Court erred in purporting to "cure" egregious penalty phase prosecutorial misconduct through its independent reweighing. Petitioner points out in this regard that prosecutorial misconduct is a trial error that requires harmless error review and that the "cure" of independent reweighing is limited to situations where the sentencer considers invalid aggravating circumstances.

Respondent urged the Court to deny Petitioner's claim as without merit. (Doc. # 12, at 65-66.) As to the Ohio Supreme Court's consideration in its independent reweighing process of duplicative aggravating circumstances, Respondent argued that, "[t]he Ohio Supreme Court's treatment of the specifications as separate in its independent review of Sheppard's sentence is perfectly consistent with the Ohio Court of Appeals' holding that Sheppard had waived the issue by failing to object." (*Id*. at 65.) Respondent also argued that "the specifications were not invalid for constitutional purposes, and, thus, no re-weighing was necessary." (*Id*. at 66.) As to the Ohio Supreme Court's attempt to "cure" the penalty phase prosecutorial misconduct through its independent sentence review rather than undertaking harmless error review, Respondent argues that because the Ohio Supreme Court did not hold that the prosecutor's improper

arguments were so erroneous as to deprive Petitioner of fundamental fairness, there was no need for the Ohio Supreme Court to apply harmless error analysis. (*Id*.)

In his traverse, Petitioner continued to laud the merits of his claim, focusing primarily on the Ohio Supreme Court's error in considering duplicative aggravating circumstances during its independent reweighing process and rehashing his arguments assailing the Ohio Supreme Court's attempt to "cure" penalty phase prosecutorial misconduct through independent reweighing rather than harmless error review. (Doc. # 89, at 75-82, 42-43.) Regarding the former, Petitioner expanded his arguments in several key respects. (*Id*. at 75-82.) First, Petitioner argued that his claim challenging the Ohio Supreme Court's consideration of duplicative aggravating circumstances during the reweighing process is subject neither to deferential review under the AEDPA (because the claim was never adjudicated on the merits) nor to procedural default (because none was alleged by Respondent). Petitioner went on to argue that Ohio Supreme Court has a statutory duty to independently consider and weigh the aggravating circumstances and mitigating factors and to do so without considering duplicative aggravating circumstances, that this duty rose to the level of creating a protected liberty interest, and that the Ohio Supreme Court violated that protected liberty interest.

The Magistrate Judge recommended denying Petitioner's twelfth ground for relief on the merits. After noting that Petitioner *could* have included this claim in the motion for reconsideration that he filed following the Ohio Supreme Court's decision affirming the judgment against him on direct appeal, the Magistrate Judge nonetheless declined to raise the default *sua sponte*–in part because Respondent failed to raise procedural default and in part because of the "peculiar circumstances of the error"–and conducted a *de novo* review of the

claim instead.  Regarding Petitioner's allegation that the Ohio Supreme Court erred in purporting to cure penalty phase misconduct by the prosecution, the Magistrate Judge noted that he had already found in his discussion of Petitioner's tenth ground for relief that the Ohio Supreme Court's decision in that regard was contrary to clearly established federal law as determined by the United States Supreme Court.  The Magistrate Judge went on to reject Petitioner's allegation that the Ohio Supreme Court had erred in considering duplicative aggravating circumstances during its independent weighing process.  Noting that the United States Supreme Court has distinguished between duplicative aggravating circumstances and invalid aggravating circumstances, with only the latter constituting reversible error, the Magistrate Judge concluded that although the Ohio Supreme Court's consideration of duplicative aggravating circumstances may have been contrary to state law, it was not an error of federal constitutional magnitude.

It does not appear that Petitioner objected to the Magistrate Judge's conclusion or even once mentioned his twelfth ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations.  For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's twelfth ground for relief as without merit.

Because Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim and because this Court is of the view that the claim is so plainly without merit, this Court concludes that this claim is not deserving of further review on appeal.  The Court hereby **DECLINES** to certify ground twelve.

**M.  <u>Ground Thirteen</u>: Proportionality Review Conducted by Ohio Supreme Court.**

Petitioner complained in his thirteenth ground for relief that the proportionality review conducted by the Ohio Supreme Court is constitutionally flawed because, in violation of the intent of the General Assembly in enacting Ohio's capital punishment scheme, the Ohio Supreme Court reviews only capital cases involving similar offenses where death was imposed. (Doc. # 77, at ¶¶ 130-41.)  Petitioner argued that because the statute in question requires the reporting of cases in which death is sought, the statute creates a liberty interest that the Ohio Supreme Court violates when it refuses to consider cases where a sentence less than death was imposed.

Respondent argued without specificity that, to the extent that Petitioner failed to present this argument to the Ohio Supreme Court on direct appeal, he procedurally defaulted the claim. (Doc. # 12, at 94-96.)  Respondent went on to argue in the alternative that Petitioner's claim was without merit because it was foreclosed by well-established Sixth Circuit precedent.

In his traverse, Petitioner argued that he presented the claim to the Ohio Supreme Court on direct appeal, that the Ohio Supreme Court summarily rejected it as a "settled"issue, and that his claim therefore is not procedurally defaulted and his deserving of *de novo* or at least "less deferential" review by this Court.  (Doc. # 89, at 98-108.)  Emphasizing that he premised his claim not on the Eighth Amendment, but on the Due Process Clause, Petitioner argued at length that the Ohio Supreme Court arbitrarily deprived him of a state-created liberty interest in proportionality review that included capital cases in which life sentences were imposed.

The Magistrate Judge recommended denying Petitioner's claim as without merit.  (Doc. # 94, at 106.)  Specifically, the Magistrate Judge concluded that Petitioner's claim essentially was foreclosed by district court and Sixth Circuit precedent.

It does not appear that Petitioner objected to the Magistrate Judge's conclusion or even once mentioned his thirteenth ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's thirteenth ground for relief as without merit.

Because Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim and because it appears that this claim is so plainly foreclosed by Sixth Circuit precedent–*see, e.g., Williams v. Bagley*, 380 F.3d 932, 961-63 (6th Cir. 2004)–this Court concludes that this claim is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground thirteen.

### N.  <u>Ground Fourteen</u>: Constitutionality of Ohio's Capital Punishment Scheme.

Petitioner argued in his fourteenth ground for relief that his death sentence was constitutionally infirm because Ohio's statutory capital punishment scheme is arbitrarily, capriciously, and discriminatorily applied in violation of Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. # 77, at ¶¶ 142-157.) In this claim, Petitioner raised an array of challenges to the Constitutionality of Ohio's death penalty.

As with Petitioner's thirteenth ground for relief, Respondent argued without specificity that, to the extent that Petitioner failed to present his fourteenth ground for relief to the Ohio Supreme Court on direct appeal, he procedurally defaulted the claim. (Doc. # 12, at 94-96.) Respondent went on to argue in the alternative that Petitioner's claim was without merit because

it was foreclosed by well-established Sixth Circuit precedent.

Petitioner raised nothing new in his traverse that he had not raised in his petition.  (Doc. # 89, at 108-15.)

The Magistrate Judge recommended denying Petitioner's claim on the merits.  (Doc. # 94, at 106-09.)  The Magistrate Judge summarized Petitioner's allegations as follows:

1.   The uncontrolled discretion prosecutors in Ohio possess in determining whom to charge with a capitally eligible offense permits racially discriminatory administration of the death penalty and creates a mandatory death penalty contrary to *Woodson v. North Carolina*, 428 U.S. 280 (1976);

2.   Ohio underfunds defense counsel and does not guarantee a fair and adequate process for appellate review;

3.   Ohio's death penalty scheme requires the aggravating circumstances to be proven in the guilt phase of the trial;

4.   Ohio's death penalty scheme unfairly burdens a defendant's right to a jury trial by permitting a trial judge to dismiss death penalty specifications "in the interest of justice" in the event a defendant pleads guilty or no contest to an indictment;

5.   Ohio requires submission of any presentence investigation report or psychological evaluation to the trier of fact;

6.   Ohio's proportionality review compares a defendant's death sentence only to other cases that resulted in a death sentence; [and]

7.   Ohio's courts of appeals and supreme court have not followed the dictates of the death penalty statute respecting the mandated independent sentencing review.

(Doc. # 94, at 107.)  The Magistrate Judge went on to reject each allegation in turn.

Specifically, the Magistrate Judge that noted that the district court had rejected the first allegation in *Zuern v. Tate*, 101 F. Supp. 2d 948, 1002 (S.D. Ohio 2000), and had rejected any argument that Ohio's scheme creates a mandatory death penalty.  As for the alleged under-

funding of defense counsel and inadequacy of appellate review in Ohio, the Magistrate Judge noted that the authorities relied upon by Petitioner in support of those arguments, the American Bar Association and United Nations High Commissioner on Human Rights, are not authorities recognized by the AEDPA regarding when habeas corpus relief is warranted.  The Magistrate Judge noted that the district court also had rejected in *Zuern* the alleged unconstitutionality of requiring proof of aggravating circumstances during the guilt phase of bifurcated capital trials. Regarding Petitioner's allegation that Ohio's scheme burdens a defendant's exercise of the right to go to trial, the Magistrate Judge noted that the district court also had rejected that claim in *Zuern*, with additional support from the decision of *Scott v. Anderson*, 58 F. Supp. 2d 767, 796 (N.D Ohio 1998).  As for Petitioner's challenge to the requirement that any presentence investigation report requested by a death-eligible defendant be provided to the trier of fact, the Magistrate Judge conceded that courts have found the requirement "troubling," but also noted, citing *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000), that the Sixth Circuit has rejected challenges to the requirement.  The Magistrate Judge concluded that the district court had rejected in *Smith v. Anderson*, 104 F. Supp. 2d 773, 829-30 (S.D. Ohio 2000), Petitioner's challenge to the manner in which the Ohio Supreme Court conducts statutorily-mandated proportionality review.  Finally, regarding Petitioner's claim that state courts have not adhered to statutory dictates governing their independent sentencing review, the Magistrate Judge concluded that Petitioner had offered only conclusory statements in support of his claim, which was insufficient to sustain habeas corpus relief.  Thus, the Magistrate Judge recommended denying Petitioner's fourteenth ground for relief as without merit.

It does not appear that Petitioner objected to the Magistrate Judge's conclusion or even

once mentioned his fourteenth ground for relief in any of the objections or responses that he filed in response to the Magistrate Judge's two Reports and Recommendations. For the reasons set forth by the Magistrate Judge and because Petitioner did not object, this Court adopts the Magistrate Judge's Report and Recommendation to **DENY** Petitioner's fourteenth ground for relief as without merit.

Because Petitioner did not object to the Magistrate Judge's decision recommending denial of this claim and because it appears that this claim is plainly foreclosed by Sixth Circuit precedent, this Court concludes that this claim is not deserving of further review on appeal. The Court hereby **DECLINES** to certify ground fourteen.

### O. <u>Ground Fifteen</u>: Cumulative Error.

Petitioner argued in his fifteenth ground for relief that the cumulative effect of the errors he alleges in his petition warrant habeas corpus relief. (Doc. # 77, at ¶¶ 158-60.) Noting that the Ohio Court of Appeals and the Ohio Supreme Court rejected the claim summarily, Respondent argued that those decisions did not contravene or unreasonably apply clearly established federal law. (Doc. # 12, at 97.) Petitioner expanded upon this argument in his traverse, arguing that the Supreme Court has long held that death penalty cases demand heightened reliability and that the Sixth Circuit has recognized that the cumulative effect of constitutional errors can sustain habeas corpus relief.[7] (Doc. # 89, at 123-27.) Petitioner argued that flagrant prosecutorial misconduct during penalty phase arguments that diminished Petitioner's mental illness mitigation evidence, combined with other sentencing errors (such as the trial court's jury instructions on certain

---

[7]     Petitioner relies in particular on *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983), and *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1983.)

mitigating evidence, the trial court's refusal to admit certain mental health evidence, and juror misconduct concerning the definition of paranoid schizophrenia), all warrant habeas corpus relief.

The Magistrate Judge recommended denying relief on ground fifteen. Noting that he had already recommended granting conditional relief on parts of grounds five and ten, the Magistrate Judge concluded that none of the other errors that Petitioner alleged cumulated to warrant relief. (Doc. # 94, at 109.)

In the Limited Objections that he filed on July 2, 2004, Petitioner advanced the same arguments that he had set forth in his traverse. (Doc. # 100, at 60-63.) In the Supplemental Report and Recommendations filed on December 16, 2004, however, the Magistrate Judge concluded that no further analysis was necessary. (Doc. # 108, at 14.)

Upon *de novo* review of the Report and Recommendations, the Supplemental Report and Recommendations, Petitioner's briefs on direct appeal to the intermediate court of appeals and the Ohio Supreme Court, and the state court decisions, this Court overrules Petitioner's objections and adopts the Magistrate Judge's Report and Recommendations and Supplemental Report and Recommendations to deny this claim. Petitioner's cumulative error claim is foreclosed by Sixth Circuit precedent. that establishes that, in cases governed by the AEDPA, "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003); *see also Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) (holding that Supreme Court has never held that distinct claims can accumulate to grant habeas relief), *cert. denied*, 127 S. Ct. 1485 (2007); *Moore v. Parker*,

425 F.3d 250, 256 (6th Cir. 2005) (same), *cert. denied*, 127 S. Ct. 557 (2006). Petitioner's case was, in this Court's review, replete with troubling issues from beginning to end. But granting relief on Petitioner's cumulative-effect-of-the-errors claim would fly in the face of the of the foregoing precedent, requiring a temerity that this Court does not possess. Thus, this Court cannot find that the Ohio courts' decisions rejecting Petitioner's cumulative-effect-of-the-errors claims were contrary to or involved an unreasonable application of clearly established federal law.[8]

For the foregoing reasons, the Court overrules Petitioner's objections and adopts the Magistrate Judge's Report and Recommendations to **DENY** Petitioner's fifteenth ground for relief as without merit.

Notwithstanding the determination of the Magistrate Judge and this Court, within the constraints of 28 U.S.C. § 2254(d)(1), that the state courts' decisions rejecting Petitioner's cumulative-effect-of-the-errors claim did not contravene or unreasonably apply clearly established federal law, the Court is of the view that reasonable jurists could find its decision debatable or wrong. The authorities upon which this Court denied relief also suggest a willingness on the part of the Sixth Circuit to at least consider these important claims concerning the reliability of death sentences. Thus, the Court **CERTIFIES** for appeal Petitioner's fifteenth ground for relief.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's claims and **DIRECTS** the

---

[8] This Court is mindful that the Sixth Circuit granted relief on a cumulative-error claim in *DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir. 2003), but that case was not governed by the AEDPA.

Clerk to enter final judgment **DISMISSING** this habeas corpus action.

Further, the Court **CERTIFIES** for appeal Petitioner's first, third, fourth, fifth, seventh, and fifteenth grounds for relief, *to the extent* set forth in the Court's Opinion and Order.

**IT IS SO ORDERED.**

__/s/   Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
