IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BOBBY T. SHEPPARD,

      Petitioner,

v.                                Case No.  1:00-CV-493
                                          JUDGE GREGORY L. FROST
NORM ROBINSON, Warden,         Magistrate Judge Michael R. Merz

      Respondent.

## OPINION AND ORDER

       This is a death penalty habeas corpus case.  On March 4, 2009, this Court issued final judgment denying Petitioner's claims and dismissing his habeas corpus action.  (ECF Nos. 131 and 132.) This matter is before the Court for consideration of Petitioner's motion for leave to file a motion to set aside the judgment (ECF No. 144), Petitioner's motion to reopen the case (ECF No. 150), the Magistrate Judge's Report and Recommendations of July 6, 2012 (ECF No. 152), Objections by Petitioner (ECF No. 156), the Magistrate Judge's Report and Recommendations of August 20, 2012 (ECF No. 166), Objections by Petitioner (ECF No. 169), and the Magistrate Judge's Supplemental Report and Recommendations of October 2, 2012 (ECF No. 170).

       Following the Court's March 4, 2009 Opinion and Order denying his claims and dismissing his habeas corpus action, Petitioner filed a March 19, 2009 motion to alter the judgment.  (ECF No. 133.)  This Court denied that motion on March 23, 2009.  (ECF No. 134.) The Court of Appeals for the Sixth Circuit on September 14, 2011 affirmed this Court's decision dismissing the habeas corpus action (ECF No. 140), and the Supreme Court of the United States denied certiorari on June 12, 2012 (ECF No. 149).

1

Petitioner is now before the Court with a slew of filings seeking to reopen his twelve-year-old case for two purposes:  (1) adding two new claims challenging the constitutionality of Ohio's policies, procedures, and practices in carrying out court-ordered lethal injections; and (2) revisiting, on the basis of *Martinez v. Ryan*, 132 S.Ct. 1309 (2102), a portion of Petitioner's ninth ground for relief that this Court dismissed as procedurally defaulted.

## I. April 17, 2012 Motion for Relief from Judgment

First, Petitioner filed a motion on April 17, 2012 seeking relief from judgment, pursuant to Fed. R. Civ. P. 60(b)(6), in order to reopen his case "to add newly ripe lethal injection claims to his initial habeas petition."  (ECF No. 144, at PAGEID #: 849.)  He also requested an "indicative ruling" stating that this Court would allow him relief from judgment, for the purpose of seeking a remand from the Court of Appeals for the Sixth Circuit (where his habeas corpus appeal was still pending).  Respondent opposed Petitioner's motion, arguing that this Court was without jurisdiction to entertain a Rule 60(b) motion for relief from judgment and that Petitioner's motion essentially constituted a second or successive habeas corpus petition that required authorization from the Sixth Circuit.

The Magistrate Judge issued a Report and Recommendations on July 6, 2012.  (ECF No. 152.)  The Magistrate Judge notes that since Petitioner's motion had become ripe, four new developments had occurred:  (1) the Sixth Circuit had remanded a different habeas case (raising the same new claims at issue herein) filed by Petitioner back to this Court; (2) the United States Supreme Court had denied *certiorari* in the instant case; (3) the Magistrate Judge had recommended allowing Petitioner's new habeas case to proceed; and (4) the Sixth Circuit had issued the mandate in the instant case.  The Magistrate Judge further notes that because this

Court had re-acquired jurisdiction, Petitioner's request for an indicative ruling was moot.  The Magistrate Judge proceeds to recommend that based on the Report and Recommendations in Petitioner's new case, (Civil No. 1:12-cv-198), this Court should reject Respondent's argument that the instant motion to reopen judgment is actually a second or successive petition.  The Magistrate Judge then states, however, that "significant policy considerations counsel in favor of denying the instant Motion and allowing the new Petition to proceed."  (ECF No. 152, at PAGEID #: 957.)  Citing *Gonzalez v. Ryan*, 545 U.S. 524 (2005), the Magistrate Judge notes not only that the judgment in Petitioner's case is final but also that the Sixth Circuit carefully reviewed Petitioner's habeas corpus claims and affirmed in a published decision the judgment denying those claims.  The Magistrate Judge further observes that the competing interests that Rule 60 seeks to balance— allowing litigation to be brought to an end and ensuring that justice is done—could both be served by denying Petitioner's motion to reopen the instant habeas corpus case and allowing his new claims to be considered in Case No. 1:12-cv-198.  Finally, the Magistrate Judge recommends rejecting Petitioner's Federal Rule of Civil Procedure 15(a)(2) motion for leave to amend his petition, noting that no authority exists supporting post-judgment amended under Rule 15(a)(2).

Petitioner filed objections on July 23, 2012. (ECF No. 156.)  Noting that the Magistrate Judge had not recommended denying the motion to reopen on the basis of any arguments raised by Respondent and had instead recommended denying the motion on the basis of "significant policy concerns," Petitioner urges this Court to allow him to reopen this case to add new claims. Petitioner insists that because reopening would be for the limited purpose of allowing him to add two new claims, reopening would not affect any other portions of this Court's original judgment

or upset any of the holdings by other federal courts.  Petitioner also notes that because he had

since filed another motion to reopen his case—this one on the basis of *Martinez v. Ryan*, 132 S.

Ct. 1309 (2012)—if the Court were to grant that motion to reopen, it could also grant the instant

motion to reopen and the interests of judicial economy and efficiency could best be served by

allowing Petitioner to litigate both issues in the reopened case.

The Magistrate Judge on October 2, 2012 issued a Supplemental Report and

Recommendations. (ECF No. 170.)  The Magistrate Judge begins by noting that Petitioner had

made no comment on why the new case does not sufficiently protect his interests and that

Petitioner had instead simply concentrated on why he should be permitted to reopen the instant

case.  After distinguishing each case cited by Petitioner, the Magistrate Judge concludes that

"Petitioner ha[d] cited no authority from any court which states that reopening a judgment to

allow new claims to be pled maintains the finality of the balance of the judgment."  (*Id*. at

PAGEID #: 1539.)  Noting that public policy favors finality of judgments, the Magistrate Judge

again recommends that this Court deny Petitioner's motion to reopen this case.

Petitioner filed Objections on October 19, 2012.  (ECF No. 171.)  In the first part of his

Objections, Petitioner insists that contrary to the Magistrate Judge's conclusion, the decision of

*Ruiz v. Quarterman* squarely supports Petitioner's argument that nothing about reopening

Petitioner's habeas corpus action for the limited purposes of allowing him to litigate his method-

of-execution challenges and to revisit part of his ninth ground for relief will not undermine or

otherwise affect any other previous ruling in the case.  Second, Petitioner asserts that any public

policy concerns favoring finality of judgments should in this case give way to public policy

concerns related to the interests of judicial economy and efficiency, as well as the interest of

administrative convenience, which militate in favor of reopening the case.

Decisional in this portion of the Opinion and Order are Petitioner's Motion for Relief from Judgment to Reopen the Case to Add New Claims (ECF No. 144); the Magistrate Judge's July 6, 2012 Report and Recommendations recommending that this Court deny the motion for relief from judgment (ECF No. 152); and the Magistrate Judge's Supplemental Report and Recommendations recommending again that this Court deny the motion for relief from judgment (ECF No. 170). Also before the Court are Objections that Petitioner filed on July 23, 2012 (ECF No. 156) and on October 19, 2012 (ECF No. 171).

The Court begins with the Magistrate Judge's conclusions and recommendations. In so doing, the Court notes that the precise issue for it to decide is not whether the Magistrate Judge merely erred in any of his findings or conclusions. Rather, only if the Court determines that any part of the Magistrate Judge's decision was clearly erroneous or contrary to law may the Court modify or set aside that part. The "clearly erroneous" standard applies to the Magistrate Judge's factual findings. A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). *See also Adams v. County Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000). The "contrary to law" standard applies to the Magistrate Judge's legal conclusions. Legal conclusions should be modified or set aside if they "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). Viewed against this backdrop, the Court is not persuaded that any part of the Magistrate Judge's Reports and Recommendations concerning

Petitioner's first motion for relief from judgment were "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set them aside.

In the July 6, 2012 Report and Recommendations (ECF No. 19), the Magistrate Judge recommends that this Court deny Petitioner's April 17, 2012 Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (ECF No. 144). Petitioner's aim in filing that motion was to reopen his closed case for the purpose of adding and litigating two new claims challenging the constitutionality of Ohio's execution policy, procedures, and practices. Respondent opposed the motion, arguing that because the instant motion was actually a second or successive habeas corpus petition requiring authorization from the Sixth Circuit in order to proceed, this Court was without jurisdiction to grant relief from judgment. (ECF No. 147.) The Magistrate Judge recommends that this Court reject Respondent's position. The Magistrate Judge relies on a Report and Recommendations he had issued in the new habeas corpus case that Petitioner had initiated, Case No. 1:12-cv-198, explaining why that new petition was not a second or successive petition.

Having so concluded, however, the Magistrate Judge nonetheless determines that "significant policy considerations counsel in favor of denying the instant Motion and allowing the new Petition to proceed." (ECF No. 152, at PAGEID #: 957.) Citing *Gonzalez v. Ryan*, 545 U.S. 524 (2005), the Magistrate Judge emphasizes both that judgment dismissing the instant habeas corpus petition is final and that the Sixth Circuit carefully reviewed the matter and affirmed in a published opinion the decision to deny habeas corpus relief. The Magistrate Judge proceeds to conclude that the competing interests that Rule 60(b) strives to balance of promoting the finality of state-court judgments and of ensuring that justice is done could both be served by

6

denying the instant motion for relief from judgment to reopen the original habeas corpus application and allowing the new habeas corpus application to proceed. The Magistrate Judge explains that the important public policy concerns favoring finality of state-court judgments would not result in a miscarriage of justice in the instant case for the reason that denying the instant motion for relief from judgment would not deprive Petitioner of review of his method-of-execution claims. He can obtain that review in the new case. At the heart of the Magistrate Judge's reasoning is trepidation that reopening the instant case for the limited purpose of allowing Petitioner to add two new claims might undermine the previous rulings made in the case.

Following Objections that Petitioner filed on July 23, 2012 (ECF No. 156), the Magistrate Judge issued an October 2, 2012 Supplemental Report and Recommendations (ECF No. 170) again recommending that this Court deny Petitioner's April 17, 2012 Motion for Relief from Judgment (ECF No. 144). The Magistrate Judge dedicates most of the decision to distinguishing the *Ruiz v. Quarterman* decision upon which Petitioner heavily relied to support his assertion that granting the Rule 60(b)(6) relief he seeks would not undermine any other prior rulings in the case. The prior dismissal in *Ruiz*, the Magistrate Judge begins, was on the basis of exhaustion, not on the merits. Further, the Magistrate Judge continues, although Ruiz had no other forum for obtaining review of his claim, Petitioner here has his new habeas corpus case. Finally, the Magistrate Judge notes that *Ruiz* did not hold that reopening the prior final judgment would not affect prior rulings in the case. The Magistrate Judge also distinguishes the other decisions upon which Petitioner had relied in concluding that this Court should deny Petitioner's motion for relief from judgment to reopen the case.

7

Upon *de novo* review, this Court finds nothing clearly erroneous or contrary to law in the Magistrate Judge's July 6, 2012 Report and Recommendations or October 2, 2012 Supplemental Report and Recommendations.  As the Magistrate Judge correctly notes, "[r]elief under Rule 60(b)(6) … requires a showing of 'extraordinary circumstances.' " *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).  Rule 60(b)(6) relief is thus warranted only in "unusual and extreme situations where principles of equity mandate relief." *Olle v. Henry & Wright*, 910 F.2d 357, 365 (6th Cir. 1990).  The Court agrees with the Magistrate Judge that "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefits Fund*, 249 F.3d 519, 529 (6th Cir. 2001).  Where, as here, the competing interests pit the strong public policy favoring finality of judgments against the inherent need to ensure that justice is done, this Court fully agrees with the Magistrate Judge that *both* interests can best be served by denying Rule 60(b)(6) relief to reopen the instant habeas corpus case for the purpose of allowing Petitioner to add his method-of-execution claims and allowing Petitioner instead to litigate those claims in his new habeas corpus case.

Nothing weighs in favor of granting Petitioner's request for 60(b)(6) relief for the purpose of reopening this case so that he may add two new method-of-execution claims. Granting the 60(b)(6) relief that Petitioner requests unquestionably undermines the finality of judgment.  More importantly, however, granting relief is not necessary to ensure that justice is done because granting relief is not needed for Petitioner to obtain review of his claims—he may obtain that review in the new case that this Court is allowing to proceed.  The new case is

8

sufficient to protect Petitioner's interests; Petitioner concedes as much.  (ECF No. 171, at PAGEID #: 1541-1542.)  Having conceded that the new case is sufficient to protect his interests, Petitioner is left only with an academic case for why Rule 60(b)(6) relief to reopen the instant case would not offend the public policy concerns that the Magistrate Judge laments.  Petitioner's arguments are not persuasive.

Petitioner relies on *Ruiz v. Quarterman*, 504 F.3d 523, 524-26 (5th Cir. 2007).  There, according to Petitioner, the Fifth Circuit's decision ordering the district court to reopen a closed case and to address an ineffective assistance claim explicitly reopened a prior final judgment but expressly limited the issues before the district court to issues that the district court had not previously considered on the merits.  Petitioner reasons that this Court could similarly limit the issues the Court would consider upon reopening, thereby leaving intact the Court's other previous rulings.  Petitioner's reliance on *Ruiz* is misplaced because in *Ruiz*, unlike here, Ruiz had no other way to obtain review of the ineffective assistance claim at issue.  Petitioner is not in that position here because he can obtain review of his method-of-execution claims in the new case.  *Ruiz* would be more persuasive but for this Court's decision allowing the new case to proceed.

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's July 6, 2012 Report and Recommendations (ECF No. 152) and October 2, 2012 Supplemental Report and Recommendations (ECF No. 170) recommending that the Court deny Petitioner's Motion for Relief from Judgment pursuant to Rule 60(b)(6) for the purpose of reopening the instant case to allow Petitioner to add two new method-of-execution claims.  The Court **OVERRULES** Petitioner's Objections (ECF Nos. 156 and 171) and **HEREBY DENIES** Petitioner's Motion for

9

Relief from Judgment (ECF No. 144).

## II.  June 15, 2012 Motion for Relief from Judgment

On June 15, 2012, Petitioner filed another Rule 60(b)(6) motion for relief from judgment—this time for reconsideration on the basis of the new Supreme Court decision of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), of a procedural default ruling on a portion of the trial counsel ineffectiveness claim set forth in his ninth ground for relief.  (ECF No. 150.)  Petitioner also requested an "indicative ruling" that the Court would grant his motion to reopen the case for the purpose of reconsidering its decision that Petitioner defaulted the ineffective assistance claim set forth in sub-part (6) of his ninth ground for relief.

In *Martinez v. Ryan*, the Supreme Court held for the first time that inadequate assistance of counsel during initial collateral review proceedings may establish cause and prejudice sufficient to excuse procedural default of a claim of ineffective assistance of trial counsel.  132 S.Ct. at 1315.  Prior to *Martinez*, it was settled law that ineffective assistance of post-conviction counsel could never establish cause and prejudice to excuse a procedural default because there existed no constitutional right to post-conviction counsel.  *See, e.g., Coleman v.Thompson*, 501 U.S. 722, 753-54 (1991).

In sub-part (6) of his ninth ground for relief, Petitioner had argued that his trial attorneys were ineffective for failing to offer evidence in support of their motion for a new trial on the basis of juror misconduct demonstrating that Petitioner was actually prejudiced by the juror misconduct.  Petitioner begins by noting that the impact of his paranoid schizophrenia was the heart of his case in mitigation, that he presented considerable and unrebutted evidence establishing the onset of paranoid schizophrenia one year before the offense, and that the

prosecution relentlessly derided that evidence during mitigation-phase closing arguments. Petitioner explains that during mitigation-phase deliberations, Juror Stephen Fox apparently solicited from a psychologist friend, Ms. Jones, a definition of paranoid schizophrenia. According to Petitioner, Ms. Jones told Juror Fox that "those kind of people just are not really in touch with reality." (ECF No. 150, at PAGEID #: 903.) After Juror Fox's misconduct of having solicited Ms. Jones' input came to light and the trial court investigated, Petitioner continues, Juror Fox insisted that the information that Ms. Jones had provided did not influence his verdict recommending the death penalty. Petitioner's counsel moved for a mistrial, supporting it only with an affidavit by Ms. Jones stating that she had provided Juror Fox with a brief explanation of paranoid schizophrenia. The prosecution countered with its own affidavit by Ms. Jones in which she stated that she had reviewed the entire mitigation-phase transcript and that the definition she had provided Juror Fox was entirely consistent with evidence that defense counsel presented at the mitigation hearing. Petitioner proceeds to explain that neither his postconviction counsel nor his *Murnahan* counsel ever raised a claim challenging the failure of trial counsel's to support the motion for a new trial with evidence of actual prejudice from Juror Fox's misconduct. Rather, Petitioner explains, that particular failing on the part of trial counsel was raised for the first time in a successive, untimely postconviction action that was rejected on procedural grounds.

Petitioner continues by noting that evidence presented during an evidentiary hearing before the Magistrate Judge established the following: that Ms. Jones had <u>not</u> reviewed the mitigation transcript; that she did not know the symptoms of paranoid schizophrenia; that she had looked up those terms in a dictionary; that she had told Juror Fox that paranoid schizophrenia was a communication disorder; and that she was not a licensed psychologist and

11

had never been a clinical psychologist.  Juror Fox testified at the evidentiary hearing that he might not have voted to recommend a death sentence if Ms. Jones had given a definition of paranoid schizophrenia consistent with Petitioner's suffering from that disorder.  Finally, the expert who had testified at Petitioner's mitigation hearing, Dr. Jeffrey Smalldon, testified at the evidentiary hearing that Ms. Jones' definition of paranoid schizophrenia was incorrect.

Petitioner argues that reopening is warranted because *Martinez* represents a sea change in the law—allowing for the first time ineffective assistance of postconviction counsel to establish cause to excuse procedural default of a claim of ineffective assistance of trial counsel—and that the facts underlying his claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel are strong.  He argues that the unquestionable juror misconduct in his case was profound and has never been addressed on the merits by any court.  These factors, Petitioner insists, outweigh the competing interest in allowing for the finality of judgments.

Respondent opposes Petitioner's motion.  (ECF No. 151.)  Respondent begins by questioning whether a Rule 60(b) motion may be used to correct an allegedly erroneous finding that a claim asserted in a first habeas corpus petition is procedurally defaulted, noting that the Supreme Court has never squarely addressed that question.  Respondent proceeds to argue that even assuming Rule 60(b) could be utilized in this way, Petitioner in the instant case cannot satisfy the requirements set forth in *Martinez v. Ryan*.  First, Respondent argues that the ineffective assistance claim(s) that Petitioner seeks to use as cause to excuse the default of his trial counsel ineffectiveness claim fall outside the limited exception that *Martinez* recognizes.  Respondent reasons that because trial counsel's failure to support his motion for a new trial with evidence demonstrating actual prejudice from juror misconduct appeared on the face of the

12

record and because Petitioner was represented by new counsel on appeal, Petitioner was required

to have raised his trial counsel ineffectiveness claim on direct appeal. *Martinez*, Respondent

explains, applies only to allow inadequate counsel during initial collateral review to establish

cause and prejudice. Because Petitioner conceded that this appellate ineffectiveness claim—

failure of appellate counsel to argue ineffective assistance of trial counsel for failing to support

the motion for a new trial with evidence of actual prejudice—was never raised in Petitioner's

App. R. 26(b) application for reopening, Respondent argues that *Martinez* also cannot be

extended to allow inadequate performance by the attorney who prepared Petitioner's App. R.

26(b) application to establish cause and prejudice to excuse the default of appellate counsel

ineffectiveness. Respondent reasons that the limitations in *Martinez* are express and that the

concerns that gave rise to the *Martinez* exception were not present in the instant scenario.

Second, Respondent argues that the underlying ineffectiveness of trial counsel claim at issue

cannot be characterized as substantial or even of arguable merit. Respondent notes that

Petitioner did not even object to the Magistrate Judge's recommendation that this trial counsel

ineffectiveness claim be denied as procedurally defaulted and that the claim accordingly was not

certified for appeal. Respondent argues that nothing calls into question the determination that

Petitioner had defaulted that ineffective assistance of trial counsel claim. Finally, Respondent

argues that assuming that postconviction was where this ineffective assistance claim should have

been raised, postconviction counsel were not ineffective for failing to raise it because "[i]t is not

reasonably probable that the trial court would have found testimony presented in post-conviction

proceedings years later more accurate or truthful than the testimony given promptly after the

trial." (ECF No. 151, at PAGEID #: 952.)

In a reply filed on July 11, 2012 (ECF No. 155), Petitioner begins by assailing Respondent's positions as to which counsel's performance—appellate counsel on direct appeal or postconviction counsel—in failing to challenge trial counsel's failure to offer evidence of actual prejudice in support of the motion for a new trial is at issue.  According to Petitioner because Attorney Fred Hoelfle represented Petitioner during the litigation of the motions for a new trial and resentencing in light of the juror misconduct, as well as on direct appeal, the only place that Petitioner could have challenged trial counsel's failure to offer evidence of prejudice in support of the motion for a new trial based on juror misconduct was in postconviction, which postconviction counsel failed to do. That being so, Petitioner reasons, *Martinez* is squarely on point.  Petitioner argues in the alternative that even assuming the claim should have been raised on appeal, appellate counsel failed to do so and were thus ineffective, excusing the default of the trial counsel ineffectiveness claim.  Similarly, Petitioner continues, because Petitioner's *Murnahan* counsel failed to raise appellate counsel's failure to raise the trial counsel ineffectiveness claim, *Martinez* dictates that *Murnahan* counsel's ineffectiveness excuses the default of the appellate counsel ineffectiveness that excuses the default of the trial counsel ineffectiveness claim.  Petitioner also challenges Respondent's other arguments disputing Petitioner's Traverse argument that his underlying substantive juror misconduct claim could not have been raised in postconviction, to wit:  (1) asserting that the evidence demonstrating prejudice was apparent from the face of the trial record; (2) noting Petitioner's failure to object to the Magistrate Judge's procedural default ruling (which would have been futile at the time absent the new *Martinez* exception); and (3) impugning the strength of the evidence of prejudice developed during the evidentiary hearing before the Magistrate Judge.  In regard to that last

14

point, Petitioner asserts that in assessing the "substantial and meritorious" requirement set forth in *Martinez*, it is the underlying trial counsel's deficiency and ensuing prejudice that are to be examined, not those of the initial collateral review proceedings counsel—whether in the instant case that is postconviction counsel or appellate counsel.

The Magistrate Judge issued a Report and Recommendations on August 20, 2012. (ECF No. 166.) The Magistrate Judge begins by reiterating that the primary procedural default that the Court had enforced against the trial counsel ineffectiveness claim set forth in sub-part (6) of Petitioner's ninth ground for relief was that it had been raised for the first time in a state postconviction petition that was a second or successive petition, as well as untimely. In the alternative, the Magistrate Judge continues, the claim was barred by *res judicata* because it appeared on the face of the record but was not raised on direct appeal. The Magistrate Judge next sets forth how, following his recommendation that the claim be denied as procedurally defaulted, neither prior habeas corpus counsel nor current habeas corpus counsel sought review of the issue from the District Judge in either objections or their first motion to alter the judgment, from the Sixth Circuit on appeal, or from the United States Supreme Court on *certiorari*.

The Magistrate Judge proceeds to discuss *Martinez v. Ryan*, not only setting forth the precise holding but also noting how the decision itself emphasized its narrow reach. Against that backdrop, the Magistrate Judge explains that "[t]o prevail on his instant Motion, Petitioner must show:"

> 1.    That Ohio is sufficiently like Arizona in its treatment of ineffective assistance of trial counsel claims to make *Martinez* applicable at all.
>
> 2.    That failure to present on initial postconviction review the ineffective assistance of trial counsel claim made in Ground Nine, sub-claim six, itself meets the standard of *Strickland v. Washington, supra*, i.e., that it was unreasonably

deficient performance and prejudiced the Petitioner.

> 3.   That the ineffective assistance of trial counsel claim made in Ground Nine, sub-claim six, is "substantial" or "has some merit."

> 4.   That the Motion otherwise meets the requirements of Fed. R. Civ. P. 60(b)(6).

(ECF No. 166, at PAGEID #: 1462.)  With respect to the first question, the Magistrate Judge

discusses *Williams v. Anderson*, 460 F.3d 789, 799 (6th Cir. 2006), and *State v. Cooperrider*, 4

Ohio St. 3d 226 (1983), in concluding that, "[i]f Sheppard was required to raise this claim on

direct appeal, *Martinez* is no help to him" because "the *Martinez* exception to *Coleman* is limited

to claims of ineffective assistance at trial."  (ECF No. 166, at PAGEID #: 1465.)  To that point,

the Magistrate Judge notes that "[i]neffective assistance by *Murnahan* counsel does not come

within *Martinez* because *Murnahan* motions can raise only ineffective assistance of appellate

counsel claims, not ineffective assistance of trial counsel claims."  (*Id*. at PAGEID #: 1466.)

Continuing with the first question, the Magistrate Judge reasons that "[t]his leaves

Sheppard with the argument that his ineffective assistance of trial counsel claim necessarily

depends on evidence outside the record on appeal."  (*Id*.)  In this regard, the Magistrate Judge

emphasizes at this point and throughout the Report and Recommendations "that the claim is

'[t]rial counsel should have submitted evidence from Dr. Smalldon or another expert to show

that Jones' nutshell definition of paranoid schizophrenia was misleading and inaccurate.' "  (*Id*.

(quoting Amended Petition, ECF No. 77, at 46-48).)  Recounting the facts giving rise to

Petitioner's motion for a new trial based on juror misconduct against the backdrop of the precise

claim that was pled in the petition, the Magistrate Judge concludes that Ohio law required

Petitioner to raise his ineffective assistance of trial counsel claim on direct appeal, thereby

rendering *Martinez* inapplicable. Noting that appellate counsel had available to them Juror Fox's testimony about calling Ms. Jones and the response he received, two affidavits from Ms. Jones recounting what she had told Juror Fox, and the evident lack of any affidavit by Dr. Smalldon, the Magistrate Judge reasons as follows:

> If appellate counsel believed, as current counsel believe, that the absence of a Smalldon affidavit was crucial, its absence was apparent on the face of the record. Of course, they would still have been required to show prejudice from the absence of the affidavit, but for that they had available all of Dr. Smalldon's trial testimony on paranoid schizophrenia. If there are inconsistencies between Jones' definition as given to Fox and Smalldon's testimony, those inconsistencies could readily have been pointed out to the court of appeals from the evidentiary materials already in the record. Direct appeal counsel could have argued ineffective assistance of trial counsel based on the record they had on direct appeal. Because they could have argued the claim on direct appeal, *res judicata* would have barred Sheppard from raising it in his first Ohio Revised Code § 2953.21 petition. Because it would have been barred from consideration, it cannot have been ineffective assistance in the *Martinez*-incorporating-*Strickland* sense for initial post-conviction counsel to have failed to raise it.

(ECF No. 166, at PAGEID #: 1468-69.)

With respect to the second inquiry in the four-part analysis, the Magistrate Judge concludes that the same reasons supporting the determination that the ineffectiveness of trial counsel claim should have been raised on direct appeal dictated the determination that it was not ineffective assistance of postconviction counsel to fail to raise the ineffectiveness claim pled in sub-part (6) of ground nine. (*Id.*)

Turning to the third inquiry, the Magistrate Judge concludes that the underlying ineffectiveness of trial counsel claim at issue is arguably substantial or has some merit. Noting that "all courts to consider the matter have found Juror Fox's phone call to be misconduct, but all have agreed there was no prejudice demonstrated," the Magistrate Judge explains that "[a]n additional affidavit from Dr. Smalldon of the sort hypothesized in Ground Nine, sub-claim six

could possibly have had an impact on that conclusion." (*Id*. at PAGEID #: 1470.)

Finally, the Magistrate Judge concludes that the instant motion did not meet the general standards for relief from judgment. Noting that relief from judgment pursuant to Rule 60(b)(6) is warranted only in unusual circumstances where principles of equity mandate relief, the Magistrate Judge states that "[a] change in decisional law is usually not, by itself, an extraordinary circumstance." (*Id*.)

With respect to Petitioner's argument that the fact he has a death penalty case constituted an extraordinary circumstance, the Magistrate Judge concludes that "that fact cuts both ways with respect to the instant Motion," and that "the fact that this is a death penalty case does not weigh unequivocally in favor of reopening the judgment." (*Id*. at PAGEID #: 1472, 1473.) The Magistrate Judge explains that Petitioner's case has been thoroughly reviewed by Ohio and federal courts, that Petitioner did not include the instant argument in his *certiorari* petition even though the Supreme Court had decided *Martinez* just weeks earlier, and that "[i]t is always in the interest of a death row inmate to seek further review because further review delays execution of sentence." (*Id*. at PAGEID #: 1472-1473.)

As for Petitioner's argument that the change in law created by *Martinez* constituted an extraordinary circumstance, the Magistrate Judge disagrees, pointing out that *Martinez* does not squarely "fit" Petitioner's case because "Ohio is not a State like Arizona in which all claims of ineffective assistance of trial counsel must be brought in post-conviction." (*Id*. at PAGEID #: 1473.)

Finally, the Magistrate Judge takes apart Petitioner's argument that the strength of his *Martinez* claim constituted an extraordinary circumstance. "Remember," the Magistrate Judge

18

explains, that "the defaulted claim is that trial counsel rendered ineffective assistance in not

adding an affidavit of Dr. Smalldon to the new trial motion." (*Id*.) This claim, according to the

Magistrate Judge, "would not have been a particularly strong argument to make, given that

counsel moving for a new trial already had Dr. Smalldon's trial testimony from which to argue."

(*Id*. at PAGEID #: 1474.) The Magistrate Judge additionally points out:

> An unspoken premise of Sheppard's argument is that, if they had tried
> harder, counsel moving for the new trial could have obtained the evidence
> eventually presented during the evidentiary hearing in this Court, where Juror Fox
> essentially repudiated his trial court testimony and Ms. Jones repudiated her
> second affidavit. But they offer no proof that such repudiations would have been
> obtainable at the time the motion for a new trial was made or even that they
> represent the state of min[d] of Fox and Jones at the time. And Sheppard's
> attempt to stretch the Sub-part six claim to cover all the testimony given in federal
> court is also unavailing. The claim as pled and adjudicated in this Court and in
> the Sixth Circuit is that counsel on the new trial motion were ineffective for
> failure to include additional evidence from Dr. Smalldon or a similar expert on
> how misleading Jones' definition was. There is no "harsh injustice" in the failure
> of any court to decide that claim on the merits.

(*Id*.)

The Magistrate Judge accordingly recommends that this Court deny Petitioner's motion

for relief from judgment for the purpose of reconsidering the procedural default of sub-part six of

his ninth ground for relief in light of *Martinez*.

Petitioner filed objections on September 20, 2012. (ECF No. 169.) Specifically,

Petitioner presents numerous arguments objecting to the Magistrate Judge's narrow construction

of the ineffectiveness of trial counsel claim set forth in sub-part (6) of his ninth ground for relief.

Petitioner also presents multiple arguments objecting to the Magistrate Judge's conclusion that

he had not demonstrated the extraordinary circumstances necessary to warrant Rule 60(b)(6)

relief. Also included in Petitioner's Objections are arguments insisting that *Martinez* applies

squarely to Petitioner's case, that the Magistrate Judge was premature in determining that Petitioner could not satisfy *Martinez*'s two-part standard, and that the Magistrate Judge erred in concluding that Petitioner already litigated the ineffective assistance claim set forth in sub-part (6) of ground nine.

Upon *de novo* review, this Court finds nothing clearly erroneous or contrary to law in the Magistrate Judge's August 20, 2012 Report and Recommendations.  The Court begins with the threshold question of whether Petitioner has met the "extraordinary circumstances" requirement necessary for Rule 60(b)(6) relief.  As the Court noted earlier, "[r]elief under Rule 60(b)(6) … requires a showing of 'extraordinary circumstances.' " *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).  Rule 60(b)(6) relief is thus warranted only in "unusual and extreme situations where principles of equity mandate relief." *Olle v. Henry & Wright*, 910 F.2d 357, 365 (6th Cir. 1990). The Court agrees with the Magistrate Judge that "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefits Fund*, 249 F.3d 519, 529 (6th Cir. 2001).  To this point, it bears noting that a change in decisional law alone usually does not constitute "extraordinary circumstances."  Rather, a court considering Rule 60(b)(6) relief must look for a change of law coupled with some other special circumstance. *Id*. at 524.  Viewed against this backdrop, this Court agrees with the Magistrate Judge that Petitioner has not demonstrated extraordinary circumstances.

Initially, the Court rejects Petitioner's assertion that *Martinez v. Ryan* represents a sea

change in the law, constituting the extraordinary circumstances necessary for Rule 60(b)(6) relief. Virtually every court to have examined the import of *Martinez* in the context of a request for Rule 60(b)(6) relief has rejected the notion that *Martinez* constitutes the "sea change in law" maintained by Petitioner or satisfies Rule 60(b)(6)'s "extraordinary circumstances" requirement. *Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012) (concluding that *Martinez*'s crafting of a narrow, equitable exception to *Coleman* is hardly extraordinary); *Jackson v. Ercole*, No. 09-CV-1054, 2012 WL 5949359, at *4 (W.D.N.Y. Nov. 28, 2012); *Fitzgerald v. Klopotoski*, Civil Action No. 09-1379, 2012 WL 5463677, at *3 (W.D. Pa. Nov. 8, 2012); *Haynes v. Thaler*, Civil Action No. H-05-3424, 2012 WL 4739541, at *4 (S.D. Tex. Oct. 3, 2012); *Gale v. Wetzel*, Civil Action No. 1:12-CV-1315, 2012 WL 5467540, at *9 (M.D. Pa. Sep. 27, 2012); *Vogt v. Coleman*, Civil Action No. 08-530, 2012 WL 2930871, at *3-4 (W.D. Pa. Jul. 18, 2012) (characterizing *Martinez* as simply a change in decisional law). *But see Lopez v. Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012) ; and *Cook v. Ryan*, No. CV-97-00146-PHX-RCB, 2012 WL 2798789, at *6 (D. Ariz. Jul. 9, 2012) (concluding that the nature of the change in law heralded by *Martinez* was a remarkable, albeit limited, development weighing slightly in favor of 60(b)(6) relief). The Court agrees with this reasoning. *Martinez* amounts to a limited change in decisional law.

The Court further agrees with the Magistrate Judge that none of the other factors, individually or cumulatively, offered by Petitioner in conjunction with *Martinez* amount to extraordinary circumstances. Petitioner argues that the fact that this is a capital case creates extraordinary circumstances. The Court disagrees. It is true that capital punishment jurisprudence cautions that the death penalty is different, "requir[ing] a correspondingly greater need for reliability, consistency, and fairness in capital sentencing decisions." *Getsy v.*

21

*Strickland*, 577 F.3d 320, 332 (6th Cir. 2009) (quoting *Gardner v. Florida*, 430 U.S. 349, 357 (1977)).  Any weight this factor lends to Petitioner's request for Rule 60(b)(6) relief is lessened by the fact that as a capital case, Petitioner has received multiple layers of review by multiple state and federal courts resulting in multiple published decisions upholding the judgment against him.  The fact that no court has considered the merits of the juror misconduct claim at issue herein does not undermine confidence in the reliability of the sentencing proceedings that produced Petitioner's death sentence.

The Court is mindful of the Sixth Circuit's admonition that " '[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.' " *Thompson v. Bell*, 580 F.3d 423, 444 (6th Cir. 2009) (quoting *Sanders v. United States*, 373 U.S. 1, 8 (1963)).)  But consideration of <u>all</u> relevant factors— including the strength of the underlying constitutional error alleged, Petitioner's diligence in seeking relief, and prejudice to non-moving parties—leads this Court to conclude that Petitioner has not demonstrated the extraordinary circumstances necessary to warrant the exceptional remedy of Rule 60(b)(6) relief.

The Court has already considered and rejected Petitioner's argument that *Martinez* creates extraordinary circumstances, and, for the reasons that follow, the Court also rejects Petitioner's assertion that the strength of his *Martinez* claim contributes to a finding of extraordinary circumstances.

As framed by the Magistrate Judge, the remaining questions for this Court to answer in determining whether Rule 60(b)(6) relief is warranted are (1) whether Ohio is sufficiently akin to Arizona in its treatment of ineffective assistance of trial counsel claims; (2) whether the failure

22

of Petitioner's postconviction counsel to raise the trial counsel ineffectiveness claim at issue

meets the two-part *Strickland* test; and (3) whether the underlying ineffectiveness of trial counsel

claim at issue—the failure of trial counsel to offer evidence of prejudice stemming from the juror

misconduct—is "substantial" or "has some merit."  Unlike the Magistrate Judge, this Court is

willing to conclude that Ohio is akin to Arizona with respect to the treatment of those trial

counsel ineffectiveness claims that belong *exclusively* in postconviction – (1) ineffective

assistance claims that rely on evidence outside the trial record or (2) ineffective assistance claims

where trial counsel also served as appellate counsel, as counsel is not expected to assert his or

her own ineffectiveness.  Petitioner was at most times during his pursuit of a new trial and his

litigation of direct appeal represented by the same counsel, Attorney Fred Hoelfle.  That

circumstance, in this Court's reading of controlling law, places Petitioner's claim of

ineffectiveness of trial counsel in the second of two categories of claims that must be raised in

postconviction.  And that fact, in this Court's view, renders Ohio sufficiently akin to Arizona to

make *Martinez* applicable in *this* instance.

The Court is also willing to conclude, as the Magistrate Judge did, that Petitioner's

underlying ineffectiveness of trial counsel claim—for the failure to submit evidence

demonstrating that Petitioner was prejudiced by the juror misconduct—at a minimum "has some

merit."  The Court reaches that conclusion on the basis of the virtually indisputable fact that what

Juror Fox did constitutes misconduct, as well as of the fact that the nature of Juror Fox's

misconduct related to the heart of Petitioner's mitigation case—namely that his suffering from

paranoid schizophrenia warranted a sentence less than death.  Concluding that the ineffectiveness

of trial counsel claim "has some merit" is *not* the equivalent of concluding that this

ineffectiveness claim is meritorious under *Strickland v. Washington*, 466 U.S. 668 (1984).

That this Court answered the first and third questions framed by the Magistrate Judge in the affirmative is of little use to Petitioner, however, because ultimately the Court cannot conclude that the failure of Petitioner's postconviction counsel to raise a claim of ineffectiveness of trial counsel for the failure to present evidence of prejudice stemming from the juror misconduct (or the initial failure of trial counsel to submit evidence of prejudice in seeking a new trial) meets the two-part *Strickland* test.

Under *Strickland v. Washington*, 466 U.S. at 687, counsel is ineffective if he or she renders deficient performance that prejudices the accused. A reviewing court measures "deficient performance" against objective standards of reasonableness based on prevailing professional norms. *Id*. at 688. "Prejudice" results where there is a reasonable probability that, but counsel's error, the result of the proceeding would have been different. *Id*. at 694. What is fatal to Petitioner's claim, and accordingly his request for relief from judgment, is the Supreme Court's careful and consistent admonition that "[i]n judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made…." *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (quoting *Strickland*, 466 U.S. at 689).

From the perspectives of not only counsel litigating Petitioner's motion for a new trial but also counsel litigating Petitioner's postconviction action *at the time* they were pursuing those respective remedies, there was no evidence to investigate, pursue, or develop that would have demonstrated prejudice from Juror Fox's misconduct. Juror Fox testified in chambers that the definition of paranoid schizophrenia that his acquaintance Ms. Jones had provided to him did not

influence his verdict. Ms. Jones confirmed in one affidavit that she had provided Juror Fox with a brief description and explanation of paranoid schizophrenia and averred in a subsequent affidavit that she had thoroughly reviewed the transcript of Dr. Smalldon's mitigation testimony and was of the view that the explanation she gave Juror Fox was totally consistent with Dr. Smalldon's testimony. That was the state of the facts and evidence *at the time* counsel sought a new trial and at the time different counsel sought postconviction relief. This is apparently why the Magistrate Judge observed that "[a]n unspoken premise of Sheppard's argument is that, if they had tried harder, counsel moving for a new trial could have obtained the evidence eventually presented during the evidentiary hearing in this Court, where Juror Fox essentially repudiated his trial court testimony and Ms. Jones repudiated her second affidavit." (ECF No. 166, at PAGEID:# 1474.) The Court agrees with the Magistrate Judge that there is no evidence or reason to believe that the evidence developed in the federal evidentiary hearing was obtainable or even that those were the mindsets of Fox and Jones *at that time*. In view of the "extreme suspicion" with which recanting affidavits and/or testimony (especially long delayed) must be viewed—*cf. McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007); *Matthews v. Ishee*, 486 F.3d 883, 895-96 (6th Cir. 2007); *Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006); *Knickerbocker v. Wolfenbarger*, 212 F. App'x 426, 433 (6th Cir. 2007); *Bower v. Curtin*, 118 F. App'x 901, 908 (6th Cir. 2004); *Lewis v. Smith*, 110 F. App'x 351, 355 (6th Cir. 2004)—the Court cannot conclude in this instance that either counsel litigating Petitioner's motion for a new trial or counsel litigating Petitioner's postconviction action had a duty to question the veracity of the sworn testimony by Juror Fox or the sworn statements by Ms. Jones in the absence of any specific reason to question it.

25

In sum, the Court concludes that even assuming that Petitioner could demonstrate the "extraordinary circumstances" necessary to warrant Rule 60(b)(6) relief, he cannot demonstrate that either counsel litigating his motion for a new trial or counsel litigating his postconviction action were ineffective sufficient for *Martinez* to provide a basis for this Court to reverse its conclusion that ineffective assistance claim set forth in sub-part (6) of Ground Nine is procedurally defaulted. In view of that conclusion, this Court need not address Petitioner's argument that *Martinez* applies to ineffective-assistance-of-appellate-counsel related proceedings.

For the foregoing reasons, the Court **DENIES** Petitioner's June 15, 2012 Motion for Relief from Judgment (ECF No. 150), A**DOPTS** the Magistrate Judge's August 20, 2012 Report and Recommendations (ECF No. 166) to the extent it is not inconsistent with the Court's decision set forth above, and **OVERRULES** Petitioner's September 20, 2012 Objections (ECF No. 169).

       **IT IS SO ORDERED**.

                                         /s/ Gregory L. Frost
                              GREGORY L. FROST
                              UNITED STATES DISTRICT JUDGE